SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
POLLY TOWILL, Cal. Bar No. 120420
  ptowill@sheppardmullin.com
ANDRE J. CRONTHALL, Cal. Bar No. 117088
  acronthall@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

Attorneys for Defendant
BofI HOLDING, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MATTHEW ERHART, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BOFI HOLDING INC., an entity, d/b/a BOFI FEDERAL BANK and BANK OF THE INTERNET,<br><br>Defendant. | Case No. 15CV2287-BAS-NLS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BOFI HOLDING, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST, SECOND, FOURTH, SEVENTH, EIGHTH AND NINTH CAUSES OF ACTION UNDER FED. R. CIV. P. 12(B)(6) AND MOTION TO STRIKE UNDER FED. R. CIV. P 12(F)**<br><br>Date:   January 19, 2016<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Courtroom 4B<br><br>The Hon. Cynthia Bashant |

SMRH:474034816.3

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..............................1

II.   STATEMENT OF RELEVANT ALLEGATIONS ..........................................3

III.  ARGUMENT ...............................................................................................8

 A.   Legal Standard Regarding Motions to Dismiss and to Strike................8

  1.   Rule 12(b)(6) Motion to Dismiss.....................................................8

  2.   Rule 12(f) Motion to Strike. .........................................................9

 B.   Erhart's First and Second Causes of Action Should be Dismissed Because He Fails to Allege Facts Showing That He Qualifies as a Whistleblower Under SOX and Dodd-Frank....................................10

  1.   The Elements of a Whistleblower Claim under SOX. ...............10

  2.   The Elements of a Whistleblower Claim Under Dodd-Frank. .........................................................................................11

  3.   Erhart Fails to Plead the Required Elements of SOX or Dodd-Frank................................................................................12

 C.   Erhart's Fourth Cause of Action for Violation of the Confidentiality of Medical Information Act Should Be Dismissed. ...............................................................................14

 D.   Erhart's Seventh Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing Should be Dismissed. .......15

 E.   Erhart's Eighth Cause of Action for Intentional Infliction of Emotional Distress Should be Dismissed. ...........................................16

  1.   Erhart's Claim For Intentional Infliction of Emotional Distress Is Preempted By The Exclusivity Of The Workers' Compensation Act.....................................................16

  2.   Erhart Fails To Allege "Extreme and Outrageous" Conduct Required To Maintain an IIED Claim .........................17

 F.   Erhart's Ninth Cause of Action for Defamation Should be Dismissed for Lack of Sufficient Specificity.......................................19

 G.   Erhart's Immaterial and Impertinent Allegations Should be Stricken. ...............................................................................19

  1.   Erhart Does Not Allege, for the Majority of his Allegations, that He Engaged in Protected Activity...................19

2.      Because Erhart Failed to Exhaust His Administrative
        Remedies for Numerous Allegations in the Complaint, As
        Required by SOX, Those Allegations Cannot Form the
        Basis of His Complaint and Should be Stricken. ....................21

3.      Many of Erhart's Allegations Contain Immaterial and
        Impertinent Confidential Information. .......................................23

IV.  CONCLUSION ...............................................................................25

SMRH:474034816.3
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BOFI
HOLDING, INC.'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page

Cases

Altman v. PNC Mortgage
  850 F. Supp. 2d 1057 (E.D. Cal. 2012) .................................................... 15

Asadi v. G.E. Energy
  720 F.3d 620 (5th Cir. 2013) ......................................... 2, 11, 12, 20

Ashcroft v. Iqbal
  556 U.S. 662 (2009) .................................................................. 8

Banko v. Apple Inc.
  20 F. Supp. 749 (N.D. Cal. 2013) .................................................. 11, 12

Bd. of Trustees v. Superior Court
  119 Cal. App. 3d 516 (1981) ......................................................... 25

Bozeman v. Per-Se Technologies, Inc.
  456 F. Supp. 2d 1282 (N.D. Ga. 2006) .............................................. 22

Buscemi v. McDonnell Douglas Corp.
  736 F.2d 1348 (9th Cir. 1984) ...................................................... 18

Chabra v. S. Monterey Cnty. Mem'l Hosp., Inc.
  1994 WL 564566 (N.D. Cal. Oct. 3, 1994) ........................................ 19

Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund
  24 Cal. 4th 800 (2001) ............................................................. 16

Cole v. Fair Oaks Fire Prot. Dist.
  43 Cal. 3d 148 (1987) .............................................................. 16

D. I. Chadbourne, Inc. v. Superior Court of City & Cnty. of San Francisco
  60 Cal. 2d 723 (1964) .............................................................. 24

Davies v. Broadcom Corp.
  2015 WL 5545513 (C.D. Cal. Sept. 8, 2015)
  (disagreeing with Somers v. Digital Realty Trust, Inc.,
  2015 WL 4483955 (N.D.Cal. July 22, 2015)) ................................ 11, 12, 20

Deirmenjian v. Deutsche Bank, A.G.
  526 F. Supp.2d 1068 (C.D. Cal. 2007) ............................................... 8

Fantasy, Inc., v. Fogerty
  984 F.2d 1524 (9th Cir. 1993),
  rev'd on other grounds, 510 U.S. 517 (1994) ..................................... 9, 10

Guz v. Bechtel Nat. Inc.
  24 Cal. 4th 317 (2000) ............................................................. 15

-iii-

*Holland v. BP Am., Inc.*
  2012 WL 761980 (E.D. Cal. Mar. 7, 2012) ........................................................ 15

*Jacobson v. Schwarzenegger*
  357 F. Supp. 2d 1198 (C.D. Cal. 2004) ............................................................. 19

*Janken v. GM Hughes Electronics*
  46 Cal. App. 4th 55 (1996) .............................................................................. 17

*Jones v. Home Fed. Bank*
  2010 U.S. Dist. LEXIS 3579 (D. Idaho Jan. 14, 2010) ................................... 21

*Lampos v. Guitar Center, Inc.*
  2004 U.S. Dist. LEXIS 30643 (C.D. Cal. September 23, 2004) ........................ 9

*McClendon v. Hewlett-Packard Co.*
  2005 U.S. Dist. LEXIS 29449 (D. Idaho Oct. 27, 2005) ................................. 21

*McClendon v. Hewlett-Packard Co.*
  2005 WL 2847224 (D. Idaho Oct. 27, 2005) ................................................... 22

*Milosky v. Regents of the University of California*
  44 Cal. 4th 876 (2008) ..................................................................................... 16

*Nazif v. Computer Sciences Corp.*
  2015 WL 3776892 (N.D. Cal. June 17, 2015) ................................................. 11

*Shoemaker v. Myers*
  52 Cal. 3d 1 (1990) .................................................................................... 16, 18

*Sidney-Vinstein v. A.H. Robbins Co.*
  697 F.2d 880 (9th Cir. 1983) ............................................................................. 9

*Sipe v. Countrywide Bank*
  690 F.Supp.2d 1141 (E.D. Cal. 2010) .............................................................. 15

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001), amended by 275 F.3d 1187 (9th Cir. 2001) ......... 8

*Tides v. The Boeing Co.*
  644 F.3d 809 (9th Cir. 2011) ........................................................................... 10

*Tourgeman v. Collins Fin. Servs., Inc.*
  2009 WL 6527758 (S.D. Cal. Nov. 23, 2009) .................................................. 24

*Trusz v. UBS Realty Investors*
  2010 WL 1287148 (D. Conn. Mar. 30, 2010) .................................................. 22

*United States v. Chen*
  99 F.3d 1495 (9th Cir. 1996) ........................................................................... 24

*Unterberger v. Red Bull North America Inc.*
  162 Cal. App. 4th 414 (2008) .......................................................................... 18

-iv-

*Valley Bank of Nevada v. Superior Court*
   15 Cal. 3d 652 (1975) ............................................................................24

*Van Asdale v. International Game Technology*
   577 F. 3d 989 (9th Cir. 2009) ...........................................2, 9, 10, 11

*Vasquez v. Franklin Management Real Estate Fund, Inc.*
   222 Cal. App. 4th 819 (2013) ......................................................17, 18

*Willis v. Vie Fin. Grp., Inc.*
   2004 WL 1774575 (E.D. Pa. Aug. 6, 2004) ...................................22

*Zurich Am. Ins. Co. v. Superior Court*
   155 Cal. App. 4th 1485 (2007) ..............................................................24

Statutes

15 U.S.C.
   § 78u-6 .........................................................................................1, 12
   § 78u-6(a)(6) ...........................................................................12, 20
   § 78u-6(a)(6) and (h)(1)(A) ...............................................................11
   § 78u-6(h)(1)(A)(i)-(iii) ....................................................................11

18 U.S.C.
   § 1514A (Sarbanes-Oxley Act) ..................1, 4, 9, 10, 11, 12, 19, 20, 21, 22, 23
   § 1514A(a)(1) ..................................................................................1, 10
   § 1514A(a)(l) .........................................................................................11
   § 1514A(b)(1)(B) .................................................................................21
   § 1514A(b)(2)(D) ...........................................................................21, 22

California Civil Code
   § 56.05(j) ...........................................................................................2, 14
   § 56.20(c) ...............................................................................................14
   § 1550 ....................................................................................................15

California Labor Code
   § 1102.5(b) .............................................................................................20
   § 1102.5 ...........................................................................................19, 20
   §§ 3600(a), 3601, 3602(a), 5300 .........................................................16

California Penal Code
   § 632 ..................................................................................................4, 24

Gramm-Leach-Bliley Act, Title V, Subtitle A .........................................23

Other Authorities

12 C.F.R. § 4.37(b) ...................................................................................24

29 C.F.R. § 1980.100(b) ...........................................................................22

Federal Rules of Civil Procedure
   Rule 9(b) ..................................................................................................9
   Rule 12(b)(6) .......................................................................................8, 9
   Rule 12(f) ............................................................................................3, 9

Case No. 15CV2287-BAS-NLS

1

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

2    Charles Erhart alleges that BofI Holding, Inc.[1] ("BofI") violated the Sarbanes-

3  Oxley Act (18 U.S.C. § 1514A)("SOX") and the Dodd-Frank Act (15 U.S.C. § 78u-

4  6 )("Dodd-Frank") by terminating him because he acted as a whistleblower.  SOX

5  and Dodd-Frank only permit whistleblower actions when an employee has reported

6  certain types of alleged wrongful conduct and such reporting is a factor in his

7  termination.  Despite publicizing his claims in the *New York Times*, Erhart fails to

8  allege any facts showing that he qualifies as a whistleblower under either of these

9  statutes. As a result, his federal law claims must be dismissed.  Erhart also alleges

10  eight separate state law claims against BofI, but fails to plead the basic elements

11  necessary to withstand dismissal with respect to four of these claims.  Indeed,

12  Erhart's inclusion of inflammatory allegations that are immaterial to any of his claims

13  calls into question the real motive of his Complaint -- seeking millions in "damages"

14  after working for just a year and a half at BofI as a junior auditor.

15    To state a claim under SOX, Erhart must plead that he was terminated from his

16  employment for disclosing to federal regulators, congress, or a supervisor acts of: (i)

17  mail fraud, (ii) wire fraud, (iii) bank fraud, (iv) securities fraud, (v) an SEC violation,

18  or (vi) fraud against the shareholders.  (18 U.S.C. § 1514A(a)(1)).  Similarly, to state

19  a retaliation claim under Dodd-Frank, Erhart must allege that he was fired for (i)

20  providing the SEC with information regarding a securities violation, (ii) assisting

21  with an investigation of the SEC, or (iii) making a disclosure required by SOX, i.e.,

22  the reporting of fraud or SEC violations set forth under SOX, §1514A(a)(1).

23    Erhart fails to allege any facts constituting any of the acts of fraud or securities

24  violations required under his federal claims.  Instead, he alleges fifteen instances of

25  purported misconduct, none of which remotely relate to the type of conduct required

26  under SOX and Dodd-Frank.  This may explain why Erhart fails to allege, as he must,

27
_____

28  [1] BofI was incorrectly named as BofI Holding Inc., an entity, d/b/a BofI Federal
    Bank and Bank of the Internet.

-1-    Case No. 15CV2287-BAS-NLS

how the reported activities "definitively and specifically relate" to one of the listed categories of fraud or securities violations in those statutes. *Van Asdale v. International Game Technology*, 577 F. 3d 989, 996-997 (9th Cir. 2009) ("*Van Asdale*").

Additionally, under both SOX and Dodd-Frank, a plaintiff also must describe how and to whom he "blew the whistle" concerning the alleged conduct, and that his reporting to authorities was a factor in his termination . *Van Asdale* at 996 (under SOX); *Asadi v. G.E. Energy*, 720 F.3d 620, 625 (5th Cir. 2013) (Dodd-Frank). Erhart does not allege facts showing that he provided information to regulators or internally at BofI about conduct he reasonably believed violated SOX, or that he reported such information to the Securities and Exchange Commission ("SEC") as required by Dodd-Frank. Further, he alleges no facts supporting an inference that his reporting of the requisite conduct contributed to his termination. Instead, he asserts that BofI attempted to notify him of his termination *prior to* any reporting of misconduct.

With respect to the state law causes of action, Erhart fails to satisfy the basic pleading requirements with respect to at least four of the claims made. Erhart alleges that BofI violated the Confidentiality of Medical Information Act ("CMIA") by "falsely" stating that he left BofI on "psychiatric leave." To state a claim under the CMIA, however, Erhart is required to plead that BofI disclosed information about his medical condition that was "in electronic or physical form" obtained from a medical provider. California Civil Code § 56.05(j). Nowhere in the Complaint does Erhart allege any qualifying electronic or physical medical information exists. Therefore, he is logically precluded from alleging it was disclosed. An alleged false statement concerning psychiatric leave does not qualify as "medical information" under the CMIA.

Erhart's claim for breach of the implied covenant of good faith and fair dealing also fails because Erhart does not allege a cognizable contract between the parties that made his brief employment at BofI something other than an at-will relationship. The

Case No. 15CV2287-BAS-NLS
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BOFI HOLDING, INC.'S MOTION TO DISMISS

presumed at-will employment relationship alleged by Erhart cannot support a claim for breach of the implied covenant of good faith and fair dealing.

Erhart's claim for intentional infliction of emotional distress also cannot survive the pleading stage.  Erhart alleges that his emotional distress arose out of his employment with BofI.  As a result, his emotional distress claim is expressly barred by the Workers' Compensation Act.  This claim also fails because Erhart has not alleged facts showing that BofI engaged in "extreme and outrageous" conduct.

The Court should also dismiss Erhart's vague claim for defamation.  Erhart does not specify any of the statements that constituted the alleged defamation, nor does he specify the identity of the purported speakers who made the defamatory statements.  Instead he admits that he does not know the wording of the statements or the identities of the speakers.

Accordingly, the Court should dismiss Erhart's First, Second, Fourth, Seventh, Eighth and Ninth causes of action.  In addition, the Court should strike the immaterial and impertinent allegations in the Complaint pursuant to Rule 12(f), including attorney-client privileged information.

## II.    STATEMENT OF RELEVANT ALLEGATIONS

Erhart alleges BofI is a highly ranked financial institution among the country's largest thrifts. (Complaint, ¶ 5). In September, 2013, Erhart began his employment at BofI as an entry level internal auditor, following "a stint" at Financial Industry Regulatory Authority ("FINRA"). (Complaint, ¶ 9). Erhart worked for BofI in this junior level position until he stopped coming to work on March 6, 2015.  (Complaint, ¶¶ 53-54).  He was informed that his termination paperwork had been processed on or about that same day.  (Complaint, ¶ 70).  After several months of failing to come to work (during which period he allegedly submitted paperwork for a "medical leave"), Erhart was "officially fired" on June 9, 2015. (Complaint, ¶ 72).

On or around April 14, 2015, Erhart filed a vague whistleblower complaint with OSHA ("OSHA Charge").  (Request for Judicial Notice ("RJN"), Ex. A, "OSHA

Charge").  The OSHA Charge is less than six pages long and, despite having been prepared with the assistance of a labor lawyer, contains very little detail regarding Erhart's allegations.  For example, it states only that he believed "the Bank [was] committing securities fraud, wire fraud, mail fraud, fraud on its shareholders, violations of SEC rules and regulations, and other violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act, and the Sarbanes-Oxley Act," without explaining who allegedly did what, when or where.  (RJN, Ex. A, p. 4).  OSHA took no action on Erhart's OSHA Charge. (Complaint, ¶ 78).

On October 13, 2015, Erhart filed this lawsuit against BofI.  In stark contrast to the OSHA Charge filed with the federal regulators tasked with investigating SOX and Dodd-Frank whistleblower claims, Erhart's civil Complaint contains more detailed, though contrived, allegations of claimed wrongdoing.  Erhart attempts to gloss over his failure to inform OSHA of the specific nature of his claims by asserting generically that he exhausted his administrative remedies, but a straightforward comparison of the OSHA Charge to the Complaint reveals that  Erhart never alleged in his OSHA Charge that BofI retaliated against him for reporting the conduct alleged in his Complaint.

The Complaint alleges the following fifteen (15) instances of purported improper conduct by BofI, while failing to allege crucial information:

    1.  BofI callers were violating California Penal Code § 632 by failing to notify potential customers that they were being recorded on phone calls from BofI.  (Complaint, ¶ 13).  Erhart does not allege that this was reported to any agency prior to his alleged termination and it is not mentioned in his OSHA Charge.  He does allege that he discussed it internally; however, he admits that the alleged discussion involved a privileged communication with BofI's Chief Legal Officer.  (Complaint, ¶ 16).

    2.  BofI's Chief Credit Officer mentioned that "he is not responsible for

-4-

any of the Bank's numbers after they are turned over to the Chief Financial Officer."  Based on this, Erhart alleges that he "reasonably understood this to mean that senior Bank management, at the CFO level and above, may be falsifying the Company's financials." (Complaint, ¶ 17).  He does not allege reporting such speculation internally or externally and it is not within his OSHA Charge.

3.  BofI made untimely 401(k) contributions to employee accounts. (Complaint, ¶ 18).  Erhart alleges that he asked a member of management about this, but does not claim that he reported it as a whistleblower and it is not mentioned in his OSHA Charge.

4.  "[T]he Board did not actually approve the Fiscal 2015 Strategic Plan on July 7, 2014 or at any later date."  (Complaint, ¶¶ 19-21).  Erhart does not allege that this was reported internally or externally, and it is not included in his OSHA Charge.

5.  Erhart alleges he had concerns that a small number of depositors accounted for a significant percentage of BofI's deposits.  Erhart asserts that he was told "Don't send that in an email, go have the conversation." (Complaint, ¶ 24).  This incident was mentioned in the OSHA Charge, but only as a reason allegedly given by BofI for lowering his evaluation – not as an action taken after reporting fraud or a securities violation to regulators as a whistleblower.

6.  Erhart's performance evaluation was downgraded, supposedly because of Erhart putting findings in writing.  (Complaint, ¶ 25).  This was mentioned in the OSHA Charge as a reason given by BofI for lowering his performance evaluation – not as an action taken after reporting fraud or a securities violation to regulators as a whistleblower.

7.  Erhart claims that BofI had information concerning a customer loan responsive to an SEC subpoena that BofI did not disclose.  Erhart claims

-5-

Case No. 15CV2287-BAS-NLS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BOFI
HOLDING, INC.'S MOTION TO DISMISS

he spoke with an employee about a privileged communication with BofI's legal department regarding the subpoena and shortly thereafter was told that the Chief Lending Officer was upset about the interview.  Erhart alleges that he called the SEC "to be sure it was aware of the situation" regarding the subpoena.  He claims he submitted a "whistleblower tip" to the SEC concerning the subpoena and a "suspicious loan customer," but does not allege that BofI was aware of this alleged tip prior to his termination.  (Complaint, ¶¶ 26-31).  The only aspect of this incident contained in the OSHA Charge is the reference to BofI telling him that he should have questioned the employee's supervisor directly about the subpoena -- not as an action taken after reporting fraud or a securities violation to regulators as a whistleblower.

8.  BofI told the Office of the Comptroller of the Currency ("OCC") that there were no accounts with no Tax Identification Numbers ("TIN's").  Erhart claims to have seen a spreadsheet disclosing borrowers with no TIN's.  (Complaint, ¶ 32).  Erhart does not allege reporting this internally or to the OCC, and it is not mentioned in the OSHA Charge.

9.  In February 2015 the OCC requested certain documents received by BofI from banking agencies and law enforcement during a certain time frame, including subpoenas.  Erhart asserts BofI said it had not received such documents, but that he had seen a spreadsheet listing subpoenas.  (Complaint, ¶ 33).  He does not allege reporting this internally or to the OCC, and it is not mentioned in his OSHA Charge.

10.  Erhart asserts that during a loan origination audit he discovered that BofI allegedly made loans to criminals and Politically Exposed Persons ("PEP's") in potential violation of "know your customer" rules.  (Complaint, ¶ 34).  He does not allege that he reported this to anyone internally or externally, and it is not mentioned in his OSHA Charge.

-6-

11.  Erhart alleges that a Senior Vice President of BofI changed findings in certain reports required under the Bank Secrecy Act. (Complaint, ¶ 35).  He does not provide any information concerning what type of changes were made (e.g., whether they were even substantive), does not allege that this was reported internally or externally, and does not mention the issue in his OSHA Charge.

12.  Erhart claims to have discovered that BofI calculated Allowances for Loan and Lease Losses ("ALLL") to exclude unfunded commitments for lines of credit.  He asserts that this could affect BofI's earnings, but does not explain how this could be material.  (Complaint, ¶ 36).  He does not allege how this was reported internally or externally, and it is not mentioned in his OSHA Charge.

13.  Erhart claims that he identified issues regarding BofI's compliance with the Flood Disaster Protection Act ("FDPA"), and that management did not include most of his findings in the final audit report.  (Complaint, ¶¶ 33-39).  This issue is not mentioned in his OSHA Charge.

14.  Erhart asserts that a vendor to BofI, Global Cash Card, provided a list of potential high risk customers that was revised by BofI, after which the vendor was terminated.  Erhart and a co-worker attached the original list to a memorandum "which was intended to be presented to the Audit Committee…"  (Complaint, ¶¶ 40-43).  Erhart does not allege any further details about this and it is not mentioned in his OSHA Charge.

15.  Erhart claims to have reviewed the personal deposit accounts of BofI's CEO and that of his brother, Steven Garrabrants, the alleged concern being "whether or not the CEO was reporting [income] to the IRS."  (Complaint, ¶ 44).  He claims that he "saved the folder regarding this work" on his computer, but does not allege if and how he reported these findings internally or externally.  (Complaint, ¶ 45).  The alleged

-7-

1    "potential tax evasion" is mentioned in the OSHA Charge.

2    Erhart does not plead how any of the above alleged incidents constitute one of

3    the required types of fraud or securities violations under SOX or Dodd-Frank.

4    Further, only a few of the incidents are alleged to have been even mentioned to BofI:

5    items 1(in a privileged communication), 5, 7 and 13.  However, none of those items

6    allegedly raised with BofI involved bank fraud or securities violations, and none of

7    them were mentioned in his OSHA Charge.  Erhart does not allege that reporting

8    these items contributed to his termination.  Erhart simply asserts broadly that he

9    "reported each of these matters to appropriate government agencies as a

10   whistleblower in April 2015."  (Complaint, ¶ 46).  He also does not allege, as he

11   must, facts showing that BofI knew or suspected that he reported the requisite

12   fraudulent conduct or securities violations and, for that reason, retaliated against him.

### III.    ARGUMENT

**A.    Legal Standard Regarding Motions to Dismiss and to Strike.**

   1.    **Rule 12(b)(6) Motion to Dismiss.**

16   A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a

17   complaint.  Dismissal is proper where there is either a "lack of a cognizable legal

18   theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

19   *Deirmenjian v. Deutsche Bank, A.G.*, 526 F. Supp.2d 1068, 1073 (C.D. Cal. 2007),

20   citing *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Though

21   the Court assumes the truth of properly pled factual allegations, the Court need not

22   accept as true conclusory allegations, unwarranted deductions of fact, unreasonable

23   inferences, or conclusions of law. *Sprewell v. Golden State Warriors*, 266 F.3d 979,

24   988 (9th Cir. 2001), amended by 275 F.3d 1187 (9th Cir. 2001).  Where a complaint

25   fails to assert sufficient facts, the reviewing court has the authority to determine

26   whether the allegations are merely conceivable (in which case dismissal is

27   appropriate), versus whether they are actually plausible. *Ashcroft v. Iqbal*, 556 U.S.

28   662, 677-80 (2009).

Further, as it relates to Erhart's SOX and Dodd-Frank causes of action, when alleging fraud, "[a] party must state with particularity the circumstances constituting fraud..." Fed. R. Civ. P. 9(b). Although it appears that the Ninth Circuit has not considered whether the Rule 9(b) specificity requirements are applicable to a SOX statutory whistleblower claim, the Ninth Circuit has recognized that "[t]o have an objectively reasonable belief there has been shareholder fraud, the complaining employee's theory of such fraud must at least approximate the basic elements of a claim of securities fraud… [which] resembles common law tort actions for deceit and misrepresentation." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1001 (9th Cir. 2009). Indeed, in an analogous context, the Central District of California found that a claimant's failure to plead a SOX violation with specificity rendered a claim for wrongful termination in violation of public policy subject to dismissal. *See Lampos v. Guitar Center, Inc.*, 2004 U.S. Dist. LEXIS 30643, *10 (C.D. Cal. September 23, 2004) ("Plaintiff fails to provide further detail with respect to any alleged violation of the Sarbanes - Oxley Act of 2002 with required specificity and therefore, cannot rely on the public policy embodied in the Sarbanes - Oxley Act of 2002 as a basis for his wrongful termination claim.").

A 12(b)(6) motion may be directed at fewer than all of the claims for relief raised.

### 2.   **Rule 12(f) Motion to Strike.**

A Rule 12(f) motion provides a mechanism by which a court may strike any fact alleged in a complaint that is "redundant, immaterial, impertinent, or scandal-lous," or any allegation that is legally defective and is not susceptible to dismissal through a motion under Rule 12(b)(6). *Fantasy, Inc., v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517, 534-35 (1994). The function of a motion to strike is "to avoid the expenditure of time and money that may arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robbins Co.*, 697 F.2d 880, 886 (9th Cir. 1983).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BOFI HOLDING, INC.'S MOTION TO DISMISS

1     Allegations are immaterial when they have "no essential or important

2  relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc.*, 984

3  F.2d at 1528.  Allegations are "impertinent" when they "do not pertain, and are not

4  necessary, to the issues in question." *Fantasy, Inc.*, 984 F.2d at 15287.

5  **B.**    **Erhart's First and Second Causes of Action Should be Dismissed Because**

6         **He Fails to Allege Facts Showing That He Qualifies as a Whistleblower**

7         **Under SOX and Dodd-Frank.**

8       **1.**    **The Elements of a Whistleblower Claim under SOX.**

9     To establish a *prima facie* violation of SOX's whistleblower provisions, a

10  plaintiff must plead and prove, among other elements, that he engaged in a protected

11  activity or conduct.  *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir.

12  2009) (citing 29 C.F.R. § 1980.104(b)(1)(i)-(iv)).  18 U.S.C. § 1514A(a)(1).  To

13  engage in protected activity or conduct under SOX, an employee must have provided

14  information or assistance concerning the following types of fraud: (i) mail fraud, (ii)

15  wire fraud, (iii) bank fraud, (iv) securities fraud, (v) any rule or regulation of the

16  SEC, or (vi) any Federal law relating to fraud against shareholders. 18 U.S.C. §

17  1514A(a)(1).  In addition, the employee must have provided the SOX complaint to

18  (1) a federal regulator or law enforcement agency, (2) Congress, or (3) a supervisor or

19  other individual who has the authority to investigate the misconduct (the "SOX

20  Complaint Recipient").  *Id.*

21     Importantly, the Ninth Circuit has recognized that the categories of SOX

22  Complaint Recipients that entitle a plaintiff to whistleblower protections are

23  exclusive.  *See Tides v. The Boeing Co.*, 644 F.3d 809, 815 (9th Cir. 2011)

24  (communications to people or organizations outside of those identified in 18 U.S.C. §

25  1514A(a)(1), such as the media, are insufficient to grant a plaintiff whistleblower

26  protections).

27     It is an essential requirement that the conduct reported by the whistleblower

28  fall within one of the above-specified six categories: "To constitute a protected

activity under SOX, the employee's communications to a SOX Complaint Recipient must 'definitively and specifically' relate to one of the listed categories of fraud or securities violation under 18 U.S.C. § 1514A(a)(l)." *Van Asdale at* 996-97 (internal quotation marks, brackets and citations omitted); *see also Nazif v. Computer Sciences Corp.,* 2015 WL 3776892, at *5, n.5 (N.D. Cal. June 17, 2015).

In addition, a whistleblower must have "(1) a subjective belief that the conduct being reported violated a listed law, and (2) this belief must be objectively reasonable." *Van Asdale* at 1000.  Further, a SOX plaintiff must allege that the employer knew or suspected that the employee was engaged in reporting the specified conduct and that this contributed to the unfavorable action.  *Id.* at 996 and 1002.

## 2.    **The Elements of a Whistleblower Claim Under Dodd-Frank.**

Dodd-Frank prohibits an employer from taking certain actions, including termination, against employees as a result of the employee providing (1) information to the SEC about securities law violations; (2) initiating, testifying in, or assist in an investigation or judicial or administrative action of the SEC (inapplicable here because, per Erhart's pleading, no action was taken by the SEC); or (3) making disclosures "required or protected" under SOX (the six categories enumerated above). 15 U.S.C. § 78u-6(h)(1)(A)(i)-(iii).

To be entitled to whistleblower protection under Dodd-Frank, an employee must provide the required information regarding a securities violation or one of the types of fraud specified in SOX directly to the SEC.  15 U.S.C. § 78u-6(a)(6) and (h)(1)(A);  *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 625 (5th Cir. 2013); *see also Davies v. Broadcom Corp.*, 2015 WL 5545513, at *4 (C.D. Cal. Sept. 8, 2015) (disagreeing with *Somers v. Digital Realty Trust, Inc.,* 2015 WL 4483955 (N.D. Cal. July 22, 2015)) and *Banko v. Apple Inc.*, 20 F. Supp. 749, 755-757 (N.D. Cal. 2013).

There is a split of authority among district courts in this Circuit concerning this point (whether the conduct must be reported to the SEC and not to a supervisor or

-11-

another regulator), however, the Fifth Circuit's opinion in *Asadi* and the *Davies* and *Banko* decisions in the district courts are more persuasive because they track the unambiguous language within Dodd-Frank stating that  "the term 'whistleblower' means any individual who provides…information relating to a violation of the securities laws to the Commission…"  15 U.S.C. § 78u-6(a)(6).  "This definition, standing alone, expressly and unambiguously requires that an individual provide information to the SEC to qualify as a 'whistleblower' for purposes of § 78u-6."  *Asadi*, at 623.

3.     **Erhart Fails to Plead the Required Elements of SOX or Dodd-Frank.**

Erhart has not alleged at all, much less "definitively and specifically" as required by *Van Asdale*, how the fifteen circumstances alleged in paragraphs 9 through 45 of his Complaint bear any relationship to violations under any one of the listed categories of SOX or Dodd-Frank.  This is because even if true as pled, which BofI vehemently denies, none of the fifteen matters constitutes mail fraud, wire fraud, bank fraud, securities fraud, a violation of an SEC rule or regulation, or fraud against shareholders.  For example, although the alleged untimely deposit to an employee benefit plan may reflect a mistake, it does not amount to bank fraud.  Or a legal department's alleged decision not to turn over loan documents in response to a third party SEC subpoena is a litigation issue fraught with privilege and privacy concerns, not securities fraud.  Erhart intentionally mischaracterizes responses to audit inquiries into something they are not on their face—SOX and Dodd-Frank violations.  A statement that the CFO is responsible for financial statements, not the Chief Credit Officer, cannot be reasonably interpreted by a lay person, much less an auditor, to imply that there was fraud in those financials.

Further, Erhart has not alleged facts showing that he reported any of the fifteen items, except partially, as follows:

- Erhart alleges discussing the alleged failure to disclose the recording of calls to customers with a management executive and BofI's Chief Legal Officer, thereby improperly referring to a privileged communication. (Complaint, ¶ 16).

- Erhart claims that he mentioned the issue of concentration of deposits in an email. (Complaint, ¶ 22).

- Erhart asserts that BofI's response to a subpoena for information concerning a loan customer was discussed with BofI's Chief Lending Officer and that he provided a "tip" to the SEC regarding the subpoena and a "suspicious loan customer."  (Complaint, ¶ 31).

- Erhart alleges that he mentioned Flood Disaster Protection Act issues in an audit report that was revised by management.  (Complaint, ¶ 38).

- Erhart claims that he was preparing to submit a list of "high risk customers" as an attachment to a report to the Audit Committee, but never did so. (Complaint, ¶ 43).

- Erhart asserts that he saved personal banking information concerning BofI's CEO on his computer because of an alleged concern that income wasn't being reported to the IRS, however, he does not allege actually reporting this information to anyone.  (Complaint, ¶ 45).

The mere fact that the above matters may have been reported to someone does not mean that Erhart's allegations satisfy SOX or Dodd-Frank.  This is because Erhart does not allege how those matters definitively and specifically relate to one of the specified categories of fraud or securities violations.  Further, he does not allege an objectively reasonable belief that the conduct constituted one of the required violations.  Moreover, he does not allege how the reporting of such conduct, if any, played a role in his alleged termination.

Concerning the other nine circumstances alleged in the Complaint, Erhart fails to satisfy *any* of the elements of a SOX or Dodd-Frank claim.

## C.   <u>Erhart's Fourth Cause of Action for Violation of the Confidentiality of Medical Information Act Should Be Dismissed.</u>

An employer violates the Confidentiality of Medical Information Act ("CMIA") (erroneously referred to in the Complaint as the "California Medical Information Act") when it "use[s], disclose[s], or knowingly permit[s] its employees or agents to use or disclose medical information which the employer possesses pertaining to its employees without the patient having first signed an authorization. . ." California Civil Code § 56.20(c). The statute defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." California Civil Code § 56.05(j).

Erhart fails to allege that BofI disclosed *any* of his medical information. Instead, Erhart makes the conclusory claim that "[b]y the conduct alleged hereinabove, Defendant violated the CMIA," (Complaint, ¶ 108). A careful review of the allegations "alleged hereinabove" reveals no allegation whatsoever having to do with Erhart's medical information as defined in the CMIA. To the contrary, the only allegation having anything to do with medical information is the allegation that that SVP Tolla falsely stated that Plaintiff was on a "psychiatric medical leave." (Complaint, ¶ 73). Such an allegation cannot support a violation of the CMIA because it fails to state that BofI disclosed information about his medical condition that was "in electronic or physical form" obtained from a medical provider. California Civil Code § 56.05(j). The complaint doesn't mention any actual electronic or physical medical information, much less disclosure of such information. An alleged false statement concerning psychiatric leave does not qualify as "medical information" under the CMIA.

Accordingly, the Fourth Cause of Action should also be dismissed in its entirety.

## D.     **Erhart's Seventh Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed.**

Erhart does not and cannot allege a valid, binding agreement with BofI that would trigger an implied duty of good faith and fair dealing. "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation and there is no obligation to deal fairly or in good faith absent an existing contract." *Sipe v. Countrywide Bank*, 690 F.Supp.2d 1141, 1160 (E.D. Cal. 2010) (internal quotation marks omitted) (citing *Racine & Laramie, Ltd. v. Dep't of Parks and Recreation*, 11 Cal.App.4th 1026, 1031–32 (1992). To this end, a complaint must plead a valid contract underlying the claim for breach of the covenant of good faith and fair dealing. *Id.*

"Under California law, the essential elements of a contract are:  parties capable of contracting; the parties' consent; a lawful object; and sufficient cause or consideration." *Holland v. BP Am., Inc.*, 2012 WL 761980, at *5 (E.D. Cal. Mar. 7, 2012) (citing *Lopez v. Charles Schwab & CO., Inc.,* 118 Cal.App.4th 1224, 1230 (2004) and Cal. Civ. Code § 1550) (internal quotation marks omitted).  "To form a contract, an offer must be sufficiently definite . . . that the performance promised is reasonably certain." *Altman v. PNC Mortgage*, 850 F. Supp. 2d 1057, 1078 (E.D. Cal. 2012) (internal quotation marks omitted).  Allegations of a general code of fair treatment in the employment context is not a cognizable contract under California law.  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 348 (2000) (citing Cal. Lab. Code § 2922 for the proposition that absent special circumstances not alleged here, an employee is assumed to be at will and not subject to an implied covenant claim).

Erhart's conclusory allegations of the existence of an "agreement" to treat him fairly are wholly insufficient to support a claim for breach of the implied covenant. Erhart claims that, "Plaintiff and Defendant had an agreement that Plaintiff would be able to perform the duties of an internal auditor in accordance with federal and state regulations and commonly understood business practices, without fear of losing his

1  job, being threatened physically or otherwise, and without having his performance

2  evaluation downgraded and bonus reduced because he spoke up about unlawful and

3  improper practices at the Bank." (Complaint, ¶ 130).  Erhart has pled nothing more

4  than a general code of fair treatment.

5      For the foregoing reasons, the Seventh Cause of Action should be dismissed in

6  its entirety.

7  **E.**      **Erhart's Eighth Cause of Action for Intentional Infliction of Emotional**

8          **Distress Should be Dismissed.**

9      1.      **Erhart's Claim For Intentional Infliction of Emotional Distress Is**

10                  **Preempted By The Exclusivity Of The Workers' Compensation Act**

11      Plaintiff's claim for intentional infliction of emotional distress fails as a matter

12  of law because the California Workers' Compensation Act ("WCA") provides the

13  "sole and exclusive remedy of the employee" for injuries sustained in the

14  workplace.  *See* Cal. Lab. Code §§ 3600(a), 3601, 3602(a), 5300.  The California

15  Supreme Court has repeatedly affirmed this principle, holding that employee injuries

16  stemming from even intentional employer misconduct such as whistleblower

17  retaliation may not be the subject of a civil action, and a plaintiff's **exclusive** remedy

18  is found under the WCA.  *See Milosky v. Regents of the University of California,*  44

19  Cal. 4th 876, 902 (2008) (affirming dismissal of emotional distress claim, holding

20  that any emotional distress caused by retaliation for whistleblowing is preempted by

21  the exclusive remedies of the WCA); *Shoemaker v. Myers,* 52 Cal. 3d 1, 7, 17-20

22  (1990); *Cole v. Fair Oaks Fire Prot. Dist.,* 43 Cal. 3d 148, 160 (1987).  The WCA

23  imposes a theoretical "compensation bargain" between employers and employees in

24  California: the employer assumes liability without regard to fault and in exchange

25  secures limits on liability, while the employee secures swift payment of benefits for

26  injuries sustained within the course and scope of her employment.  *See Charles J.*

27  *Vacanti, M.D., Inc. v. State Comp. Ins. Fund,* 24 Cal. 4th 800, 811 (2001);

28  *Shoemaker,* 52 Cal. 3d at 16.

1    Here, Erhart's IIED claim generally is based on all of the allegations "set forth

2    hereinabove" in the Complaint. (Complaint, ¶ 136).  Virtually all of the alleged

3    misconduct concerns purported comments or actions communicated to Erhart second

4    or third-hand by unnamed co-workers. (see, e.g., Complaint, ¶¶ 56, 60, 61, 71 and

5    74.)  All of the alleged actions and comments were made during the normal course of

6    the employment relationship and are barred by the WCA.  Accordingly, the Court

7    should dismiss Erhart's IIED cause of action.

8       2.    **Erhart Fails To Allege "Extreme and Outrageous" Conduct**

9             **Required To Maintain an IIED Claim**

10   To state a cause of action for IIED a plaintiff must show: (1) extreme and

11   outrageous conduct by the defendant; (2) the defendant's intention of causing or

12   reckless disregard of the probability of causing emotional distress; (3) the plaintiff's

13   suffering severe or extreme emotional distress; and (4) actual and proximate

14   causation of the emotional distress by the defendant's outrageous conduct.  *Vasquez v.*

15   *Franklin Management Real Estate Fund, Inc.*, 222 Cal. App. 4th 819, 832 (2013).  To

16   be deemed "outrageous," the conduct "'must be so extreme as to exceed all bounds of

17   that usually tolerated in a civilized society.'" *Id.* (quoting *Huntingdon Life Sciences,*

18   *Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1259

19   (2005)).  "In order to avoid a demurrer, the plaintiff must allege with 'great[]

20   specificity' the acts which he or she believes are so extreme as to exceed all bounds of

21   that usually tolerated in a civilized community. *Id.* (citing *Schlauch v. Hartford*

22   *Accident & Indemnity Co.*, 146 Cal. App. 3d 926, 936 (1983)).

23   Personnel management activity is insufficient to support a claim for intentional

24   infliction of emotional distress, even if improper motivation is alleged.  *Janken v. GM*

25   *Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996).  Indeed, "[m]anaging personnel

26   is not outrageous conduct beyond the bounds of human decency, but rather conduct

27   essential to the welfare and prosperity of society." *Id.*  Discipline and criticism that

28   are a normal part of the employment relationship do not constitute "outrageous"

conduct, even if intentional and malicious.  *See Shoemaker*, 52 Cal. 3d 1, 25 (1990) (conduct not outrageous for purposes of IIED even where supervisor allegedly said he wanted to cause plaintiff "as much grief as possible"); *Vasquez*, 222 Cal. App. 4th at 833 (affirming the trial court's decision to sustain the defendant's demurrer to plaintiff's IIED claim where the claim was based on allege Labor Code violations and allegations that the plaintiff was terminated in violation of public policy).

Terminating an employee is not "outrageous" conduct, even if the termination was based on pretext, without cause, and done in a "callous and insensitive manner." *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984). Similarly, "the termination of a business relationship, is, as [a] matter of law, not the type of 'outrageous' conduct that is required to support a cause of action for intentional infliction of emotional distress."  *Unterberger v. Red Bull North America Inc.*, 162 Cal. App. 4th 414, 423 (2008).

Here, Erhart's IIED claim is based on the circumstances of his termination, which is personnel management and not outrageous conduct for the purpose of assessing an IIED claim.  Most of the alleged improper conduct consists of comments made or actions taken outside of Erhart's presence while he was feeling "unwell" at home on "leave."  He claims to have learned of the comments and actions from unidentified "co-workers" while he was away from BofI's premises.  (*See* Complaint, ¶¶ 53-74.)  Such second or third-hand comments by co-workers cannot reasonably be considered "extreme and outrageous" and otherwise capable of inflicting severe emotional distress.  The few communications allegedly mentioned in his presence do not begin to approach the threshold of extreme and outrageous conduct—Erhart's' purported fear for his safety over a comment that if you keep turning over rocks you eventually will find a snake, is not reasonable.  Since Erhart fails to allege any conduct to support an IIED claim his eighth cause of action should be dismissed.

**F.**     **Erhart's Ninth Cause of Action for Defamation Should be Dismissed for Lack of Sufficient Specificity.**

"Under California law, although a plaintiff need not plead the allegedly defamatory statement verbatim, the allegedly defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement.  Even under liberal federal pleading standards, 'general allegations of the defamatory statements' which do not identify the substance of what was said are insufficient*." Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004) (superseded by statute on other grounds) (internal citations omitted).

Erhart not only fails to allege even the substance of the alleged defamatory statements, by his own admission, he does not know "the specific identity of the persons publishing the relevant statements, and the recipients of the statements." (Complaint, ¶ 140).  Nor does he "have knowledge of the exact wording of the defamatory statements" (Complaint, ¶ 142) or the precise dates of these publications (Complaint, ¶ 145).  This is entirely insufficient.  *Chabra v. S. Monterey Cnty. Mem'l Hosp., Inc.*, 1994 WL 564566, at *9, (N.D. Cal. Oct. 3, 1994) (dismissing a defamation claim based on inadequate allegations concerning the substance of the purported defamatory statements).

Erhart's Ninth Cause of Action for defamation should be dismissed.

**G.**     **Erhart's Immaterial and Impertinent Allegations Should be Stricken.**

     1.     **Erhart Does Not Allege, for the Majority of his Allegations, that He Engaged in Protected Activity.**

Erhart has brought whistleblower claims under three statutes:  SOX, Dodd-Frank and Cal. Lab Code § 1102.5.  Under all three of these statutes, Erhart must plead that he engaged in protected activity.

To have engaged in protected activity or conduct under SOX, an employee must have provided information or assistance concerning specified types of fraud to a SOX Complaint Recipient.  Under Dodd-Frank, the complaint must be made directly

to the SEC.  15 U.S.C. § 78u-6(a)(6); see also *Asadi,* 720 F.3d at 625; *Davies,* 2015 WL 5545513, at *4 (adopting the Fifth Circuit's reasoning that only individuals reporting securities violations to the SEC qualify as whistleblowers under Dodd-Frank).  Under Cal. Lab. Code § 1102.5, an employee must disclose information to a government or law enforcement agency, "where the employee has reasonable cause to believe that the information discloses a violation of [a] state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." Cal. Lab. Code § 1102.5(b).

For each of the allegations listed below, Erhart's Complaint fails to include a single factual allegation that he either: (1) made a report to a SOX Complaint Recipient for purposes of SOX; (2) made a report to the SEC for purposes of Dodd-Frank; or (3) made a report to a government or law enforcement agency for the purposes of Cal. Lab. Code § 1102.5.

- Erhart's allegation that he "reasonably understood. . . that senior Bank management, at the CFO level and above, may be falsifying the Company's financials"; (Complaint, ¶ 17).
- Erhart's allegation that "the Board did not actually approve the Fiscal 2015 Strategic Plan on July 7, 2014 or at any later date"; (Complaint, ¶¶ 19-21).
- Erhart's allegation that "the Bank responded to the [Office of the Comptroller of the Currency] that there were no accounts without [tax identification numbers]"; (Complaint, ¶ 32).
- Erhart's allegation that BofI falsely claimed that it had not received any correspondence with federal and state banking agencies and law enforcement, including subpoenas, in response to a request from the Office of the Comptroller of the Currency; (Complaint, ¶ 33).
- Erhart's allegation that "the Bank was making substantial loans to foreign nationals including Politically Exposed Persons ('PEP's) in potential violation of BSA/Know Your Customer Rules"; (Complaint, ¶ 34).

- Erhart's allegation that "SVP Tolla had repeatedly changed the findings on numerous reports required under the Bank Secrecy Act's Quality Control ('QC') requirements"; (Complaint, ¶ 35).

- Erhart's allegation that "the Bank recently calculated Allowance for Loan and Lease Losses ('ALLL') to exclude unfunded commitments for lines of credit"; (Complaint, ¶ 36).

- Erhart's allegation that the brother of BofI's CEO "had a balance of approximately $4 million" and that Erhart "could find no evidence of how he had come legally into possession of the $4 million." (Complaint, ¶ 45)

As a result, the allegations listed above are immaterial to the Complaint. They have nothing to do with claimed whistleblowing, are wholly irrelevant, and serve no legitimate purpose whatsoever.  Accordingly, Paragraphs 17, 19-21, 32-36, and 45 of the Complaint should be stricken in their entirety.

   2. **Because Erhart Failed to Exhaust His Administrative Remedies for Numerous Allegations in the Complaint, As Required by SOX, Those Allegations Cannot Form the Basis of His Complaint and Should be Stricken.**

A claimant alleging discharge or other discrimination in violation of SOX must file a complaint with the Secretary of Labor within 180 days of the date the alleged violation occurred. 18 U.S.C. § 1514A(b)(2)(D).  If the Secretary does not issue a final decision on the complaint within 180 days of filing with the Secretary of Labor, the claimant can then file a complaint in federal court. 18 U.S.C. § 1514A(b)(1)(B). District courts in the Ninth Circuit have found that a federal court "can only conduct a de novo review of those [SOX whistleblower] claims that have been administratively exhausted." *Jones v. Home Fed. Bank,* 2010 U.S. Dist. LEXIS 3579, *9 (D. Idaho Jan. 14, 2010) ("The district court has jurisdiction to conduct de novo review of only those SOX whistleblower claims that have been administratively exhausted.");  *McClendon v. Hewlett-Packard Co.*, 2005 U.S. Dist. LEXIS 29449, at

1   *12 (D. Idaho Oct. 27, 2005) ("[T]he Court finds that it can only review those

2   separate and distinct claims asserted in McClendon's administrative [SOX]

3   complaint."); *see also Bozeman v. Per-Se Technologies, Inc.,* 456 F. Supp. 2d 1282,

4   1357 (N.D. Ga. 2006) ("A federal court "can only conduct a de novo review of those

5   [SOX whistleblower] claims that have been administratively exhausted.").

6        The purpose of the exhaustion requirement is to "afford OSHA the opportunity

7   to resolve the allegations administratively."  *Bozeman v. Per-Se Technologies, Inc.*,

8   456 F. Supp. 2d 1282, 1356 (N.D. Ga. 2006).  Filing with OSHA allows for the

9   "expeditious handling of retaliation complaints made by employees. 29 C.F.R. §

10  1980.100(b).  After a complaint is filed with OSHA, the agency will have the

11  opportunity to conduct an investigation of the unfavorable personnel action(s) at

12  issue. *Willis v. Vie Fin. Grp., Inc.*, 2004 WL 1774575, at *3 (E.D. Pa. Aug. 6, 2004).

13       In order to exhaust his administrative remedies, an OSHA complaint must

14  include a "full statement of the acts and omissions, with pertinent dates, which are

15  believed to constitute the violations." *McClendon v. Hewlett-Packard Co.,* 2005 WL

16  2847224, at *3 (D. Idaho Oct. 27, 2005) (internal quotation marks omitted).  "[A]ll

17  facts raised in a SOX claim in federal court must first be presented to OSHA, so that

18  OSHA can adequately fulfill its statutory and regulatory review obligations." *Trusz v.

19  UBS Realty Investors*, 2010 WL 1287148, at *4 (D. Conn. Mar. 30, 2010); *see also

20  Willis v. Vie Fin. Grp.*, 2004 WL 1774575, *6 (E.D. Pa. Aug. 6, 2004) (reasoning that

21  the plaintiff's failure to include a claim in an administrative complaint with OSHA

22  precluded pursuing that claim in court).

23       A straightforward comparison of Erhart's OSHA Charge with his Complaint

24  reveals that Erhart failed to exhaust with respect to virtually all of his allegations.

25  (*See* RJN, Ex. A, ¶¶ 24-27).  Erhart's conclusory statement in Paragraph 8 of the

26  Complaint that he "exhausted his administrative remedies" is patently untrue.

27       Further, Erhart cannot amend or re-file his OSHA Complaint to cure his failure

28  to exhaust administrative remedies because the deadline has long passed.  *See* 18

-22-

U.S.C. § 1514A(b)(2)(D) ("An action. . .shall be commenced not later than 180 days after the date on which the violation occurs.").  In his OSHA Charge, Erhart claims that the relevant dates for his claimed SOX violations are December 2014 - March 9, 2015. (RJN, Ex. A, ¶ 26).  Calculating 180 days from March 9, 2015, Erhart's deadline to have included all of the allegations underlying his SOX claim was September 5, 2015.  Therefore, the allegations listed above cannot be part of his SOX claim and are thus immaterial, wholly irrelevant and serve no legitimate purpose whatsoever.  Furthermore, because they are immaterial, irrelevant and should never have been included in Erhart's SOX cause of action, any incorporation by reference of these claims in other parts of Erhart's Complaint must similarly be stricken. For the foregoing reasons, Paragraphs 9-21 and 31-43 of the Complaint should be stricken.

> ### 3.   Many of Erhart's Allegations Contain Immaterial and Impertinent Confidential Information.

In addition to being immaterial (by reason of failure to exhaust or failure to blow the whistle), many of the allegations in Erhart's Complaint were undoubtedly included for the sole purpose of attempting to embarrass and harm BofI.  While the substance and veracity of the allegations is certainly in dispute, there can be no doubt that Erhart has violated the privacy, confidentiality and attorney-client privilege rights of BofI's employees, clients, and business counterparts.  For this additional reason, the Court should strike Paragraphs 16, 26-33, 39, 41, 44, 45, 49-52, and 70.

Specifically, Erhart has an obligation as a former employee of BofI to maintain the confidentiality of nonpublic personal information.  Title V, Subtitle A of the Gramm-Leach-Bliley Act ("GLBA") governs the treatment of nonpublic personal information by financial institutions.  GLBA authorized the federal financial institution regulatory agencies to adopt regulations to implement those provisions and the pre-existing provisions of the Fair Credit Reporting Act.  Under GLBA, a financial institution (and its employees) is prohibited from disclosing nonpublic personal information to nonaffiliated third parties, unless the institution satisfies various notice

1   and opt-out requirements.  Here, Erhart violated that prohibition by including his

2   Complaint allegations relating to the bank account of BofI's CEO (Complaint, ¶ 44),

3   allegations the brother of BofI's CEO "had a balance of approximately $4 million" and

4   that Erhart "could find no evidence of how he had come legally into possession of the

5   $4 million."  (Complaint, ¶ 45).  Mr. Garrabrants and his brother's bank information

6   were also protected by the right to privacy in their financial affairs guaranteed by the

7   California Constitution.  *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652,

8   656 (1975); *see also Tourgeman v. Collins Fin. Servs., Inc.,* 2009 WL 6527758, at *3

9   (S.D. Cal. Nov. 23, 2009) (recognizing that an individual has a legally protected

10  privacy interest in private financial information).

11        In addition, under the OCC regulations,  non-public information of the OCC

12  may not be disclosed to third parties.  *See, e.g.* 12 C.F.R. § 4.37(b).  Erhart violated

13  this regulation by including information related to OCC information requests, such as

14  those related to tax identification numbers of certain accounts and subpoenas received

15  by BofI.  (Complaint, ¶¶32, 33, 39, 41, 49 and 52).

16        Further, Erhart has an obligation not to reveal attorney-client privileged

17  information. *See Zurich Am. Ins. Co. v. Superior Court,* 155 Cal. App. 4th 1485, 1496

18  (2007) (holding that statements between the lawyer and an employee of a corporation

19  are privileged and citing the seminal case of *D. I. Chadbourne, Inc. v. Superior Court*

20  *of City & Cnty. of San Francisco*, 60 Cal. 2d 723, 736 (1964)); *United States v. Chen*,

21  99 F.3d 1495, 1502 (9th Cir. 1996) (recognizing that the corporation is the holder of

22  the corporate attorney-client privilege and that the privilege cannot be waived by a

23  non-managerial employee).  Here, Erhart disseminated attorney-client privileged

24  information by including in the Complaint allegations relating to a meeting with

25  BofI's Chief Legal Officer regarding Cal. Penal Code § 632 (Complaint, ¶ 16),

26  allegations relating to the investment advisory firm ETIA LLC, which contained both

27  confidential client information and attorney-client privileged information (Complaint,

28  ¶¶ 26-31), and allegations related to communications with BofI's legal counsel that

-24-

Case No. 15CV2287-BAS-NLS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BOFI
HOLDING, INC.'S MOTION TO DISMISS

1   were covered by the attorney-client privilege; (Complaint, ¶ 70).

2          Erhart also violated Jonathan Ball's constitutional right to privacy by disclosing

3   his confidential employment information. *See, e.g., Bd. of Trustees v. Superior Court*,

4   119 Cal. App. 3d 516, 528 (1981) (recognizing a right to privacy in employment

5   records). Such allegations include purported details of Mr. Ball's tenure with BofI and

6   the alleged circumstances of his separation from employment. (Complaint, ¶¶ 50-52).

7          Each of the allegations above were included in the Complaint for no legitimate

8   purpose.  They are completely irrelevant to any of Erhart's causes of action.

9          For this reason, Paragraphs 16, 26-33, 39, 41, 44, 45, 49-52, and 70 should also

10  be stricken from the Complaint.  Accordingly, for all of the foregoing reasons,

11  Paragraphs 9- 45, 49-52 and 70 of the Complaint are immaterial and impertinent to

12  any of Erhart's legal claims and should be stricken in their entirety.

13                        **IV.   CONCLUSION**

14         The day after Erhart filed his Complaint, "magically and amazingly", to use

15  Erhart's own words in the Complaint, an article appeared in the *New York Times*,

16  parroting the allegations in his Complaint, to the glee of the short sellers.  But because

17  you "read it in the newspaper" does not mean that Erhart has any basis for his claims.

18  For the above reasons, BofI respectfully requests that this Court dismiss Erhart's First,

19  Second, Fourth, Seventh, Eighth and Ninth causes of action without leave to amend,

20  and/or strike Paragraphs 9-21, 26-45, 49-52 and 70 of the Complaint because they are

21  immaterial and impertinent given Erhart's unmeritorious and deficient allegations.

22

23  Dated:  December 15, 2015   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

24                              By _____

25                                          *s/Polly Towill*
                                          POLLY TOWILL

26                              Attorneys for Defendant BofI HOLDING, INC.
                                Email: ptowill@sheppardmullin.com

27

28