# EXHIBIT G
# to Declaration of Polly Towill

Charles Matthew Erhart                                                                   12/6/2015

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BofI FEDERAL BANK, a        )
federal savings bank,       )
                            )
        Plaintiff,          )
                            )
    vs.                     ) No. 3:15-cv-2353-BAS-NLS
                            )
CHARLES MATTHEW ERHART,     )
an individual; and DOES 1   )
through 25, inclusive,      )
                            )
        Defendants.         )
_____)




    DEPOSITION OF CHARLES MATTHEW ERHART
            Los Angeles, California
           Sunday, December 6, 2015








Reported by:
LAURIE HELD-BIEHL
CA CSR No. 6781
TX CSR No. 8555
RPR/CRR No. 32836
JOB No. 305610
                                              1
```

```
1            UNITED STATES DISTRICT COURT
2            SOUTHERN DISTRICT OF CALIFORNIA
3
4   BofI FEDERAL BANK, a        )
    federal savings bank,       )
5                               )
         Plaintiff,             )
6                               )
       vs.                      ) No. 3:15-cv-2353-BAS-NLS
7                               )
    CHARLES MATTHEW ERHART,     )
8   an individual; and DOES 1   )
    through 25, inclusive,      )
9                               )
         Defendants.            )
10  _____)
11
12
13          Videotaped Deposition of CHARLES
14   MATTHEW ERHART, pages 1 through 231,
15   taken on behalf of Plaintiff, at
16   333 South Hope Street, Los Angeles,
17   California, beginning at 11:31 a.m.
18   and ending at 5:25 p.m. on Sunday,
19   December 6, 2015, before LAURIE
20   HELD-BIEHL, California Certified
21   Shorthand Reporter No. 6781, Texas
22   Certified Shorthand Reporter
23   No. 8555, Registered Professional
24   Reporter, Certified Realtime Reporter
25   No. 32836.
                                            2
```

```
1   APPEARANCES:
2
3       For Plaintiff:
4          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
           Attorneys at Law
5          BY: POLLY TOWILL, ESQ.
           BY: HEATHER PLOCKY, ESQ.
6          333 South Hope Street
           43rd Floor
7          Los Angeles, California  90071-1422
           (213) 620-1780
8          (213) 620-1398 (facsimile)
           ptowill@sheppardmullin.com
9          hplocky@sheppardmullin.com
10      For Defendants:
11         THE GILLAM LAW FIRM
           Attorneys at Law
12         BY: CAROL L. GILLAM, ESQ.
           11620 Wilshire Boulevard
13         Suite 900
           Los Angeles, California  90025
14         (310) 203-9977
           (310) 203-9922 (facsimile)
15         carol@gillamlaw.com
16      Also Present:
17         BARBARA WESTMORE, Videographer
18         ESHEL BAR-ADON
19         GREG GARRABRANTS
20
21
22
23
24
25
                                            3
```

```
1                    INDEX
2
3   WITNESS                            EXAMINATION
4   CHARLES MATTHEW ERHART
5     BY MS. TOWILL                         9
6
7
8   DEPOSITION TIME LOG                    229
9
10                   EXHIBITS
11  PLAINTIFF'S                            PAGE
12   1  Photocopy or Order Granting Joint Motion   45
        for Entry of Temporary Restraining Order,
13      5 pages
14   2  Photocopy of BofI Federal Bank's Notice    52
        of Taking Limited Deposition of
15      Charles Matthew Erhart, 4 pages
16   3  Photocopy of Order (1) Allowing the        52
        Limited Deposition of Defendant;
17      (2) Allowing Plaintiff to Issue Subpoenas;
        and (3) Extending Defendant's Deadline
18      to Respond to the First Amended Complaint,
        3 pages
19
     4  Photocopy of Order Granting Joint          83
20      Motion for Protective Order as Modified,
        13 pages
21
     5  Declaration of Charles Matthew Erhart,     90
22      6 pages
23   6  Photocopy of Excel spreadsheet prepared    93
        by the witness, 8 pages
24   CONFIDENTIAL
25
                                            4
```

1 (Pages 1 to 4)

www.biehletal.com

Charles Matthew Erhart                                                                 12/6/2015

| | |
|---|---|
| INDEX (Continued):<br><br>            EXHIBITS<br>PLAINTIFF'S                                           PAGE<br>7  Photocopy of documents produced by the     120<br>   witness in hard copy to Stroz Friedberg,<br>   940 pages<br>   CONFIDENTIAL - Attached to Original Only<br><br>8  USB thumb drive produced by witness to      149<br>   Stroz Friedberg, a photo of which is<br>   attached hereto, 1 page<br>   CONFIDENTIAL - Maintained by Counsel<br><br>9  Photocopy of printout of documents          153<br>   produced on Exhibit 8 USB thumb drive to<br>   Stroz Friedberg by witness, 2544 pages<br>   CONFIDENTIAL - Attached to Original Only<br><br>10 Photocopy of Stroz Friedberg Digital        156<br>   Forensics EncryptStick - USB thumb drive<br>   directory, 8 pages<br>   CONFIDENTIAL<br><br>11 Photocopy of letter to Greg Garrabrants     176<br>   from Office of the Comptroller of the<br>   Currency, Margaret P. Moore, NBE, dated<br>   1-15-15, with enclosures, 6 pages<br>   CONFIDENTIAL<br><br>12 Photocopy of letter to Greg Garrabrants     188<br>   from Office of the Comptroller of the<br>   Currency, Margaret P. Moore, NBE, dated<br>   1-15-15, with enclosures, 7 pages<br>   CONFIDENTIAL<br><br>13 Photocopy of Uniform Residential Loan       188<br>   Application, RE: Frederic Elm, 3 pages<br>   CONFIDENTIAL<br><br>14 Photocopy of 2008 W-2 and Earnings          190<br>   Summary, Gregory Garrabrants, 1 page<br>   CONFIDENTIAL | INDEX (Continued):<br><br>            EXHIBITS<br>PLAINTIFF'S                                           PAGE<br>22 Photocopy of document entitled "Exhibit A   222<br>   to Declaration of Charles Matthew Erhart,<br>   Electronic Format Documents," 20 pages<br>   CONFIDENTIAL<br><br><br>         IDENTIFIED FOR COUNSEL<br>            PAGE    LINE<br>             97      6<br><br>         INFORMATION REQUESTED<br>            PAGE    LINE<br>             80      25<br><br>       WITNESS INSTRUCTED NOT TO ANSWER<br>            PAGE    LINE<br>             41      6<br>             64      1<br>            117      20<br>            129      4<br>            131      20<br>            142      15<br>            162      17<br>            223      17<br>            224      2 |
| INDEX (Continued):<br><br>            EXHIBITS<br>PLAINTIFF'S                                           PAGE<br>15 Photocopy of 2009 W-2 and Earnings          193<br>   Summary, Gregory Garrabrants, 1 page<br>   CONFIDENTIAL<br><br>16 Photocopy of document entitled "BofI        194<br>   Federal-San Diego, California,"<br>   containing ticket items for credit,<br>   printed 12-9-14, 47 pages<br>   CONFIDENTIAL<br><br>17 Photocopy of multiple Wells Fargo           197<br>   and Charles Schwab Bank statements<br>   for Gregory and Brook Garrabrants,<br>   27 pages<br>   CONFIDENTIAL<br><br>18 Photocopy of document printed from          202<br>   USB Thumb Drive produced by the witness<br>   in a password-protected format, the<br>   first line of which reads "Structured<br>   Settlements and Lottery Audit," 2 pages<br>   CONFIDENTIAL<br><br>19 Photocopy of Memo to BSA Department         200<br>   from Internal Audit Department, authored<br>   by Charles Erhart, Internal Auditor,<br>   RE: Frederic Elm, Loan #3348449,<br>   96 pages<br>   CONFIDENTIAL<br><br>20 Photocopy of document created by Stroz      209<br>   Friedberg reflecting messages pulled from<br>   the personal webmail of the witness on<br>   his laptop, 1 page<br>   CONFIDENTIAL<br><br>21 Photocopy of Order Granting Joint           219<br>   Motion for Entry of Supplemental Temporary<br>   Restraining Order and Continuance of<br>   Hearing of BofI's Motion for Preliminary<br>   Injunction, 5 pages |            Los Angeles, California<br>           Sunday, December 6, 2015<br>           11:31 a.m. - 5:25 p.m.<br><br>    THE VIDEOGRAPHER: Good morning. We are on the record.<br>    Here begins media number 1 of the deposition of Charles Erhart in the matter of BofI Federal Bank versus Charles Erhart.<br>    This case is in the United States District Court, Southern District, the case number is 3:15-CV-2353-BAS-NLS.<br>    Today's date is December 6, 2015 and the time on the video monitor is 11:31 a.m.<br>    This deposition is taking place at 333 South Hope Street in Los Angeles, California, and is being taken on behalf of the plaintiff.<br>    The videographer is Barbara Westmore, appearing on behalf of Biehl, et al., CSR, and the court reporter today is Laurie Biehl.<br>    Would counsel please identify yourselves and state whom you represent.<br>    MS. GILLAM: Carol Gillam for the Defendant.<br>    MS. TOWILL: Polly Towill for Plaintiff BofI Federal Bank. |

2 (Pages 5 to 8)

www.biehletal.com

Charles Matthew Erhart                                                                                      12/6/2015

| | | |
|---|---|---|
| 01:30 | 1 | modified, the Court modified the protective order and |
| | 2 | signed it on December 3, 2015. |
| | 3 | And I'm going to put that as -- |
| | 4 | It was Exhibit 4, right? |
| 01:30 | 5 | THE REPORTER: Yes. |
| | 6 | (Plaintiff's Exhibit 4 was marked |
| | 7 | for identification and is attached |
| | 8 | hereto.) |
| | 9 | MS. TOWILL: Because we will be marking some |
| 01:30 | 10 | documents as confidential. |
| | 11 | THE REPORTER: It's before the witness. |
| | 12 | BY MS. TOWILL: |
| | 13 | Q  I'm just going to mark it for now because I |
| | 14 | may mark some documents as confidential; so you don't |
| 01:30 | 15 | need to look at it yet.  You can if you'd like. |
| | 16 | A  All right. |
| | 17 | Q  Can you go back to Exhibit 1, which you |
| | 18 | should have before you, which is the order granting |
| | 19 | joint entry of a temporary retraining order. |
| 01:31 | 20 | Do you have that? |
| | 21 | A  Yes. |
| | 22 | Q  And you've seen this before? |
| | 23 | A  I have. |
| | 24 | Q  Since the entry of this order have you |
| 01:31 | 25 | disclosed, shared, transmitted or otherwise |

83

| | | |
|---|---|---|
| | 1 | disseminated any BofI-confidential information? |
| | 2 | A  What's the date on this? |
| | 3 | Q  The date of it is November 2, 2015. |
| | 4 | A  No, I have not. |
| 01:31 | 5 | Q  Since the date of this order have you |
| | 6 | refrained from copying, destroying, deleting or |
| | 7 | altering any confidential information? |
| | 8 | A  I have refrained, yes. |
| | 9 | Q  So you've not deleted or destroyed anything? |
| 01:31 | 10 | A  I have not. |
| | 11 | Q  Have you, since the entry of this order on |
| | 12 | November 2nd, returned all BofI records and |
| | 13 | documents? |
| | 14 | A  Yes. |
| 01:32 | 15 | Q  So you have nothing left -- you have nothing |
| | 16 | left in your possession, custody or control; is that |
| | 17 | correct? |
| | 18 | MS. GILLAM: Well, the -- |
| | 19 | He covered that in his declaration.  I think |
| 01:32 | 20 | he said he has his own performance evaluation. |
| | 21 | THE WITNESS: I have my performance evaluations. |
| | 22 | And I have an E-mail that -- |
| | 23 | The E-mail that I sent to Jon Ball regarding |
| | 24 | Mr. Tolla's comments, I have that. |
| 01:32 | 25 | BY MS. TOWILL: |

84

| | | |
|---|---|---|
| | 1 | Q  Anything else? |
| | 2 | A  No. |
| | 3 | Q  Okay.  Can you take a look at the order? |
| | 4 | A  Uh-huh. |
| 01:32 | 5 | Q  And in the order -- |
| | 6 | And is there anything unclear in the order |
| | 7 | that you don't understand? |
| | 8 | A  Yeah, it's real confusing as to you say -- |
| | 9 | as the order says do not delete anything but you're |
| 01:32 | 10 | not able to have any in your possession; so it's |
| | 11 | very, very confusing on what the order wants. |
| | 12 | Q  Okay.  Have you returned anything -- |
| | 13 | everything? |
| | 14 | A  I have returned everything. |
| 01:33 | 15 | Q  And have you deleted anything? |
| | 16 | A  I have not deleted anything. |
| | 17 | Q  Okay.  So where is it unclear? |
| | 18 | A  It's unclear as -- as the E-mails I sent to |
| | 19 | the OCC, it's unclear as to what to do with those.  I |
| 01:33 | 20 | don't have any documents.  I haven't deleted any |
| | 21 | E-mails. |
| | 22 | Q  Have you turned over a copy of the OCC |
| | 23 | E-mails? |
| | 24 | A  To whom? |
| 01:33 | 25 | Q  To counsel to give to us. |

85

| | | |
|---|---|---|
| | 1 | MS. GILLAM: No. |
| | 2 | THE WITNESS: No. |
| | 3 | MS. GILLAM: You're not getting those. |
| | 4 | BY MS. TOWILL: |
| 01:33 | 5 | Q  So what is unclear in the order? |
| | 6 | A  As to what to do with the E-mails that I |
| | 7 | sent to the OCC under the whistleblower protections. |
| | 8 | Q  Your counsel's position is we don't get |
| | 9 | them; so I guess you hold those. |
| 01:33 | 10 | A  Okay. |
| | 11 | Q  Attached to those E-mails, however, is there |
| | 12 | confidential information? |
| | 13 | A  Of course. |
| | 14 | Q  Okay.  Have you returned the attachments to |
| 01:34 | 15 | OCC E-mails? |
| | 16 | A  I have given BofI's forensic people every |
| | 17 | single last item that I had. |
| | 18 | Q  Including the attachments to the OCC |
| | 19 | E-mails? |
| 01:34 | 20 | A  Exactly, yes. |
| | 21 | Q  Is that right? |
| | 22 | A  I believe so, yes. |
| | 23 | Q  So does that make it pretty clear, then, |
| | 24 | that your counsel has told you not to give us the |
| 01:34 | 25 | actual E-mails to the OCC, but you were giving us |

86

21 (Pages 83 to 86)

www.biehletal.com

Charles Matthew Erhart                                    12/6/2015

**Page 95**

| | |
|---|---|
| 1 | Yeah, absolutely. |
| 2 | Q Did you get the loan amounts from BofI? |
| 3 | A I did, yes. Uh-huh. |
| 4 | Q Did you get the income verification? |
| 5 | A It was in the loan file, I had to go find |
| 6 | it. But yes. |
| 7 | Q So you got it from BofI loan files? |
| 8 | A Yes. |
| 9 | Q Where did you get the addresses of these |
| 10 | persons on the list, these borrowers? |
| 11 | A They were in the Excel spreadsheet that was |
| 12 | provided to me by Derek Walsh. |
| 13 | Q Derek Walsh was an employee of BofI? |
| 14 | A Correct. |
| 15 | Q And who prepared this summary of issues |
| 16 | that's on this chart? |
| 17 | A I did. |
| 18 | Q And what did you base that summary on? |
| 19 | A Review of the loan files, review of public |
| 20 | information. |
| 21 | Q Okay. Based upon the definition of |
| 22 | "confidential information" in the court order, do you |
| 23 | still not believe that this contains confidential -- |
| 24 | Exhibit 6 contains confidential information? |
| 25 | A Well, I do not believe so. I believe that |

**Page 96**

| | |
|---|---|
| 1 | if one wanted to, they could go search public records |
| 2 | for every loan that BofI has ever originated and they |
| 3 | could take the names and they could do Google |
| 4 | searches, what I did on them, and find the same |
| 5 | information. |
| 6 | Q But that's not what you did, correct? You |
| 7 | got this information internally at BofI, correct? |
| 8 | A Correct. |
| 9 | MS. TOWILL: I'm going to ask the court reporter |
| 10 | to mark Exhibit 6 as confidential. |
| 11 | Q It also states in your declaration, which |
| 12 | has been marked as Exhibit -- |
| 13 | THE REPORTER: 5. |
| 14 | BY MS. TOWILL: |
| 15 | Q -- 5, paragraph 9, that you provided |
| 16 | Ms. Gillam with a "copy of notes that you used for |
| 17 | your March 9, 2015 whistleblower conversation with |
| 18 | the OCC"? |
| 19 | A That's correct. |
| 20 | Q Have you provided us a copy of those notes? |
| 21 | A I have not. |
| 22 | Q Do you intend to do that? |
| 23 | A I believe that's up to my counsel. |
| 24 | Q Okay. |
| 25 | A I believe it has attorney/client privileged |

**Page 97**

| | |
|---|---|
| 1 | information. |
| 2 | Q Was your counsel on the call with the OCC? |
| 3 | A No. |
| 4 | Q Was it just you and the OCC? |
| 5 | A Yes. |
| 6 | MS. TOWILL: Can you just put a note in the |
| 7 | deposition that I'm going to request that Mr. Erhart |
| 8 | provide us a copy of those notes? |
| 9 | MS. GILLAM: Okay. We're not agreeing to do it |
| 10 | at this time but you can make your request. |
| 11 | MS. TOWILL: Can we go off the record? |
| 12 | THE VIDEOGRAPHER: The time is 1:45 p.m. We are |
| 13 | off the record. |
| 14 | (Off the record.) |
| 15 | THE VIDEOGRAPHER: The time is 1:50 p.m. We are |
| 16 | on the record. |
| 17 | MS. TOWILL: Okay. Back on the record, which we |
| 18 | already are. |
| 19 | Q Is there any other documents that you gave |
| 20 | to your counsel that you have not returned to us? |
| 21 | A No. |
| 22 | Q When did your mom say she wouldn't delete |
| 23 | any information from her computer that you provided |
| 24 | to her that was BofI information? |
| 25 | A I believe it was the day I provided it. |

**Page 98**

| | |
|---|---|
| 1 | When I BCC-ed her on that E-mail to the OCC |
| 2 | she replied to me and said "Matt, I think this may |
| 3 | contain information that I'm not privileged to." And |
| 4 | I replied to her and I said "Mom, please don't open |
| 5 | this, just keep it. I'm" -- "I'm providing this to |
| 6 | you for" -- "because I'm worried about my own |
| 7 | well-being." |
| 8 | She was -- she was aware at that time of the |
| 9 | comments that Mr. Tolla had made to me. And she |
| 10 | confirmed that she would not touch it, disseminate |
| 11 | it, do anything with it. |
| 12 | Q She said to you "I'm worried that this may |
| 13 | contain information that I'm not privileged to"? |
| 14 | A Uh-huh. |
| 15 | Q Why did she think that if she hadn't opened |
| 16 | it? Did she tell you she looked at it and it looked |
| 17 | like she shouldn't be looking at this? |
| 18 | A I'm -- I don't know why she said that. |
| 19 | After -- |
| 20 | MS. GILLAM: Calls for speculation. |
| 21 | THE WITNESS: After she said that, I took a look |
| 22 | at it again and I did notice that -- I believe it had |
| 23 | some tax ID numbers or something on it. But I |
| 24 | don't -- I don't know whether she opened it or not. |
| 25 | BY MS. TOWILL: |

24 (Pages 95 to 98)

Charles Matthew Erhart                                              12/6/2015

**Page 116**

```
 1   looking at; so it was more of like they were -- they
 2   were worried as to what information I might have
 3   discovered since --
 4   Q  How do you know?  You're talking for someone
 5   else.
 6   A  I've never heard of any instance of them
 7   doing that to someone that was currently employed at
 8   the bank.
 9   Q  Do you see anything wrong with trying to
10   find out if there's a problem?
11   A  When it's --
12      The CEO is supposed to be independent of the
13   audit function, I do see something wrong with that.
14   Q  Okay.  So after you stopped showing up at
15   work but before you returned BofI's property, did you
16   attempt to delete any information off of your laptop,
17   "yes" or "no"?
18   A  I know that nothing can be deleted, I'm well
19   aware of that.  I did trash everything that was on my
20   laptop into the trash folder and included stuff that
21   was not reviewed just to make it more difficult to --
22   for the bank to identify my investigations.  But I
23   know -- I'm well aware that they can find anything
24   that is on that laptop.
25   Q  So you did try to delete things off your
```

**Page 117**

```
 1   work laptop, correct?
 2   A  With no intent of them being actually
 3   deleted, just to make it more difficult to BofI
 4   management to identify my investigations.  Like I
 5   said, the less that they knew about my
 6   investigations, the better, because I was fearful of
 7   my safety.
 8   Q  Did anyone give you permission from BofI to
 9   delete information off their -- off of your work
10   laptop?  Did you have permission to do that?
11   A  Not ex- --
12      No.
13   Q  "No."
14      And was there confidential information that
15   you were deleting?
16   A  I'm sure there may have been.
17   Q  And was there information on there that you
18   are relying upon for your litigation against BofI?
19   A  Yes.
20   Q  And even though you were anticipating suing
21   BofI, you went ahead and tried to delete it?
22      MS. GILLAM:  Hold on, hold on, hold on.  Stop
23   right here for a minute.
24      That goes beyond the scope of this limited
25   deposition.  I'm going to instruct him not to answer.
```

**Page 118**

```
 1   BY MS. TOWILL:
 2   Q  Can I ask you --
 3      Okay.  You returned some information to us,
 4   correct?
 5   A  Say that again.
 6   Q  You returned some information to Stroz
 7   Friedberg, correct?
 8   A  Correct, all information I had.
 9   Q  Okay.  And so that was on November 9th?
10   A  Correct.
11   Q  So explain to me --
12      Can you explain what happened?  Because I
13   did it through your attorney and we made an
14   agreement, I was going to have her give it to you so
15   we could keep the chain of custody, instead we made
16   another agreement that you would give it directly to
17   a third-party consultant which we retained; so I
18   wanted to just sort of walk through the chain of
19   custody.
20      So on November 9th you met some
21   representatives -- representatives from Stroz
22   Friedberg, correct?
23   A  They came to my home.
24   Q  Right.
25      And that was because your address was given
```

**Page 119**

```
 1   to us, correct; we didn't just show up?
 2   A  Correct.
 3   Q  So someone showed up and you walked out and
 4   met two people, correct?
 5   A  Correct.
 6   Q  It was a male and a female?
 7   A  Correct.
 8   Q  Do you happen to know their names?
 9   A  I do not recall.
10   Q  Okay.  And you handed over two things to
11   them, correct?
12   A  I didn't just meet them out there and hand
13   over.  They --
14      I live in a secured building.
15   Q  Okay.
16   A  They came inside, we went to a secured room
17   where there was no one else there --
18   Q  Okay.
19   A  -- that has a key-fob access only.  I gave
20   them a thumb drive with all electronic documents that
21   I had in my possession at the time.  And I gave them
22   all physical copies.
23   Q  Okay.  So I'm going to mark those to make
24   sure we have a record of what you gave.
25      So if you could hand me the paper documents.
```

29 (Pages 116 to 119)

www.biehletal.com

Charles Matthew Erhart     12/6/2015

**Page 144**

```
    1   account information?
    2   A  I reviewed it, I wrote it up in a memo and I
    3   delivered it to my boss Jonathan Ball.
    4   Q  And that's something that you took home,
02:57  5   correct?
    6   A  Yes.
    7   Q  That's in Exhibit 7?
    8   A  Yes.
    9   Q  You also said that you had in Exhibit 7 an
02:58 10   internal audit memo, correct?
   11   A  Yes.
   12   Q  That has to do with a GCC issue?
   13   A  Yes.
   14   Q  And attached to that memo are some documents
02:58 15   as well, correct?
   16   A  Yes.
   17   Q  And is there confidential information in
   18   that attachment?
   19   A  I believe so.
02:58 20   Q  And what is that confidential information?
   21   A  I believe there may be tax identification
   22   numbers.
   23   Q  When you met with the people from Stroz
   24   Friedberg at your house did you also provide them
02:58 25   with a USB drive?
```

**Page 145**

```
    1   A  I did.
    2   Q  Does this look like the USB drive that you
    3   provided?
    4   A  It appears to be.
02:58  5   Q  Okay.  Where did you --
    6       Now, there's information downloaded --
    7   downloaded on this drive, correct?
    8   A  Correct.
    9   Q  What did you download onto this drive?
02:59 10   A  All bank information that I had --
   11   Q  And where did you have it?
   12   A  -- that was in electronic format.
   13   Q  And where did you have it?
   14   A  On my personal computer.
02:59 15   Q  On your personal computer at home?
   16   A  Yes.
   17   Q  Is that information still on your personal
   18   computer?
   19   A  No.
02:59 20   Q  So what did you do with the information on
   21   your personal computer?
   22   A  It's no longer there.
   23   Q  What did you do with it?
   24   A  I removed it as instructed by the order.
02:59 25   Q  So you put it on here.
```

**Page 146**

```
    1   But when you put it on a USB drive doesn't
    2   it still stay on your computer?
    3   A  No.  I deleted everything on my computer
    4   after providing Stroz with that.
02:59  5   Q  So you deleted the original information from
    6   your computer?
    7   A  They're the same -- exact same information.
    8   Q  So subsequent to getting the restraining
    9   order, you've deleted information from your computer?
03:00 10   A  I was told in the order not to possess any
   11   bank information.
   12   Q  But didn't it specifically state that you
   13   were not to delete or destroy --
   14       MS. GILLAM:  You see, this is where we get into
03:00 15   this thing and we're going to get into disclosing
   16   attorney/client communications here.  All right?
   17       So I will represent that I told him to give
   18   it all to you and then delete it, and that's how I
   19   understood the order to read, so he would no longer
03:00 20   retain possession of any of it.
   21       MS. TOWILL:  Okay.  That's not how I read the
   22   order.
   23   Q  I believe the order said you were supposed
   24   to provide us any information and you were
03:00 25   specifically not to delete anything whatsoever unless
```

**Page 147**

```
    1   you had some type of personal compilation of the
    2   information; so how did go about deleting it from
    3   your computer?
    4   A  I deleted it.  I don't --
03:00  5   Q  Did you go file by file?
    6   A  I delete- --
    7       I moved everything to my trash and I deleted
    8   my trash, it's no longer on my computer.
    9   Q  Can I make -- tell you that we ask that you
03:01 10   do not destroy the personal computer because it could
   11   be evidence in this matter.  And as you said, nothing
   12   can be deleted; so we probably will try to want to
   13   recover that information.
   14       How did you go about downloading things onto
03:01 15   your USB drive?
   16   A  From my computer?
   17   Q  Yes.
   18       What steps did you take?
   19   A  I copied the folder and put it in --
03:01 20   Q  Was there one folder on your computer?
   21   A  There was, I believe --
   22       No, there was multiple folders.  But every
   23   bank document resides on the drive.
   24   Q  Well, how many folders were there?
03:01 25   A  I don't know, maybe --
```

36 (Pages 144 to 147)

Charles Matthew Erhart                                    12/6/2015

**Page 160**

```
03:39   1   Q  So if your laptop has --
        2      Did anyone else have access to your laptop
        3   other than you?
        4   A  I do not believe anyone else had the
03:39   5   password to log into my computer other than myself.
        6   Q  Were you working at BofI on November 26,
        7   2013?
        8   A  Yes, I believe so.
        9   Q  Did you attempt on that day to connect a USB
03:39  10   drive to your laptop?
       11      MS. GILLAM:  I'm sorry, the date is in 2013?
       12      MS. TOWILL:  Yes.
       13      MS. GILLAM:  11 what?
       14      MS. TOWILL:  November 26, 2013.
03:39  15      MS. GILLAM:  Thank you.
       16      THE WITNESS:  I do not recall having tried to do
       17   that.
       18      BY MS. TOWILL:
       19   Q  How about on June 5, 2014?
03:39  20   A  I do not recall.
       21   Q  Trying to download information off of your
       22   laptop?
       23   A  No.
       24   Q  How about July 29, 2014?
03:39  25   A  I do not recall having tried to download
```

**Page 161**

```
        1   anything off my laptop.
        2   Q  So if forensic -- computer forensic experts
        3   have looked at your laptop and indicated that on
        4   those dates that someone had put in USB drives into
03:40   5   your laptop to download information, would they be
        6   wrong?
        7   A  They would be wrong.
        8   Q  They would be wrong?
        9   A  Yes.
03:40  10   Q  Your last day in the office, I think you
       11   said, was March 5th, correct?
       12   A  Correct.
       13   Q  Did you ever download or copy any BofI files
       14   to a USB device while you were on medical leave off
03:40  15   of your laptop?
       16   A  Can you restate that?
       17   Q  Sure.
       18      Once you went on medical leave, did you
       19   attempt to download any information off of your
03:40  20   laptop?
       21   A  No.  I --
       22      The last time -- the only time I ever tried
       23   to download anything off of my laptop, ever, was when
       24   I was with the OCC and they tried to -- tried to
03:40  25   get --
```

**Page 162**

```
        1      MS. GILLAM:  Okay.  Don't disclose what happened
        2   there.
        3      THE WITNESS:  Yeah.
        4      BY MS. TOWILL:
03:41   5   Q  Do you know the date?
        6   A  It was in March 2015.
        7   Q  Excuse me?
        8   A  It was in March 2015.
        9   Q  Do you know --
03:41  10      Okay, your last day in the office was
       11   March 5th.  Do you know if it was before or after
       12   that?
       13   A  It was after that.
       14   Q  So after you went on leave the OCC tried to
03:41  15   download files with you?
       16   A  Yes.
       17   Q  And do you know how many files they
       18   attempted to copy?
       19      MS. GILLAM:  You know, I don't -- I think that
03:41  20   that's an improper area of inquiry; so I'm going to
       21   instruct him not answer that.
       22      MS. TOWILL:  Sure.
       23   Q  Did you -- did you personally try, you
       24   personally, attempt to copy files off your laptop on
03:41  25   March 6, 2015?
```

**Page 163**

```
        1   A  I'm not sure if it was myself who pressed
        2   the button or it was a regulator.  I cannot recall.
        3   Q  Do you know if it was on March 6th --
        4      March 6th, do you know if that's the right
03:42   5   date?
        6   A  I'm not completely sure.
        7   Q  Do you know if it was done with a USB drive?
        8   A  I'm not sure.  It was either done with a USB
        9   drive or -- or a disk, I'm not sure.
03:42  10   Q  I was just going to ask you, did you ever
       11   try to copy anything with a disk?
       12   A  Other than --
       13   Q  After you -- after March 5, 2015.
       14   A  The only time that ever occurred was when I
03:42  15   was at the OCC's office.
       16   Q  Was --
       17      Were you or the OCC successful in
       18   downloading anything off of your laptop after
       19   March 5, 2015?
03:42  20   A  I do not believe so.
       21   Q  Do you have the USB drive that was used to
       22   attempt to download off of your laptop?
       23   A  That was not my USB drive.  If there was a
       24   USB drive that was used, I don't recall whether it
03:42  25   was a USB drive or a disk or both, those were not my
```

40 (Pages 160 to 163)

www.biehletal.com

Charles Matthew Erhart     12/6/2015

**Page 164**

```
 1   items, those were items of the regulators.
 2      Q  And why do you believe nothing else --
 3   nothing was downloaded on that date?
 4      A  Can you restate that?
 5      Q  I believe you stated that the OCC and you
 6   were unsuccessful in downloading anything onto either
 7   a USB drive or a disk; is that correct?
 8      A  Yes.
 9      Q  Why do you believe it was unsuccessful?
10      MS. GILLAM:  You mean why was it unsuccessful?
11   BY MS. TOWILL:
12      Q  Why do you believe it was unsuccessful?
13      A  I'm not a technology expert, I do not know
14   other than I would -- I could guess that my acc- --
15   my computer did not have access to do that.
16      Q  So where were you trying to download from?
17   Just from your laptop?
18      A  From my BofI-issued laptop to a different --
19   a USB or CD supplied by the OCC.
20      Q  And was it unsuccessful?
21      A  They told me it was unsuccessful.
22      Q  The morning before you returned your laptop,
23   I believe you already testified you tried to delete
24   information from the laptop, correct?
25      A  I moved stuff to the trash, yes.
```

**Page 165**

```
 1      Q  Okay.  Do you recall what stuff you tried to
 2   move to the trash?
 3      A  I know I moved everything that I reported
 4   to -- to the regulators under the whistleblower
 5   statute.
 6      Q  Anything else?
 7      A  Various -- various random E-mails.
 8      Q  E-mails to and from who?
 9      A  My Outlook account, just random ones.  I
10   just copied them by the hundreds and just put them in
11   trash.
12      Q  Did you send BofI-confidential information
13   from your BofI account -- E-mail account to your
14   personal Gmail account?
15      A  I do not believe so.
16      Q  Can you tell me what your E-mail work
17   accounts were when you were at BofI?
18      A  I had one work account at BofI.  You want
19   the address?
20      Q  Yes, please.
21      A  I believe it was
22   cerhart@bofifederalbank.com.
23      Q  Did you also have another one called
24   charleserhartofe@firstorganization.com?
25      A  I do not believe so, no.
```

**Page 166**

```
 1      Q  Okay.  Can you tell me or identify for me
 2   all of your personal E-mail accounts?
 3      A  Yes.  I have one E-mail account, it's
 4   erhart.matt@gmail.com.
 5      Q  Could you access BofI work E-mail on your
 6   phone?
 7      A  On my phone I didn't --
 8      No, absolutely not.
 9      Q  I believe you just testified that you did
10   not send BofI information from your work E-mail to
11   your personal E-mail account?
12      A  My work E-mail to my personal, confidential
13   information?
14      That is correct.
15      Q  Okay.  Can I have you take a look at your
16   declaration --
17      A  Uh-huh.
18      Q  -- in paragraph 18.  If you could look at
19   paragraph 18 that would be great.
20      In paragraph 18 you are discussing three
21   E-mails in January 2015 that you sent from your -- I
22   believe it's from your BofI E-mail account to your
23   personal E-mail, correct, account; is that correct?
24      A  That is not correct.
25      MS. GILLAM:  No.  You're misstating what it says
```

**Page 167**

```
 1   there.
 2   BY MS. TOWILL:
 3      Q  Can you explain to me what you did?
 4      A  So I have an iPhone.
 5      Q  Sure.
 6      A  So I can take a photo on my iPhone and send
 7   it to an E-mail as an E-mail.  I did not send that
 8   photo from my BofI work account to my personal
 9   account, I sent it directly as a photo to my Gmail
10   account.
11      Q  So --
12      But you had it sent as a photo; so you had
13   to send it from your telephone number to your Gmail?
14      A  I don't know how it works, it doesn't show
15   up in the sent box.  All it shows up is on the in-box
16   in my Gmail.
17      Q  Can you tell me what the E-mails were that
18   you are referring to in paragraph 18 of your
19   declaration, which is Exhibit 5?
20      A  Yes.  Those were screenshots of the copier
21   key pad where it shows the -- the name of the
22   document printed and the time that it was printed.  I
23   took those screenshots after trying to access the
24   Waterfield subpoena and then getting dialogue boxes
25   that showed access was denied when, the prior day, I
```

Charles Matthew Erhart12/6/2015

**Page 184**

```
04:30  1   we are going to have attorneys only review that.
       2       We'll have attorneys' eyes only to review
       3   that, so we can remove any of the confidential
       4   information, and maybe even discuss search terms with
04:30  5   your lawyer so we're not looking at your personal
       6   stuff. We'll do that immediately so we can get the
       7   computer returned to you.
       8       MS. GILLAM: And "attorneys eyes only" we
       9   meant -- we said -- designated that would be outside
04:30 10   counsel only and not in-house counsel.
      11       MS. TOWILL: Correct.
      12       And that's only regarding his personal
      13   information, correct?
      14       MS. GILLAM: Right.
04:30 15   BY MS. TOWILL:
      16   Q   What I want to check with you, is there any
      17   other computer that -- or just one computer that
      18   you've been using?
      19   A   I did access my Gmail account from my
04:30 20   girlfriend's laptop.
      21   Q   So is it possible that the information is on
      22   there as well?
      23   A   There's no information on that laptop, no.
      24   Q   Will we be able to get onto your Gmail
04:30 25   account to look for the BofI attachments?
```

**Page 185**

```
       1   A   Yes, of course.
       2   Q   Okay. So do we need a pass code to do that?
       3   A   To log into my Gmail to do that.
       4   Q   Okay. So can you provide that to your
04:31  5   counsel?
       6   A   I can, yes.
       7   Q   Again, I'm not interested in your personal
       8   business, we are focusing on getting BofI
       9   information.
04:31 10       Is that acceptable?
      11   A   That's acceptable.
      12   Q   Did you access it on any like iPads or
      13   anything?
      14   A   I accessed my Gmail account from the public
04:31 15   library computer. I never saved anything to a
      16   computer. I just logged in.
      17   Q   Okay. Do you have a Dropbox where you put
      18   any information?
      19   A   No.
04:31 20   Q   And you already confirmed for me, I believe,
      21   that you do not have I-cloud; is that correct?
      22   A   I do not have I-cloud.
      23   Q   And how about anything stored on your cell
      24   phone?
04:31 25   A   Other than those photos of the copier
```

**Page 186**

```
       1   screenshots where I took, a -- the date that it was
       2   printed and the name of the document. And I also
       3   have text messages from the individual who was trying
       4   to pick up my -- my laptop from me and deliver an
04:32  5   envelope.
       6       MS. TOWILL: I think this would be the most easy
       7   thing to do, Ms. Gillam, is he can just forward those
       8   to you so we don't interfere with his use of his
       9   telephone.
04:32 10       Is that okay?
      11       MS. GILLAM: That's fine.
      12       MS. TOWILL: So if there's any text messages
      13   that are relevant to the litigation, for example,
      14   from employees at BofI, please don't delete them and
04:32 15   provide copies of them to Ms. Gillam.
      16   Q   Is that acceptable?
      17   A   Yes.
      18   Q   Because I believe you said that some people
      19   texted you?
04:32 20   A   Yes.
      21   Q   Okay. So don't delete those, provide them
      22   to Ms. Gillam because, in case you lose your phone,
      23   they would be lost.
      24       Does that make sense?
04:32 25   A   Yes.
```

**Page 187**

```
       1   Q   Okay. And I'll arrange that with Carol --
       2   Ms. Gillam, sorry, either today or tomorrow, we can
       3   use that Stroz Friedberg, or there's another
       4   committee called CTech --
04:32  5       Who would you like to use Carol? Just so we
       6   don't have to argue over it tomorrow, so we don't
       7   waste time, I want to make this as quick as possible.
       8       MS. GILLAM: I assume we'll go ahead with Stroz
       9   Friedberg. But I'll let you know by early tomorrow
04:33 10   if for some reason we learn of some objection to
      11   using them.
      12       MS. TOWILL: Okay. That's fine.
      13       And they will take it -- the order will be
      14   they have to do it as quickly as possible.
04:33 15       And then after that's done, we will have to
      16   discuss deleting it off your computer.
      17   Q   Does that make sense?
      18   A   Yes.
      19   Q   All right. And the copy --
04:33 20       Obviously, Ms. Gillam will have access to
      21   the copy as well.
      22       I would like to mark as Exhibit 12 a second
      23   letter from the Office of the Controller of Currency
      24   dated January 15, 2015 to Mr. Garrabrants.
04:33 25       Can you hand that to the witness and mark
```

46 (Pages 184 to 187)

www.biehletal.com

Charles Matthew Erhart      12/6/2015

```
        1   original.
        2        Is that agreeable, Ms. Gillam?
        3        MS. GILLAM: Yes, and what --
        4        You'll maintain the signed original and make
05:24   5   it reasonably available at the time of any hearing or
        6   trial in this matter?
        7        MS. TOWILL: Yes, I will.
        8        So stipulated?
        9        MS. GILLAM: So stipulated.
05:25  10        THE VIDEOGRAPHER: This concludes the videotaped
       11   deposition of Charles Erhart. The time is 5:25 p.m.
       12   We are off the record.
       13   /
       14   /
       15
       ...
       25
                                                            228
```

```
        1   REPORTER'S DEPOSITION TIME LOG:
        2
        3   REPORTER - LAURIE HELD-BIEHL
        4   DATE - Sunday, December 6, 2015
        5
        6   WITNESS - CHARLES MATTHEW ERHART
        7
        8   ATTORNEY    ON RECORD    OFF RECORD    TOTAL
        9   TOWILL      11:36 A.M.   12:40 P.M.    1:10
       10               1:17 P.M.    1:45 P.M.     0:28
       11               1:50 P.M.    2:16 P.M.     0:26
       12               2:32 P.M.    2:48 P.M.     0:16
       13               2:51 P.M.    3:09 P.M.     0:18
       14               3:10 P.M.    3:12 P.M.     0:02
       15               3:36 P.M.    4:04 P.M.     0:28
       16               4:29 P.M.    5:19 P.M.     0:50
       17                    TOTAL USED:   3:58
       ...
       25
                                                            229
```

```
        1   STATE OF _____)
        2                          ) ss.
        3   COUNTY OF _____)
        4
        ...
        9
       10        I, the undersigned, say that I have read the
       11   foregoing deposition, and I declare, under penalty of
       12   perjury under the laws of the State of California,
       13   that the foregoing is a true and correct transcript
       14   of my testimony contained therein, incorporating any
       15   and all changes and/or corrections as noted by me.
       16        EXECUTED this _____ day of _____,
       17   2015, at _____.
       18
       19
       20        _____
       21             CHARLES MATTHEW ERHART
       ...
       25
                                                            230
```

```
        1
        2
        3        I, the undersigned, a Certified Shorthand
        4   Reporter of the State of California and the State of
        5   Texas, and Registered Professional Reporter,
        6   Certified Realtime Reporter, do hereby certify:
        7        That the foregoing proceedings were taken
        8   before me at the time and place herein set forth;
        9   that any witnesses in the foregoing proceedings,
       10   prior to testifying, were placed under oath; that a
       11   verbatim record of the proceedings was made by me
       12   using machine shorthand which was thereafter
       13   transcribed under my direction; further, that the
       14   foregoing is an accurate transcription thereof.
       15        I further certify that I am neither
       16   financially interested in the action nor a relative
       17   or employee of any attorney of any of the parties.
       18        IN WITNESS WHEREOF, I have this date
       19   subscribed my name.
       20
       21   Dated: _____
       22
       23
       24        LAURIE HELD-BIEHL, CSR, RPR, CRR, CLR
                 CA CSR No. 6781, TX CSR No. 8555
       25        RPR/CRR No. 32836
                                                            231
```

57 (Pages 228 to 231)

www.biehletal.com