# EXHIBIT I
# to Request for Judicial Notice

1

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations

2

POLLY TOWILL, Cal. Bar No. 120420

3

ptowill@sheppardmullin.com
ANDRE CRONTHALL, Cal. Bar No. 117088

4

acronthall@sheppardmullin.com
333 South Hope Street, 43rd Floor

5

Los Angeles, California 90071-1422
Telephone:  213.620.1780

6

Facsimile:   213.620.1398

7

8

Attorneys for Plaintiff BofI FEDERAL BANK

9

UNITED STATES DISTRICT COURT

10

SOUTHERN DISTRICT OF CALIFORNIA

11

12

| BofI FEDERAL BANK, a federal savings bank, | Case No. 3:15-cv-2353-BAS-NLS |
|---|---|

13

| Plaintiff, | The Hon. Cynthia Bashant Courtroom 4B (Schwartz Courthouse) |
|---|---|

14

v.

15

CHARLES MATTHEW ERHART, an individual; and DOES 1-25, inclusive,

16

**BofI FEDERAL BANK'S FIRST AMENDED COMPLAINT AGAINST CHARLES MATTHEW ERHART FOR:**

Defendants.

17

**1. BREACH OF CONTRACT;**

18

**2. CONVERSION;**

19

**3. BREACH OF THE DUTY OF LOYALTY;**

20

**4. NEGLIGENCE;**

21

**5. FRAUD;**

22

**6. VIOLATION OF CALIFORNIA PENAL CODE SECTION 502;**

23

**7. VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT [18 U.S.C. § 1030(a)(5)]; and**

24

25

**8. UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17220, ET SEQ**

26

27

**DEMAND FOR JURY TRIAL**

28

SMRH:473680283.1

1   Plaintiff BofI Federal Bank ("BofI") brings this action against
2   defendant Charles Matthew Erhart ("Erhart") and Does 1-25 inclusive, and alleges
3   as follows:

4

5   **<u>JURISDICTION AND VENUE</u>**

6

7   1.   The Seventh Claim for Relief arises under the Computer Fraud
8   and Abuse Act, 18 U.S.C. Section 1030.  This Court has original subject matter
9   jurisdiction over this claim pursuant to 28 U.S.C. Section 1331 et seq.

10

11   2.   The First, Second, Third, Fourth, Fifth, Sixth, and Eighth Claims
12   for Relief arise under California statutory and common law.  This Court has
13   concurrent subject matter jurisdiction over these Claims for Relief on the basis of
14   supplemental jurisdiction under 28 U.S.C. Section 1367(a), because:  (a) the federal
15   and state law claims asserted herein are based, in part, upon the same operative
16   facts; (b) the Court's exercise of jurisdiction over the pendent state law claims will
17   promote judicial economy, convenience, and fairness to the parties; and (c) such
18   claims are so related to the Seventh Claim for Relief that they form part of the same
19   case or controversy under Article III of the United States Constitution.

20

21   3.   Venue is proper in the Southern District of California pursuant to
22   28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving
23   rise to the claims asserted herein occurred or had effects in this District.

24

25   **<u>PARTIES</u>**

26

27   4.   At all times mentioned herein, plaintiff BofI was, and is, a
28   federal savings bank.

-2-   Case No. 3:15-cv-2353-BAS-NLS
SMRH:473680283.1   BofI FEDERAL BANK'S COMPLAINT

5.     BofI is informed and believes, and on that basis alleges, that at all times mentioned herein, defendant Erhart was, and is, an individual residing in San Diego County, California.

6.     Defendants sued herein as Does 1 through 25, inclusive, are sued in their fictitious names and capacities as their identities have not yet been determined.  BofI is informed and believes, and on that basis alleges, that each of such Defendants is responsible in some way for the acts alleged herein.  BofI will seek leave to amend its Complaint to allege such Defendants' true names and capacities when they have been ascertained.

## GENERAL ALLEGATIONS

7.     Erhart commenced his employment as a Staff Internal Auditor reporting to BofI's Vice President-Internal Audits on September 23, 2013 at BofI's corporate headquarters in San Diego, California.  Erhart's position was "entry level." BofI's Audit Department consists of approximately 6 staff auditors, in addition to supervisors and support staff.  Audits are a necessary function for any financial institution to ensure that operations are conducted in accordance with the institution's procedures and applicable laws and regulations.

8.     Erhart graduated from college with a Bachelor of Science degree in Finance and Minors in Entrepreneurship and Psychology in May 2009.  At the time of his hire, Erhart was 27 years old and had no prior experience or certifications concerning internal auditing.  Given his academic background BofI believed that with appropriate diligence on his part he could be trained to be an effective internal auditor over time.

9.      Prior to joining BofI's staff, Erhart never worked at a commercial bank, savings bank, credit union, or similar financial institution. Although Erhart appeared qualified to assume the entry level position he occupied between September 2013 and March 2015, he was not qualified to determine audit priorities for the Bank and work independently on audit tasks without the supervision and guidance of his supervisors and the Audit Committee.

## ERHART'S ACCESS TO CONFIDENTIAL INFORMATION

10.     As a Staff Internal Auditor, Erhart's primary job duty was to prepare audits of various aspects of BofI's operations as specifically assigned to him by, and under the supervision of, the Vice President-Internal Audits, within the parameters of the Internal Audit Plan approved by the independent Audit Committee of the Board of Directors of BofI Holding, Inc., BofI's publicly traded parent company.

11.     In the course and scope of his duties as an Internal Auditor, Erhart was provided with, and had access to, (i) information containing BofI's intellectual property, including, without limitation, that which it licenses from third parties; (ii) confidential and proprietary information belonging to BofI, its employees, its business counterparties, and/or its clients; and (iii) information containing the non-public personal information of BofI employees, business counterparties, and clients (collectively, with all other confidential information belonging or held by BofI, "Confidential Information").

12.     All employees of BofI, including Erhart, are required to undergo training (the "Bank Employee Training") upon commencement of employment by BofI and annually thereafter. Among other subjects, the Bank Employee Training

emphasizes the confidential and sensitive nature of the Confidential Information, the requirements of applicable law, and BofI's confidentiality and data security policies and procedures.  Erhart also was informed and advised that Confidential Information was the property of BofI and/or third parties by whom it was provided, and that he was not to use, hold or disclose the Confidential Information except as expressly authorized by BofI and/or such other third parties.

13.     Even with respect to the Confidential Information made available to Erhart for performance of his duties, Erhart never requested, and BofI never gave Erhart, any consent, permission, approval or authorization, to retain or use such Confidential Information for any purpose other than the limited purpose for which it was made available to him.

14.     BofI policy, as set forth in the BofI Employee Handbook and repeatedly emphasized to Erhart during the Bank Employee Training, prohibited him from taking and obtaining personal possession of any Confidential Information outside BofI's physical locations, except on BofI issued and owned computer devices, systems, servers, or networks, and then only in accordance with his specific job requirements.  Erhart neither requested nor received any waiver of or exceptions to this policy.

## ERHART'S LEGAL OBLIGATION TO SAFEGUARD CONFIDENTIAL INFORMATION

15.     The banking and financial services industry is a highly regulated industry that, in addition to a multitude of other statutes, regulations, guidances and orders, is subject, without limitation, to the provisions of Title V, Subtitle A of the Gramm-Leach-Bliley Act ("GLBA"), which govern the treatment of nonpublic

personal information by financial institutions. GLBA authorized the federal financial institution regulatory agencies to adopt regulations to implement those provisions and the pre-existing provisions of the Fair Credit Reporting Act. Under GLBA, a financial institution is prohibited from disclosing nonpublic personal information to nonaffiliated third parties, unless the institution satisfies various notice and opt-out requirements.

## ERHART'S CONTRACTUAL CONFIDENTIALITY OBLIGATIONS

16.     In light of the confidential and valuable nature of the information BofI would be entrusting to Erhart, Erhart was required, as a condition of his employment with BofI, to comply with BofI's Code of Conduct for Directors, Officers and Employees ("Code of Conduct").  On September 23, 2013, Erhart signed an Employee Acknowledgment of Receipt of Code of Conduct, in which he agreed to comply with the Code of Conduct.  The Code of Conduct provides, in pertinent part, that:

A. Customer Information.  Safeguarding the confidential financial information concerning [BofI's] customers is essential in maintaining the public trust.  It is the policy of [BofI] that such confidential information acquired by an employee through his or her employment must be held in the strictest confidence.  Such information is to be held for [BofI] purposes and not as a basis for personal gain by any employee.  Aside from routine credit inquiries, information regarding a customer may generally only be released to private persons, organizations or governmental bodies that request it with the consent of the customer involved or upon receipt of legal process, such as a subpoena or court order. . . .

B. Information Regarding [BofI].  Financial or other information regarding [BofI] is not to be released to any outside person or organization unless it has been published in reports to shareholders, or otherwise made available to the public through authorized news releases. . . . [BofI] expects every employee to treat information concerning [BofI] and its personnel with the same confidentiality as information concerning customers of [BofI] and to observe, with respect to [BofI], the same guidelines set forth in Paragraph A above.

17.    In addition to the Code of Conduct, Erhart was required, as a condition of his employment with BofI, to execute a GLBA Confidentiality Attestation, which he executed on September 24, 2013.  The GLBA Confidentiality Attestation states, in pertinent part:

> The purpose of this agreement is to ensure that all Banking employees . . . understand, acknowledge and affirm their responsibility to protect and secure [BofI] information.
>
> Consumer data is generally classified as protected information. Banking employees are provided access to [BofI] information only as necessary to perform their assigned duties.  [BofI] employees must not discuss consumer account information with any other person unless such person has a business need to know, and only if such person is also obligated to keep [BofI] data confidential. . . .
>
> Only [BofI] authorized users or devices are allowed to access [BofI] protected data.

18.    Erhart received, and acknowledged receiving, GLBA security training.

19.    As a condition of employment with BofI, Erhart was also required to sign several acknowledgments and attestations confirming that he would abide by BofI's policies, including but not limited to an acknowledgment of receipt of BofI's IT Security Employee Acceptable Use Policy, which bars employees from "[p]roviding information about, or lists of, [BofI] employees or customers to parties outside [BofI] without management approval."  It also requires information to be encrypted in compliance with BofI's GLBA policy.

20.    As a condition of employment with BofI, Erhart was also required to sign an Employee Confidentiality, Non-Disclosure, and Non-

SMRH:473680283.1

Recruitment Agreement (hereinafter referred to as the "Confidentiality Agreement"), which he executed on September 23, 2013.

21.     The Confidentiality Agreement prohibits the unauthorized disclosure and use of BofI's proprietary information.  The Confidentiality Agreement requires that Erhart not use, publish, or disclose any Confidential Information during or after termination of his employment except as required in the conduct of BofI's business or as authorized in writing by BofI.  After termination of employment, the Confidentiality Agreement requires Erhart to inform BofI, and to deliver to BofI, all Confidential Information which he prepared, used, or came in contact with while employed at BofI.

## STEPS TAKEN BY BofI TO ENSURE THAT EMPLOYEES SAFEGUARD CONFIDENTIAL INFORMATION

22.     BofI has implemented numerous safeguards to cause its employees to preserve and maintain the confidentiality and privacy of Confidential Information, including proprietary information of BofI and confidential information of BofI employees, business counterparties and clients, and to ensure that these records and information are not disclosed outside of BofI.  These Safeguards include, among others:

(a)     training employees with respect to BofI's need to keep this information secret and the importance thereof;

(b)     notifying employees through the Employee Handbook, the Code of Conduct and by other means that, as an express condition of their employment,

1   they are not to use or disclose this information, except as authorized by BofI and

2   required in the performance of their duties for BofI;

3

4          (c)     requiring employees to enter into Confidentiality Agreements,

5   which instruct BofI employees not to disclose, reproduce or use this information

6   without BofI's consent;

7

8          (d)     requiring employees to execute GLBA Confidentiality

9   Attestations which instruct BofI employees to protect the confidentiality of

10  nonpublic personal information of BofI's clients;

11

12         (e)     limiting access and/or by restricting access to this information by

13  employees on a need-to-know basis;

14

15         (f)     requiring coded passwords to access client account information

16  on BofI's computer systems; and

17

18         (g)     implementing a number of physical and electronic security

19  measures, including restricting access to databases and network space, utilizing,

20  where appropriate, secure web-based portals to transfer externally to third parties

21  files containing Confidential Information rather than emailing or receiving such files

22  as attachments to emails, assigning passwords and user-level permissions to access

23  information on BofI's computer system, servers, and networks, and requiring that

24  personal information of BofI clients be kept in secure locations when not in use.

25

26

27

28

SMRH:473680283.1                                    BofI FEDERAL BANK'S COMPLAINT

## ERHART EXCEEDED HIS AUTHORITY BY CONDUCTING ROGUE INVESTIGATIONS

23.     During his employment, Erhart was tasked with completing assigned audit functions within the parameters of the 2014 and 2015 Internal Audit Plans.  These plans defined the scope of the internal audits to be completed by the Internal Audit Department during 2014 and 2015.  The 2014 and 2015 Internal Audit Plans were not expanded or revised.  No proposal for expanding the scope of the 2014 or 2015 Audit Plans was ever presented to the Audit Committee by Erhart or any other member of the Internal Audit department.

24.     Erhart abused his power as an entry level Staff Internal Auditor by not completing his assigned audits, and instead initiating and conducting his own unplanned and unapproved investigations into matters that were outside the scope of the 2014 and 2015 Internal Audit Plans.

25.     Erhart had no right or authority to use his position as Internal Auditor to define his own audit or investigation assignments without the knowledge or approval of the Audit Committee, or to unilaterally expand the scope of the internal audits and investigate matters that BofI's Audit Committee had not had an opportunity to consider.  Had Erhart followed standard audit protocols the Audit Committee would have had an opportunity to consider expanding the scope of Audit Plan or otherwise determine an appropriate course of action to ensure that any legitimate concerns were addressed.  Instead, the Audit Committee learned about Erhart's "audits" after he ceased his employment at BofI.

26.     Erhart misrepresented to other BofI employees that he was conducting authorized investigations as part of his job as Staff Internal Auditor.

BofI employees had no reason to question whether Erhart was authorized to conduct these investigations because Erhart used his position and level of access to obtain this information.  BofI policy requires employees to fully cooperate with internal auditors and provide all requested information.

27.     Erhart disregarded his job function, which was to perform assigned audit tasks assigned to him by his supervisors and the Audit Committee pursuant to the Audit Plan.  His pursuit of his own rogue investigations resulted in a failure to complete the authorized audit tasks to which he was assigned and generally wasted time and resources.  His unauthorized investigations included, but are not limited to, the following:

(a)     **Unapproved Payroll Investigation**: In December 2014, Erhart initiated a payroll audit to investigate why contributions to his own 401K account were delayed by two weeks in May 2014.  Erhart had been apprised of the approved scope of the 2014 Audit Plan, and was well aware that the timing of 401K contribution deposits was not part of the 2014 Audit Plan.  Erhart did not follow professional standards or BofI protocol, as he did not raise the timing of 401(k) account contributions to the Audit Committee and he did not request an expansion of the scope of the 2014 Internal Audit Plan.  Erhart's payroll audit violated BofI policy, and ethical standards for internal auditing that prohibit internal auditors from investigating matters that may affect their own personal finances.  An internal investigation conducted at the behest of the Audit Committee later reviewed Erhart's work and concluded his suspicions were unfounded or immaterial.

(b)     **Unapproved Investigation of Employee Restricted Stock Grants**: In December 2014, Erhart initiated an investigation into employee restricted stock grants.  Erhart had been apprised of the approved scope of the 2014

1   Audit Plan, and was well aware that this was outside the scope of that plan.  Again,

2   contrary to BofI's policies and internal audit practices, Erhart did not obtain or

3   request approval from the Audit Committee for this audit.  Erhart obtained sensitive

4   personally identifying information of BofI employees, which BofI considers strictly

5   confidential and is to be shared only with individuals who have a legitimate business

6   reason to access the information.  There was no legitimate reason for Erhart to

7   obtain this information.  Erhart violated his ethical obligations by requesting and

8   obtaining confidential personnel information, and he did so for his own personal

9   gain.  BofI is informed and believes, and on that basis alleges, that Erhart

10  specifically referenced this information to request a raise.  Erhart then shared this

11  information with two other staff auditors who also did not have a legitimate reason

12  to possess or view this information.  An internal investigation conducted at the

13  behest of the Audit Committee later reviewed Erhart's work and concluded his

14  suspicions were unfounded or immaterial.

15

16          (c)     **<u>Unapproved Investigation of Suspicious Activity Reports</u>**:

17  Erhart obtained highly confidential meeting minutes of BofI's Compliance

18  Committee containing details of Suspicious Activity Reports ("SARs") filed by

19  BofI.  Under the Bank Secrecy Act, even the fact that a bank filed a SAR is strictly

20  confidential and is not disseminated to bank employees who have no legitimate

21  reason to view the information.  Erhart had no legitimate business reason to view

22  this information.  He was not tasked by the Audit Committee or his supervisor with

23  auditing any meeting minutes or to reviewing the filing of any SAR.  An internal

24  investigation conducted at the behest of the Audit Committee later reviewed

25  Erhart's work and concluded his suspicions were unfounded or immaterial.

26

27

28

SMRH:473680283.1

28.     BofI's executive management did not begin to learn about Erhart's abuse of power and unapproved "rogue" investigations until on or about March 5, 2015.  BofI is still discovering the full extent of Erhart's unauthorized acts.

## ERHART FAILED TO PERFORM HIS REQUIRED AUDITS

29.     On or about March 5, 2015, BofI management learned that Erhart failed to complete at least nine internal audits assigned to him that were to be delivered for an on-site examination by the Office of the Comptroller of the Currency ("OCC") that commenced on February 17, 2015.

## ERHART'S TAKING, DISCLOSURE, AND DISTRIBUTION OF CONFIDENTIAL INFORMATION

30.     Erhart took Confidential Information, including account information of BofI's employees, business counterparties, and/or customers, and disclosed and distributed to unauthorized recipients outside the physical walls and electronic firewalls of BofI.

31.     Erhart emailed Confidential Information to his personal non-encrypted web-based email account, his mother's similarly non-secure personal web-based email account, and to other third parties who are not authorized to receive or possess the Confidential Information, on numerous occasions, including, but not limited to, the following:

(a)     January 13, 2015:  Erhart sent an email from his BofI email account to his personal email account, attaching a file named "Copier screenshot"

1  that BofI is informed and believes, and on that basis alleges, contains Confidential
2  Information of BofI, BofI's business counterparties and/or BofI's clients.

3

4          (b)    January 13, 2015:  Erhart sent an email from his BofI email
5  account to his personal email account, attaching a file named "Copier screenshot 2"
6  that BofI is informed and believes, and on that basis alleges, contains Confidential
7  Information of BofI, BofI's business counterparties and/or BofI's clients.

8

9          (c)    January 13, 2015:  Erhart sent an email from his BofI email
10 account to his personal email account, attaching a file named "Copier screenshot 3"
11 that BofI is informed and believes, and on that basis alleges, contains Confidential
12 Information of BofI, BofI's business counterparties and/or BofI's clients.

13

14         (d)    March 6, 2015:  Erhart sent an email from his BofI email account
15 to an email account that belongs to Erhart's mother, Pamela Erhart, attaching a file
16 named "SFalcon15030510111.pdf."  This file contains Confidential Information of
17 BofI, BofI's business counterparties and/or BofI's clients.

18

19         (e)    March 11, 2015:  Erhart sent an email from his BofI email
20 account to his personal email account, attaching a file named "CErhart Impact
21 Statement-Process Maps.pdf" that BofI is informed and believes, and on that basis
22 alleges, contains Confidential Information of BofI, BofI's business counterparties
23 and/or BofI's clients.

24

25         (f)    March 11, 2015:  Erhart sent an email from his BofI email
26 account to Erhart's personal email account, with a subject line of "Incoming phone
27 calls email 2" and attaching a file that BofI is informed and believes, and on that

28

1   basis alleges, contains Confidential Information of BofI, BofI's business

2   counterparties and/or BofI's clients.

3

4         (g)   <u>March 11, 2015</u>:  Erhart sent an email from his BofI email

5   account to Erhart's personal email account, with a subject line of "Outgoing Phone

6   calls email 2" and attaching a file that BofI is informed and believes, and on that

7   basis alleges, contains Confidential Information of BofI, BofI's business

8   counterparties and/or BofI's clients.

9

10        (h)   BofI is informed and believes, and on that basis alleges, that

11   Erhart disseminated the Confidential Information to additional outside sources,

12   including to contributors to a website that allows comments on the stocks of

13   publicly traded companies.

14

15        32.   BofI is informed and believes, and on that basis alleges, that on

16   March 10, 2015, Erhart inserted a disc into his laptop that was named "Bank of

17   Internet."  Erhart has not returned this disc to BofI.

18

19        33.   BofI is informed and believes, and on that basis alleges, that on

20   March 6, 2015, Erhart copied or attempted to copy 1200 files from his BofI issued

21   laptop to a USB device titled CBM USB 2.0 USB Device," serial number F9B55937

22   and other removable storage devices. Much of the Confidential Information he

23   sought to copy was not only beyond the scope of any authorized audits that Erhart

24   was conducting, but also beyond the scope of the unauthorized investigations Erhart

25   undertook, as described above.   Given the breadth of the Confidential Information

26   he sought to copy on that date, it appears that Erhart was wantonly converting BofI

27   property for his own illegitimate purposes.  It is not yet clear which files Erhart

28   successfully copied.  Erhart has not returned this USB device to BofI.

34.     By taking personal possession of Confidential Information, Erhart violated BofI's policies, his contractual obligations, and his duty of loyalty to BofI and BofI's business counterparties and clients, and applicable state and federal laws.

35.     Erhart had no authority to misappropriate and wrongfully distribute BofI's Confidential Information to any unauthorized recipients and/or to remove such Confidential Information through unsecured methods.

36.     Erhart had no legitimate business purpose to obtain personal possession of BofI's Confidential Information or to send BofI's Confidential Information outside BofI's secure network to any third party.

37.     Upon learning of Erhart's conduct alleged above, BofI promptly demanded that Erhart immediately return any and all Confidential Information in his possession, custody or control.  BofI again demanded that Erhart return any and all BofI property, and cease and desist disseminating all Confidential Information, in letters to Erhart's counsel on May 12, 2015 and October 17, 2015.  Despite BofI's repeated demands, Erhart has not returned the Confidential Information and has not informed BofI what he has done or plans to do with this information.

38.     Erhart's misappropriation of Confidential Information may include information that threatens the privacy interests of BofI's employees, clients, and business counterparties.

39.     Erhart's conduct is directly contrary to his statutory, common law and contractual obligations to BofI.  The extent of Erhart's misappropriation and dissemination of Confidential Information is not yet clear.

1

## ERHART ABANDONED HIS JOB

2

3        40.    Erhart last showed up to work at BofI on March 5, 2015.  On

4  March 6, 2015, Erhart requested, and was granted by BofI, an unpaid leave of

5  absence pursuant to the Family Medical Leave Act ("FMLA") and the California

6  Family Rights Act ("CFRA").  Erhart's leave of absence was exhausted on May 15,

7  2015, but Erhart did not return to work.

8

9        41.    On June 9, 2015, BofI sent Erhart a letter informing him that

10  because he had abandoned his job, his employment with BofI was terminated

11  effective June 9, 2015.

12

13        42.    BofI executive management did not learn about Erhart's abuse of

14  power, unapproved investigations and audits, and failure to perform his job duties,

15  until on or about March 5, 2015, when BofI became aware of some of the

16  wrongdoing alleged above.

17

18        ## ERHART INTENTIONALLY DESTROYED BofI PROPERTY BY

19        ## DELETING DATA FROM HIS BofI-ISSUED LAPTOP

20

21        43.    When Erhart took a leave of absence on March 6, 2015, he

22  initially refused to return to BofI his BofI-owned laptop.  BofI is informed and

23  believes, and on that basis alleges, that Erhart refused to return his laptop in order to

24  conceal his wrongful acts.  BofI informed Erhart that it had not, and would not,

25  authorize him to keep physical possession of his BofI issued laptop during his leave

26  of absence.  Likewise, Erhart's access to BofI's Confidential Information was

27  discontinued during his leave of absence, as Erhart had no legitimate business

28  reason to access Confidential Information during that time.

SMRH:473680283.1

44.     After BofI's repeated requests for the return of Erhart's BofI issued laptop for safekeeping while he was on a leave of absence, Erhart finally returned the laptop to BofI.  Prior to returning his BofI issued laptop, however, Erhart deleted large amounts of data, including a mass deletion of over 200 folders the same day that he returned his laptop to BofI.

45.     Erhart had no legal right or authority to erase and delete files from his company issued laptop.  The extent of Erhart's destruction of BofI property is not yet clear.

**ERHART PROVIDED THE NEW YORK TIMES WITH CONFIDENTIAL INFORMATION AND CAUSED THE SHARE PRICE OF BofI'S STOCK TO PLUMMET**

46.     On or about October 13, 2015, BofI learned that Erhart publicly disclosed out of context portions of the Confidential Information through, among other actions, dissemination to the New York Times and filing his complaint against BofI.  BofI is informed and believes, and on that basis alleges that as a result of Erhart's unauthorized disclosures of the Confidential Information, BofI's stock price plummeted 30.2 % in one single day.  On October 17, 2015, BofI again demanded that Erhart cease his unlawful conduct.  BofI continues to investigate Erhart's actions.

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract – Confidentiality Agreement)**

47.     BofI refers to, and incorporates herein by reference, the allegations contained in paragraphs 1 through 46, inclusive, above.

48.     BofI and Erhart are parties to the Confidentiality Agreement.

49.     Except as excused or prevented by Erhart, BofI has performed all of its obligations under the Confidentiality Agreement.

50.     Erhart's obligations under the Confidentiality Agreement are valid, enforceable and binding on Erhart.

51.     Erhart materially breached the Confidentiality Agreement based on the conduct described in paragraphs 30-39 and 43-46 by, including but not limited to, taking, misappropriating and/or disclosing  Confidential Information.

52.     As a proximate result of Erhart's breaches of the Confidentiality Agreement, BofI has sustained, and will continue to sustain, damages according to proof.

53.     BofI and BofI's business counterparties and clients will suffer irreparable harm unless Erhart immediately is ordered to comply with the Confidentiality Agreement by returning the Confidential Information he had taken, including all copies, notifying BofI of all recipients of Confidential Information that he has disseminated, and refraining from further using or disclosing Confidential Information.

## SECOND CLAIM FOR RELIEF
### (Conversion)

54.     BofI refers to, and incorporates herein by reference, the allegations contained in paragraphs 1 through 53, inclusive, above.

1      55.   At all times herein mentioned, BofI was the rightful owner and
2   entitled to possession of the Confidential Information, including, but not limited to,
3   documents containing Confidential Information that Erhart had access to by virtue
4   of his role as a Staff Internal Auditor at BofI.

5

6      56.   Erhart knowingly and intentionally interfered with BofI's
7   dominion, possession, use, and ownership of its Confidential Information by
8   misappropriating such information and converting such information to his own
9   possession and use.

10

11      57.   Erhart has not returned BofI's property that he took personal
12   possession of and converted to his own use without BofI's authorization or consent.

13

14      58.   Erhart knew or had reason to know that BofI was lawfully
15   entitled to the property, but intentionally withheld it and/or attempted to destroy it to
16   damage BofI and/or with a conscious disregard for BofI's lawful right to ownership
17   and possession, and the privacy rights of BofI's business counterparties and clients.

18

19      59.   As a proximate result of Erhart's misappropriation of the
20   Confidential Information, BofI has sustained, and will continue to sustain, damages
21   according to proof.

22

23      60.   Erhart acted maliciously with the intention of causing injury to
24   BofI, or despicably with a willful and conscious disregard of the rights of BofI,
25   sufficient to justify an award of exemplary and punitive damages.

26

27

28

SMRH:473680283.1
BofI FEDERAL BANK'S COMPLAINT

## **THIRD CLAIM FOR RELIEF**

### **(Breach of the Duty of Loyalty)**

61.     BofI refers to, and incorporates herein by reference, the allegations contained in paragraphs 1 through 60, inclusive, above.

62.     Erhart was a BofI employee and was bound by a duty to act with the utmost good faith and solely for the benefit of BofI in all matters connected with his employment.  Erhart voluntarily accepted and assumed this duty.

63.     Erhart was further bound by express written agreements not to take or disclose Confidential Information.

64.     Erhart, a Staff Internal Auditor, was entrusted with Confidential Information that he knew or should have known was confidential and/or privileged.

65.     Erhart breached his duty of loyalty to BofI by, among other things:

(a)     Exceeding his authority and using his position as a Staff Internal Auditor to conduct additional investigations and audits that were outside the scope of the 2014 and 2015 Internal Audit Plans and not sanctioned by the Audit Committee.

(b)     Taking advantage of his level of access as a Staff Internal Auditor to pressure other employees into providing him with Confidential Information that he had no legitimate purpose in accessing.

1    (c)    Failing to fulfill his job duties including, among other things,

2    failing to complete audits assigned to him and required for regulatory examinations.

3

4    (d)    Requesting and obtaining confidential personnel information,

5    and then attempting to use this information to obtain a raise.

6

7    (e)    Misappropriating and wrongfully distributing BofI's

8    Confidential Information to unauthorized recipients, and utilizing non-secure

9    channels to distribute such Confidential Information.

10

11    66.    BofI is informed and believes, and on that basis alleges, that

12    Erhart intentionally and knowingly breached his duty of loyalty owed to BofI.

13

14    67.    As a proximate result of Erhart's acts, BofI has sustained, and

15    will continue to sustain, damages according to proof.

16

17    **FOURTH CLAIM FOR RELIEF**

18    **(Negligence)**

19

20    68.    BofI refers to, and incorporates herein by reference, the

21    allegations contained in paragraphs 1 through 67, inclusive, above.

22

23    69.    Erhart owed BofI a duty to exercise due care in the performance

24    of his duties as a Staff Internal Auditor of BofI.

25

26    70.    As alleged hereinabove, Erhart failed to act reasonably and to

27    exercise due care in the performance of his job duties when he conducted rogue

28

SMRH:473680283.1

investigations instead of performing his required audits, and when he

misappropriated, destroyed, disclosed, and/or took BofI's Confidential Information.

72.     As a proximate result of Erhart's taking, disclosing and/or

misappropriating BofI's Confidential Information, BofI has sustained, and will

continue to sustain, damages according to proof.

## FIFTH CLAIM FOR RELIEF

### (Fraud)

72.     BofI refers to, and incorporates herein by reference, the

allegations contained in paragraphs 1 through 71, inclusive, above.

73.     Erhart knowingly made false statements to BofI employees that

he was conducting authorized official investigations and audits as part of his job as a

Staff Internal Auditor.

74.     As examples, on December 11, 15, 19, and 22, 2014, Erhart sent

emails to BofI employees, including but not limited to Daniel Crescitelli, Jeffrey

Smith, Alissa Haygood, and Derrick Walsh, to request information for his

unapproved payroll audit.

75.     BofI's employees believed the aforementioned representations to

be true and reasonably relied on them in providing Confidential Information to

Erhart.

76.     Erhart made these representations to BofI employees with the intent to deceive BofI and BofI employees in order to obtain Confidential Information that he had no legitimate business reason to access.

77.     In fact, these representations were false.

78.     As a result of the fraud and deceit of Erhart, BofI has sustained, and will continue to sustain, damages according to proof.

79.     Erhart acted maliciously with the intention of causing injury to BofI, or despicably with a willful and conscious disregard of the rights of BofI, sufficient to justify the award of exemplary and punitive damages.

## <u>SIXTH CLAIM FOR RELIEF</u>
### (Violation of California Penal Code Section 502)

80.     BofI refers to, and incorporates herein by reference, the allegations contained in paragraphs 1 through 79, inclusive, above.

81.     BofI is entitled to maintain a private right of action pursuant to California Penal Code Section 502(e)(1).

82.     BofI is informed and believes, and on that basis alleges, that Erhart violated California Penal Code Section 502(c) by, among other things, knowingly accessing and without permission:

SMRH:473680283.1

Case 3:15-cv-02353-BAS-NLS   Document 12   Filed 11/06/15   Page 25 of 31

(a)     Altering, damaging, deleting, destroying and/or using BofI's data, his BofI issued laptop, BofI's computer system and/or BofI's computer network to wrongfully control or obtain data.

(b)     Taking, copying and/or otherwise making use of data from his BofI issued laptop, BofI's computer system and/or BofI's computer network.

(c)     Taking or copying documentation whether existing or residing internal or external to his BofI issued laptop, BofI's computer system and/or BofI's computer network.

(d)     Using BofI's computer services, as defined in California Penal Code Section 502(b)(4).

(e)     Altering, damaging, deleting and/or destroying BofI's data, BofI's computer software and/or BofI's computer programs which reside or exist internal or external to a BofI computer, or BofI's computer system or computer network.

83.     Erhart's actions that constitute violations of California Penal Code Section 502(c) were not committed within the scope of his lawful employment at BofI and were not reasonably necessary to the performance of his work assignments at BofI.

84.     The value of BofI's supplies and computer services that Erhart used exceed $250.

85.     As a proximate result of Erhart's violations of California Penal Code Section 502(c), BofI has sustained, and will continue to sustain, loss and damages according to proof.

86.     By reason of Erhart's acts, BofI is entitled to attorney's fees in accordance with the provisions of California Penal Code Section 502(e)(2).

87.     Erhart acted maliciously with the intention of causing injury to BofI, or despicably with a willful and conscious disregard of the rights of BofI, sufficient to justify the award of exemplary and punitive damages in accordance with the provisions of California Penal Code Section 502(e)(4).

88.     Until and unless enjoined by this Court, Erhart's wrongful conduct will cause irreparable injury to BofI and its clients because BofI has legal obligations to safeguard the Confidential Information of its business counterparties and its clients, it could lose clients if Erhart continues to misappropriate such business counterparties' and clients' sensitive and confidential information, BofI derives economic value from its data remaining confidential, and BofI is being damaged by Erhart's deletions and destruction of BofI data.  BofI has no adequate remedy at law for the injuries that it is currently suffering or that it could suffer in the future if Erhart continues to violate California Penal Code Section 502(c).

## SEVENTH CLAIM FOR RELIEF

### (Violation of Computer Fraud and Abuse Act [18 U.S.C. § 1030 et seq.])

89.     BofI refers to, and incorporates herein by reference, the allegations contained in paragraphs 1 through 88, inclusive, above.

90.     BofI is entitled to maintain a private right of action under the Computer Fraud and Abuse Act pursuant to 18 U.S.C. § 1030(g).

91.     BofI is informed and believes, and on that basis alleges, that Erhart violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5) when he knowingly caused the transmission of a program, information, code or command, and as a result of such conduct, intentionally caused damage without authorization to a protected computer.

92.     Erhart knowingly deleted large amounts of data from his BofI issued laptop, and intentionally caused damage, without authorization, to his laptop.

93.     Erhart's BofI issued laptop was a protected computer under the Computer Fraud and Abuse Act.  Erhart's BofI issued laptop was provided to Erhart exclusively for his use as a Staff Internal Auditor at BofI, a financial institution with deposits insured by the Federal Deposit Insurance Corporation, and it was used in, or affected, interstate and foreign commerce.

94.     Erhart caused an impairment to the integrity or availability of data, a program, a system, or information by deleting massive amounts of data from his laptop.  BofI has attempted to restore the data, program, system, or information to its condition prior to Erhart's deletions of data.

95.     As a proximate result of Erhart's violations of the Computer Fraud and Abuse Act, BofI has sustained, and will continue to sustain, loss and damages according to proof, but in excess of $5,000.

## EIGHTH CLAIM FOR RELIEF

**(Unfair Business Practices in Violation of California Business & Professions Code Section 17200, et seq.)**

96.     BofI refers to, and incorporates herein by reference, the allegations contained in paragraphs 1 through 95, inclusive, above.

97.     Erhart's unlawful, unfair and/or fraudulent acts alleged in each and every one of the causes of action contained herein constitute unfair competition under California Business & Professions Code Sections 17200 *et seq.*

98.     By virtue of the wrongful conduct alleged above, including Erhart's wrongful emailing, taking, removing, refusing to return, deleting, and disclosing BofI's Confidential Information, and conducting rogue investigations Erhart has engaged in unfair competition and/or unlawful or fraudulent business acts or practices in violation of California Business & Professions Code Sections 17200 *et seq.*, that has injured BofI and resulted in out of pocket losses, thereby entitling BofI to injunctive and restitutionary relief as provided by California Business & Professions Code Section 17203.

WHEREFORE, BofI prays for judgment set forth as follows.

## PRAYER

WHEREFORE, BofI prays for the following:

1.     For direct and consequential damages proven at trial;

2.    For a preliminary injunction and a permanent injunction, requiring Erhart and/or his agents, servants, employees, and all persons acting under, in concert with, or for him to:

    (a)    Refrain from disclosing, reviewing, sharing, transmitting, and using any of the BofI Confidential Information and property that he (Erhart) removed from BOFI.

    (b)    Provide a list of all materials he (Erhart) removed from BofI, including the date the item was taken (referred to as the "Inventory").

    (c)    Provide a list of all individuals to whom Erhart or his counsel has disclosed each item on the Inventory.

    (d)    Deliver to BofI each item on the Inventory, including any copies and/or summaries, extracts and/or other documents that reference any materials in the Inventory.

    (e)    Provide a signed declaration from Erhart that the Inventory and list of individuals provided in subsection (c) is accurate, that all items on the Inventory, including copies and summaries of its content, have been returned and that neither he nor his agents, including attorneys, have retained any copies and/or summaries, extracts and/or other documents that reference any materials in the Inventory.  Erhart's declaration shall also identify each and every transmission of items on the Inventory, including the person to whom he disseminated the item, and the date, time, and method of each transmission, including any oral transmission.

SMRH:473680283.1

1           (f)    Delete all references to BofI's Confidential Information in

2   his possession, custody or control.

3

4           (g)    Desist from deleting and destroying BofI's data without

5   the express authorization of BofI.

6

7       3.    For exemplary and punitive damages;

8

9       4.    For costs, including attorney's fees; and

10

11      5.    For such other and further relief as the Court deems just and

12  proper.

13

14  Dated:  November 6, 2015

15          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

16

17      By         *s/Polly Towill*

18             POLLY TOWILL

19           Attorneys for Plaintiff

20           BofI FEDERAL BANK

         Email: ptowill@sheppardmullin.com

21

22

23

24

25

26

27

28

1

<u>**DEMAND FOR JURY TRIAL**</u>

2

3        Pursuant to Federal Rule of Civil Procedure 38(b), BofI hereby

4 demands a jury trial on all issues triable as of right to a jury.

5

6 Dated:  November 6, 2015

7                               SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

8

9                  By _____
                                        *s/Polly Towill*
10                                  POLLY TOWILL

11                               Attorneys for Plaintiff
12                               BofI FEDERAL BANK
                                 Email: ptowill@sheppardmullin.com
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2    Including Professional Corporations
POLLY TOWILL, Cal. Bar No. 120420
3 ptowill@sheppardmullin.com
ANDRE J. CRONTHALL, Cal. Bar No. 117088
4 acronthall@sheppardmullin.com
333 South Hope Street, 43rd Floor
5 Los Angeles, California 90071-1422
Telephone:  213.620.1780
6 Facsimile:   213.620.1398

7 Attorneys for Plaintiff
BofI FEDERAL BANK

8

9 UNITED STATES DISTRICT COURT

10 SOUTHERN DISTRICT OF CALIFORNIA

11

12 | BofI FEDERAL BANK, a federal | Case No. 3:15-cv-2353-BAS-NLS
savings bank,
13 | | **PROOF OF SERVICE**
             Plaintiff,
14
       v.
15
CHARLES MATTHEW ERHART, an
16 individual; and DOES 1-25, inclusive, | The Hon. Cynthia Bashant
(Schwartz Courthouse)
17 |        Defendants.

18

19

20

21

22

23

24

25

26

27

28

1 | *BofI Federal Bank v. Charles Matthew Erhart*
U.S.D.C., Southern District of California, Case No. 3:15-cv-2353-BAS-NLS

2

PROOF OF SERVICE

3

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

4

5 |   At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles; My business address is 333 South Hope Street, 43rd Floor, Los Angeles, California 90071-1422

6

7 |   On November 6, 2015, I served true copies of the following document(s) described as

8 | **BofI FEDERAL BANK'S FIRST AMENDED COMPLAINT**

9 | on the interested parties in this action as follows:

10 | Carol Gillam, Esq.          Attorneys for Defendant
The Gillam Law Firm         Charles Matthew Erhart

11 | 11620 Wilshire Blvd. Suite 900
Los Angeles, CA 90025

12 | Tel (310) 203-9977; Fax (310) 203-9922
Email: carol@gillamlaw.com

13

14 |   **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.

15 | Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will

16 | be served by mail or by other means permitted by the court rules.

17

18 |   Executed on November 6, 2015, at Los Angeles, California.

19

20 |            */s Heather Plocky*

21 |            Heather Plocky

22

23

24

25

26

27

28

SMRH:473438757.1                  PROOF OF SERVICE

**Phyllis Chavez**

| | |
|---|---|
| **From:** | efile_information@casd.uscourts.gov |
| **Sent:** | Friday, November 06, 2015 6:19 PM |
| **To:** | efile_information@casd.uscourts.gov |
| **Subject:** | Activity in Case 3:15-cv-02353-BAS-NLS BofI Federal Bank v. Erhart et al Amended Complaint |

<span style="color:red">**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**</span>
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Southern District of California**

## Notice of Electronic Filing

The following transaction was entered by Towill, Polly on 11/6/2015 at 6:18 PM PST and filed on 11/6/2015
**Case Name:** BofI Federal Bank v. Erhart et al
**Case Number:** 3:15-cv-02353-BAS-NLS
**Filer:** BofI Federal Bank
**Document Number:** 12

**Docket Text:**
**AMENDED COMPLAINT with Jury Demand against All Defendants, filed by BofI Federal Bank. (Attachments: # (1) Proof of Service) (Towill, Polly)**

**3:15-cv-02353-BAS-NLS Notice has been electronically mailed to:**

Carol Gillam       carol@gillamlaw.com, monique@gillamlaw.com, sara@gillamlaw.com

Polly Towill       ptowill@sheppardmullin.com, akleaver@sheppardmullin.com, hplocky@sheppardmullin.com, pchavez@sheppardmullin.com, ptowill@gmail.com, rgordon@sheppardmullin.com

**3:15-cv-02353-BAS-NLS Electronically filed documents must be served conventionally by the filer to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1106146653 [Date=11/6/2015] [FileNumber=9459731-0
] [37edf83f6c094f5d7ced4e0d2483a7486871b4b4b3dd7991006b0c83e8d7b75cce1
91ca680ba4868951a98c297284b9e37ad6d4c515009cb7734542b3af89ad9]]
**Document description:**Proof of Service
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=11/6/2015] [FileNumber=9459731-1
] [7ef83f069cafd771a7e6a58ac001b970b1b3cb91589e454a63cbdb81d89a91c4a7c
d800b9d7f307091ad366e690a040fe0b7741ca66ce99d8cde663cba8131d0]]

2