SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
POLLY TOWILL, Cal. Bar No. 120420
ptowill@sheppardmullin.com
ANDRE J. CRONTHALL, Cal. Bar No. 117088
acronthall@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

Attorneys for Defendant
BOFI HOLDING, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MATTHEW ERHART, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>BOFI HOLDING INC., an entity d/b/a BOFI FEDERAL BANK and BANK OF THE INTERNET,<br><br>                    Defendants. | Case No. 15-cv-2287-BAS-NLS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOFI HOLDING, INC.'s MOTION FOR IMPOSITION OF SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST PLAINTIFF CHARLES MATTHEW ERHART**<br><br>Date:   March 21, 2016<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT<br><br><br>Courtroom 4B<br><br>The Hon. Cynthia Bashant (Schwartz Courthouse) |

SMRH:475502850.1

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................... 1

II. FACTUAL BACKGROUND ...................................................................... 3

    A. Erhart Used his Position at BofI to Acquire Information for his
         Lawsuit. ........................................................................................... 3

    B. Erhart Contacted Regulators Concerning his Allegations Against BofI
         and Filed an OSHA Complaint Alleging Retaliation. .......................... 3

    C. Erhart Destroyed Evidence On His Laptop Computer Concerning the
         Allegations in his Complaint Against BofI........................................ 4

    D. BofI Initiated Litigation to Ascertain the Scope and Extent of Erhart's
         Theft and Dissemination of Evidence................................................ 5

    E. Erhart Destroyed Evidence Prior To Complying With the TROs. ....... 6

    F. Erhart Admitted He Destroyed Evidence to Prejudice BofI ............... 7

    G. Subsequent To The Deposition, BofI Learned That Erhart Deleted
         Evidence From Additional Devices. .................................................. 8

III. LEGAL STANDARD ................................................................................ 9

IV. THE COURT SHOULD SANCTION PLAINTIFF FOR THE WILLFUL
     SPOLIATION OF EVIDENCE ................................................................. 11

    A. Erhart Destroyed Evidence that is Relevant to the Litigation. ........... 11

    B. Erhart Had a Duty to Preserve The Destroyed Evidence. ................. 12

    C. Erhart's Spoliation Was Willful....................................................... 13

    D. Erhart's Destruction of Evidence has Prejudiced BofI. ..................... 14

    E. The Court Should Impose Sanctions Againt Erhart for his Spoliation of
         Evidence. ........................................................................................ 15

        1. Terminating Sanctions are Warranted. ..................................... 16

        2. The Court Should Grant Jury Instructions re Spoliation........... 18

        3. The Court Should Award Monetary Sanctions. ........................ 19

V. CONCLUSION ........................................................................................ 20

-i-        Case No. 15-cv-2287-BAS-NLS
SMRH:475502850.1      MEMO OF POINTS AND AUTHORITIES ISO BOFI'S MOTION FOR SPOLIATION OF
EVIDENCE AGAINST CHARLES MATTHEW ERHART

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Am. Blind & Wallpaper Factory*
    2007 WL 1848665 .......................................................................... 11

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*
    69 F.3d 337 (9th Cir. 1995) ........................................................... 15

*Apple, Inc. v. Samsung Electronics Co., Ltd.*
    888 F. Supp. 2d 976 (N.D. Cal. 2012)........................................ 10, 15

*Cottle-Banks v. Cox Comm's, Inc.*
    2013 WL 2244333 (S.D. Cal. May 21, 2013) ................................ 13

*Glover v. BIC Corp.*
    6 F.3d 1318 (9th Cir. 1993) ............................................................. 9

*Hynix Semiconductor Inc. v. Rambus, Inc.*
    591 F. Supp. 2d 1038 (N.D. Cal., 2006)........................................ 14

*Hynix Semiconductor Inc. v. Rambus Inc.*
    897 F.Supp.2d 939 (N.D. Cal. 2012)............................................. 13

*Kearney v. Foley & Lardner, LLP*
    590 F.3d 638 (9th Cir. 2009) ........................................................ 11

*Knickerbocker v. Corinthian Colleges*
    298 F.R.D. 670 (W.D. Wa. 2014) ................................................. 12

*Leon v. IDX Sys. Corp.*
    464 F.3d 951 (9th Cir. 2006) ..........................................9, 10, 13, 16

*Lewis v. Ryan*
    261 F.R.D. 513 (S.D. Cal. 2009) .................................................. 13

*In re Napster, Inc. Copyright Litigation*
    462 F.Supp.2d 1060 (N.D. Cal. 2006)........................................... 10

*Nucor Corp. v. Bell*
    251 F.R.D. 191 (D.S.C. 2008) ...................................................... 18

*PersonalWeb Tech., LLC v. Google, Inc.*
  2014 WL 580290 (N.D. Cal. 2014) ..................................................... 13

*Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*
  682 F.2d 802 (9th Cir. 1982) ............................................................. 11

*Residential Funding Corp. v. DeGeorge Financial Corp.*
  306 F.3d 99 (2d Cir. 2002) ................................................................ 13

*Straitshot Communs. v. Telekenex, Inc.*
  2012 U.S. Dist. LEXIS 166305 (W.D. Wash. Nov. 20, 2012) ........................ 19

*Surfvivor Media, Inc. v. Survivor Prods.*
  406 F.3d 625 (9th Cir. 2005) ............................................................. 11

*United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*
  857 F.2d 600 (9th Cir. 1988) ......................................................... 10, 13

*United States v. Kitsap Physicians Svs.*
  314 F.3d 995 (9th Cir. 2002) .......................................................... 9, 13

Statutes

Fed. Rule Evid. 403 ........................................................................... 11

# I.

# INTRODUCTION

Plaintiff Charles Matthew Erhart ("Erhart") has engaged in a pattern and practice of destroying relevant evidence in order to prejudice defendant BofI Holding, Inc.[1] ("BofI") and hinder its ability to defend itself in this action.  His willful and deliberate spoliation of evidence, despite his clear duty to preserve such evidence cannot be excused and must be sanctioned by this Court.[2]

While employed as an internal auditor at BofI, Erhart began gathering company documents in support of alleged wrongdoing by BofI, then asserted the same allegations in this lawsuit.  In order to prevent BofI from investigating these claims and utilizing the underlying information to disprove Erhart's allegations, Erhart then deliberately deleted evidence from his BofI-issued laptop computer, where it was stored.  As BofI discovered in December 2015, however, this was just the beginning of Erhart's spoliation of evidence.  To date, BofI has uncovered evidence that thousands of relevant documents, based upon their distinctive file names, such as Lotto-Structured Settlement, Recorded Phone Calls, Work Incident – Please Advise, and BSA 15 Accounts without TINs, which mirror his retaliation claims, have also been deleted by Erhart from his personal desktop computer, his girlfriend's computer, and two USB drives used by Erhart.  Thus, the deleted evidence was clearly relevant.

---

[1]     BofI was incorrectly named as BofI Holding, Inc., an entity, d/b/a BofI Federal Bank and Bank of the Internet.

[2]     BofI believes that Erhart's conduct also requires imposition of spoliation sanctions in the related matter entitled *BofI Federal Bank v. Charles Matthew Erhart*, Case No. 15-cv-2353-BAS-NLS.  Upon resolution of the present motion, BofI intends to seek imposition of similar sanctions against Erhart in that matter.

1   Despite its relevance, Erhart deleted this evidence in violation of his duty to

2   preserve evidence.  Erhart knew in March 2015, if not earlier, when he failed to

3   return to work that the information he was destroying was potentially relevant to

4   future litigation.  At the time he deliberately deleted the evidence from his work

5   laptop where it was stored, he knew that the evidence was potentially relevant not

6   only to any future action by the OCC and/or the SEC regulators to whom he

7   reported the alleged wrongdoing, but also to an action Erhart subsequently filed with

8   OSHA in April 2015 as well as the present action against BofI, which Erhart filed in

9   October 2015.

10   Furthermore, Erhart's spoliation was willful.  Erhart admitted in deposition

11   that he destroyed the evidence on his work laptop specifically to frustrate and hinder

12   BofI's investigation into Erhart's unauthorized audits.  Erhart continued to destroy

13   evidence even after this litigation was filed in October 2015 and after BofI obtained

14   a Temporary Restraining Order ("TRO") and Supplemental TRO in November 2015

15   ordering Erhart to preserve and not to destroy BofI documents without BofI's

16   express authorization.  Some relevant documents have been permanently deleted

17   and cannot be recovered regardless of expense.  As a result, BofI has been

18   prejudiced.  Moreover, BofI will be forced to incur costs to recover the documents

19   that appear to be recoverable using forensic techniques.

20   Erhart's conduct must be appropriately sanctioned.  Such overt and deliberate

21   spoliation, after he contacted the SEC and OCC, after he contemplated filing a

22   retaliation claim, after he filed a claim with OSHA, and finally, after he filed this

23   lawsuit against BofI justify terminating sanctions.  At a minimum, the Court should

24   require jury instructions regarding spoliation that would instruct a jury to draw an

25   adverse inference if it finds that Erhart spoliated evidence.  Moreover, the Court

26   should impose monetary sanctions sufficient to compensate BofI for uncovering

27   Erhart's improper actions, bringing this motion, and to restore what evidence may

28   yet be recoverable.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.

## FACTUAL BACKGROUND

**A.    Erhart Used his Position at BofI to Acquire Information for his Lawsuit.**

BofI is a diversified financial services company headquartered in San Diego. The role of the Internal Audit Department at BofI is to test, monitor and report on BofI's internal controls and to conduct special projects and investigations. (Declaration of John Tolla ("Tolla Decl."), ¶ 2.)  Erhart started working for BofI as a Staff Internal Auditor reporting to BofI's then Vice President-Internal Audits on September 23, 2013.  (*Id.*, ¶ 3.)  Erhart was issued a laptop by BofI for use in the performance of his job duties.  (*Id.*)

During his employment, Erhart was tasked with completing assigned audit functions within the parameters of the 2014 and 2015 Internal Audit Plans.  (*Id.*, ¶ 4.)  These plans defined the scope of the internal audits to be completed by the Internal Audit Department during 2014 and 2015.  Erhart abused his power as an entry level Staff Internal Auditor by not completing his assigned audits, and instead initiating and conducting his own unplanned and unapproved investigations into matters that were outside the scope of the 2014 and 2015 Internal Audit Plans in order to gather information for the SEC, the OCC, and to try to hold BofI hostage with a retaliation claim.

**B.    Erhart Contacted Regulators Concerning his Allegations Against BofI and Filed an OSHA Complaint Alleging Retaliation.**

In February of 2015, Erhart began contacting regulators to report alleged wrongdoing by BofI.  For example, Erhart contacted the SEC concerning BofI's allegedly improper response to an SEC subpoena.  (Declaration of Polly Towill, ("Towill Decl."), Ex. H.)  This alleged wrongdoing is also the subject of Erhart's complaint against BofI.  (Complaint, ECF No. 1, ¶ 26-31.)

1    Erhart last appeared for work at BofI on March 5, 2015.  (Tolla Decl., ¶ 5.)

2    Thereafter, Erhart requested, and was granted by BofI, an unpaid leave of absence

3    pursuant to the Family Medical Leave Act ("FMLA") and the California Family

4    Rights Act ("CFRA") beginning on March 6, 2015.  (*Id.*)  Within days of not

5    returning to work, Erhart met with regulators at the OCC to report BofI's alleged

6    wrongdoing.  (*See* Towill Decl., Ex. G, p. 96:15-19, 162:14-163:6.)  The very next

7    month, Erhart filed an OSHA complaint against BofI.  (Request for Judicial Notice

8    ("RJN"), Ex. M.)  While Erhart's OSHA complaint is vague and omits many of the

9    allegations that he later asserted in his complaint, the allegations that were asserted

10   in Erhart's OSHA complaint also appear in his Complaint against BofI.  (*See*

11   Complaint, ECF No. 1, ¶ 24-31, 44.)

12

13   **C.    Erhart Destroyed Evidence On His Laptop Computer Concerning the**

14          **Allegations in his Complaint Against BofI.**

15   After Erhart went on leave, BofI informed Erhart that it had not, and would

16   not, authorize him to keep physical possession of his BofI-owned laptop computer

17   containing confidential information (the "Laptop").  (*Id.*, ¶ 5.)  Despite BofI's

18   repeated demands for return of the Laptop, Erhart did not return it until March 12,

19   2015.  (*Id.*)

20   After the Laptop was returned, BofI conducted a forensic investigation of the

21   Laptop, which revealed that on the morning of March 12, 2015, prior to a meeting

22   that occurred between Erhart and BofI human resources personnel, approximately

23   878 files and folders were deleted from the Laptop.  (Declaration of Matt Armstrong

24   ("Armstrong Decl."), ¶ 10; Tolla Decl., ¶ 5.)  Of those files, 29 have been

25   overwritten and cannot be recovered.  (*See* Armstrong Decl., ¶ 11.)  The remaining

26   848 are likely recoverable using forensic recovery techniques.  (*Id.*)  Many of the

27   folder and files deleted appear to be relevant to this action.  For example, folder

28   names include: Lotto-Structured Settlement, BofI Work, and Recorded Phone Calls,

which are the subject of Erhart's complaint against BofI.  (Armstrong Decl., 10, Ex. B, p. 37-38; ECF No. 1, ¶ 9-16.)  Examples of the deleted files include: Business Plan Audit – Exit Meeting, FW SEC Subpoena – Internal Audit Review, FW Upcoming ERM Audit – Deposit Concentration Risk, Recorded Phone Calls, FW 401k employee elective deferrals, RE Employee Account Review, PEPs.[3] (Armstrong Decl., ¶ 10, Ex. B, p. 2)  The names of these files are similar to allegations in paragraphs 9-16, 18, 19-21, 22-24, 26-31, 34 of Erhart's complaint.

**D.**     **BofI Initiated Litigation to Ascertain the Scope and Extent of Erhart's Theft and Dissemination of Evidence.**

On October 13, 2015, Erhart filed this action against BofI alleging that BofI wrongfully terminated and/or retaliated against him for reporting the findings of his rogue investigations to regulators in his self-described capacity as a whistleblower. Among other things, Erhart alleged that BofI illegally recorded phone calls with customers, made late contributions to employees' 401k accounts, failed to approve the fiscal 2015 strategic plan, had an inappropriately high deposit risk concentration, altered financial documents, hid information from the SEC and OCC, failed to provide information requested by the OCC, and materially altered reports and audit findings.  (ECF No. 1, ¶ 9-75.)  Erhart also alleged improprieties in the personal accounts of BofI's CEO and certain of his family.  (*Id.*, ¶ 44-45.)

---

[3]     Additional examples of folders and files that appear relevant because their distinctive names match allegations in paragraphs 26-31 of Erhart's complaint are listed in the Armstrong Declaration at ¶ 10.  The portions of the Armstrong Declaration referencing those folders and file names have been filed conditionally under seal with the court pending resolution of BofI's concurrently filed Motion to Seal.  In order to minimize the number of documents that need to be filed under seal, BofI does not identify the confidential file and folder names here.

1   After Erhart published confidential BofI information in his publicly filed

2   complaint in this action, BofI was forced to initiate its own action entitled *BofI*

3   *Federal Savings Bank v. Charles Matthew Erhart* (the "*BofI* Action") to prevent

4   Erhart's further dissemination of BofI's confidential information and to recover and

5   preserve evidence, including evidence relevant to Erhart's allegations against BofI.

6   (RJN, Ex. I.)

7   BofI also sought to stop Erhart from destroying additional evidence by

8   seeking a Temporary Restraining Order ("TRO") from the Court.  On November 2,

9   2015, the Court entered a TRO in the *BofI* Action prohibiting Erhart and/or his

10   agents, servants, employees, and all persons acting under, in concert with, or for him

11   from deleting any BofI confidential information within his or their possession,

12   custody, or control.  (RJN, Ex. J, p. 2.)  The TRO also required Erhart to return "all

13   BofI records and documents and any Confidential Information in any form,

14   including but not limited to documents or electronically stored information stored in

15   any medium within his or their possession, custody, or control."  (*Id.*)

16   On November 16, 2015, the Court entered a Supplemental Temporary

17   Restraining Order in the *BofI* Action, which ordered Erhart and/or his agents,

18   servants, employees, and all persons acting under, in concert with, or for him to

19   "[d]esist from deleting and destroying BofI's data without the express authorization

20   of BofI."  (RJN, Ex. K, p. 2.)

21   On November 19, 2015, the Court also granted BofI's request for expedited

22   discovery, including the limited deposition of Erhart, to investigate the extent of

23   Erhart's theft of BofI property and, specifically, Confidential Information.  (RJN,

24   Ex. L, p. 1.)

25

26   **E.    Erhart Destroyed Evidence Prior To Complying With the TROs.**

27   Pursuant to the TRO, on November 9, 2015, Erhart produced a USB drive

28   containing BofI documents.  (Armstrong Decl., ¶ 13.)  Bof I conducted a forensic

-6-

1  analysis of the USB drive and determined that the files on the drive had been

2  transferred to the USB drive from another source just before production.  (*Id.*)

3  Thus, the files on the USB drive were copies of documents stored on another device.

4  (*Id.*)  Erhart returned no other electronic files at that time.  (*Id.*)

5        Forensic analysis of the USB drive also determined that 11 files were deleted

6  from the drive prior to production.  (*Id.*, ¶ 14.)  These files appear relevant to this

7  action based upon their distinctive names, which mirror allegations in Erhart's

8  complaint.  For example, deleted file names include: "Work Incident – Please

9  Advise-3.msg", "Employee Account Review 2" and "BSA 15 Accounts without

10  TINs-2.docx".  (*Id.*, Ex. C, p. 1-2, 5; ECF No. 1, ¶ 18, 40-43, 47-48.)  One of those

11  files is unrecoverable.  The remaining files are candidates for forensic recovery.

12  (Armstrong Decl., ¶ 14.)

13

14  **F.    Erhart Admitted He Destroyed Evidence to Prejudice BofI**

15        On December 6, 2015, BofI deposed Erhart pursuant to the Court's order.  At

16  the deposition, BofI learned the extent of Erhart's destruction of evidence.  Initially,

17  Erhart testified under oath that he had not deleted any documents.  (Towill Decl.,

18  Ex. G, p. 85:15-16.)  Later, however, Erhart admitted that, prior to returning his

19  work laptop to BofI, he deleted information upon which he relies for this litigation

20  in order to hinder BofI's investigation into Erhart's allegations.  (*Id.*, p. 116:14-

21  117:7.)  As Erhart stated at his deposition, ***"the less that they know about my***

22  ***investigations, the better…."***  (*Id.*, p. 117:5-6.)  Erhart further admitted that he

23  deleted emails from his BofI email account "***by the hundreds***."  (*Id.*, p. 165:9-11.)

24  Erhart also admitted that he had deleted BofI documents that he had stored on his

25  personal computer.  (*Id.*, p. 145:9-146:11, 147:4-8.)

26

27

28

**G.**     **Subsequent To The Deposition, BofI Learned That Erhart Deleted Evidence From Additional Devices.**

After the deposition, Erhart provided his personal desktop computer, another USB device, and his girlfriend's laptop to BofI for forensic imaging.  (Armstrong Decl., ¶ 16, 20, 26.)  BofI conducted a forensic analysis of all three devices. (Armstrong Decl., ¶ 7.)

Forensic analysis of Erhart's girlfriend's MacBook laptop computer revealed 300 unique files (and a total of 550 occurrences of these files) that appear to be relevant to this action.  (*Id.*, ¶ 28; Ex. F.)  Examples of these files, which match allegations in Erhart's Complaint include: BofI Summary of Events.docx, GG Acct Review-Timeline.xlsx, and 401k Contribution deposit analysis.xlsx.  (*Id.*, Ex. F, p. 1-2; ECF No. 1, 18, 44-45.)  All but 8 of these files have been deleted from the laptop.  (Armstrong Decl., ¶ 29.)  The deleted files are not recoverable from the computer.  (*Id.*, ¶ 27.)

Forensic analysis of Erhart's personal desktop computer revealed 1,500 files that appear to be relevant to his allegations in the computer's Recycling Bin.  (*Id.*, ¶ 17.)  These files were placed in the Recycling Bin the day before Erhart's deposition and just days before he produced the computer to BofI.  (*Id.*)  Examples of the files Erhart deleted the day before his deposition, which match allegations in Erhart's Complaint include: "Provided to OCC Via Email from BofI laptop," "$912,303 withdrawal slip.msg," "ALL MAJOR FINDINGS (CERHART).docx."[4] (*Id.*, Ex. D, p. 1-2; ECF No. 1, ¶ 9-45.)  The forensic analysis also revealed evidence of another 6 documents located elsewhere on the computer that had been deleted, including files entitled "Lotto and SS Audit – Audit Workpapers and Outlook

---

[4]     Additional examples are provided in paragraph 17 to the Armstrong Declaration.  Those examples reference confidential information in their titles and are not repeated here to minimize the need for redaction.

emails.pdf" and "Jabber use during OCC exam.msg", which match allegations in the Complaint.  (Armstrong Decl., ¶ 19; ECF No. 1, ¶ 9-16, 49.)  Two of those documents were overwritten and cannot be recovered.  (Armstrong Decl., ¶ 19.)  The remainder of the documents are candidates for forensic recovery.  (*Id.*)

Forensic analysis of the USB drive confirmed that a folder entitled "BofI" that contained 12 files were deleted from the USB drive, including such files matching allegations in Erhart's Complaint as "January 16, 2014 BofI Federal Audit Committee Meeting Minutes Draft v1.doc" and "March 26 2014 BofI Federal Audit Committee Meeting Minutes.doc".  (Armstrong Decl., Ex. E, p. 2; ECF No. 1, ¶ 19-21.)  Notably, the folder was created on March 12, 2015, the same day that Erhart returned his work laptop to BofI.  (Armstrong Decl., ¶ 21.)  Additionally, a folder entitled "03192015" previously contained three sub-folders containing a total of 28 files that appear to be relevant.  (*Id.*, ¶ 22; ECF No. 1, ¶ 9-45, 50-52, 68-69.)  These deleted subfolders were entitled "From Jonathan Ball on his last day – given to Sabrina Koll who provided to me," "Provided to OCC Via Email from BofI laptop – copy," and "Provided to OCC Via Email from Work Laptop."  (Armstrong Decl., ¶ 22.)  Furthermore, the "03192015" folder contained a subfolder entitled "Work docs regarding myself includes performance" from which 6 files were deleted prior to production.  (*Id.*, ¶ 23.)  The files deleted from this USB drive may be recoverable using forensic recovery.  (*Id.*, ¶ 24.)

## III.
## <u>LEGAL STANDARD</u>

Spoliation is the destruction or significant alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.  *United States v. Kitsap Physicians Svs.*, 314 F.3d 995, 1001 (9th Cir. 2002).  The court's ability to impose sanctions is derived from its inherent

1    power to control matters before it.  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th

2    Cir. 2006); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).

3        District courts have the authority to issue a variety of sanctions for conduct as

4    egregious as Erhart's was here.  *Apple, Inc. v. Samsung Electronics Co., Ltd.,* 888 F.

5    Supp. 2d 976, 1135 (N.D. Cal. 2012) (noting sanctions can range from attorney's

6    fees to dismissal of claims).  As explained in *In re Napster, Inc. Copyright*

7    *Litigation*, 462 F.Supp.2d 1060, 1066 (N.D. Cal. 2006):

8            Courts may sanction parties responsible for spoliation of

9            evidence in three ways.  First, a court can instruct the jury

10           that it may draw an inference adverse to the party or

11           witness responsible for destroying the evidence. Second, a

12           court can exclude witness testimony proffered by the party

13           responsible for destroying the evidence and based on the

14           destroyed evidence.  Finally, a court may dismiss the

15           claim of the party responsible for destroying the evidence.

16   (citations omitted.)

17       To impose spoliation sanctions under its inherent powers, the Court must find

18   three things: (1) the party that despoiled evidence had an obligation to preserve it;

19   (2) the evidence was destroyed with a culpable state of mind; and (3) the despoiled

20   evidence was relevant to any party's claim or defense.  *Id*. at 1136.

21       In deciding what spoliation sanction to impose, courts generally consider the

22   following three factors: (1) the degree of fault of the party who altered or destroyed

23   the evidence; (2) the degree of prejudice suffered by the opposing party; and

24   (3) whether there is a lesser sanction that will avoid substantial unfairness to the

25   opposing party.  *See Apple, Inc.,* 888 F. Supp. 2d at 992.  The prejudice inquiry

26   "looks to whether the [spoiling party's] actions impaired the non-spoling party's

27   ability to go to trial or threatened to interfere with the rightful decision of the case."

28

1  *Leon*, 464 F.3d at 960 (quoting *United States ex rel. Wiltec Guam, Inc. v. Kahaluu*
2  *Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)).

4                                          **IV.**
5  **THE COURT SHOULD SANCTION PLAINTIFF FOR THE WILLFUL**
6                      **SPOLIATION OF EVIDENCE**
7  **A.      Erhart Destroyed Evidence that is Relevant to the Litigation.**
8          Spoliation of evidence is sanctionable when the evidence destroyed is
9  relevant to the litigation at issue.  Relevant evidence has a tendency to make any fact
10 at issue more or less probable.  Fed. Rule Evid. 403.  "Relevant information for
11 purposes of discovery is information reasonably calculated to lead to the discovery
12 of admissible evidence."  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625,
13 635 (9th Cir. 2005).  "In the Ninth Circuit, spoliation of evidence raises a
14 presumption that the destroyed evidence goes to the merits of the case, and further,
15 that such evidence was adverse to the party that destroyed it."  *Am. Blind &*
16 *Wallpaper Factory*, 2007 WL 1848665 at *3 (citing *Phoceene Sous-Marine, S.A. v.*
17 *U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982)).
18         Here, the evidence is overwhelming that Erhart has destroyed evidence that is
19 relevant to the litigation.  On March 12, 2015 between 3:34 and 5:41 AM, prior to a
20 meeting at which Erhart returned his Laptop to BofI, Erhart deleted approximately
21 957 files and folders from the Laptop, the vast majority of which appear on their
22 face relevant based upon folder and file names they match the allegations in his
23 complaint.  (Armstrong Decl., ¶ 10; ECF No. 1, ¶ 9-16, 18, 19-21, 22-24, 26-31,
24 34.)  Erhart plainly admits in his deposition that the deleted files contained evidence
25 upon which he relies for the allegations in his complaint against BofI.  (Towill
26 Decl., Ex. G, p. 116:14-117:7.)  Moreover, before returning USB drives on two
27 separate occasions (November 9, 2015 and December 8, 2015), Erhart deleted
28 relevant folders and files from the drives.  (Armstrong Decl., ¶ 13-14, Ex. C, E; ECF

No. 1, ¶ 9-45, 50-52, 68-69.)  Erhart also deleted approximately 1,500 relevant BofI files from his personal HP desktop computer just days before he provided it to BofI for forensic imaging.  (*Id.*, ¶ 17, Ex. D; ECF No. 1, ¶ 9-45.)  Additionally, more than 300 relevant BofI files have been deleted from Erhart's girlfriend's computer, which Erhart admitted he used to access BofI documents.  (Armstrong Decl., ¶ 28, Ex. F; ECF No. 1, ¶ 18, 44-45; Towill Decl., Ex. G, p. 184:16-20.)  Thus, Erhart destroyed relevant evidence.

**B.  <u>Erhart Had a Duty to Preserve The Destroyed Evidence.</u>**

Spoliation of evidence is the "failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009).  The duty to preserve evidence is triggered when a party knows or reasonably should know that the evidence could be potentially relevant to any party's claim or defense in pending or future litigation. *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 677-678 (W.D. Wa. 2014) (citations omitted).

Erhart's duty to preserve evidence began in early 2015.  In the months prior to leaving BofI in March 2015, Erhart began gathering documents concerning his allegations against BofI and to support his retaliation claim.  Erhart began contacting regulators about his allegations in January of 2015.  (Towill Decl., Ex. H.)  Immediately upon refusing to return to work, Erhart contacted regulators to report BofI's alleged wrongdoing.  (*Id.*, Ex. G, p. 96:15-19, 162:14-163:6.)  The next month, he filed an OSHA complaint alleging many of the same allegations asserted here.  (RJN, Ex. M; ECF No. 1, ¶ 24-31, 44.)  While Erhart did not ultimately file this lawsuit until October 2015, he knew or reasonably should have known at least as of March 2015 that the evidence he destroyed could be potentially relevant to future litigation.  Erhart admitted as much during his deposition, stating that he deleted everything on his laptop in order to make it difficult for BofI to

SMRH:475502850.1

MEMO OF POINTS AND AUTHORITIES ISO BOFI'S MOTION FOR SPOLIATION OF EVIDENCE AGAINST CHARLES MATTHEW ERHART

uncover information about the very "audits" that form the basis of Erhart's allegations against BofI.  (Towill Decl., Ex. G, p. 117:5-6, 145:9-146:11, 147:4-8, 165:9-11.)  Erhart also admitted that he is relying on that very information in asserting his claims against BofI.  (*Id.*, p. 116:14-117:7.)  Thus, he knew it should have been preserved for his anticipated litigation.

It is indisputable, however, that Erhart had a duty to preserve evidence once he had filed his complaint against BofI in October 2015.  Erhart has admitted to deleting documents after that date and, in fact, after entry of both the TRO and Supplemental TRO.  Therefore, he committed spoliation, at least as of October 2015.  Accordingly, Erhart had a duty at all times when he deleted evidence that appears relevant to this matter.

## C.     <u>Erhart's Spoliation Was Willful.</u>

Spoliation of evidence can be sanctioned where it was willful, in bad faith or tantamount to bad faith.  *Leon*, 464 F.3d  at 959; *Knickerbocker*, 298 F.R.D. at 678.  In the Ninth Circuit, "willful spoliation is treated the same as bad faith spoliation insofar as it may justify dismissal and places the burden on the spoliator to show that its adversary was not prejudiced."  *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F.Supp.2d 939, 980 (N.D. Cal. 2012) (citing *Leon*, 464 F.3d at 959–60).

Destruction of documents constitutes willful spoliation "if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed."  *Id.* at 959 (quoting *Kitsap Physicians Serv.*, 314 F.3d at 1001) (internal quotation marks omitted); *Leon*, 464 F. 3d at 959; *see also PersonalWeb Tech., LLC v. Google, Inc.*, 2014 WL 580290 at *5 (N.D. Cal. 2014) (finding willful spoliation warranting sanctions where "the evidence [did] not support a conclusion of intentional document destruction or . . . specific[] inten[t] to deprive Google of relevant evidence, [but] demonstrate[d] willful indifference . . . towards ensuring that relevant documents were reserved, collected, and produced . . . .").  Several

-13-

MEMO OF POINTS AND AUTHORITIES ISO BOFI'S MOTION FOR SPOLIATION OF EVIDENCE AGAINST CHARLES MATTHEW ERHART

1 district courts have held that the "culpable state of mind" also includes ordinary

2 negligence. *Cottle-Banks v. Cox Comm's, Inc.*, Case No. 10-cv-2133-GPC (WVG),

3 2013 WL 2244333, *13 (S.D. Cal. May 21, 2013); *Lewis v. Ryan*, 261 F.R.D. 513,

4 521 (S.D. Cal. 2009) (citing *Residential Funding Corp. v. DeGeorge Financial*

5 *Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)).

6       As set forth in greater detail above, Erhart was on notice both when he

7 destroyed documents in March 2015, as well as when he did so in November and

8 December 2015, that those documents were potentially relevant to the instant

9 litigation.  Therefore, sanctions are appropriate.

10

11 **D.**      **Erhart's Destruction of Evidence has Prejudiced BofI.**

12       A party is prejudiced where its opponent's spoliation "impaired [its] ability to

13 go to trial or threatened to interfere with the rightful decision of the case." *Kahaluu*

14 *Constr. Co.*, 857 F.2d at 604.  As in this case, where spoliation is shown, "the

15 burden of proof logically shifts to the guilty party to show that no prejudice resulted

16 from the spoliation." *Hynix Semiconductor Inc. v. Rambus, Inc.*, 591 F. Supp. 2d

17 1038, 1060 (N.D. Cal., 2006) (internal citations omitted), overturned on other

18 grounds.

19       While the full extent of the prejudice to BofI is not yet known, it is

20 nevertheless clear that prejudice has occurred.  BofI already knows that documents

21 on several devices are unrecoverable.  Of the over 300 relevant documents that were

22 once on Erhart's girlfriend's computer, all but eight have been deleted and cannot be

23 recovered.  (*Id.*, ¶ 29.)  Documents on several other devices are also unrecoverable.

24 (*Id.*, ¶ 11, 19.)  Erhart admitted to deleting these documents for the sole purpose of

25 hindering BofI's investigation and understanding of his unauthorized audits, on

26 which he premises his claims against BofI.  (Towill Decl., Ex. G, p. 117:5-6.)

27 Erhart's deletion of evidence has obscured the factual predicate of this case by

28 destroying evidence directly related to Erhart's allegations against BofI.

-14-

1  Furthermore, as a result of Erhart's actions, BofI has expended more than
2  $52,425 in fees to its forensic computer analyst to identify information Erhart
3  deleted from his various devices.  (Armstrong Decl., ¶ 32.)  Moreover, BofI will
4  incur expense to recover the deleted material that appears recoverable.  (*Id.*, ¶ 31.)
5  Thus, it is clear that Erhart's actions were intended to and, in fact, did prejudice
6  BofI.

7

8  **E.**     **The Court Should Impose Sanctions Against Erhart for his Spoliation of**
9  **Evidence.**

10  A district court's inherent power includes the authority to issue monetary
11  sanctions, issue-preclusion sanctions, evidentiary sanctions, and adverse inference
12  sanctions.  *See Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337,
13  348 (9th Cir. 1995); *Apple*, 881 F. Supp. 2d at 1138.  The court should tailor the
14  punishment to the crime and select the most appropriate sanction for the conduct at
15  issue.  *See id.*  Any remedy applied to a spoliator should be designed to: (1) deter
16  parties from engaging in spoliation; (2) place the risk of an erroneous judgment on
17  the party who wrongfully created the risk; and (3) restore the prejudiced party to the
18  same position he would have been absent the wrongful destruction of evidence by
19  the opposing party.  *Apple*, 881 F. Supp. 2d at 1136.

20  Terminating sanctions are more than appropriate here given Erhart's clear
21  intent to prevent BofI from defending itself by destroying evidence he knew would
22  relevant to this lawsuit specifically to prevent BofI from obtaining it.  Moreover,
23  Erhart continued destroying evidence in spite of two court orders that expressly
24  prohibited him from doing so.  (*See* Armstrong Decl., ¶ 14, 17& RJN, Exs.  J, K.)

25  At a minimum, however, jury instructions regarding spoliation and monetary
26  sanctions should be imposed in order to punish Erhart's conduct, deter future
27  spoliation, place the risk of erroneous judgment on Erhart, and restore BofI to the
28  same position it would have been absent Erhart's actions.

1.      **Terminating Sanctions are Warranted.**

Erhart's actions justify imposition of terminating sanctions.  *Leon v. IDX*, 464 F.3d 951 (9th Cir. 2006) is instructive on this point.  In *Leon*, plaintiff sued his former employer, IDX, for wrongful termination and related claims.  At the outset of litigation, IDX requested that Leon return his company-issued laptop.  Leon subsequently returned the laptop, and IDX discovered that data had been intentionally destroyed, and that the laptop had been used to view pornography in violation of IDX's policies.  *Id.* at 956.  At deposition, Leon admitted deleting directories of files from the laptop.  IDX moved for dismissal sanctions based on the court's inherent authority, which the district court granted, and the Ninth Circuit affirmed.

The *Leon* Court found that dismissal was appropriate, finding that "Leon's destruction of 2,200 files on his employer-issued computer 'greatly impeded resolution of the case' by obscuring the factual predicate of the case and consuming months of sanction-related litigation."  *Id.* at 958, fn 1.  "Here, there was ample evidence of the time and resources spent in investigating and resolving the spoliation issues."  *Id.*

The *Leon* court also found Leon's destruction of evidence to be "willful."  *Id.* at 959.  The court noted that "Leon admits that he intended to destroy information, including evidence of pornographic files, but he contends that his intent was merely to protect his privacy.  Leon had ample notice, however, that the files he destroyed were not merely 'private' and were potentially relevant to the litigation at hand."  *Id.* "Moreover, because the relevance of destroyed documents cannot be clearly ascertained because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents."  *Id.* (internal quotations omitted).

Additionally, the *Leon* court determined IDX had suffered prejudice as a result of the data deletion.  It explained that destruction of evidence causes prejudice

when it "threaten[s] to interfere with the rightful decision of the case," or when it forces the other side "to rely on incomplete and spotty evidence." *Id.* (internal quotations omitted). The court found that "Leon's spoliation threatened to 'distort the resolution of the case,' because any number of the 2,200 files could have been relevant to IDX's claims or defenses, although it is impossible to identify which files and how they might have been used." *Id.* at 960 (internal citations omitted). The Ninth Circuit noted that at least some of the deleted files would have been pertinent to IDX's defenses, because Leon's employment agreement had prohibited him from using the laptop to access sexually explicit material. *Id.*

Lastly, the *Leon* court concluded the trial court properly declined to issue lesser sanctions "because a ruling excluding evidence would be futile, and fashioning a jury instruction that creates a presumption in favor of IDX 'would leave Defendants equally helpless to rebut any material that Plaintiff might use to overcome the presumption.'" *Id.* Thus, the court found that dismissal was the appropriate sanction for Leon's conduct.

Just as in *Leon*, Erhart's conduct warrants terminating sanctions because he deleted relevant evidence, his spoliation was intentional and it has threatened to interfere with the rightful decision of the case. Just like Leon, Erhart had notice that the evidence he deleted was relevant to threatened or pending litigation. While the data has been deleted and thus, relevance cannot be clearly ascertained, the fact that many of the distinct file names of the evidence Erhart deleted match allegations in Erhart's Complaint provides sufficient reason to believe that the evidence he destroyed was relevant to this action. (*See* Armstrong Decl., Exs. B-F; ECF No. 1, ¶ 9-70.) Furthermore, Erhart has admitted that he intentionally and purposefully deleted thousands of files from not only his work-issued laptop computer, but other computers and devices. (Towill Decl., Ex. G, p. 116:14-117:7, 145:9-146:11, 147:4-8, 165:9-11.) As a result of Erhart's actions, BofI is forced to rely on incomplete evidence, which threatens to distort the proper resolution of this case.

1    In the few months since this action was filed, the vast majority of litigation-

2  related activity has centered on spoliation-related activities, including the request

3  and entry of a TRO and Supplemental TRO in the related *BofI* Action, expedited

4  discovery to determine the extent of Erhart's public dissemination and destruction of

5  evidence, a motion for preliminary injunction to prevent further destruction of

6  evidence, among other things, and now this motion.  In addition, BofI has incurred

7  over $50,000 in expenses to its forensic computer analyst for the sole purpose of

8  determining what evidence Erhart destroyed and whether it might be recovered.

9  (Armstrong Decl., ¶ 32.)

10    Furthermore, as in *Leon*, lesser sanctions will not cure this prejudice.  A jury

11  instruction will not suffice, because Erhart will likely be able to overcome any

12  adverse inference by providing self-serving testimony at trial.  Evidentiary or issue

13  sanctions which fail to dispose of the causes of action also will not cure the

14  prejudice.

15

16    **2.    The Court Should Grant Jury Instructions re Spoliation.**

17    Should the Court elect not to impose terminating sanctions against Erhart at

18  this time, it should, in the alternative, impose jury instructions concerning spoliation

19  to ensure that the risk of an erroneous judgment is correctly placed on Erhart.

20    The case of *Nucor Corp. v. Bell*, 251 F.R.D. 191 (D.S.C. 2008), is instructive

21  here.  In *Nucor*, a former employee was sued for, among other things,

22  misappropriation of trade secrets.  *Id.* at 193.  The employee admitted to destroying

23  a thumb drive, which contained company documents when he knew he had a duty to

24  preserve information.  *Id.*  at 194.  The Court granted jury instructions regarding

25  spoliation, permitting the jury to draw an adverse inference if it found that spoliation

26  took place.  *Id.* at 201-204.

27    Such jury instructions are appropriate here. By destroying relevant evidence

28  in spite of his duty to preserve it, Erhart has created a risk that a jury could

-18-

1    erroneously find in Erhart's favor because key evidence has been destroyed that

2    would otherwise disprove Erhart's claims or aid in BofI's defense.  Thus, to restore

3    balance to these proceedings, the court should grant jury instructions that would

4    instruct the jury to draw an adverse inference against Erhart because of his

5    spoliation of evidence relevant to his claims.

### 3.    The Court Should Award Monetary Sanctions.

Monetary sanctions should be imposed against Erhart to deter them from future wrongdoing and make BofI whole.  Spoliation sanctions should return a party to the position it would have been in had the spoliator not destroyed evidence. *Apple*, 881 F. Supp. 2d at 1136.  Monetary sanctions should include "those expenses and fees that were reasonably necessary to resist the offending action." *Straitshot Communs. v. Telekenex, Inc*., 2012 U.S. Dist. LEXIS 166305, 12 (W.D. Wash. Nov. 20, 2012).

BofI should be granted both the fees it has paid to its forensic computer analyst to perform the forensic examinations of Erhart's computers and flash drives, as well as its attorneys' fees in bringing this motion.  To date, BofI has incurred $52,435 to conduct forensic analyses of Erhart's computers and electronic devices to identify that spoliation occurred.  (Armstrong Decl., ¶ 32.)  BofI will incur $1,330 to $2,660  to attempt to restore the destroyed data that appears recoverable.  (*Id.*, ¶ 31.)

BofI has also incurred $34,250 in attorneys' fees to bring this motion and anticipates that it will incur an additional $8,325 to review the opposition and prepare its reply.  (Towill Decl., ¶ 5.)  Accordingly, BofI asks that monetary sanctions in the amount of $95,010 be imposed against Erhart.

1

### V.

### CONCLUSION

For the foregoing reasons, BofI requests that the Court grant its motion and dismiss Plaintiff's Complaint with prejudice.  In the alternative, BofI requests that the Court impose jury instructions re spoliation, order Erhart to pay to BofI monetary sanctions in the amount of $95,010, and order Erhart to pay the cost for BofI to attempt to recover the deleted evidence.

Dated:  February 19, 2016

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By    _____
                    */s/ Polly Towill*
                POLLY TOWILL

            Attorneys for Defendant
            BofI HOLDING, INC.
        Email:  ptowill@sheppardmullin.com

Case No. 15-cv-2287-BAS-NLS
MEMO OF POINTS AND AUTHORITIES ISO BOFI'S MOTION FOR SPOLIATION OF
EVIDENCE AGAINST CHARLES MATTHEW ERHART