**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARLES MATTHEW ERHART, <br><br> Plaintiff, <br><br> v. <br><br> BOFI HOLDING, INC., <br><br> Defendant. | Case No. 15-cv-02287-BAS(NLS) <br><br> **ORDER DENYING DEFENDANT BOFI HOLDING, INC.'S MOTION FOR IMPOSITION OF SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST PLAINTIFF CHARLES MATTHEW ERHART** <br><br> **[ECF No. 12]** |

On October 13, 2015, Plaintiff Charles Matthew Erhart commenced this whistleblower retaliation action against Defendant BofI Holding, Inc. ("BofI") alleging violations of the Sarbanes–Oxley Act of 2002, the Dodd–Frank Wall Street Reform and Consumer Protection Act, and California state law. (ECF No. 1.) Several days later, BofI brought a countersuit against Erhart alleging he violated California state law and the Computer Fraud and Abuse Act by publishing BofI's confidential information and deleting hundreds of files from his company-issued laptop. *See generally BofI Federal Bank v. Erhart*, No. 15-cv-02353-BAS(NLS) (S.D. Cal. filed Oct. 19, 2015) ("Countersuit").

//

BofI now seeks a terminating sanction against Erhart because it claims he "has engaged in a pattern and practice of destroying relevant evidence in order to prejudice" BofI and "hinder its ability to defend itself in this action." (Mot. 1:3–5, ECF No. 12.) Alternatively, BofI requests the Court give an adverse inference jury instruction and impose monetary sanctions against Erhart. (*Id.* 15:1–19:24.) In response, Erhart argues this motion "is about copies of copies of documents that the moving party has always had in its possession," and BofI is trying "yet another tactic to turn the spotlight away from its own wrongdoing and attack [him] by bringing this motion for sanctions." (Opp'n 1:2–9, ECF No. 18.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **DENIES** BofI's motion for spoliation sanctions.

I. **BACKGROUND**

Erhart is a former BofI employee who claims BofI retaliated against him for reporting conduct he believed to be wrongful to the government. (*See generally* Compl. ¶¶ 9–52, ECF No. 1.) This motion revolves around whether Erhart has destroyed evidence by deleting files from several electronic devices. These devices are: (i) Erhart's BofI-issued laptop, (ii) two USB flash drives, (iii) Erhart's personal desktop computer, and (iv) Erhart's girlfriend's Apple MacBook laptop. (Armstrong Decl. ¶ 3, ECF No. 13.)

Erhart acquired the first of these devices—his BofI-issued laptop—when he joined BofI as an internal auditor in September 2013. (Tolla Decl. ¶ 3, ECF No. 12-5.) Eighteen months later, Erhart requested, and was granted by BofI, an unpaid leave of absence beginning on March 6, 2015. (*Id.* ¶ 5.) Shortly after his leave of absence commenced, Erhart met with regulators at the United States Department of the Treasury's Office of the Comptroller of the Currency ("OCC") to report BofI's alleged wrongdoing. (Erhart Dep. 96:15–19, 162:14–163:6, ECF No. 12-3; *see also*

Order Den. BofI's Am. Mot. For Prelim. Inj., Section I.B., Countersuit, ECF No. 18.) Around the same time, BofI informed Erhart that he was not authorized to retain possession of his BofI laptop while he was on leave. (Tolla Decl. ¶ 5.) Erhart returned the laptop to BofI on March 12, 2015. (*Id.*) Since then, BofI's forensic analyst has determined that Erhart deleted hundreds of files from the laptop prior to returning it. (*See* Armstrong Decl. ¶¶ 2–3.)[1]

Erhart explains that, after he provided documents on the laptop to the OCC to support his claims of wrongdoing, he "deleted [from the laptop] some random emails as well as some of the documents in order to make it more difficult [for BofI] to follow our audit trail." (Erhart Decl. ¶ 7, ECF No. 18-7.) However, when he initially acquired the BofI documents on the laptop, he "did not remove or delete any

---

[1] BofI moves for an order sealing portions of the Armstrong Declaration and the entirety of Exhibits B, C, D, E, and F attached to this declaration. (ECF No. 19.) These items contain file names of BofI documents and "provide a detailed snapshot of BofI's proprietary and non-public information technology infrastructure." (Tolla Decl. ¶¶ 7–8, ECF No. 15-2.) Under Ninth Circuit law, the legal standard governing public access to filed motions and their attachments turns on whether the motion is more than tangentially related to the merits of the case. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id.* When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies. Here, notwithstanding BofI's request for a terminating sanction, the Court finds that BofI's motion is not more than tangentially related to the merits of this whistleblower retaliation action. The motion concerns only whether Erhart deleted files after he reported BofI's alleged misconduct to the OCC—it does not concern the merits of Erhart's whistleblower retaliation claims or his state law causes of action. Thus, the good cause standard applies to BofI's request. Upon review of the declaration of BofI's Chief Governance, Risk & Compliance Officer filed in support of BofI's motion to seal (ECF No. 15-2), the Court finds BofI has made a "particularized showing" of good cause to seal these items. *See In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012). Accordingly, the Court **GRANTS** BofI's motion to seal (ECF No. 15).

information in the Bank's systems[.]"[2] (*Id.* ¶ 4.) Therefore, Erhart submits that these documents "were all copies of documents at the Bank."[3] (*Id.* ¶ 7.) All of these events occurred prior to Erhart retaining counsel and eventually commencing this action. (*See id.*)

Erhart turned over the rest of the electronic devices at issue to BofI during litigation. In BofI's Countersuit, the Court entered a stipulated temporary restraining order. (Countersuit, ECF No. 10 at 2:15–19.) The restraining order required Erhart to deliver to BofI "all BofI records and documents and any Confidential Information in any form, including but not limited to documents or electronically stored information stored in any medium within his . . . custody, possession, or control." (*Id.* at 2:15–19.)

Afterwards, on November 9, 2015, Erhart produced a USB flash drive containing BofI files to BofI's expert. (Armstrong Decl. ¶ 13.) Several files were deleted from the drive a few days prior to it being surrendered to BofI. (*Id.* ¶¶ 13–15.) Erhart states: "Once litigation began, I cooperated with the Bank in its seeking the return of information I had in my possession . . . . I organized the materials and

---

[2] Conspicuously missing from BofI's briefing is any indication that it does not possess at least some, if not all, of the files Erhart made copies of at BofI. Presumably, BofI seeks to take advantage of presumptions in spoliation law by demonstrating Erhart destroyed files and then leaving it to Erhart to try to prove BofI still has these files and has not suffered meaningful prejudice. When Erhart responds that he only copied files and that the original files remain on BofI's system, BofI replies with a barrage of evidentiary objections but no meaningful suggestion to the contrary. Although BofI's strategy may be a savvy litigation tactic, the Court has trouble turning a blind eye to the fact that BofI has already demonstrated it is in possession of files Erhart made copies of. In moving for a preliminary injunction against Erhart in its Countersuit, BofI submitted evidence that one of its executives had reviewed the list of files deleted from Erhart's laptop. For various files on this list, he declared that: "These files are Confidential Information because **they are identical to files held at BofI**, which **I have personally reviewed** and which contain nonpublic information . . . ." (Tolla Decl. ¶ 9, Countersuit, ECF No. 7-4 (emphasis added).)

[3] BofI objects to Erhart's statement that these files are "copies of documents at the Bank" because "Erhart has no personal knowledge regarding the contents of BofI's system or document files." (ECF No. 19-5 at 24:25–27.) Erhart may not know which files BofI has retained on its systems, but he does have personal knowledge to state that the files that were in his possession were copies of files he found on BofI's systems. Thus, the Court overrules this objection. To the extent the Court relies on any other evidence objected to by BofI in its twenty-five pages of evidentiary objections (ECF No. 19-5), the Court overrules BofI's objections.

turned them over to forensic people sent to my home by the Bank's lawyers. From the thumb drive I only deleted duplicates of files I had copied to it." (Erhart Decl. ¶ 8.)

On November 16, 2015, the Court granted the parties' request to enter a supplemental temporary restraining order in BofI's Countersuit. (Countersuit, ECF No. 17.) This order required Erhart to—in addition to those requirements contained in the initial restraining order—provide a signed declaration to BofI that he had returned all of BofI's information and "[d]elete all references to and/or summaries of BofI's Confidential Information in his possession, custody, or control." (*Id.* 2:25–27.) Erhart later provided his personal desktop computer, another USB flash drive, and his girlfriend's Apple MacBook laptop to BofI in an effort to comply with the parties' agreements and the Court's restraining orders. (*See* Armstrong Decl. ¶¶ 16, 20, 26.) BofI's expert determined that, at some point, BofI files had been deleted from these three devices as well. (*Id.* ¶¶ 17–19, 22–24, 28–30.) BofI now moves for spoliation sanctions, claiming Erhart intentionally destroyed evidence by deleting files from his BofI-issued laptop, the two USB flash drives, his desktop computer, and his girlfriend's laptop. (ECF No. 12.)

## II. ANALYSIS

### A. Destruction of Evidence

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence[,] in pending or reasonably foreseeable litigation.'" *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 625 (C.D. Cal. 2013) (alteration in original) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). "The party requesting sanctions bears the burden of proving, by a preponderance of the evidence, that spoliation took place." *Tetsuo Akaosugi v. Benihana Nat'l Corp.*, No. C 11-01272 WHA, 2012 WL 929672, at *3 (N.D. Cal. Mar. 19, 2012) (citing *Akiona v. United States*, 938 F.2d 158 (9th Cir.

1991)); *see also, e.g.*, *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052–53 (S.D. Cal. 2015). Thus, the party seeking sanctions must initially demonstrate that evidence has in fact been destroyed. *See, e.g.*, *Tetsuo*, 2012 WL 929672, at *3. To destroy is "[t]o damage (something) so thoroughly as to make unusable, unrepairable, or nonexistent; to ruin <destroying evidence>." *Destroy*, Black's Law Dictionary (10th ed. 2014).

      To illustrate, in *Tetsuo*, the plaintiff in an employment suit copied thousands of files from the defendant employer's computer onto a USB flash drive the day before his counsel signed his complaint. 2012 WL 929672, at *1–2. He later deleted thousands of files on the flash drive after his deposition and before surrendering the drive to the defendant. *Id.* at *2. There was no indication, however, that the plaintiff "had deleted any documents from the [defendant's] computer." *Id.* Upon discovering that the plaintiff had deleted files from the flash drive, the defendant moved for sanctions, despite that it had "since been able to recover approximately 6300 files deleted from the thumb drive." *Id.* The court denied the motion, reasoning: "[The] [p]laintiff never deleted any documents from the company computer. The deletion of files from the USB drive thus has not limited defendant in its ability to find its own records to defend this suit. Whatever documents were on the company computer are still on it, unharmed." *Id.* at *3. In other words, the defendant's documents had not been destroyed. *See id.*

      Here, the Court finds BofI has not met its initial burden of demonstrating Erhart destroyed evidence with respect to many of the files that are at issue. In its motion, BofI often equates deleting computer files with destroying evidence. (*See, e.g.*, Mot. 11:18–12:7.) But, as confirmed by BofI's expert, deleting a computer file does not necessarily destroy the file because it may still be recoverable. (*See* Armstrong Decl. ¶¶ 11, 19, 24.) If a file is recoverable, it has not been "damage[d] so thoroughly as to make [it] unusable, unrepairable, or nonexistent." *See Destroy*, Black's Law Dictionary (10th ed. 2014). As detailed below, many of the files Erhart

deleted are recoverable; therefore, BofI has not met its initial burden of demonstrating these files have been destroyed.

### 1. Erhart's BofI-Issued Laptop Computer

The first instance of claimed spoliation involves Erhart's BofI-issued laptop computer. BofI's expert determined that on March 12, 2015, Erhart deleted "957 files and folders" from the laptop prior to returning it to the company. (Armstrong Decl. ¶ 10.) "Approximately 79 of these deleted objects relate to the operating system and applications and, therefore, are excluded from further discussion." (*Id.*) Thus, 878 deleted objects are at issue. (*Id.* ¶ 11.) Consistent with Erhart's statement that he deleted "some random e-mails" from the laptop, the deleted files include e-mails with subject lines such as "BOFI Christmas Party Gift Winners!"; "BOFI SHIRTS"; and "DAYLIGHT SAVING TIME BEGINS." (*Id.* Ex. B.) Although these 878 files have been deleted, 849 "have not been overwritten and are candidates for forensic recovery." (*Id.* ¶ 13.) Accordingly, BofI has not shown that these 849 files have been destroyed.

Thus, the Court is left with evidence that 29 files have been destroyed on the laptop. BofI has lost access to potential torpedoes to Erhart's case such as e-mails titled "Register now for two 'Ask the Fed' sessions 'Commercial Real Estate' and 'Interest Rate Risk'"; "Flu Season"; and "REFRIGERATOR !!". (Armstrong Decl. Ex. B.) Aside from these e-mails, it does appear that some potentially relevant files have been destroyed. However, many of these overwritten files reappear in a recoverable form on the other media devices discussed in this Order below.

### 2. First USB Flash Drive

On November 9, 2015, Erhart produced a USB flash drive to BofI's expert. (Armstrong Decl. ¶ 13.) The drive contains numerous files that Erhart transferred to the drive on November 7, 2015, to return these items to BofI pursuant to the Court's

temporary restraining order in BofI's Countersuit. (*See id.* ¶ 13, Ex. C.) The drive also indicates that "[e]leven files, also copied to the [device] on November 7, 2015, have been deleted." (*Id.* ¶ 13.) However, only one of these eleven files has been overwritten and destroyed—a file titled "Employee Account Review 2." (*Id.* Ex. C.) This particular file is lost, but Erhart returned to BofI another file titled "Employee Account Review." These two files have the exact same file size—3,291,345 bytes—indicating they are identical. (*See id.*) This indication is consistent with Erhart's claim that he only deleted "from the thumb drive . . . duplicates of files" that he had copied to the drive. (Erhart Decl. ¶ 8.) Accordingly, because Erhart provided to BofI a duplicate of the only file on this flash drive that has been destroyed, the spoliation inquiry ends here for this electronic device.

### 3. Erhart's Personal Desktop Computer

The next instance of claimed destruction of evidence involves Erhart's personal desktop computer, which he surrendered to BofI for analysis on December 8, 2015. (Armstrong Decl. ¶ 16.) BofI's expert opines that "[t]he Recycle Bin of the 'erhartm' user profile on the HP desktop computer contains approximately 1,500 files facially relevant to BofI . . . [which] were deleted and **moved to the Recycle Bin** on or around December 5, 2015." (*Id.* (emphasis added).) In other words, the 1500 "deleted" files are still sitting in the computer's Recycle Bin. (*See id.*) BofI's expert astutely admits that these files "are candidates for forensic recovery." (*See id.* ¶ 19.) He did, however, locate an additional six files "beyond the files located in the Recycle Bin" that were previously stored on the device and are potentially related to BofI. (*Id.*) Two of these files have been both deleted and overwritten. (*Id.*) Therefore, out of approximately 1506 files, the Court finds BofI has satisfied its burden of demonstrating just two files have been destroyed.

Additionally, many of the files sitting in the desktop computer's Recycle Bin have the exact same file names and are the exact same sizes as the 29 files that are

unrecoverable from the laptop. For example, one of the files on the laptop that has since been destroyed was an e-mail message with the name "RE SEC Subpoena-Internal Audit Review." (Armstrong Decl. Ex. B.) The file size was 699,904 bytes. (*Id.*) Several copies of an e-mail message with the exact same title are sitting in the Recycle Bin on the image of Erhart's desktop computer's drive in BofI's possession. (*Id.* Ex. D.) Unsurprisingly, these copies also have a file size of exactly 699,904 bytes. (*Id.*) Accordingly, aside from potentially losing metadata associated with the destroyed duplicates, which the Court addresses below, BofI has not demonstrated that these files have been destroyed because it has access to duplicate copies sitting in the Recycle Bin on BofI's image of Erhart's desktop computer's hard drive. Instead of seeking a terminating sanction against Erhart, BofI could simply drag these files out of the Recycle Bin and open them.

### 4. Second USB Flash Drive

A second USB flash Drive surrendered by Erhart on December 8, 2015, is the fourth item on the list. It contains a few dozen deleted files in a deleted "BofI" folder and another folder titled "0319025" that remains active on the drive. (Armstrong ¶¶ 21–24.) All of these files "are candidates for forensic recovery." (*Id.* ¶ 24.) Therefore, BofI has not met its burden of demonstrating these files have been destroyed, and the spoliation inquiry ends here for this device as well.

### 5. Erhart's Girlfriend's Apple MacBook Laptop

The last instance of claimed spoliation involves an Apple MacBook laptop belonging to Erhart's girlfriend. (Armstrong Decl. ¶ 26.) This device was similarly surrendered to BofI for analysis on December 8, 2015, and it once contained "more than 300 unique facially-relevant filenames." (*Id.* ¶ 28.) When the expert includes "duplicate copies previously stored across all folders . . . the number of facially-relevant filesexceeds [sic] 550." (*Id.*) Further, a review of the MacBook's hard drive

"revealed no readily recoverable deleted content pertinent to this investigation." (*Id.*) Accordingly, these several hundred files appear to have been destroyed. However, almost all of the files deleted from the MacBook appear to be exact duplicates of files on other devices—presumably because they were transferred from Erhart's BofI laptop or desktop computer to the MacBook. (*See id.* Exs. B, D, F.) There is no suggestion that the MacBook was used to initially copy files from BofI's systems. That said, BofI has met its burden of showing these particular duplicates and possibly some other files on the MacBook have been destroyed.

In sum, it is unclear what, if any, potentially relevant evidence has been destroyed from the five electronic devices used by Erhart. Almost all of the deleted files are likely recoverable—either by extracting them from the Recycle Bin or by using more sophisticated data recovery techniques. As for the files that are not recoverable, it appears there are identical copies of many, or possibly all, of these files available from other sources discussed in this motion.

Nonetheless, it is possible that a fraction of the deleted files that have been destroyed are relevant. It is also possible that duplicates of these files are not available from other sources. In addition, BofI argues there could have been valuable metadata associated with some of the duplicates of files that have been destroyed.[4] The Court acknowledges this possibility. Thus, the Court turns to considering whether it is appropriate to impose spoliation sanctions against Erhart.

//

//

//

---

[4] "Metadata is simply data that provides information about other data." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 925 n.5 (9th Cir. 2015) (quoting Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc., 718 F.3d 249, 253 n.4 (4th Cir.2013)). In this setting, it is "electronically-stored evidence that describes the 'history, tracking, or management of an electronic document.'" *See Aguilar v. Immigration & Customs Enf't Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350, 353–55 (S.D.N.Y. 2008) (quoting Williams v. Sprint/United Mgmt. Co., 230 F.R.D. 640, 646 (D. Kan. 2005)) (discussing metadata and delineating substantive metadata, system metadata, and embedded metadata).

### B. Imposition of Sanctions

Even if a party has destroyed evidence, this fact "does not necessarily mean that the party has engaged in sanction-worthy spoliation." *See Reinsdorf*, 296 F.R.D. at 626 (quoting *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 799–800 (N.D. Tex. 2011)). To determine whether to impose sanctions for spoliation, "[t]rial courts have widely adopted the Second Circuit's three-part test" used for determining whether to grant an adverse inference spoliation instruction. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) ("*Apple II*"). This test provides that a party seeking an adverse inference instruction based on spoliation must establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.* at 989–90.

Here, BofI has not established that the spoliation criteria are satisfied for each claimed instance of spoliation. In particular, the Court finds that so far as Erhart destroyed files after the Court entered its supplemental temporary restraining order in BofI's Countersuit, these files were not destroyed "with a culpable state of mind." *See Apple II*, 888 F. Supp. 2d at 989. The Court's supplemental restraining order required Erhart to "[d]elete all references to and/or summaries of BofI's Confidential Information in his possession, custody, or control." (Countersuit, ECF No. 17 at 2:25–27.) Erhart describes his interpretation of this order as follows:

> After I gave the forensic people everything (with the exception of the cover emails to the OCC, I deleted the files on my own computer and on my girlfriend's . . . . I thought the court order required me not to keep anything after I turned it all over to the forensic people sent by the Bank's lawyers. I understood that we would later ask for them back during discovery.

(Erhart Decl. ¶ 9.) BofI naturally has a different interpretation of the interplay

between the restrictions in the stipulated supplemental temporary restraining order. (*See* Reply 6:13–22, ECF No. 19.) But the Court agrees with Erhart that part of the restraining order is ambiguous, and the Court will not construe this ambiguity against Erhart to find that he had a culpable state of mind when he deleted files after the order was entered. (*See* Erhart Decl. ¶ 9, *see also* Order Den. BofI's Am. Mot. For Prelim. Inj. 20:24–28, Countersuit, ECF No. 18.) Thus, imposing spoliation sanctions as to Erhart's conduct with respect to his personal desktop computer and his girlfriend's Apple MacBook laptop is not appropriate.

Because the Court already found above that BofI has not met its initial burden of demonstrating Erhart destroyed evidence on the two USB flash drives, the only device left is Erhart's BofI-issued laptop computer. The Court will assume, for the sake of argument, that BofI has satisfied the three-part test for demonstrating Erhart engaged in spoliation by destroying the fraction of the files on this laptop that are discussed above. Nonetheless, as discussed below, the Court ultimately finds no sanction is appropriate regardless of whether or not Erhart had a duty to preserve these files and deleted them with a culpable state of mind.

### C. <u>Appropriate Sanction</u>

Assuming Erhart culpably destroyed evidence on his BofI-issued laptop, the Court considers what, if any, sanction is appropriate. "A trial court's discretion regarding the form of a spoliation sanction is broad, and can range from minor sanctions, such as the awarding of attorneys' fees, to more serious sanctions, such as dismissal of claims or instructing the jury that it may draw an adverse inference." *Apple Inc. v. Samsung Elecs. Co.*, 881 F.Supp.2d 1132, 1135 (N.D. Cal. 2012) ("*Apple I*"). "Any remedy applied to a spoliator 'should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been absent the wrongful destruction of evidence by

the opposing party.'" *Id.* at 1136 (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 521, 534 (D. Md. 2010)). "In considering what spoliation sanction to impose, if any, courts generally consider three factors: '(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party.'" *Apple II*, 888 F. Supp. 2d at 992 (quoting *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008)).

In addition, if a party requests a terminating sanction, the Ninth Circuit has explained that district courts should consider five factors before imposing this harsh sanction. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). These factors are: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* (quoting *Anheuser-Busch*, 69 F.3d at 348); *accord U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 603 (9th Cir. 1988). The court is not required to make explicit findings regarding each of these factors. *Leon*, 464 F.3d at 958 (citing *Willtec Guam*, 857 F.2d at 603). Yet, "a finding of 'willfulness, fault, or bad faith' is required for dismissal to be proper." *Id.* (quoting *Anheuser-Busch*, 69 F.3d at 348). In addition, the court "must consider 'less severe alternatives' than outright dismissal." *Id.* (quoting *Willtec Guam*, 857 F.2d at 604).

Thus, regardless of the type of sanction requested by BofI, whether it has suffered prejudice influences the Court's analysis of which sanction "to impose, if any." *See Apple II*, 888 F. Supp. 2d at 992; *see also Leon*, 464 F.3d at 959–60. "The prejudice inquiry 'looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (alteration in original). "In the Ninth

Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Apple II*, 888 F. Supp. 2d at 993 (citing *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No. C 06–3359 JF, 2009 WL 1949124, at *10 (N.D. Cal. July 2, 2009)).

Here, even if spoliation has occurred, the Court finds sanctions are not appropriate because BofI has not suffered any meaningful prejudice. Only a fraction of the files deleted on Erhart's BofI-issued laptop (29 of 878) have been destroyed. Further, as to the 29 files that have been destroyed, the Court finds Erhart has rebutted the presumption for some of these files that they go "to the merits of the case." *See Apple II*, 888 F. Supp. 2d at 993. For example, destroyed e-mails like "REFRIGERATOR !!" do not concern the merits of Erhart's whistleblower retaliation claims. And again, for many of the files that have been permanently deleted from the laptop, there are identical copies in BofI's possession.

Faced with Erhart's claim that it has not suffered any prejudice because it has access to copies of the files he destroyed, BofI argues that "[w]hile it may theoretically be possible to locate the same information in other files on BofI's system and recreate his investigation and findings, it is not BofI's burden to do so." (Reply 7:27–28.) The Court agrees. BofI does not have the burden of proof on Erhart's claims. Erhart is the one who will need to convince the trier of fact that he reasonably believed BofI's conduct was a violation of the laws covered by the whistleblower provisions he invokes. *See Tides v. Boeing Co.*, 644 F.3d 809, 814 (9th Cir. 2011). He will also need to identify the documents supporting his claims before trial. *See* Fed. R. Civ. P. 26(a). If, as BofI claims, he destroyed some of the documents supporting his allegations, then he may have trouble meeting his burden.

Nevertheless, BofI repeatedly complains that is has been deprived of the "trail of evidence" supporting Erhart's allegations. Fortunately for BofI, it can recall the bloodhounds—sitting in the Recycle Bin on the hard drive image in BofI's

possession is a folder titled "Provided to OCC Via Email from BofI laptop" containing the hundreds of files that were presumably collected by Erhart and sent to the OCC. (*See* Armstrong Decl. Ex. D.) The trail has been blazed—BofI need only follow it instead of seeking sanctions against Erhart.

BofI also relies heavily on the Ninth Circuit's decision in *Leon v. IDX Systems Corp.*, 464 F.3d 951, 955 (9th Cir. 2006), to support its request for sanctions, but that case is distinguishable. There, after litigation commenced, the plaintiff deleted more than 2,200 files from the defendant company's laptop and also "wrote a program to 'wipe' any deleted files from the unallocated space in the hard drive." *Leon*, 463 F.3d at 956. Some of the files permanently wiped from the work laptop contained pornographic content, which would have been "at the heart" of the defendant's defense to the plaintiff's employment discrimination claims. *Id.* at 956, 960. The Ninth Circuit affirmed because the district court did not abuse its discretion in imposing a terminating sanction. *Id.* at 963. Here, in contrast, only a fraction of the files deleted by Erhart from his BofI-issued laptop have been overwritten and destroyed. Further, duplicates of almost all of these files are available to BofI from the other sources discussed in this motion—in addition to potentially BofI's own systems. Thus, for these reasons, among others, the prejudice suffered by BofI is minimal in comparison to the defendant in *Leon* and does not justify comparable sanctions.

Accordingly, even if spoliation has occurred, the Court finds spoliation sanctions are not appropriate. In particular, the Court concludes BofI has not suffered, and does not face the risk of, prejudice that is sufficient enough to warrant sanctions against Erhart. The Court denies BofI's requests for a terminating sanction, an adverse inference jury instruction, and monetary sanctions.

//

//

//

## III. CONCLUSION & ORDER

In sum, the Court finds imposing sanctions for spoliation of evidence is not appropriate. It is unclear whether any potentially relevant evidence has been destroyed. Rather, the "destroyed" evidence BofI appears to be hunting for is sitting in the Recycle Bin on a hard drive image in BofI's possession. BofI has neither met its burden of demonstrating spoliation has occurred nor shown why imposing sanctions are appropriate.

In light of the foregoing, the Court **DENIES** BofI's motion for imposition of sanctions for spoliation of evidence against Erhart (ECF No. 12). In addition, the Court **GRANTS** BofI's motion to seal (ECF No. 15). The Court **ORDERS** the Clerk of the Court to accept and **FILE UNDER SEAL** the requested documents (ECF No. 16).

**IT IS SO ORDERED.**

DATED: September 21, 2016

Hon. Cynthia Bashant
United States District Judge