SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
POLLY TOWILL, Cal. Bar No. 120420
ptowill@sheppardmullin.com
ANDRE J. CRONTHALL, Cal. Bar No. 117088
acronthall@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

Attorneys for Defendant
BofI HOLDING, INC. and
Plaintiff BofI FEDERAL BANK

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MATTHEW ERHART, an individual,<br><br>              Plaintiff,<br><br>       v.<br><br>BofI HOLDING, INC., an entity d/b/a BOFI FEDERAL BANK and BANK OF THE INTERNET,<br><br>              Defendant.<br><br>―――――――――――――――――<br><br>BofI FEDERAL BANK, a federal savings bank<br><br>              Plaintiff,<br><br>       v.<br><br>CHARLES MATTHEW ERHART, an individual,<br><br>              Defendant. | Case No. 15-cv-2287-BAS-NLS<br>*consolidated with*<br>15-cv-2353-BAS-NLS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BOFI HOLDING, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST, SECOND, FOURTH, SEVENTH, EIGHTH AND NINTH CLAIMS UNDER FED. R. CIV. P. 12(B)(6) AND MOTION TO STRIKE UNDER FED. R. CIV. P 12(F)**<br><br>Date:    December 12, 2016<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Courtroom 4B<br><br>Hon. Cynthia Bashant<br>(Schwartz Courthouse, Courtroom 4B) |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................1

II.   STATEMENT OF RELEVANT ALLEGATIONS ..........................................3

III.  ARGUMENT ..........................................................................................7

      A.    Legal Standard Regarding Motions to Dismiss and to Strike................7

            1.    Rule 12(b)(6) Motion to Dismiss...........................................7

            2.    Rule 12(f) Motion to Strike. ................................................7

      B.    Erhart's First and Second Claims Should be Dismissed Because
            He Fails to Allege Facts Showing That He Qualifies as a
            Whistleblower Under SOX and Dodd-Frank......................................8

            1.    The Elements of a Whistleblower Claim under SOX. .................8

            2.    The Elements of a Whistleblower Claim Under Dodd-
                  Frank. ...........................................................................10

            3.    Erhart Yet Again Fails to Plead the Required Elements of
                  SOX or Dodd-Frank. .......................................................11

                  a.    Erhart Fails To Tether The Alleged Wrongdoing To
                        a Violation of the SOX Listed Categories......................11

                  b.    Erhart Fails to Allege He Reported Many of the
                        Alleged Incidents of Wrongdoing. .................................16

                  c.    Erhart Fails to Plead How Any Alleged Retaliation
                        was Motivated by his Reporting......................................18

      C.    Erhart's Fourth Claim for Violation of the Confidentiality of
            Medical Information Act Should Be Dismissed. .............................18

      D.    Erhart's Seventh Claim for Breach of the Implied Covenant of
            Good Faith and Fair Dealing Should Be Dismissed. .......................19

      E.    Erhart's Eighth Claim for Intentional Infliction of Emotional
            Distress Should Be Dismissed. ................................................20

            1.    Erhart's Claim For Intentional Infliction of Emotional
                  Distress Is Preempted By The Exclusivity Of The
                  Workers' Compensation Act..............................................20

            2.    Erhart Fails To Allege "Extreme and Outrageous" Conduct
                  Required To Maintain an IIED Claim ...................................21

F.    Erhart's Ninth Claim for Defamation Should Be Dismissed for Lack of Sufficient Specificity. ................................................................. 22

G.    Erhart's Immaterial and Impertinent Allegations Should Be Stricken. ..................................................................................................... 23

    1.    Erhart Does Not Allege, for the Majority of His Allegations, that He Engaged in Protected Activity .................. 23

    2.    Because Erhart Failed to Exhaust His Administrative Remedies for Numerous Allegations in the FAC, As Required by SOX, Those Allegations Cannot Form the Basis of His Complaint and Should be Stricken. ...................... 24

    3.    Many of Erhart's Allegations Contain Immaterial and Impertinent Confidential Information. ....................................... 25

IV.    CONCLUSION ............................................................................................... 25

SMRH:479738478.2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS ERHART'S AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Asadi v. G.E. Energy (USA), L.L.C.*
    720 F.3d 620 (5th Cir. 2013) ............................................................................. 10

*Balistreri v. Pacifica Police Dept.*
    901 F.2d 696 (9th Cir. 1988) ............................................................................... 7

*Banko v. Apple Inc.*
    20 F. Supp. 749 (N.D. Cal. 2013) ..................................................................... 10

*Beacom v. Oracle America, Inc.*
    825 F.3d 376 (8th Cir. 2016) ............................................................................. 12

*Bozeman v. Per-Se Technologies, Inc.*
    456 F. Supp. 2d 1282 (N.D. Ga. 2006) ............................................................. 24

*Buscemi v. McDonnell Douglas Corp.*
    736 F.2d 1348 (9th Cir. 1984) ........................................................................... 21

*Chabra v. S. Monterey Cnty. Mem'l Hosp., Inc.*
    1994 WL 564566 (N.D. Cal. Oct. 3, 1994) ...................................................... 22

*Cole v. Fair Oaks Fire Prot. Dist.*
    43 Cal. 3d 148 (1987) ........................................................................................ 20

*Davies v. Broadcom Corp.*
    2015 WL 5545513 (C.D. Cal. Sept. 8, 2015) ................................................... 10

*Deirmenjian v. Deutsche Bank, A.G.*
    526 F. Supp.2d 1068 (C.D. Cal. 2007) ............................................................... 7

*Fantasy, Inc., v. Fogerty*
    984 F.2d 1524 (9th Cir. 1993) ......................................................................... 7, 8

*Guz v. Bechtel Nat. Inc.*
    24 Cal. 4th 317 (2000) ....................................................................................... 19

*Holland v. BP Am., Inc.*
    2012 WL 761980 (E.D. Cal. Mar. 7, 2012) ...................................................... 19

-iii-

*Huntongdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*
129 Cal. App. 4th 1228 (2005) ........................................................... 21

*Jacobson v. Schwarzenegger*
357 F. Supp. 2d 1198 (C.D. Cal. 2004) ............................................... 22

*Janken v. GM Hughes Electronics*
46 Cal. App. 4th 55 (1996) ................................................................. 21

*Jones v. Home Fed. Bank*
2010 U.S. Dist. LEXIS 3579 (D. Idaho Jan. 14, 2010) ........................ 24

*Lopez v. Charles Schwab & Co., Inc.*
118 Cal. App. 4th 1224 (2004) ........................................................... 19

*McClendon v. Hewlett-Packard Co.*
2005 U.S. Dist. LEXIS 29449 (D. Idaho Oct. 27, 2005) ...................... 24

*Milosky v. Regents of the University of California*
44 Cal. 4th 876 (2008) ....................................................................... 20

*Nielsen v. AECOM Tech. Corp.*
762 F.3d 214 (2d Cir. 2014) ................................................. 11, 12, 16

*Pereira v. United States*
347 U.S. 1 (1954) ............................................................................... 13

*Racine & Laramie, Ltd. V. Dep't of Parks and Recreation*
11 Cal. App. 4th 1026 (1992) ............................................................. 19

*Rhinehimer v. U.S. Bancorp Invs., Inc.*
787 F.3d 797 (6th Cir. 2015) ............................................................... 9

*Sclauch v. Hartford Accident & Indemnity Co.*
146 Cal. App. 3d 926 (1983) .............................................................. 21

*Shoemaker v. Myers*
52 Cal. 3d 1 (1990) ............................................................................ 20

*Sidney-Vinstein v. A.H. Robbins Co.*
697 F.2d 880 (9th Cir. 1983) ............................................................... 7

*Sipe v. Countrywide Bank*
690 F.Supp.2d 1141 (E.D. Cal. 2010) ................................................. 19

SMRH:479738478.2

*Somers v. Digital Realty Trust, Inc.*
  2015 WL 4483955 (N.D. Cal. July 22, 2015) ...................................................... 10

*Sylvester v. Parexel Int'l LLC*
  Docket No. 07-123, 32 IER Cases 497, 2011 WL 2165854, (U.S.
  Dept. of Labor May 25, 2011) ............................................................................... 9

*Tides v. The Boeing Co.*
  644 F.3d 809 (9th Cir. 2011) ................................................................................. 8

*Trusz v. UBS Realty Investors*
  2010 WL 1287148 (D. Conn. Mar. 30, 2010) ...................................................... 24

*United States v. Gordon*
  780 F.2d 1165 (5th Cir. 1986) ............................................................................. 13

*United States v. Miller*
  70 F.3d 1353 (1995) ............................................................................................ 14

*United States v. Wise*
  553 F.2d 1173 (8th Cir. 1977) ............................................................................. 13

*Unterberger v. Red Bull North America Inc.*
  162 Cal. App. 4th 414 (2008) .............................................................................. 21

*Van Asdale v. Int'l Game Tech.*
  577 F.3d 989 (9th Cir. 2009) ........................................................................... 8, 14

*Vasquez v. Franklin Management Real Estate Fund, Inc.*
  222 Cal. App. 4th 819 (2013) .............................................................................. 21

*Wiest v. Lynch*
  710 F. 3d 121 (3d Cir. 2013) ............................................................................... 12

*Wiggins v. ING U.S., Inc.*
  2015 U.S. Dist. LEXIS 167362 (D. Conn. Dec. 15, 2015) ........................... 12, 13

*Willis v. Vie Fin. Grp.*
  2004 WL 1774575 (E.D. Pa. Aug. 6, 2004) ........................................................ 24

Statutes

15 U.S.C.§ 78u-6(a)(6) ............................................................................................ 10

15 U.S.C. § 78u-6(h)(1)(A) ..................................................................................... 10

SMRH:479738478.2

18 U.S.C. § 1514A..................................................................................8, 24

Cal. Civ. Code § 56.05(j)................................................................................18

Cal. Civ. Code § 56.20(c)...............................................................................18

Cal. Lab Code § 1102.5..................................................................................23

Cal. Lab Code § 2922....................................................................................19

Cal. Lab Code § 3600(a)................................................................................20

Cal. Lab Code § 3601....................................................................................20

Cal. Lab Code § 3602(a)................................................................................20

Cal. Lab Code § 5300....................................................................................20

<u>Other Authorities</u>

S. D. Cal. Local Rule 15.1(c)............................................................................3

Fed. R. Civ. Proc. 12(b)(6)...............................................................................7

Fed. R. Civ. Proc. 12(f)...................................................................................7

SMRH:479738478.2

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Charles Matthew Erhart alleges that BofI Holding, Inc. (incorrectly sued herein as d/b/a BofI Federal Bank and Bank of the Internet; hereinafter "BofI"), retaliated against him after he supposedly "blew the whistle" concerning a hodge podge of alleged wrongdoing by BofI.  In fact, as his insufficient pleading demonstrates, Erhart and his counsel have slung a multitude of salacious but factually deficient (and false as BofI will prove, if necessary) allegations against BofI in their ill-conceived effort to damage BofI and somehow extract money to which they are not entitled.  Despite having ample opportunity and clear guidance from the Court to properly allege his purported whistleblower retaliation claims, Erhart's First Amended Complaint ("FAC") shows he is simply unable to do so. Accordingly, Erhart's FAC should be dismissed.

The Court's September 26, 2016 order dismissed Erhart's first and second claims for whistleblower retaliation under SOX and Dodd-Frank because Erhart failed to "tether[] the conduct Sarbanes-Oxley and Dodd-Frank seek to uncover and prevent - fraud against shareholders, wire fraud, bank fraud, and the other violations of law these statutes encompass" to the allegations of wrongdoing set forth in his complaint.  In a thorough opinion, the Court laid out the minimum requirements necessary to state a valid whistleblower retaliation claim under SOX and Dodd-Frank, namely that Erhart must plead an objectively reasonable belief that the violations he claims to have reported fall within one of the categories of fraud listed in SOX and Dodd-Frank, and that such reporting was connected to an "unfavorable personnel action" against him.  While the Court noted that Erhart "need not prove these laws were being violated," he must at least "plausibly allege a reasonable belief that they were being violated or that he was providing information relating to a possible securities law violation."  (Dkt No. 22, p. 32.)

Despite being given clear instructions from the Court regarding what he must do to adequately plead a claim for whistleblower retaliation under SOX and Dodd-

Frank, Erhart has once again failed to do so. Instead, Erhart submitted a nearly identical complaint with only two relevant modifications. He first added a new paragraph 74A, in which he lists each of the fifteen allegations of wrongdoing already asserted both in the original complaint and again in the FAC, followed by a laundry list of statutes and regulations he claims the conduct violates, without any identification or explanation as to which statutes or regulations pertain to which alleged act of wrongdoing and why. Erhart also adds identical paragraphs 77A and 91A, in which he states his belief that all of the "actions listed above violated federal statutes, rules and regulations" and that BofI was committing every type of fraud listed under SOX simply because BofI is "heavily regulated." These additions to the FAC fall well short of the "reasonably believes" standard set forth by the Court, requiring a "tethering" of the allegations to the specified categories of fraud under SOX and Dodd-Frank, as well as sufficient detail to allow the Court to determine whether Erhart's claimed belief is objectively reasonable.

Instead, Erhart has once again "hand[ed] the Court a fifteen page fact pattern and ask[ed] it to specify what conduct could be believed to be 'a violation of section 1341 [mail fraud], 1342 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.'" (Dkt No. 22, p. 25.) Further, just as with the original Complaint, Erhart again fails to allege (with just a few exceptions) that the incidents were reported as required. Notably, not even one of the alleged incidents involved the bank fraud or securities violations that are essential to a claim under the whistleblower protection provisions of SOX and Dodd-Frank. Moreover, Erhart does not allege that reporting these items contributed to an adverse employment action against him. Erhart simply asserts broadly that he "reported each of these matters to appropriate government agencies as a whistleblower in April 2015." (FAC, ¶ 46). He fails to allege, as he must, facts showing that BofI knew or suspected that he reported the requisite fraudulent

-2

conduct or securities violations and, for that reason, retaliated against him. Further, none of the alleged conduct was mentioned in Erhart's OSHA charge, which is an essential precondition to raising them here.

While, to date, the focus of this action has centered on the only two federal claims at issue, Erhart's SOX and Dodd-Frank whistleblower retaliation claims, Erhart also has asserted a number of state law claims pursuant to the Court's supplemental jurisdiction. BofI's prior motion to dismiss identified the numerous deficiencies in these causes of action; however, the Court did not reach these claims after dismissing the federal claims and declining to exercise supplemental jurisdiction. Since BofI believes the Court, once again, will not reach these issues because of Erhart's failure to adequately amend his two federal claims, the Court should once again decline to exercise supplemental jurisdiction and dismiss these claims. Should the Court reach these issues, however, the Court will find that they also fail to state claims as a matter of law.

## II. STATEMENT OF RELEVANT ALLEGATIONS

On September 26, 2016, the Court granted in part and denied in part BofI's motion to dismiss Erhart's complaint, which was originally filed on October 13, 2015, dismissing Erhart's first and second claims for whistleblower retaliation under SOX and Dodd-Frank, and dismissing the remainder of his claims after declining to exercise supplemental jurisdiction. (Dkt No. 22, p. 32.) The Court afforded Erhart the opportunity to file an amended complaint to cure the defects in his original complaint. (*Id.*) On October 17, 2016, Erhart filed the FAC. Aside from a few gratuitous "digs" at BofI, the FAC contains no substantive changes to his first and second claims under SOX and Dodd-Frank, respectively. Erhart also failed to provide a red-line of the Complaint and the FAC, as required by Local Rule 15.1(c).

The FAC alleges the same fifteen (15) instances of purported improper conduct by BofI that Erhart asserted in the original complaint, without modification. Instead of repeating its discussion of those alleged incidents from its earlier motion

to dismiss, BofI submits the following chart listing each allegation and depicting

how each one fails to satisfy the relevant pleading requirements:

| Description of Alleged Violation | Failure to Identify A Fraud Under SOX/Dodd-Frank | Failure to Report Alleged Violation | Failure to Allege Reporting Motivated Retaliation | Failure to Include in OSHA Charge |
|---|---|---|---|---|
| BofI failed to notify potential customers that they were being recorded on phone calls from BofI. (FAC, ¶ 13). | X | | X | X |
| BofI altered financials because BofI's Chief Credit Officer mentioned that "he is not responsible for any of the Bank's numbers after they are turned over to the Chief Financial Officer." (FAC, ¶ 17.) | X | X | X | X |
| BofI made untimely 401(k) contributions to employee accounts. (FAC, ¶ 18). | X | X | X | X |
| BofI failed to approve the Fiscal 2015 Strategic Plan. (FAC, ¶¶ 19-21). | X | X | X | X |
| A small number of depositors accounted for a significant percentage of BofI's deposits. (FAC, ¶ 22-24). | X | | X | |
| Erhart's performance evaluation was downgraded, supposedly because of Erhart putting findings in writing. (FAC, ¶ 25). | X | X | X | |
| BofI had information concerning a customer loan responsive to a confidential SEC subpoena that BofI did not disclose. (FAC, ¶ 26-31A.) | X | | X | |

-4-

| Description of Alleged Violation | Failure to Identify A Fraud Under SOX/Dodd-Frank | Failure to Report Alleged Violation | Failure to Allege Reporting Motivated Retaliation | Failure to Include in OSHA Charge |
|---|---|---|---|---|
| BofI incorrectly told the Office of the Comptroller of the Currency ("OCC") that there were no accounts with no Tax Identification Numbers ("TIN's"). (FAC, ¶ 32). | X | X | X | X |
| BofI incorrectly told the OCC that it had not received certain documents received by BofI from banking agencies and law enforcement during a certain time frame, including subpoenas. (FAC, ¶ 33). | X | X | X | X |
| BofI allegedly made loans to criminals and Politically Exposed Persons ("PEP's"). (FAC, ¶ 34). | X | X | X | X |
| A Senior Vice President of BofI changed findings in certain reports required under the Bank Secrecy Act. (FAC, ¶ 35). | X | X | X | X |
| Erhart claims to have discovered that BofI calculated Allowances for Loan and Lease Losses ("ALLL") to exclude unfunded commitments for lines of credit. (FAC, ¶ 36.) | X | X | X | X |
| BofI management did not include issues Erhart identified regarding BofI's compliance with the Flood Disaster Protection Act ("FDPA") in the final audit report. (FAC, ¶¶ 37-39). | X | | X | X |

| Description of Alleged Violation | Failure to Identify A Fraud Under SOX/Dodd-Frank | Failure to Report Alleged Violation | Failure to Allege Reporting Motivated Retaliation | Failure to Include in OSHA Charge |
|---|---|---|---|---|
| BofI revised a list of potential high risk customers provided by BofI vendor Global Cash Card, and then terminated the vendor. (FAC, ¶¶ 40-43). | X | | X | X |
| BofI's CEO and his brother, Steven Garrabrants, may not have reported income to the IRS. (FAC, ¶¶ 44-45). | X | X | X | |

The FAC contains the exact same litany of contrived allegations of claimed wrongdoing that Erhart asserted in his original complaint. In stark contrast, Erhart's vague OSHA complaint (the "OSHA Charge") filed on or about April 14, 2015, is less than six pages long and, despite having been prepared with his counsel's assistance, contains very little detail regarding Erhart's allegations against BofI. For example, it states only in conclusory fashion that he believed "the Bank [was] committing securities fraud, wire fraud, mail fraud, fraud on its shareholders, violations of SEC rules and regulations, and other violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act, and the Sarbanes-Oxley Act," without explaining who allegedly did what, when or where. (Dkt No. 3-3, p. 4). OSHA took no action on Erhart's OSHA Charge. (FAC, ¶ 78). Yet again, Erhart attempts to conceal his failure to inform OSHA of the specific nature of his claims by asserting generically that he exhausted his administrative remedies. Erhart's failure to report each of his allegations to OSHA is fatal to his claims here.

The remainder of Erhart's claims remain unchanged from the original complaint.

# III. ARGUMENT

## A. Legal Standard Regarding Motions to Dismiss and to Strike.

### 1. Rule 12(b)(6) Motion to Dismiss.

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Deirmenjian v. Deutsche Bank, A.G.*, 526 F. Supp.2d 1068, 1073 (C.D. Cal. 2007), citing *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). As stated by this Court:

> "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." A court need not accept "legal conclusions" as true. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the... law[] in ways that have not been alleged."

(Dkt No. 22, p. 14-15 (internal citations omitted).)

A 12(b)(6) motion may be directed at fewer than all of the claims for relief raised.

### 2. Rule 12(f) Motion to Strike.

A Rule 12(f) motion provides a mechanism by which a court may strike any fact alleged in a complaint that is "redundant, immaterial, impertinent, or scandal-lous," or any allegation that is legally defective and is not susceptible to dismissal through a motion under Rule 12(b)(6). *Fantasy, Inc., v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517, 534-35 (1994). The function of a motion to strike is "to avoid the expenditure of time and money that may arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robbins Co.*, 697 F.2d 880, 886 (9th Cir. 1983).

Allegations are immaterial when they have "no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc.*, 984

-7

F.2d at 1528.  Allegations are "impertinent" when they "do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc.*, 984 F.2d at 15287.

**B.** **Erhart's First and Second Claims Should be Dismissed Because He Fails to Allege Facts Showing That He Qualifies as a Whistleblower Under SOX and Dodd-Frank.**

1.    **The Elements of a Whistleblower Claim under SOX.**

As recognized by this Court, to establish a *prima facie* violation of SOX's whistleblower provisions, a plaintiff must plead and prove, among other elements, that he engaged in a protected activity or conduct.  *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009) (citing 29 C.F.R. § 1980.104(b)(1)(i)-(iv)); 18 U.S.C. § 1514A(a)(1).  An employee has engaged in protected activity if he provided information or assistance concerning one or more of the following types of fraud: (i) mail fraud, (ii) wire fraud, (iii) bank fraud, (iv) securities fraud, (v) any rule or regulation of the SEC, or (vi) any Federal law relating to fraud against shareholders.  18 U.S.C. § 1514A(a)(1).  Additionally, the report must be made to a federal regulator or law enforcement agency, Congress, or a supervisor or other individual who has the authority to investigate the misconduct (the "SOX Complaint Recipient").  *Id.*  Importantly, the Ninth Circuit has recognized that the categories of SOX Complaint Recipients that entitle a plaintiff to whistleblower protections are exclusive.  *See Tides v. The Boeing Co.*, 644 F.3d 809, 815 (9th Cir. 2011) (communications to people or organizations outside of those identified in 18 U.S.C. § 1514A(a)(1), such as the media, are insufficient to grant a plaintiff whistleblower protections).

With respect to the requirement that the plaintiff demonstrate he engaged in protected activity, the Court adopted the "reasonable belief" standard set forth in *Sylvester v. Parexel Int'l LLC*, Docket No. 07-123, 32 IER Cases 497, 2011 WL 2165854, at *14-15 (U.S. Dept. of Labor May 25, 2011) (en banc) ("*Sylvester*"). (Dkt No. 22, p. 22).  "To make this showing, the plaintiff must have a 'subjective

-8-

belief' that the challenged conduct violates a relevant law listed in 18 U.S.C. § 1514(a)(1), and this belief must be 'objectively reasonable.'" (Dkt No. 22, p. 19 (quoting *Sylvester*, 2011 WL 2165854, at *12).) As the Court stated:

> "The subjective component is satisfied if the employee actually believed that the conduct complained of constituted a violation of relevant law." Further, the objective component "is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee."

*Id.* at p. 22 (quoting *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 811 (6th Cir. 2015). Given Erhart's position as an internal auditor, and previous experience at FINRA (FAC, ¶ 9), the objective belief element is a higher bar than that for an employee without such credentials. Considered in this light, Erhart's failure to plead facts sufficient to satisfy this element is even more evident.

Based upon this standard, the Court dismissed Erhart's SOX claim in the original complaint. In so doing, the Court noted that:

> Erhart alleges he discovered and reported information regarding a torrent of conduct that runs the gamut from BofI allegedly recording phone calls without callers' consent to hiding information from the OCC…. Nevertheless, Erhart's Complaint does not adequately allege protected activity under Sarbanes-Oxley. Erhart relies on the assumption that a reasonable belief of *any* violation of law is sufficient to constitute protected activity under Sarbanes-Oxley.
>
> …
>
> Erhart never alleges in his Complaint that he believed any of BofI's claimed wrongdoing constituted a violation of any of the categories of laws listed in 18 U.S.C. § 1514A(a)(1)…. Erhart must allege he 'actually believed that the conduct complained of constituted a violation of relevant law….' Erhart did not have to use legal terms of art or 'cite a code section….' Yet, he must still have reasonably believed the information he was reporting constituted the type of conduct forbidden by provisions listed in Sarbanes-Oxley.

(*Id.*, p. 23-25.) Instead, the Court found that Erhart had handed it a "fifteen page fact pattern" and asked the Court to figure out which violations he may have

alleged. (*Id.* at 25-26.) For these reasons, the Court determined that Erhart's SOX claim failed on its face.

Despite the Court's detailed roadmap of what he would need to allege for his pleading to pass muster, Erhart's FAC does nothing to specify how the alleged conduct violated any of the relevant statutes.

### 2.   The Elements of a Whistleblower Claim Under Dodd-Frank.

Dodd-Frank prohibits an employer from taking certain actions, including termination, against employees as a result of the employee providing (1) information to the SEC about securities law violations; (2) initiating, testifying in, or assisting in an investigation or judicial or administrative action of the SEC (inapplicable here because, per Erhart's pleading, no action was taken by the SEC); or (3) making disclosures "required or protected" under SOX (the six categories enumerated above). 15 U.S.C. § 78u-6(h)(1)(A)(i)-(iii).

To be entitled to whistleblower protection under Dodd-Frank, an employee must provide the required information regarding a securities violation or one of the types of fraud specified in SOX. 15 U.S.C. § 78u-6(a)(6) and (h)(1)(A). There is a split of authority in this Circuit regarding whether Dodd-Frank requires the purported whistleblower to report directly to the SEC. *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 625 (5th Cir. 2013); *see also Davies v. Broadcom Corp.*, 2015 WL 5545513, at *4 (C.D. Cal. Sept. 8, 2015) (disagreeing with *Somers v. Digital Realty Trust, Inc.,* 2015 WL 4483955 (N.D. Cal. July 22, 2015)) and *Banko v. Apple Inc.*, 20 F. Supp. 749, 755-757 (N.D. Cal. 2013). For purposes of this motion, it is irrelevant which standard is applied because Erhart's claim for whistleblower retaliation under Dodd-Frank fails regardless.

In dismissing Erhart's Dodd-Frank whistleblower retaliation claim in the original complaint, the Court found that the claim failed "[f]or largely the same reasons that Erhart fails to allege protected activity under Sarbanes-Oxley." (Dkt No. 22, p. 29). The Court determined that, "like he does with his Sarbanes-Oxley

claim, Erhart punts this issue to the Court…. But it is not the Court's role to review Erhart's narrative of his discoveries at BofI and identify for him what information he believed at the time 'relate[d] to a possible securities law violation… or… a possible violation of the provisions' enumerated in Sarbanes-Oxley." (Dkt No. 22, p. 29-30.)

3. **Erhart Yet Again Fails to Plead the Required Elements of SOX or Dodd-Frank.**

The FAC asserts nearly identical SOX and Dodd-Frank claims as the ones the Court dismissed from Erhart's original complaint. In fact, the only modification Erhart made was to add that he "reasonably and actually believed" that his laundry list of allegedly improper conduct "violated federal statutes, rules and regulations." (FAC, ¶ 77A, 91A.) Erhart's sole stated basis for his alleged "reasonable belief" that the conduct constituted a violation of one of the § 1514A categories is that "BofI was heavily regulated by a number of federal agencies." (*Id.*) This minor addition utterly fails to show an objectively reasonable belief that the purported wrongdoing he allegedly reported violated one of the listed types of fraud under § 1514A.

a. **Erhart Fails To Tether The Alleged Wrongdoing To a Violation of the SOX Listed Categories.**

As noted by the Court, Erhart must make some connection between the alleged wrongdoing and one of the violations of law set forth in Section 1514A. (Dkt No. 22, p. 24 (citing *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 n.6 (2d Cir. 2014) ("We note that the statute does require plausible allegations that the whistleblower reported information based on a reasonable belief that the employer violated *one of the enumerated* provisions set out in the statute…. [T]o be reasonable, the purported whistleblower's belief cannot exist wholly untethered from these specific provisions.")). For example, in *Nielsen*, the court rejected the plaintiff's "conclusory statement" that he "reasonably believed that defendants were

-11

committing fraud upon [their] shareholders and would likely continue violating the United States mail and wire fraud statutes by using telephone lines and emails in furtherance of the fraud." *Nielsen*, 762 F.3d at 222. The *Nielsen* court determined that plaintiff's belief was not objectively reasonable because the two types of SOX-eligible fraud alleged by plaintiff – wire and mail fraud – required a scheme to steal money or property and plaintiff had not pled any such allegations in his complaint. *Id.*[1]

In contrast, in *Wiggins v. ING U.S., Inc.*, which followed the "reasonably believes" standard set forth in *Sylvester*, the plaintiff identified "a number of sets of actions taken by ING employees and, for each set, states Wiggins's basis for believing that such action violated the statutes and rules the Amended complaint…." 2015 U.S. Dist. LEXIS 167362 at *14-15 (D. Conn. Dec. 15, 2015). For example, Wiggins alleged that she "believed that ING's persistent determination of incorrect [Market Value Assessments] violated federal securities laws because she knew that federal securities laws required Defendants to maintain accurate books and records, establish adequate internal controls to ensure accurate reporting of financial information, and to act in the best interests of clients in accordance with fiduciary duty obligations." *Id.* at *16-17. Wiggins's other allegations of misconduct

---

[1]    *See, also, Beacom v. Oracle America, Inc.*, 825 F.3d 376, 380-381 (8th Cir. 2016), (finding a former employee's SOX claim failed because his belief that the company was defrauding its investors was objectively unreasonable, since as a company salesperson and shareholder, he would have understood the predictive nature of revenue projections and that $10 million was a minor discrepancy to a company, like his employer, that annually generated billions of dollars); *Wiest v. Lynch*, 710 F. 3d 121, 136 (3d Cir. 2013) (rejecting all but two allegations of protected activity because "[e]ven if the facts in the Complaint established that Wiest subjectively believed the expense request for the Venetian event could have violated provision in Section 806,…objectively, a reasonable person in Wiest's position would not have believed that the expense request that initially lacked a detailed agenda and breakdown of expenses would constitute a violation of one of the provisions listed in Section 806."

-12

followed a similar structural approach – "first identifying the alleged action, then identifying why Wiggins thought such action violated a statute or rules covered by section 1514A." *Id.* at *17. As such, the court determined Wiggins had adequately plead an objectively reasonable belief that she had reported alleged conduct that violated one of the listed categories of fraud. *Id*. at *22.

Just as they were in the original complaint, the identical allegations in the FAC are simply too vague and too tenuous to support an objectively reasonable belief that the purported violations relate to any of the listed categories of fraud under § 1514A. First, Erhart fails to identify the type of fraud each incident supposedly entails. Instead, he has simply added Paragraph 74A in which he refers to all of the conduct set forth in the FAC and follows it with a laundry list of statutes and regulations and leaves it to BofI and the Court to guess which statutes or regulations might apply to which alleged incident of misconduct. (FAC, ¶ 74A.) This is precisely the type of improper pleading that resulted in dismissal of Erhart's prior complaint.

Even if Erhart's recitation of statutes and regulations in Paragraph 74A could be construed as tethering the alleged misconduct to violations of mail fraud, wire fraud, bank fraud, securities fraud, an SEC rule or regulation, or shareholder fraud, Erhart fails to allege any facts to allow BofI or the Court to evaluate whether his belief was objectively reasonable.[2] For example,

_____

[2] While Erhart is not required to specifically plead the elements of any particular type of fraud, he must provide some basis to understand how the alleged conduct relates to the particular type of violation. For example, mail fraud under 18 USC § 1341 requires a scheme to defraud, and the mailing of matter, etc. for purpose of executing the scheme. *Pereira v. United States*, 347 U.S. 1 (1954). Wire fraud under 18 USC § 1343 requires a scheme to defraud, and interstate communications in furtherance of the scheme. *United States v. Wise*, 553 F.2d 1173 (8th Cir. 1977); *United States v. Gordon*, 780 F.2d 1165 (5th Cir. 1986). Bank fraud under 18 USC § 1344 requires a scheme to defraud a financial institution or to obtain any of the moneys, funds, credits, assets, or securities, owned by or under the

- Erhart does not even attempt to explain why he believed untimely deposits to employees' 401k accounts violated one of the listed types of fraud. (FAC, ¶ 18).

- Erhart does not explain why he believed an alleged failure to notify callers that their calls were being recorded, an alleged violation of California Penal Code § 632, is one of the listed types of fraud. (FAC, ¶ 13).

- Erhart does not allege facts supporting any plausible reason to believe the Chief Credit Officer's alleged statement that "he is not responsible for any of the Bank's numbers after they are turned over to the Chief Financial Officer" constituted a listed type of fraud. (FAC, ¶ 17.)

- Erhart does not state how he could believe BofI's alleged failure to approve the Fiscal 2015 Strategic Plan would be a violation of one of the listed categories of fraud. (FAC, ¶ 19-21.)

- Erhart does not explain why he supposedly believed that having a small number of depositors who accounted for a significant percentage of BofI's deposits would be a violation of one of the listed categories of fraud. (FAC, ¶ 22-24.)

- Erhart fails to allege how an alleged response to a confidential third party SEC subpoena seeking information about a particular account number could reasonably be perceived as a SOX violation. (FAC, ¶ 26-31A.)

- Erhart does not allege how any auditor reasonably could believe that a

_____

custody or control of a financial institution, by means of false or fraudulent pretenses, representations, or promises. *United States v. Miller*, 70 F.3d 1353 (1995). It is unheard of for a bank to knowingly intend to defraud itself. Securities fraud under 18 USC § 1348 requires a material misrepresentation or omission of fact, scienter, connected to the purchase or sale of a security, transaction and loss causation, and economic loss. *Van Asdale*, 557 F.3d at 1001.

-14-

response to the OCC concerning accounts without TINs qualifies as a violation of the listed categories of fraud.  (FAC, ¶ 32.)

- Erhart fails to allege facts regarding why he believed that BofI's alleged failure to disclose to the OCC grand jury or other subpoenas to which it was not a party constitutes a SOX violation.  (FAC, ¶ 33).

- Erhart does not explain why he reasonably believed that alleged loans to criminals or PEP's constituted a SOX violation.  (FAC, ¶ 34.)

- Erhart fails to state why he believed, reasonably or otherwise, that changes allegedly made to certain BSA reports constituted a SOX violation.  (FAC, ¶ 35.)

- Erhart does not explain why he believed that management's alleged failure to include Erhart's findings in the FDPA audit report constituted a SOX violation.  (FAC, ¶ 37-39.)

- Erhart fails to allege how BofI's alleged revision of a list of potential high risk customers provided by a vendor, and subsequent termination of the vendor, could be considered by anyone to be a violation of one of the listed categories of fraud.  (FAC, ¶ 40-43.)

- Erhart does not state how he reasonably could believe that Mr. Garrabrants' alleged deposits of third-party checks into a personal account is one of the listed types of fraud.  (FAC, ¶ 44).

The only "justification" Erhart provides in his first and second claim is that he knew BofI is heavily regulated.  (FAC, ¶ 77A, 91A.)  The fact that BofI is a regulated entity is not a reasonable basis to believe that the conduct alleged by Erhart is a type of violation protected by SOX or Dodd-Frank.  Furthermore, to the extent Erhart claims that his belief was reasonable based upon unspecified "guidance and instructions" from Jonathan Ball, (*id.*, ¶ 74A), Erhart has failed to allege sufficient facts regarding the "guidance and instructions" he received to evaluate whether he reasonably relied upon it.

1    Erhart not only fails to tether any of these allegations to any of the

2 enumerated violations, but he is unable to demonstrate that a "reasonable person in

3 the same factual circumstances with the same training and experience" would

4 reasonably believe that the aforementioned allegations constitute violations of mail

5 fraud, wire fraud, bank fraud, securities fraud, a violation of an SEC rule or

6 regulation, or shareholder fraud.  Just as the plaintiff in *Nielsen*, did not "allege[]

7 any facts plausibly suggesting that this supposed misconduct implicated any of the

8 enumerated provisions in § 1514A" Erhart has similarly failed to plausibly allege

9 that he, as a bank auditor, reasonably believed the conduct he complained of

10 violated an enumerated provision.  *Nielsen*, 762 F.3d at 223.

11         **b.**    **Erhart Fails to Allege He Reported Many of the Alleged**

12                   **Incidents of Wrongdoing.**

13    Erhart also fails to allege, as he must, that he reported the fifteen alleged

14 instances of wrongdoing.  Erhart does not allege he reported the following incidents

15 at all:

16    •    Allegedly falsified company financials.  (FAC, ¶ 17).

17    •    Alleged untimely 401(k) contributions to employee accounts. (FAC, ¶

18         18).

19    •    An alleged failure to approve the Fiscal 2015 Strategic Plan.  (FAC,

20         ¶¶ 19-21).

21    •    An alleged downgrade of his performance evaluation for putting

22         findings in writing.  (FAC, ¶ 25).

23    •    Alleged inaccurate communications to the OCC that there were no

24         accounts without Tax Identification Numbers ("TIN's").  (FAC, ¶ 32).

25    •    An alleged failure to properly respond to the OCC regarding documents

26         received from banking agencies and law enforcement during a certain

27         time frame, including subpoenas.  (FAC, ¶ 33.)

28    •    Alleged loans to criminals and PEP's in potential violation of "know

-16

your customer" rules.  (FAC, ¶ 34).

- Alleged changes in findings in certain reports required under the Bank Secrecy Act.  (FAC, ¶ 35).

- Alleged calculations of ALLL to exclude unfunded commitments for lines of credit.  (FAC, ¶ 36).

Furthermore, Erhart only partially alleges that he reported the remaining incidents alleged in the FAC [as depicted on the chart on pages 4-6, *supra*]:

- Erhart alleges discussing the alleged failure to disclose the recording of calls to customers with a management executive and BofI's Chief Legal Officer, thereby improperly referring to a privileged communication. (FAC, ¶ 16).

- Erhart claims that he mentioned the issue of concentration of deposits in an email. (FAC, ¶ 22).

- Erhart asserts that BofI's response to a subpoena for information concerning a loan customer was discussed with BofI's Chief Lending Officer and that he provided a "tip" to the SEC regarding the subpoena and a "suspicious loan customer."  (FAC, ¶ 31).

- Erhart alleges that he mentioned FDPA issues in an audit report that was revised by management.  (FAC, ¶ 38).

- Erhart claims that he was preparing to submit a list of "high risk customers" as an attachment to a report to the Audit Committee, but never did so.  (FAC, ¶ 43).

- Erhart asserts that he saved personal banking information concerning BofI's CEO on his computer because of an alleged concern that income wasn't being reported to the IRS, however, he does not allege actually reporting this information to anyone.  (FAC, ¶ 45).

### c. Erhart Fails to Plead How Any Alleged Retaliation was Motivated by his Reporting.

Finally, even if the Court were to find that Erhart sufficiently pled that he reported these incidents, he still fails to allege how the reporting of such conduct, if any, played a role in his alleged constructive termination. Nor can he, given his failure to report many of the allegations to any required SOX Complaint Recipient. Even if Erhart's allegations can be construed to allege he reported the alleged misconduct as required, his claims still fail because he does not allege BofI was aware of his reporting prior to allegedly retaliating against him.

Once again, Erhart has not established that he engaged in protected activity or that it was a contributing factor to his alleged constructive termination. Accordingly, his first and second claims must be stricken.

### C. Erhart's Fourth Claim for Violation of the Confidentiality of Medical Information Act Should Be Dismissed.[3]

An employer violates the Confidentiality of Medical Information Act ("CMIA") when it "use[s], disclose[s], or knowingly permit[s] its employees or agents to use or disclose medical information which the employer possesses pertaining to its employees without the patient having first signed an authorization…." Cal. Civ. Code § 56.20(c). "Medical information" is "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j).

Erhart makes the conclusory claim that "[b]y the conduct alleged hereinabove,

---

[3] Erhart's fourth, seventh, eighth, and ninth claims are re-asserted without change from the original complaint. BofI renews its prior motion to dismiss with respect to these claims and incorporates by reference its arguments set forth therein (Dkt No. 3.)

Defendant violated the CMIA." (FAC, ¶ 108). However, the only allegation having anything to do with medical information is the allegation that that SVP Tolla falsely stated that Erhart was on a "psychiatric medical leave." (FAC, ¶ 73). Such an allegation cannot support a violation of the CMIA because it fails to state that BofI disclosed information about his medical condition that was "in electronic or physical form" obtained from a medical provider. Cal. Civ. Code § 56.05(j). An alleged false statement concerning psychiatric leave does not qualify as "medical information" under the CMIA. Accordingly, the fourth claim should be dismissed in its entirety.

## D. Erhart's Seventh Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed.

Erhart does not and cannot allege a valid, binding agreement with BofI that would trigger an implied duty of good faith and fair dealing. "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation and there is no obligation to deal fairly or in good faith absent an existing contract." *Sipe v. Countrywide Bank*, 690 F.Supp.2d 1141, 1160 (E.D. Cal. 2010) (internal quotation marks omitted) (citing *Racine & Laramie, Ltd. v. Dep't of Parks and Recreation*, 11 Cal.App.4th 1026, 1031–32 (1992)). A complaint must plead a valid contract underlying the claim for breach of the covenant of good faith and fair dealing, (*id.*), including "parties capable of contracting; the parties' consent; a lawful object; and sufficient cause or consideration." *Holland v. BP Am., Inc.*, 2012 WL 761980, at *5 (E.D. Cal. Mar. 7, 2012) (citing *Lopez v. Charles Schwab & CO., Inc.*, 118 Cal.App.4th 1224, 1230 (2004) and Cal. Civ. Code § 1550) (internal quotation marks omitted). Allegations of a general code of fair treatment in the employment context is not a cognizable contract under California law. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 348 (2000) (citing Cal. Lab. Code § 2922 for the proposition that absent special circumstances not alleged here, an employee is assumed to be at will and not subject to an implied covenant claim).

-19

Erhart alleges nothing more than a general code of fair treatment. (FAC, ¶ 130.) Erhart's conclusory allegations of the existence of an "agreement" to treat him fairly are wholly insufficient to support a claim for breach of the implied covenant. Therefore, the seventh claim should be dismissed in its entirety.

**E.** **Erhart's Eighth Claim for Intentional Infliction of Emotional Distress Should Be Dismissed.**

    1.    **Erhart's Claim For Intentional Infliction of Emotional Distress Is Preempted By The Exclusivity Of The Workers' Compensation Act**

Plaintiff's claim for intentional infliction of emotional distress fails as a matter of law because the California Workers' Compensation Act ("WCA") provides the "sole and exclusive remedy of the employee" for injuries sustained in the workplace. *See* Cal. Lab. Code §§ 3600(a), 3601, 3602(a), 5300. The California Supreme Court has repeatedly affirmed this principle, holding that employee injuries stemming from even intentional employer misconduct such as whistleblower retaliation may not be the subject of a civil action, and a plaintiff's **exclusive** remedy is found under the WCA. *See Milosky v. Regents of the University of California,* 44 Cal. 4th 876, 902 (2008) (affirming dismissal of emotional distress claim, holding that any emotional distress caused by retaliation for whistleblowing is preempted by the exclusive remedies of the WCA); *Shoemaker v. Myers,* 52 Cal. 3d 1, 7, 17-20 (1990); *Cole v. Fair Oaks Fire Prot. Dist.,* 43 Cal. 3d 148, 160 (1987).

Erhart's IIED claim generally is based on all of the allegations "set forth hereinabove" in the Complaint, (FAC, ¶ 136), which concern purported comments or actions made during the normal course of the employment relationship that were allegedly communicated to Erhart second or third-hand by unnamed co-workers. (*see, e.g.,* FAC, ¶¶ 56, 60, 61, 71 and 74.) Thus, his claim is barred by the WCA and should be dismissed.

2. **Erhart Fails To Allege "Extreme and Outrageous" Conduct Required To Maintain an IIED Claim**

To state a cause of action for IIED a plaintiff must show: (1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Vasquez v. Franklin Management Real Estate Fund, Inc.*, 222 Cal. App. 4th 819, 832 (2013). To be deemed "outrageous," the conduct "'must be so extreme as to exceed all bounds of that usually tolerated in a civilized society.'" *Id.* (quoting *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1259 (2005)). "In order to avoid a demurrer, the plaintiff must allege with 'great[] specificity' the acts which he or she believes are so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Id.* (citing *Schlauch v. Hartford Accident & Indemnity Co.*, 146 Cal. App. 3d 926, 936 (1983)).

Personnel management activity is insufficient to support a claim for intentional infliction of emotional distress, even if improper motivation is alleged. *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996). Furthermore, terminating an employee is not "outrageous" conduct, even if the termination was based on pretext, without cause, and done in a "callous and insensitive manner." *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984). Similarly, "the termination of a business relationship, is, as [a] matter of law, not the type of 'outrageous' conduct that is required to support a cause of action for intentional infliction of emotional distress." *Unterberger v. Red Bull North America Inc.*, 162 Cal. App. 4th 414, 423 (2008).

Erhart's IIED claim is based on the circumstances of his alleged constructive termination, which is personnel management and not outrageous conduct for the purpose of assessing an IIED claim. Most of the alleged improper conduct consists

of comments made or actions taken outside of Erhart's presence while he was feeling "unwell" at home on "leave" and that were later allegedly communicated to him by unidentified "co-workers." (*See* FAC, ¶¶ 53-74.) Such second- or third-hand comments by co-workers cannot reasonably be considered "extreme and outrageous" and otherwise capable of inflicting severe emotional distress. The few communications allegedly mentioned in his presence (such as the "snakes" comment) do not begin to approach the threshold of extreme and outrageous conduct. As such, Erhart's IIED claim should be dismissed.

## F. Erhart's Ninth Claim for Defamation Should Be Dismissed for Lack of Sufficient Specificity.

"Under California law… the allegedly defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement…. '[G]eneral allegations of the defamatory statements' which do not identify the substance of what was said are insufficient." *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004) (superseded by statute on other grounds) (internal citations omitted).

Erhart fails to allege the substance of the allegedly defamatory statement(s), the identity of the person(s) who allegedly made the statement(s), the identity of any person(s) who heard or received the statement, or even when the statement(s) was made. (*See* FAC, ¶¶ 140, 142, 145.) This is entirely insufficient. *Chabra v. S. Monterey Cnty. Mem'l Hosp., Inc.*, 1994 WL 564566, at *9, (N.D. Cal. Oct. 3, 1994) (dismissing a defamation claim based on inadequate allegations concerning the substance of the purported defamatory statements). Accordingly, Erhart's ninth claim for defamation should be dismissed.

**G.** **Erhart's Immaterial and Impertinent Allegations Should Be Stricken.**[4]

    1.   **Erhart Does Not Allege, for the Majority of His Allegations, that He Engaged in Protected Activity.**

Erhart has brought whistleblower claims under three statutes: SOX, Dodd-Frank and Cal. Lab Code § 1102.5. Under all three of these statutes, Erhart must plead that he engaged in protected activity.

To have engaged in protected activity or conduct under SOX and, for purposes of this motion, Dodd-Frank, an employee must have provided information or assistance concerning specified types of fraud to a SOX Complaint Recipient. Under Cal. Lab. Code § 1102.5, an employee must disclose information to a government or law enforcement agency, "where the employee has reasonable cause to believe that the information discloses a violation of [a] state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." Cal. Lab. Code § 1102.5(b).

As set forth in the chart on pages 4-6, *supra*, Erhart fails to allege that, for the allegations set forth in paragraphs 17, 19-21, 32, 33, 34, 35, 36, and 45, he either: (1) made a report to a SOX Complaint Recipient for purposes of SOX; (2) made a report to the SEC for purposes of Dodd-Frank; or (3) made a report to a government or law enforcement agency for the purposes of Cal. Lab. Code § 1102.5. As a result, these allegations are immaterial to the FAC and should be stricken in their entirety.

---

[4]    BofI also renews its motion to strike on the grounds set forth in its original motion (Dkt No. 3) and incorporates by reference the arguments and authority set forth therein. BofI has re-asserted its argument in a more summary fashion here, rather than repeating the arguments verbatim.

-23-

2. **Because Erhart Failed to Exhaust His Administrative Remedies for Numerous Allegations in the FAC, As Required by SOX, Those Allegations Cannot Form the Basis of His Complaint and Should be Stricken.**

A claimant alleging discharge or other discrimination in violation of SOX must file a complaint with the Secretary of Labor within 180 days of the date the alleged violation occurred. 18 U.S.C. § 1514A(b)(2)(D). If the Secretary does not issue a final decision on the complaint within 180 days of filing with the Secretary of Labor, the claimant can then file a complaint in federal court. 18 U.S.C. § 1514A(b)(1)(B). District courts in the Ninth Circuit have found that a federal court "can only conduct a de novo review of those [SOX whistleblower] claims that have been administratively exhausted." *Jones v. Home Fed. Bank,* 2010 U.S. Dist. LEXIS 3579, *9 (D. Idaho Jan. 14, 2010); *McClendon v. Hewlett-Packard Co*., 2005 U.S. Dist. LEXIS 29449, at *12 (D. Idaho Oct. 27, 2005) ("[T]he Court finds that it can only review those separate and distinct claims asserted in McClendon's administrative [SOX] complaint."); *see also Bozeman v. Per-Se Technologies, Inc.,* 456 F. Supp. 2d 1282, 1357 (N.D. Ga. 2006) ("A federal court "can only conduct a de novo review of those [SOX whistleblower] claims that have been administratively exhausted.").

In order to exhaust administrative remedies, an OSHA complaint must include a "full statement of the acts and omissions, with pertinent dates, which are believed to constitute the violations." *McClendon,* 2005 U.S. Dist. LEXIS 29449, at *12 (internal quotation marks omitted). "[A]ll facts raised in a SOX claim in federal court must first be presented to OSHA, so that OSHA can adequately fulfill its statutory and regulatory review obligations." *Trusz v. UBS Realty Investors*, 2010 WL 1287148, at *4 (D. Conn. Mar. 30, 2010); *see also Willis v. Vie Fin. Grp.*, 2004 WL 1774575, *6 (E.D. Pa. Aug. 6, 2004) (reasoning that the plaintiff's failure to include a claim in an administrative complaint with OSHA precluded pursuing that

-24

claim in court).

A straightforward comparison of Erhart's OSHA Charge with his FAC reveals that Erhart failed to exhaust with respect to virtually all of his allegations. (*See* Dkt No. 3-3 (RJN iso BofI's Motion to Dismiss Complaint), ¶¶ 24-27). Erhart's conclusory statement in Paragraph 8 of the Complaint that he "exhausted his administrative remedies" is patently untrue. Therefore, Paragraphs 9-21 and 31-43 of the FAC cannot be part of his SOX claim and are thus immaterial, wholly irrelevant and serve no legitimate purpose whatsoever and must be stricken.

3. **Many of Erhart's Allegations Contain Immaterial and Impertinent Confidential Information.**

In addition to being immaterial, many of the allegations in Erhart's FAC were undoubtedly included for the sole purpose of embarrassing and harming BofI. While the substance and veracity of the allegations is certainly in dispute, there can be no doubt that Erhart has violated the privacy, confidentiality and attorney-client privilege rights of BofI's employees, clients, and business counterparties. For this additional reason, the Court should strike Paragraphs 16, 26-33, 39, 41, 44, 45, 49-52, and 70.

## IV. CONCLUSION

For the above reasons, BofI respectfully requests that this Court dismiss Erhart's first, second, fourth, seventh, eighth, and ninth claims, and/or strike Paragraphs 9-21, 26-45, 49-52, and 70 of the FAC because they are immaterial and impertinent given Erhart's unmeritorious and deficient allegations.

Dated: October 31, 2016    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      _/s/ Polly Towill_
            POLLY TOWILL

Attorneys for Defendant BofI HOLDING, INC.
and Plaintiff BofI FEDERAL BANK
Email: ptowill@sheppardmullin.com