1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHARLES MATTHEW ERHART, an
individual; and DOES 1-25, inclusive,

Plaintiff,

v.

BOFI FEDERAL BANK, a federal
savings bank,

Defendant.

_____

BOFI FEDERAL BANK, a federal
savings bank,

Plaintiff,

v.

CHARLES MATTHEW ERHART, an
individual; and DOES 1-25, inclusive,

Defendant.

Case No.:    **15cv2287 BAS (NLS)**
*consolidated with*  15cv2353 BAS (NLS)

**ORDER GRANTING MOTION TO
QUASH BOFI'S SUBPOENA TO
TESTIFY AT A DEPOSITION**

**[Dkt. No. 75 in 15cv2353]**

1

This case involves cross actions between Charles Erhart, an internal auditor, and his former employer BofI Federal Bank (BofI). Erhart filed a whistleblower and retaliation action against BofI. BofI countered with its own lawsuit based on Erhart allegedly stealing confidential information from BofI and disseminating it.

Before this court is third-party Carol Gillam's Motion to Quash the Subpoena served on her by BofI. Carol Gillam is the attorney representing Charles Erhart. Gillam argues that BofI's alleged need to depose her is outweighed by the risk of disclosing privileged and protected work product information, and that there are other available sources for the information. BofI argues that Gillam's deposition is necessary to determine what confidential information Gillam—as an agent for Erhart—disclosed to third parties. For the following reasons, the court **GRANTS** Gillam's motion to quash.

## I.   <u>Background.</u>

### A. Factual Basis for the Underlying Actions.

This case arises from a whistleblower retaliation action commenced under the Sarbanes-Oxley Act of 2002, the Dodd-Frank Wall Street Reform and Consumer Protection Act, and California state law. Case No. 15cv2287, Erhart's First Amended Complaint (Erhart FAC), Dkt. No. 32. BofI employed Erhart as an internal auditor at its headquarters in San Diego, California. Erhart FAC ¶ 3. After Erhart discovered conduct he believed was unlawful, he reported the issue to BofI's chain of command. *Id.* Erhart alleges that rather than being thanked for reporting unlawful activity, he was threatened, harassed, and ultimately fired. *Id.* Subsequently, Erhart filed a complaint against BofI under federal and state whistleblower protection provisions. Erhart FAC ¶¶ 77, 90, 101.

Erhart alleges he was wrongfully terminated because BofI retaliated against him for reporting unlawful activity to the government. Erhart FAC ¶ 80. Upon filing the complaint, BofI alleges that Erhart publicly disclosed confidential information to the New York Times (NYT). Case No. 15cv2353, BofI FAC, Dkt. No. 12 ¶ 46. By the next day, BofI's stock price plummeted 30.2%. *Id.* On October 19, 2015, BofI filed a countersuit, alleging that Erhart violated the Computer Fraud and Abuse Act for publishing BofI's

2

confidential information and deleting hundreds of files from his company-issued laptop. BofI FAC ¶¶ 65, 94.  BofI did not name Erhart's counsel as a defendant in that case.

## B. Relevant Procedural History.

On November 10, 2015, the district judge granted the parties' joint motion for a temporary restraining order (TRO) against Erhart.  Case No. 15cv2353, TRO, Dkt. No. 10.  Under the TRO, Erhart and his agents were restrained from disclosing, copying, destroying, deleting, or altering any confidential information from BofI. TRO, p.2.[1] Erhart was also ordered to return any confidential information under his possession, custody, or control.  *Id.*  The court also signed off on the parties' agreement that allowed (1) a pre-answer limited deposition of Erhart; and (2) BofI to serve third-party subpoenas to determine whether any person aside from Erhart disclosed BofI's confidential information.  Case No. 15cv2353, Nov. 18, 2015 Order, Dkt. No. 19, p.2.

At the deposition Erhart testified that he did not share BofI's confidential information with the NYT and turned over only select documents to federal regulators. Case No. 15cv2353, Jt. Mtn. Discovery Dispute, Dkt. No. 39-8 (Gillam Decl. ¶¶6).  He also cooperated in allowing the bank to have forensic auditors inspect his computer.  *Id.* ¶ 7.  Erhart further testified that he feared the bank would destroy the information, so he sent it to his mother, who never looked at it.  Case No. 15cv2353, Jt. Mtn. Discovery Dispute, Dkt. No. 39-11 (Erhart Decl. ¶¶ 76-81).

BofI suspects that Erhart's attorney, Carol Gillam, was complicit in disseminating BofI's confidential information to the NYT and other third parties.  Case No. 15cv2353, Joint Motion for Discovery Dispute, Dkt. No. 39, p.6.  BofI served a subpoena on Gillam demanding production of her non-privileged communications with the media and other third parties regarding BofI.  *Id.*  Gillam objected to all requests.  Case No. 15cv2353, Jt. Mtn. for Discovery Dispute, Dkt. No. 39-7 (Ex. E to Cronthall Decl.).

---

[1] All page number cites are to the CM/ECF page number.

Specifically, BofI's subpoena sought Gillam's communications with: (1) the NYT; (2) Peter Eavis, writer for the NYT; (3) Seeking Alpha, Inc., an investment blog favored by short sellers; (4) people that write articles for submission to Seeking Alpha; (5) people seeking or sharing information on BofI, such as brokerage firms, short sellers, investors, law firms, investigators, and others; and (6) any person during the time period between September 23, 2013, to the present.  Case No. 15cv2353, Apr. 26, 2016 Order, pp.3-4. After reviewing Gillam's objections in a discovery motion, the court ordered Gillam to produce all documents in her possession, custody and control that were responsive to the subpoena.  *Id.* at 10.  The court noted:

> Regarding her suspicion that BofI is trying to turn her into a witness in this case so as to sabotage her attorney-client relationship with Erhart, the documents sought are simply documents *that do not require her testimony. At this point* the court finds that any threat to Gillam's attorney-client relationship is conjecture, and there is not enough evidence to quash the subpoena based on Gillam's suspicion.

*Id.* at 9 (emphasis added).

Gillam produced her communications with the NYT, as well as her responses to public inquiries after the lawsuit was filed; she sent the complaint to callers who requested it.  Gillam Decl. ¶¶ 9-11; Gillam Reply Decl. ¶ 9.  She also sent copies of the filed complaint to family and colleagues.  *Id.*  She says she did not disclose any confidential information.  *Id.*  Meanwhile, BofI claims that these emails are evidence of Gillam's dissemination of confidential information.  *See, e.g.,* Opp'n, p.4.

The document production shows that Gillam began communicating with Peter Eavis, a reporter for the NYT, in May 2015.  Case No. 15cv2353, Gillam Document Production, Dkt. No. 56-2, p.1.[2]  They continued their communications until Eavis

---

[2] BofI did not include a copy of Gillam's document production with this motion but instead refers to the document production filed in support of its supplemental brief for

4

authored an article that the NYT published on August 22, 2015, entitled, *An Internet Mortgage Provider Reaps the Rewards of Lending Boldly*, which highlighted BofI's lending strategies and noted that two internal auditors left the bank.  *Id.*, pp.2-6; Case No. 15cv2353, Dkt. No. 7-21.  Later, on October 13, 2015, Gillam sent Eavis a copy of the publicly-filed complaint.[3]  *Id.*, pp.7-8.  After the complaint was filed, Gillam sent the complaint to short sellers Citron Research (*Id.*, p.9), Ascent Capital, LLC (*Id.*, pp.11-12), GrizzlyRock Capital (*Id.*, p.13), Eric DeLamarter (*Id.*, p.18), and friends or colleagues (*Id.*, pp.10, 14-17).  She sent out the complaint in response to "people who called and asked for them including third parties, such as the media and interested callers."  Gillam Reply Decl. ¶ 9.  The emails do not include information other than the publicly-filed complaint.

### C. Gillam's Deposition Subpoena.

After reviewing the dozen or so documents that Gillam produced in response to the subpoena, BofI subpoenaed Gillam to testify at a deposition.  BofI believes that only a deposition of Gillam will reveal the content and extent of her disclosures to non-regulator third parties.  Opp'n, pp.1, 2.  BofI believes that Gillam and Erhart "were part of the short seller conspiracy to manipulate BofI's stock price."  *Id.*  Gillam asked BofI to withdraw

---

BofI's amended motion for preliminary injunction heard by Judge Bashant.  Judge Bashant denied the motion and dissolved the temporary restraining order (TRO) and the supplemental TRO.  Judge Bashant denied the motion for preliminary injunction because BofI did not demonstrate it was likely to suffer irreparable harm, noting that BofI's claim that Erhart is in contact with anonymous investment bloggers who are tracking BofI is speculative because there is no indication the bloggers received information beyond what is contained in the publicly-filed complaint.  Case No. 15cv2353, Sept. 7, 2017 Order, Dkt. 70, p.19.

[3] BofI notes that Gillam sent Eavis an email at 1:22 p.m. on October 13, 2015 that attached a "pre-filing copy" of the complaint, where Gillam told Eavis not to contact BofI "until I have confirmation the filing went through (should be shortly)."  Case No. 15cv2353, Dkt. No. 56-2, pp.9-10.  The court's record shows the complaint was filed at 2:05 p.m. that day.  There is no indication that the complaint Eavis received was different than the one that Gillam filed.

1  the deposition subpoena, arguing that the only purpose it could serve is to help BofI build

2  a case against Erhart and her.  Mem. Ps&As, p.8; Reply, p.1.  BofI refused to withdraw it,

3  and then Gillam filed this motion to quash.

4      **II.**    __Discussion.__

5          **A. Procedural Compliance.**

6          BofI complains that the motion to quash should be denied for failure to meet and

7  confer.  The court notes that counsel exchanged emails and that they are not located in

8  the same county and thus need not meet and confer in person.  Further, Gillam is not a

9  party to this litigation, so she was not expressly bound by Judge Stormes' procedural

10 chambers rules that govern resolution of discovery disputes.  The noticed motion is

11 properly before this court, and the court denies BofI's request to deny it on procedural

12 grounds.

13         **B. Legal Standard on Third-Party Discovery.**

14         The Federal Rules of Civil Procedure allow parties to obtain discovery regarding

15 "any nonprivileged matter that is relevant to any party's claim or defense and

16 proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  For discovery purposes,

17 relevance is construed more broadly than discovery for trial. *Garneau v. City of Seattle*,

18 147 F.3d 802, 812 (9th Cir. 1998).  This same broad scope of discovery applies to

19 subpoenas. *Amini Innovation Corp v. McFerran Home Furnishings Inc.*, 300 F.R.D. 406,

20 4099 (C.D. Cal. 2014).  A subpoena, however, must be quashed if it requires disclosure

21 of privileged information or subjects a person to an undue burden.  Fed. R. Civ. P.

22 45(d)(3)(A)(iii)(iv).  Courts must weigh the burden imposed on a subpoenaed party

23 against the value of the information the subpoena seeks. *Moon v. SCP Pool Corp.*, 232

24 F.R.D. 633, 637 (C.D. Cal. 2005).

25         **C. Subpoenaing Opposing Counsel.**

26         The Eighth Circuit developed a test on the appropriateness of deposing opposing

27 counsel that has been expressly adopted by several other circuits and this district. *Shelton*

28 *v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986); *see Am. Cas. Co. of Reading, Pa. v.*

*Krieger*, 160 F.R.D. 582, 585, 588 (S.D. Cal. 1995) (applying *Shelton* test) and *Textron Financial Corp. v. Gallegos*, 2016 WL 4169128, *2 (S.D. Cal. Aug. 5, 2016) (stating "*Shelton* is generally considered the leading authority, and has been adopted in this district") and *Townsend v. Imperial County*, 2014 WL 2090689, *2 (S.D. Cal. May 19, 2014) (stating "The most recent and analogous cases from the Southern District of California apply *Shelton*") and *Light Salt Investments, LP v. Fisher*, 2013 WL 3205918 (S.D. Cal. June 24, 2013) (applying *Shelton* test); *see also Mass. Mutual Life. Ins. Co. v. Cerf.*, 177 F.R.D. 472, 479 (N.D. Cal. 1998) (stating that *Shelton* "is generally regarded as the leading case on attorney depositions").  *Shelton* notes that while counsel is not totally immune from being deposed, the court viewed the practice "as a negative development in the area of litigation, and one that should be employed only in limited circumstances."  *Shelton*, 805 F.2d at 1327.

A party moving to quash a subpoena normally has the burden of persuasion. *Moon*, 232 F.R.D. at 637.  But under *Shelton* the burden shifts, as the party seeking opposing counsel's deposition must show it needs the deposition by demonstrating these factors:

> (1) no other means exist to obtain the information other than to depose opposing counsel [citation omitted]; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Shelton*, 805 F.2d at 1327.  Accordingly, BofI bears the burden to show Gillam's deposition satisfies the *Shelton* test.  *Id.; see Am. Cas. Co. of Reading*, 160 at 588.

### 1.  Other Means to Obtain the Information.

A party must demonstrate that the information it seeks through opposing counsel's deposition is not obtainable from any other source.  *Shelton*, 805 F.2d at 1327.  BofI argues that this information is not available from other sources because only Gillam can identify all third parties with whom she communicated, and she is the only person who has complete knowledge of her communications.

7

1    As for the identity of all third parties, Gillam already produced documents that

2    identify the third parties with whom she communicated regarding Erhart's complaint.

3    Gillam Decl. ¶ 9.  BofI points to no evidence that suggests Gillam communicated with

4    other third parties regarding the complaint.  BofI's suspicion that "Erhart and Gillam

5    were part of the short seller conspiracy to manipulate BofI's stock price" is not sufficient

6    to overcome the significant burden it has to show that no other available sources of

7    information exist.  *See* Opp'n, p.4.  Further, it assumes that Gillam, an officer of the

8    court, failed to fully respond to the discovery ordered by this court.

9    BofI next contends that Gillam's deposition is necessary because she "is the only

10   person who possesses complete knowledge regarding her own communications."  Opp'n,

11   p.10.  To attempt to meet the burden, BofI simply states that "given the extent of her

12   communications, there is reason to believe that Gillam may have had telephone calls or

13   meeting with third parties with whom she did not exchange written communications."

14   Opp'n, p.11.  But BofI points to no evidence as to why Gillam would have sent certain

15   short sellers the complaint via email but only communicate via telephone with other short

16   sellers without any written follow-up.

17   As evidence that Gillam failed to produce at least one email, BofI points to "Eavis'

18   October 15, 2015 *New York Times'* article [that] included a quote from Gillam that the

19   article notes was provided to Eavis 'in an email.'"  Opp'n, p.11.[4]  This purported email in

20   question was not included in Gillam's document production.  Gillam addresses the article

21   by saying that the quote in question does not disclose any confidential information.

22   Reply, p.7.  The court finds that this suspected non-produced email does not help BofI

23   satisfy its burden that there are no other available sources for this information.  First, the

_____

25
26   [4] The alleged excerpt from the Peter Eavis article states: "Carol L. Gillam, Mr. Erhart's
     lawyer, denied that she or Mr. Erhart had received money from investors to finance the
27   lawsuit.  'I can't even imagine someone suggesting that about me or my Boy Scout
     client!  Except, of course, Greg Garrabrants!'  Ms. Gillam wrote in an email."  Cronthall
28   Decl. ¶ 9.

court has no context for the quote because BofI lays it out in a declaration of counsel and does not attach the actual article.  *See* Cronthall Decl. ¶ 9.  Second, there are other potential sources for this information.  Third, BofI could have followed up on Gillam's second document production with a request for this email instead of allowing some months to pass by before trying to obtain this information via a deposition of counsel. The court finds this quote to be insufficient for BofI to meet its significant burden of showing that no other sources of the information exist.

Finally, BofI argues that Gillam inserted herself into this litigation and "should have considered the possibility that she would become a witness before she engaged in numerous third party communications and voluntarily interjected herself into the effort to disseminate Erhart's theories beyond the regulators and the Court."  Opp'n, p.12.  Here, BofI conflates responses to media inquiries with active dissemination of allegedly confidential information; if this were the case, consider the impact such a principle would have on any press statements made by any attorneys concerning active litigation.  And even if this baseless assertion were considered true and Gillam was considered a witness, it still would not bestow her with "exclusive information" over the requested information. *See* Opp'n, p.13.

In sum, Gillam provided a document production with the names and contact information for third parties.  BofI does not show any reason why the other parties to the communications could not provide the same information that Gillam could provide.  It is insufficient to show that Gillam's deposition is the most convenient source of the information.  Accordingly, BofI does not meet its burden in showing that the requested information is unavailable from other sources.

### 2. *Relevance and Privilege Status of the Information.*

Addressing the second *Shelton* factor, this court already found that Gillam's communications with third parties are relevant:

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11

> Applying the liberal standard of Rule 26, the court finds the documents sought here are relevant to the claims in this case. Even though Gillam is not a named defendant, she is Erhart's attorney and thus is acting as his agent. The major factual issue of this case— whether and to what extent Erhart or any of his agents disseminated BofI's confidential information—is the heart of most, if not all, the claims asserted. Communications regarding BofI with The New York Times or any other reporters or third parties are relevant to whether and what extent Erhart disseminated any confidential information belonging to BofI. This finding applies to communications both *to* and *from* Gillam, as any communications to her may speak to the nature of any information that Gillam provided as well as to the identity of any recipients of that information. The court thus overrules Gillam's relevance objection.

12
13
14
15

Case No. 15cv2353, Dkt. No. 44, pp.5-6 (emphasis in original).  In response to this discovery order, Gillam produced all documents in her possession.  But nothing in the documents indicate that Gillam disseminated *confidential* information to third parties or that further information exists.

16
17
18

While the nature and extent of Gillam's communications with third parties may be non-privileged, deposing Gillam on her already-produced documents runs the risk of involving privilege objections and collateral matters not relevant to the litigation:

19
20
21
22
23
24
25
26
27

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.

28

*Shelton*, 805 F.2d at 1327.  BofI relies on suspicion to justify its request for additional information.  In light of BofI failing to show that this information is unavailable from other sources, the frowned-upon practice of deposing opposing counsel except when absolutely necessary and the potential for compromising the quality of client representation in this case, the court finds that the potential intrusion on attorney-client privilege and the burden Erhart would bear in this situation weigh against the utility of deposing Gillam.

### 3.  *Importance of Information to Preparation of the Case.*

In the final *Shelton* factor BofI must show that the information sought is crucial to the preparation of its case.  *Shelton*, 805 F.2d at 1327.  It argues that further information on Gillam's third-party communications are crucial to its claim of dissemination of BofI's confidential information.  But BofI fails to establish a link between Gillam and the alleged dissemination of *confidential* information.  Nothing in Gillam's document production shows that her communications with third parties involved confidential information.

To support its argument that Gillam disseminated confidential information, BofI points to an email from Peter Eavis to Gillam where he asks her to comment on a non-public SEC subpoena to BofI.[5]  Case No. 15cv2353, Dkt. No. 56-2, p.6.  But there is no indication that Eavis learned of this subpoena from Gillam, and Gillam did not respond to his request for comment.  Further, Gillam states that the SEC subpoena in question was already publicly available and the subject firm had a loan through BofI.  Gillam Reply Decl. ¶ 8.

/ / /

---

[5] In an August 19, 2015 email from Eavis to Gillam, Eavis wrote, "What might help my continuing efforts to include [information on the SEC subpoena on Elm] is if you are willing to go on the record and assert that BofI did not initially properly comply with the SEC's subpoena."  The next day, Gillam responded and did not offer to go on the record and make such an assertion.

1    The heart of BofI's case concerns the alleged dissemination of confidential

2    information.  That question to Gillam has been asked and answered through her

3    document production.  Even the district judge noted the speculative nature of BofI's

4    claims regarding an alleged conspiracy with short sellers:

5            BofI's claim at oral argument that Erhart is in contact with
             anonymous investment bloggers who are tracking public court
6            filings involving BofI is similarly speculative.  [Citation
             omitted.]  To illustrate, several weeks after Erhart commenced
7            the Whistleblower Retaliation Action, an anonymous
             investment blogger published an article incorporating Erhart's
8            allegations on *SeekingAlpha*[a], a crowd-sourced investment
9            research website.  (*Id.*)  BofI argues the author's explicit use of
             Erhart's allegations "suggests that [the author] may have been
10           in contact with Erhart (or Erhart's attorney) prior to the
             publication of his article."  (Towill Decl. ¶ 10, ECF No. 30-3.)
11           However, the Court has another theory: the author read Erhart's
12           publicly-filed complaint.  There is no indication that the author
             obtained information beyond that already in publicly-filed
13           pleadings.  This type of speculation does not satisfy BofI's
14           burden of demonstrating a likelihood of irreparable harm in the
             absence of preliminary relief.
15

16

17   Case No. 15cv2353, Order Denying Preliminary Injunction, Dkt. No. 70, p.19.  In sum,

18   having reviewed Gillam's document production, the court does not see a link between

19   non-defendant Gillam and BofI's claim against Erhart for dissemination of confidential

20   information.  Such a tenuous tie cannot justify a deposition of Gillam.

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

15cv2287 BAS (NLS)

### III.   <u>Conclusion.</u>

The court finds that the speculative basis for potentially intruding on Erhart's attorney-client relationship is insufficient to justify a deposition of opposing counsel Carol Gillam, especially where BofI has not met its burden to show that the information is unavailable elsewhere.  The court therefore **GRANTS** the motion to quash the subpoena on Carol Gillam.

**IT IS SO ORDERED.**

Dated:  March 2, 2017

Hon. Nita L. Stormes
United States Magistrate Judge

13