UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MATTHEW ERHART, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BofI HOLDING, INC., an entity d/b/a BOFI FEDERAL BANK and BANK OF THE INTERNET,<br><br>Defendant. | Case No.: 15cv2287-BAS (NLS)<br>*consolidated with*<br>15-cv-2353-BAS-NLS<br><br>**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 4**<br><br>**[ECF No. 70]** |
| BofI FEDERAL BANK, a federal savings bank<br><br>Plaintiff,<br><br>v.<br><br>CHARLES MATTHEW ERHART, an individual,<br><br>Defendant. | |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 4, wherein Defendant BofI Holding, Inc. ("BofI") seeks to compel Plaintiff Charles Erhart ("Erhart") to produce certain documents responsive to its Requests for

Production (Set One) and to answer certain requests in its Interrogatories (Set One). ECF No. 70. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to compel.

I. **RELEVANT FACTUAL BACKGROUND**

Erhart and BofI are involved in two separate consolidated actions. Erhart brings this action, alleging whistleblower retaliation action against BofI for violations of the Sarbanes–Oxley Act of 2002, the Dodd–Frank Wall Street Reform and Consumer Protection Act, and California state law. ECF No. 32. Erhart alleges that during the course of his employment with BofI as an internal auditor, he found and reported several violations to his superiors and eventually to the appropriate government agencies as a whistleblower. *Id.* at ¶¶ 9-46, 54-60. He alleges that in return, his superiors attempted to silence him by threatening him, giving him negative performance reviews, and eventually terminating him. Even after termination, Erhart alleges that BofI has continued to defame him, preventing him from obtaining subsequent employment. Erhart alleges that as a result, he has suffered loss in earnings and benefits and physical and emotional distress.

In the consolidated case, BofI brings a countersuit against Erhart, alleging that he stole and disseminated BofI's confidential information and documents. *See generally BofI Federal Bank v. Erhart*, Case No. 15cv02353-BAS (NLS), ECF No. 12. BofI alleges that Erhart engaged in investigations that exceeded the scope of the matters on which he was assigned during his employment and took BofI's confidential information by taking documents home or emailing them to his personal accounts. BofI alleges that Erhart publicly disclosed confidential information and caused BofI's stock price to plummet.

The present motion relates to discovery requests propounded in BofI's Requests for Production ("RFPs") (Set One) and Interrogatories ("ROGs") (Set One) to Erhart. These were served on March 30, 2018 and Erhart responded on June 25, 2018. ECF No.

150 at 1. At issue are several of the Requests for Production and Interrogatories, as set forth below.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.* Once the propounding party establishes that the request seeks relevant information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry heavy burden of showing why discovery was denied").

"The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted). The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." *Id.* Both discovery and Rule 26 are intended to provide parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id.*

The Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not

3

15cv2287-BAS (NLS)

be overturned in the absence of a clear abuse of discretion.") (internal quotation and citations omitted). To the extent that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," the court is directed to limit the scope of the request. Fed. R. Civ. P. 26(b)(2). Limits should also be imposed where the burden or expense outweighs the likely benefits. *Id.* How and when to so limit discovery, or to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," remains in the court's discretion. Fed. R. Civ. P. 26(c)(1).

### III. DISCUSSION

#### a. Request for Production Nos. 5-9

These requests for production seek the following documents:

> **REQUEST FOR PRODUCTION NO. 5**: All DOCUMENTS reflecting any complaints YOU have filed with the Internal Revenue Service ("IRS") concerning Bofl.
>
> **REQUEST FOR PRODUCTION NO. 6**: All DOCUMENTS reflecting any complaints YOU have filed with the IRS concerning Greg Garrabrants.
>
> **REQUEST FOR PRODUCTION NO. 7**: All DOCUMENTS reflecting any complaints YOU have filed with the IRS concerning Steven Garrabrants.
>
> **REQUEST FOR PRODUCTION NO. 8**: All DOCUMENTS reflecting any complaints YOU have filed with any government or regulatory agencies other than the SEC, OCC, OSHA, and the IRS concerning Bofl.
>
> **REQUEST FOR PRODUCTION NO. 9**: All DOCUMENTS reflecting any complaints YOU have filed with any government or regulatory agency other than the IRS concerning Greg Garrabrants.

ECF No. 70-3 at 3-4. The term "YOU" is defined to include Erhart's attorneys. *Id.* at 1. The dispute for these RFPs centers on whether documents reflecting communications between Erhart's attorney, Ms. Gillam, and regulators need to be produced. ECF No. 70-

1 at 6.

The Court previously ruled on an identical issue in the consolidated case brought by BofI. There, the Court held that the law enforcement privilege did not apply. Case No. 15cv2353-BAS (NLS), ECF No. 64 at 4-5. The Court also held that no privilege for government agencies protected the communications either. *Id.* at 5-6. However, the Court did hold that the work product doctrine protected these communications and this protection was not waived when Ms. Gilliam sent communications to the third party regulators. *Id.* at 6-7. The Court sees no reason to revisit these rulings in this case at this time, and the parties do not appear to argue for reconsideration of the prior order. *See generally* ECF No. 70-1 at 6-8.

In the prior order, the Court also addressed whether the work product protection could be overcome by a showing of substantial need by BofI. The Court held that communications between Ms. Gillam and regulators were not even relevant in that case because the consolidated action brought by BofI focused on whether Erhart had illegally disseminated its confidential information *publicly*. Case No. 15cv2353-BAS (NLS), ECF No. 64 at 8. Because the focus of this case is different—*i.e.*, Erhart alleges that he was retaliated against when he legally engaged in whistleblowing against BofI—the Court will revisit the issue of whether BofI has overcome this protection by showing a substantial need for this information.

"The conditional protections afforded by the work-product rule prevent exploitation of a party's efforts in preparing for litigation." *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989). To overcome the work product protection, BofI must show "that it has a substantial need for materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). The "substantial needs" test applies differently to "fact" work product as opposed to "core" or "opinion" work product. "Fact work product consists of factual material that is prepared in anticipation of litigation or trial." *Kintera, Inc. v. Convio*, Inc., 219 F.R.D. 503, 507 (S.D. Cal. 2003). On the other hand,

opinion work product applies to materials that may "reveal the theories, opinions or mental impressions" of an attorney representing the party. *Id.* (opinion work product can include items such as "an attorney's legal strategy, intended lines of proof, evaluation of the strengths and weaknesses of the case, and the inferences drawn from interviews of witnesses").

Opinion work product receives "nearly absolute immunity and can be discovered only in very rare circumstances." *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003); Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."). "A party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). To obtain "opinion" work product, a party must show that the mental impressions of counsel are "at issue" and "the need for the material is compelling." *Id.*

On the other hand, to overcome fact work product protection, BofI would have to show that it has a substantial need for the information and that it would suffer undue hardship if unable to obtain it. *Fletcher v. Union Pac. R.R. Co.*, 194 F.R.D. 666, 670-71 (S.D. Cal. 2000). The substantial need inquiry involves "1) whether the information is an essential element in the requesting party's case and 2) whether the party requesting discovery can obtain the facts from an alternate source." *Id.* at 671 (noting that common examples might be "test results that cannot be duplicated," "photographs taken immediately after an accident where the accident scene has since changed," or "contemporaneous statement taken from, or made by, parties or witnesses"). The part of this inquiry focusing on the alternate source depends "in large part, on whether the work product is unique." *Id.* The undue hardship inquiry examines the "the burden obtaining the information from an alternate source would impose on the party requesting discovery." *Id.*

6

15cv2287-BAS (NLS)

The information that BofI targets here—documents reflecting any complaints Plaintiff filed with various government and regulatory agencies—is factual in nature. These requests are not seeking the mental impressions or opinions of Plaintiff's counsel. Thus, the Court will evaluate these requests under the substantial need and undue burden test. *Fletcher*, 194 F.R.D. at 670-71.

As to substantial need, the heart of Plaintiff's complaint centers on his retaliation claims against BofI, including under Sarbane-Oxley and the Dodd-Frank Wall Street Reform and Consumer Protection Act. ECF No. 32 at ¶¶ 72-99. To make out a prima facie case under Sarbane-Oxley's whistleblower provision, 18 U.S.C. § 1514A, the plaintiff must show that: (1) he engaged in protected activity or conduct; (2) his employer knew or suspected, actively or constructively, that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the circumstances were sufficient to raise an inference that the protected activity was a contributing factor in the unfavorable action. *Tides v. The Boeing Co.*, 644 F.3d 809, 814 (9th Cir. 2011). The "protected activity" covered includes "any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities or commodities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders . . . ." 18 U.S.C. § 1514A. An employee qualifies for protection when he or she provides information or assistance either to a federal regulatory or law enforcement agency, Congress, or any "person with supervisory authority over the employee." § 1514A(a)(1)(A)-(C).1; *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 773 (2018). To recover under § 1514A, an aggrieved employee must exhaust administrative remedies by "filing a complaint with the Secretary of Labor." § 1514A(b)(1)(A). The retaliation claim under the Dodd–Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6(h) similarly protects an individual who reports violations of securities law to the SEC. *Digital Realty*, 138 S. Ct. at 773-74. In order to qualify for protection under this Act, an employee must establish he qualifies as

7

15cv2287-BAS (NLS)

a "whistleblower" as defined in the Act—he must have made a complaint to the SEC. *Id.* at 776-782. In addition, he must establish that he engaged in conduct enumerated in § 78u–6(h)(1)(A). Thus, what complaints Erhart made to what governmental and regulatory agencies is implicated and a central issue for at least these claims.

Part of the substantial needs analysis also looks at whether the information sought may come from other sources. Plaintiff asserts here that he already has agreed to produce and has produced his own communications with the various law enforcement agencies. ECF No. 70-1 at 8. However, Plaintiff makes no representation that Ms. Gillam's communications are entirely redundant of Plaintiff's communications and fails to address whether her communications may provide additional information as to the nature of the complaints Plaintiff made to these agencies. To the extent that they do provide additional information, BofI does not have any other source for that information.

Similarly, as to undue burden, the information sought here with regards to the actual complaints made by Erhart is not the type of information that BofI could easily obtain elsewhere. The communications themselves, reflecting the complaints Erhart made at the time, are likely the best evidence of the substance of the complaints. *Cf. Smith v. Coulombe*, No. 2:11-CV-531-SU, 2013 WL 428363, at *6–7 (D. Or. Feb. 4, 2013) (ordering production over work product protection of internal investigation report in retaliation action brought by police officer alleging corruption, including communications between the independent investigator and the city attorney involved in the investigation).

Accordingly, the Court will **GRANT IN PART** this request. Plaintiff should produce responsive documents reflecting communications between Ms. Gillam and law enforcement agencies. These RFPs seek to substantiate the actual complaints that Plaintiff made to the agencies, so if the communications include any mental impressions or opinions of counsel, such information may be redacted in the production. In addition, the production may exclude any communications that contain information that is wholly redundant of those already produced from Erhart.

### b. Request for Production No. 15

**Request for Production No. 15** seeks the following documents:

> All BofI DOCUMENTS YOU provided to any third party.

ECF No. 70-3 at 4. BofI argues that this request targets documents that Erhart stole from BofI and wrongfully disseminated. ECF No. 70-1 at 9. Erhart counters that this request is too broad, without any limitation as to what sort of documents are covered, what kind of third parties are covered, and without time limitation. *Id.*

BofI makes clear in this motion that it is seeking only documents *containing its confidential information* that Erhart was not permitted to disseminate but did disseminate to *third parties not authorized to receive such information*. The Court finds that this request is relevant to the issues and claims in this case. BofI states that Erhart represented during the meet and confer that he has no further documents to produce. *Id.* If it is true that Erhart has already produced all documents relevant to this request as interpreted by the Court in this order, Erhart is ordered to confirm this with BofI. If not, Erhart must produce any responsive documents that have not already been produced. Accordingly, the Court **GRANTS IN PART** this request, subject to the limitations set forth above.

### c. Request for Production No. 18

**Request for Production No. 18** seeks the following documents:

> All DOCUMENTS concerning YOUR treating physicians, caregivers, and any other person or entity that has provided YOU with any type of medical treatment in the past five years.

ECF No. 70-3 at 5. BofI argues these documents are related to Erhart's claims of physical and mental distress and injuries, which he put at issue in the case. ECF No. 70-1 at 9-10. BofI additionally states that during the meet and confer, Erhart agreed to produce some documents responsive to this request and did so, but BofI did not have the opportunity to review such documents before this motion deadline.

9

Erhart states that he has reasonably produced documents reflecting his damages, including emotional distress and medical leave. ECF No. 70-1 at 10. In addition, Erhart opposes this request which he characterizes as asking for "unfettered" access to his medical records, stating that it is overbroad by asking for all his medical records over the past five years and objecting on grounds of privacy and privilege. *Id.* at 12.

As a threshold matter, the Court does not condone this practice (which appears to have occurred on several of these requests) where Erhart has produced documents on the eve of the deadline to file this motion. This does not fairly give the receiving party the time to review the documents to see if the dispute is resolved. However, the proper way to remedy this unfortunate situation is for the receiving party to file a motion for extension of time as to the joint discovery dispute deadline so that it has time to review the production and decide if the dispute has been resolved. Otherwise, as here, the Court is left with an unclear picture of what has been produced and what is still in dispute.

As the Court has stated previously, on issues of privilege in this case, it will examine privilege assertions under both federal and state law. *See* Case No. 15cv2353-BAS (NLS), ECF No. 65 at 4-5. Under federal law, there is no physician-patient privilege protecting medical records from discovery. *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 633 (S.D. Cal 1999). However, "The Supreme Court has recognized a limited privacy interest in the confidentiality of one's medical records, derived implicitly from the United States Constitution." *Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D. Cal. July 17, 1995) (citing *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)). But this right to privacy is not absolute. *Id.* When determining whether to order a production of medical records, "a court must balance the requesting party's interest in reviewing the records against the patient's right to maintain the medical records as private." *Larson v. Bailiff*, No. 13cv2790-BAS (JLB), 2015 WL 4425660, at *5 (S.D. Cal. July 17, 2015) (citing *Soto*, 162 F.R.D. at 619).

California law also recognizes a medical records privilege that allows a patient to refuse to disclose, or prevent another from disclosing, confidential communications with

a physician in the course of the patient-physician relationship. *Johnson v. Northwest Airlines, Inc.*, No. 08cv2272 VRW, 2009 WL 839044, at *3 (N.D. Cal. March 30, 2009). If this privilege were found to apply, it would "operate[] as a bar to discovery of even relevant information." *Slagle v. Superior Court*, 211 Cal. App. 3d 1309, 1313 (1989). However, "one who has placed in issue his physical condition" cannot invoke the privilege. *Johnson*, 2009 WL 839044, at *3. If waiver is found to apply, it is limited to the medical conditions that the litigant has placed at issue, not to his or her entire medical history. *Id.*

In his complaint, Erhart alleges that he suffered "severe physical and emotional distress" as a result of the retaliation, wrongful termination, and defamation that he suffered. ECF No. 32 at ¶¶ 75, 81, 94, 123, 156. Erhart previously had asserted a claim of intentional infliction of emotional distress, but this claim was dismissed by the Court and Erhart never amended his complaint to reintroduce it. *See* ECF Nos. 44, 46.

In light of the allegations in his complaint, the Court finds that Erhart has not waived the medical privilege protecting his medical records under California state law. The remaining claims in Erhart's complaint only involves "garden-variety" emotional distress claims. Such claims are not sufficient to waive the privilege. *Compare EEOC v. Peters' Bakery*, 301 F.R.D. 482, 487 (N.D. Cal. 2014) (despite finding medical records relevant, holding that the "right to privacy in medical records found in the federal and California constitutions [] was not waived by assertion of a garden variety claim for emotional distress") *and EEOC v. Serramonte*, 237 F.R.D. 220, 224 (N.D. Cal. 2006) (finding no waiver with "garden-variety claim of emotional distress"), *with Weingard v. Harland Fin. Solutions, Inc.*, No. 11cv3109, 2012 U.S. Dist. LEXIS 60966, at *4-6 (N.D. Cal. May 1, 2012) (finding waiver of privilege in case involving more than "garden-variety emotional distress damages claims" in light of claims for CFRA violations and intentional infliction of emotional distress). In addition, similar to the request in *Peters' Bakery*, the request here, though time limited, is not at all limited in scope. 301 F.R.D. at 487 (declining to order production, noting "the Court is aware that in the ordinary course

11

15cv2287-BAS (NLS)

of a person's medical history, ordinary medical records could contain treatment for physical conditions wholly unrelated to any conceivable claim in this case, such as gynecological records, screening and/or treatment for cancer, injuries, and other common but unrelated matters").

Moreover, in light of Erhart's representation to the Court that he will produce documents reflecting his damages, including emotional distress and medical leave, the Court will not compel Erhart to produce any further documents at this time. Accordingly, the Court **DENIES** the motion as to this request.

**Request for Production No. 23**

**Request for Production No. 23** seeks the following documents:

> All DOCUMENTS reflecting YOUR employment from March 1, 2015 to the present.

ECF No. 70-3 at 5. BofI argues that this request targets information that is relevant to Erhart's allegations that he suffered a loss of earnings, wages, and other employment benefits and his request for damages related to the same. ECF No. 70-1 at 3. BofI states that Erhart produced responsive documents on the same day this motion was due so it did not have time to review the document production. *Id.* Regardless, BofI argues that a dispute still remains as to the following categories of documents that Erhart has stated he will not produce during the meet and confer: severance agreements, personnel file, disciplinary actions, and conversations with human resources. *Id.* BofI argues that this information is relevant because it demonstrates Erhart's performance as an employee and his mitigation of damages. *Id.*

As to severance payments, the Court agrees that this information could be relevant to Erhart's claims of loss of earning, wages, and benefits and mitigation of damages. Erhart objects to producing this information because he argues that such documents are sensitive and must remain confidential. Federal courts do recognize a general right to privacy that can be raised in response to discovery requests. *Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 301 (S.D. Cal. 2015). However, this privacy right is not an

12

15cv2287-BAS (NLS)

absolute bar to discovery, and "the resolution of a privacy objection requires a balancing of the need for the particular information against the claimed privacy right." *Id.* On balance, the Court finds that the balance tips in favor of the need for this information. In light of the protective order in place, any sensitive information may be labeled confidential or attorneys eyes only and could be protected from disclosure beyond the purpose of this litigation.[1] *See Mohideen v. Calnet, Inc.*, No. 13CV799 MMA NLS, 2014 WL 1028638, at *3 (S.D. Cal. Mar. 14, 2014).

The Court, however, finds that the rest of the categories of documents—Erhart's personnel file, disciplinary actions, and conversations with human resources—are not relevant. Erhart has already agreed to produce documents related to his mitigation efforts. ECF No. 70-1 at 13. Even to the extent that BofI disputes why it terminated Erhart's employment with BofI, the Court does not see the relevance of Erhart's subsequent job performance. Accordingly, the motion as to this request is **GRANTED IN PART** and **DENIED IN PART**.

### d. Request for Production Nos. 27 and 28

These requests for production seek the following documents:

> **REQUEST FOR PRODUCTION NO. 27**: All DOCUMENTS that relate to any requests YOU made for disability insurance.
>
> **REQUEST FOR PRODUCTION NO. 28**: All DOCUMENTS that relate to any requests YOU made for unemployment insurance benefits.

ECF No. 70-3 at 6. BofI argues that the information sought in these two requests are relevant to Erhart's claim of physical and mental suffering, and any information in his

---

[1] Erhart suggests that there may be an issue with disclosure of these agreement because such agreements "tend to" contain confidentiality provisions. However, Erhart does not squarely state that he has any such agreements where this issue actually exists and the Court notes that such confidentiality provisions often contain exceptions for where disclosure is required by law or by court order. To the extent this actually becomes an issue, the parties may raise it with the Court at that time.

applications for these benefits may be relevant to its defense. ECF No. 70-1 at 15. Erhart objects on variety of grounds, including privacy, overbroadness, and the collateral source rule. *Id.* at 16.

First, the Court does not find that the collateral source rule bars discoverability of the information sought here. The test for discoverability is not admissibility, but whether the information sought is "reasonably calculated to lead to such evidence." Fed. R. Civ. P. 26; *see Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) ("Relevant information for purposes of discovery is information "reasonably calculated to lead to the discovery of admissible evidence."). So, without reaching the question of whether the collateral source rule applies here, such documents may nevertheless be relevant under discoverability. *See Equal Employment Opportunity Comm'n v. Autozone, Inc.*, No. 12-C-303, 2013 WL 12180861, at *7 (E.D. Wis. Aug. 21, 2013) ("The EEOC argues that, because the collateral source rule applies, the information that the defendants seek is not relevant. Whether the collateral source rule applies does not need to be decided today. That is for another day. In the meantime, the documents withheld on the basis of the collateral source rule are discoverable. Although the EEOC maintains that these documents are not relevant, it strikes the court that these documents 'appear reasonably calculated to lead to the discovery of admissible evidence.'"); *see also Armstrong v. Hy-Vee, Inc.*, No. 4:15CV3085, 2016 WL 1228577, at *1 (D. Neb. Mar. 28, 2016) ("Typically, unemployment information and records are relevant to claims of wrongful termination and are proper discovery requests."). Here, it seems that the request as to disability insurance could be relevant at least to Erhart's claims of physical and emotional distress. Also, the request as to unemployment benefits could also lead to admissible evidence—for example, what Erhart wrote in the application may corroborate or refute what he says happened with his employment at BofI.

As to Erhart's concerns regarding privacy, the Court finds that the balance tips in favor of the need for this information, particularly, as discussed above, in light of the

protective order in place. Accordingly, the Court **GRANTS** the motion as to RFP Nos. 27 and 28.

### e. Documents Erhart Contends Have Already Been Produced or Are in BofI's Possession

BofI argues that Erhart has stated that he has already produced certain documents responsive to RFP Nos. 1-4, 11, 16-17, 19-22, 24-26, 29-34, and 36-44, but that these documents were not produced in a code compliant way. ECF No. 70-1 at 16. In particular, in response to the TRO entered in *BofI v. Erhart*, Erhart returned stolen documents by providing a bag of documents, two USB drives, his personal computer, and the password to his personal Gmail account. *Id.* at 16-17. BofI argues that this document dump does not comply with Federal Rule of Civil Procedure 34(b)(E)(i)'s requirement that produced documents be "organize[d] and label[ed]" to "correspond to the categories in the request." *Id.* at 17. Erhart responds by pointing to the other part of the Rule 34(b)(E)(i), permitting documents to be alternatively produced "as they are kept in the usual course of business." Since the information was already produced in response to the TRO, Erhart also points to Rule 34(b)(E)(iii), which states that "[a] party need not produce the same electronically stored information in more than one form."

Despite these disagreements, it appears that Erhart has already agreed to reproduce some of the documents. Both BofI and Erhart represent that Erhart agreed during the meet and confer process that he would review his Gmail account and personal computer and bates stamp and produce documents responsive to these requests. ECF No. 70-1 at 17, 18. Despite this concession, BofI still brings this issue to the Court because it did not receive these documents before this joint motion was due. Because Erhart has agreed to go through this exercise and is bound by the representations made to the opposing party and the Court, there is nothing left for the Court to adjudicate. *See Diagnostics, LP v. Innovacon, Inc.*, 16-cv-0698-CAB (NLS), 2018 WL 1001097, at *5 (S.D. Cal. Feb. 21, 2018) ("[I]t is appropriate that the Court hold the parties to the agreements reached during [the meet and confer] process."). Thus, this request is **DENIED AS MOOT**.

### f. Documents Erhart Has Agreed to Produce

BofI argues that Erhart has also stated that he will produce "non-privileged, responsive documents" for RFP Nos. 1-4, 11, 16-17, 19-22, 24-26, 29-34, and 36-44, but failed to do so until the eve of the deadline to file this motion. ECF No. 70-1 at 18. Erhart responds that it has agreed to produce these documents and has done so, leaving nothing for the Court to adjudicate. *Id.* at 19. The Court agrees—BofI puts forth no reasons as to why it believes the production is not complete as to these requests and the Court gives credence to Erhart's representations to the Court that it has produced these documents. *See Frieri v. Sysco Corp.*, 16-cv-01432-JLS (NLS), 2017 WL 3387713, at *10 (S.D. Cal. Aug. 4, 2017) ("Defendant also agreed to produce documents responsive to this request. Defendant is bound by its agreement to produce."). Thus, this request is **DENIED AS MOOT**.

### g. Interrogatory Nos. 1 and 2

These interrogatories seek the following responses:

> **INTERROGATORY NO. 1**: IDENTIFY all persons, excluding YOUR attorney, with whom YOU have had COMMUNICATIONS, from September 23, 2013 to the present, concerning any wrongdoing YOU perceived by Bofl, including but not limited to allegations of wrongdoing alleged by YOU in YOUR COMPLAINT.
>
> **INTERROGATORY NO. 2**: For each person identified in YOUR response to Interrogatory No. 1, DESCRIBE YOUR COMMUNICATIONS.

ECF No. 70-4 at 2. BofI argues that Erhart has improperly limited his response to exclude government regulators, and moves to compel Erhart to answer as to regulators that he or his attorney, Ms. Gillam, have communicated with. ECF No. 70-1 at 19.

Erhart first objects, arguing that BofI's request for communications related to his attorney is unintelligible in light of the phrase "excluding your attorney" used in Interrogatory No. 1. The Court disagrees—the use of this phrase is clearly meant to exclude communications between Erhart and his attorney, not communications between

his attorney and others. The interrogatories define "YOU" to include Erhart and "any other entity or person acting on YOUR behalf or at YOUR direction, including YOUR attorneys." ECF No. 70-4 at 3.

Erhart also objects on the same privilege and work product protection issues brought up previously with RFPs 5-9. Consistent with the Court's ruling as to the RFPs, the Court finds that identification of the persons with whom Ms. Gillam communicated with is factual in nature, and does not implicate attorney opinions and impressions. Thus, the Court **GRANTS** this request as to Interrogatory No. 1.

As to Interrogatory No. 2, Erhart objects additionally on the grounds that it is a compound interrogatory because it seeks information regarding *each* person identified in the previous interrogatories, thereby exceeding the number of permissible interrogatories. ECF No. 70-1 at 20. In addition, he argues that requiring him to describe the communications with the various individuals is unduly burdensome. The Court agrees and sustains these objections. This interrogatory is compound. *See Withers v. eHarmony, Inc.*, No. CV 09-2266-GHK(RCX), 2010 WL 11520197, at *3 (C.D. Cal. Apr. 1, 2010) (finding interrogatory compound and exceeding number permitted when it requested information regarding "each person identified" in a prior response). Moreover, in light of the communications themselves already being ordered produced above, this interrogatory is unduly burdensome on Plaintiff. Accordingly, the Court **DENIES** this request as to Interrogatory No. 2.

    **h. Interrogatory No. 8**

**Interrogatory No. 8** seeks the following response:

> State all facts that support YOUR contention in paragraph 24 of YOUR COMPLAINT that BofI was engaged in "non-compliance and illegal conduct."

ECF No. 70-4 at 3. Erhart responded in part "*See* . . . the transcripts of the Depositions of Mr. Erhart, equally available to Defendant." ECF No. 70-6 at 15. Based on this response, BofI requests that the Court allow the use of Erhart's July 11, 2017 and August

30, 2017 deposition transcripts in the California State case against Erhart's former girlfriend, *BofI v. Cornell*, San Diego Superior Court Case No. 37-2016-00016599-CU-NP-CTL, for all purposes in this case. ECF No. 70-1 at 20. Erhart opposes this request, stating that he meant his deposition testimony only in this action and not in the other action to which he was not a party. *Id.*

BofI is correct in pointing out that the Court previously granted a joint motion by the parties to consider the deposition of Plaintiff's mother, Pamela Erhart, in the *BofI Federal Bank v. Pamela Erhart*, Case No. 2016-CV-000008, pending in the District Court of Jefferson County, Kansas, to be considered as it was taken in this case and used for all purposes. *See* Case No. 15cv2353, ECF Nos. 62, 63. However, that motion was a joint motion, where the parties were in agreement that, rather than spending the time and expense of deposing Ms. Erhart in the California case, they were agreeable to having the deposition used in the California case for all purposes. *Id.*

Here, unlike with Ms. Erhart, Plaintiff opposes the request, and does not agree that those *Cornell* depositions should be treated as if taken in this case. In light of this opposition, BofI does not offer any legal authority or compelling reason as to why the Court should grant its request at this time. This dispute does not seem related to the interrogatory response itself—the issue raised by BofI here is not the discoverability of the transcripts. If BofI already has the deposition transcripts in question, it has access to the information already; if BofI does not, BofI may request them from Erhart. The issue of how the deposition transcripts may be used in this case, including how they may be used for trial, is not a discovery issue but an issue of admissibility more appropriate to pretrial motions. Accordingly the Court **DENIES** the motion as to this interrogatory.

//
//
//
//
//

## IV. CONCLUSION

For the reasons as set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to compel regarding the above requests. Unless otherwise specified above, where the Court has ordered production, it must take place within 14 days of this order.

**IT IS SO ORDERED.**

Dated: September 4, 2018

Hon. Nita L. Stormes
United States Magistrate Judge