UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MATTHEW ERHART, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BofI HOLDING, INC., an entity d/b/a BOFI FEDERAL BANK and BANK OF THE INTERNET,<br><br>　　　　Defendant. | Case No. 15-cv-2287-BAS-NLS<br>*consolidated with*<br>15-cv-2353-BAS-NLS<br><br>**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 5**<br><br>**[ECF No. 88]** |
| BofI FEDERAL BANK, a federal savings bank<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHARLES MATTHEW ERHART, an individual,<br><br>　　　　Defendant. | |

1

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 5, wherein Defendant BofI Holding Inc. ("BofI") requests the Court to order Plaintiff Charles Matthew Erhart ("Erhart") to sit for a mental examination. ECF No. 88. For the reasons set forth below, the Court **DENIES WITHOUT PREJUDICE** the motion.

I.     Background

Erhart and BofI are involved in two separate consolidated actions. Erhart brings this action, alleging whistleblower retaliation action against BofI for violations of the Sarbanes–Oxley Act of 2002, the Dodd–Frank Wall Street Reform and Consumer Protection Act, and California state law. ECF No. 32. Erhart alleges that during the course of his employment with BofI as an internal auditor, he found and reported several violations to his superiors and eventually to the appropriate government agencies as a whistleblower. *Id.* at ¶¶ 9-46, 54-60. He alleges that in return, his superiors attempted to silence him by threatening him, giving him negative performance reviews, and eventually terminating him. Even after termination, Erhart alleges that BofI has continued to defame him, preventing him from obtaining subsequent employment. Erhart alleges that as a result, he has suffered a loss in earnings and benefits, and physical and emotional distress. In the consolidated case, BofI brings a countersuit against Erhart, alleging that he stole and disseminated BofI's confidential information and documents, causing damage to its reputation and stock price. *See generally BofI Federal Bank v. Erhart*, Case No. 15cv02353-BAS (NLS), ECF No. 12.

Relevant to this dispute, Erhart's first amended complaint included a cause of action for intentional infliction of emotional distress. ECF No. 32 at ¶¶135-138. The Court later dismissed this cause of action from the complaint. ECF No. 44 at 28-31. Regardless, the complaint still includes allegations that Plaintiff suffered emotional distress arising from the events alleged therein. *See* ECF No. 32 at ¶¶ 75, 81, 94, 123, 156.

2

On August 10, 2018, BofI requested that Plaintiff stipulate to a mental examination or alternatively, sought to meet and confer on the matter. ECF No. 88-1 at 5. On August 12, 2018, BofI served Plaintiff with an Amended Notice of Mental Examination, seeking to set the examination for September 5, 2018. ECF No. 88-7. The notice stated that Plaintiff would be examined by Dr. Marc Cohen to "assess[] the facts supporting those portions of Plaintiff's complaint and damages related to his alleged mental conditions, as well as psychiatric conditions that may serve as a basis for BofI's defense against Plaintiff's claims for damages." *Id.* The notice also stated that the examination would consist of a "standard psychiatric examination" of Plaintiff, using "accepted diagnostic instruments, tests, manipulations, and techniques" and last no more than 8 hours with lunch and breaks as needed. *Id.* On August 28, 2018, Plaintiff informed BofI that he would not submit to the examination. ECF No. 88-1 at 5. 6.

The parties subsequently attempted to negotiate a stipulation. Plaintiff agreed to stipulate to the following if BofI would not pursue the mental examination: (1) BofI did not cause Erhart to suffer any emotional, mental, or physical distress beyond mere garden variety distress; (2) Erhart shall not be entitled to recover damages arising out of his emotional, mental or physical distress beyond damages for garden variety distress; and (3) Erhart agreed "not to designate in expert disclosures or call at trial an expert concerning Erhart's emotional, mental, or physical distress, including but not limited to any treating physician, medical expert, or consultant." ECF No. 88-1 at 7. However, Erhart would not agree to stipulate that he "is not suffering from, and does not seek damages from BofI for any continuing and/or future emotional, mental, or physical distress." *Id.*; ECF No. 88-9 at ¶ 3. Separately, Plaintiff offered to stipulate that he would not call any doctors at trial if BofI would agree not to depose any doctors or call any doctors as witnesses at trial and to withdraw its request for a mental examination, but BofI declined.

ECF No. 88-9 at ¶ 14. Thus, no stipulations were ever entered into and the parties bring the present dispute to the Court.

## II. Legal Standards

Federal Rule of Civil Procedure 35 governs mental examinations and authorizes the court to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). The order may be made "only on motion for good cause and on notice to all parties and the person to be examined" and "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2).

A Rule 35 examination requires a showing that the party's mental or physical condition is "in controversy" and that there is "good cause" supporting the order. *Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964). More than a showing of "mere relevance" is required to meet this standard. *Id.* at 118. A claim of emotional distress can place a person's mental state "in controversy" if accompanied by one or more of the following: "(1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; or (5) plaintiff's concession that his or her mental condition is 'in controversy.'" *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995). The following factors are considered in determining if there is "good cause" to permit the examination: "(1) the possibility of obtaining desired information by other means; (2) whether plaintiff plans to prove her claim through testimony of expert witnesses; (3) whether the desired materials are relevant, and; (4) whether plaintiff claims ongoing emotional distress." *Mailhoit v. Home Depot U.S.A., Inc.*, No. CV1103892DOCSSX, 2013 WL 12122580, at *4 (C.D. Cal. Jan. 24, 2013).

Although FRCP 35 "is to be construed liberally in favor of granting discovery," "garden-variety" emotional distress is insufficient to put Plaintiff's mental state in controversy. *Turner,* 161 F.R.D. at 96; *see also Schlagenhauf,* 379 U.S. at 118. "One district court has characterized garden-variety claims for emotional distress as 'claims of generalized insult, hurt feelings, and lingering resentment' that 'do not involve a significant disruption of the plaintiff's work life and rarely involve more than a temporary disruption of the claimant's personal life.'" *Ortiz v. Potter,* 2010 WL 796960, at *3 (E.D. Cal. Mar. 5, 2010) (quoting *Javeed v. Covenant Medical Center Inc.,* 218 F.R.D. 178, 179 (N.D. Iowa, Apr. 3, 2001)). Another district court distinguished a garden-variety claim of emotional distress from "a claim of psychic injury or psychiatric disorder." *Houghton v. M & F Fishing, Inc.,* 198 F.R.D. 666, 668 (S.D. Cal. Jan. 10, 2001) (quoting *Sabree v. United Broth. of Carpenters & Joinders of America, Local No. 33,* 126 F.R.D. 422, 426 (D. Mass. June 8, 1989)).

"Regardless of whether the 'good cause' requirement is met, it is within the Court's discretion to determine whether to order an examination." *Nguyen v. Qualcomm Inc.*, CIV. 09-1925-MMA WVG, 2013 WL 3353840, at *4 (S.D. Cal. July 3, 2013).

### III. Discussion

BofI argues that, even though the Court previously found that Erhart's claims of emotional distress are garden variety now that the intentional infliction of emotional distress claim has been dismissed, several factors support permitting a mental examination. Recently on September 27, 2018 in response to an interrogatory regarding Plaintiff's "basis for any and all general damages" sought, Plaintiff answered:

> Plaintiff seeks all general damages allowable by law on his claims, including without limitation for all emotional harm, physical pain, mental suffering, loss of enjoyment of life, anxiety, humiliation,

5

> emotional distress, embarrassment, injury to reputation, he has suffered
> or will suffer as a result of Defendants' conduct.

ECF No. 88-8 at 8. In addition, in his initial disclosures, Plaintiff disclosed Drs. Marc Reiner and Robert LaVigne, both "[p]sychiatrist[s] that Mr. Erhart met with on multiple occasions relating to his emotional distress." ECF No. 88-5 at 29, 32. Plaintiff has also identified Dr. Calvin Wong as someone who has provided him with medical treatment. ECF No. 88-6 at 11-12. Furthermore, Plaintiff has produced medical records, which indicate that Erhart suffered from "anxiety from work, dizziness," and seeing dark spots. ECF No. 88-1 at 4.

Erhart counters that his claims are garden-variety claims that do not warrant an intrusive mental examination. ECF NO. 88-1 at 15-16. Erhart argues that he only disclosed treating doctors in his initial disclosures for the sake of transparency and to meet his discovery obligations. *Id.* at 16. He points out that he has offered to stipulate to not calling treating doctors but it was BofI who rejected the stipulation. *Id.* Erhart also contends that he has no current treatment regarding his mental state so there is no need to examine him now. *Id.* at 18.

First, the Court considers whether Plaintiff has put his mental state sufficiently "in controversy." The parties do not dispute that the first, second, and fifth *Turner* factors do not apply here—there is no intentional infliction of emotional distress claim remaining, Plaintiff has not alleged a specific mental injury, and Plaintiff does not concede that his mental state is "in controversy." Thus, the only factors for the Court to consider are the third and fourth *Turner* factors.

As for *Turner* factor three—if there is a claim of unusually severe emotional distress—the Court finds that this factor is a close call. The allegations in the complaint related to Plaintiff's mental distress and Plaintiff's recent interrogatory response are vague and non-specific. However, Plaintiff did close at least two doctors in his initial disclosures who he claims treated him for "emotional distress." Furthermore, Plaintiff refused to stipulate to not claiming any damages for

6

"continuing and/or future emotional, mental, or physical distress." Both of these are suggestive that Plaintiff's emotional distress—though vaguely alleged—may be more severe than a more typical case, where the distress caused is more limited in temporal scope to event at issue and does not cause significant disruption to Plaintiff's personal or professional life. Regardless, on balance, the Court does not find that this factor standing alone would be sufficient to warrant a mental examination.

However, the above factor coupled with *Turner* factor four may be sufficient to place Plaintiff's mental status "in controversy." The fourth factor focuses on whether Plaintiff would offer expert testimony as to his mental distress. Plaintiff has disclosed several doctors he claims treated him for emotional distress and has produced medical records reflecting treatment. Treating physicians are typically considered experts, who would give testimony under Federal Rule of Evidence 702. *See, e.g.*, *Langermann v. Prop. & Cas. Ins. Co. of Hartford*, No. 2:14-CV-00982-RCJ, 2015 WL 4724512, at *4 (D. Nev. Aug. 10, 2015) (stating that "[t]reating physicians are clearly experts" even though they are also percipient witnesses and need to be disclosed as such if they are to testify to any "medical opinion"); *see also Carrillo v. B & J Andrews Enterprises, LLC*, No. 2:11-CV-01450-RCJ, 2013 WL 394207, at *4 (D. Nev. Jan. 29, 2013) ("Treating physicians or other health care professionals are primary examples of those who must be identified under Rule 26(a)(2)(A) and provide disclosures pursuant to Rule 26(a)(2)(C)."). Thus, even though the time for expert disclosures has not yet passed,[1] planned testimony of treating physicians even prior to expert disclosure can be indicative that expert testimony will be presented regarding emotional distress. *See Ortiz v. Potter*, No. 2:08-CV-01326 LKKKJN, 2010 WL 796960, at *4 (E.D. Cal. Mar. 5, 2010).

---

[1] The current deadline is set for November 5, 2018. ECF No. 81.

7

The complication in this case with this factor is that it is not entirely clear to the Court what Plaintiff is willing to stipulate to at this juncture. It is true that the parties discussed certain stipulations regarding Plaintiff agreeing to not put on testimony of treating physicians/experts in exchange for Defendant not pursuing the mental examination, but these stipulations were never entered into and therefore, not binding on either party. Thus, while Plaintiff states in the joint motion that he "agreed" to so stipulate, it is unclear to the Court whether Plaintiff is saying he "agreed" to in the past with relation to the parties' negotiations over stipulations that were never entered into or whether he is affirmatively representing to the Court now that he will definitively not call any treating physicians or other experts as to emotional distress.[2] If it is the latter, the Court would agree that this factor would not warrant a mental examination either.

Accordingly, at this juncture, the Court will **DENY** BofI's request **WITHOUT PREJUDICE** to renewing the request should more evidence come to light that Plaintiff will put on testimony and/or evidence from his doctors or other experts regarding any diagnosis or treatment for emotional distress.[3] For example, if Plaintiff designates any of the treating physicians as experts at the expert disclosure stage, this may be indicative of his intent to put on such evidence. At that point, the Court may find that a mental examination may be appropriate and could be conducted during the expert discovery period.[4] *See, Luque-Villanueva v. County of*

---

[2] For example, as another point of confusion, Plaintiff includes as a title to a subsection in his motion that he "is not calling his doctors as witnesses," but in the subsection, he states that he is "not introducing any evidence from a *present* treating doctor." ECF No. 88-1 at 16, 18 (emphasis added).

[3] In addition, the Court expects that parties can work issues like this out without court intervention and encourages the parties to work towards a resolution on this issue should any further complications arise.

[4] Because the Court does not find that Plaintiff's mental status is "in controversy" at this time, the Court does not need to reach the issue of whether there is "good

*San Diego*, 16CV2945-GPC (NLS), 2018 WL 2149366, at *2 (S.D. Cal. May 10, 2018) (permitting IME during expert discovery period).

### IV. Conclusion

At this phase of litigation, the Court will exercise its discretion to **DENY WITHOUT PREJUDICE** BofI's request for Plaintiff to submit to a mental examination, subject to renewal at a later time if appropriate.

**IT IS SO ORDERED**.

Dated: October 12, 2018

*[signature]*

Hon. Nita L. Stormes
United States Magistrate Judge

---

cause" to permit the examination. *See Robertson v. City of San Diego*, No. 13CV1460 W JLB, 2014 WL 6810726, at *3 (S.D. Cal. Dec. 2, 2014).