UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHARLES MATTHEW ERHART, an
individual,

        Plaintiff,

   v.

BofI HOLDING, INC., an entity d/b/a
BOFI FEDERAL BANK and BANK OF
THE INTERNET,

        Defendant.

BofI FEDERAL BANK, a federal savings
bank

        Plaintiff,

   v.

CHARLES MATTHEW ERHART, an
individual,

        Defendant.

Case No.:  15cv2287-BAS (NLS)
*consolidated with*
15-cv-2353-BAS-NLS

**ORDER ON JOINT MOTION FOR
DETERMINATION OF DISCOVERY
DISPUTE NO. 6**

**[ECF No. 97]**

     Before the Court is the parties' Joint Motion for Determination of Discovery

Dispute No. 6, wherein Plaintiff Charles Erhart ("Erhart") seeks to compel Defendant

BofI Holding, Inc. ("BofI") to produce certain documents responsive to his Requests for

Production (Set Two).  ECF No. 97.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to compel.

## I.    RELEVANT FACTUAL BACKGROUND

Erhart and BofI are involved in two separate consolidated actions.  Erhart brings this action, alleging whistleblower retaliation against BofI for violations of the Sarbanes-Oxley Act of 2002, the Dodd-Frank Wall Street Reform and Consumer Protection Act, and California state law.  ECF No. 32.  Erhart alleges that during the course of his employment with BofI as an internal auditor, he found and reported several violations to his superiors and eventually to the appropriate government agencies as a whistleblower.  *Id.* at ¶¶ 9-46, 54-60.  He alleges that in return, his superiors attempted to silence him by threatening him, giving him negative performance reviews, and eventually terminating him.  Even after termination, Erhart alleges that BofI has continued to defame him, preventing him from obtaining subsequent employment.  Erhart alleges that as a result, he has suffered loss in earnings and benefits and physical and emotional distress.

In the consolidated case, BofI brings a countersuit against Erhart, alleging that he stole and disseminated BofI's confidential information and documents.  *See generally BofI Federal Bank v. Erhart*, Case No. 15cv02353-BAS (NLS), ECF No. 12.  BofI alleges that Erhart engaged in investigations that exceeded the scope of the matters on which he was assigned during his employment and took BofI's confidential information by taking documents home or emailing them to his personal accounts.  BofI alleges that Erhart publicly disclosed confidential information and caused BofI's stock price to plummet.

The present motion relates to discovery requests propounded in Erhart's Requests for Production ("RFPs") (Set Two) to BofI.  These were served on August 7, 2018 and BofI initially responded on September 6, 2018.  ECF No. 97 at 4.  In this dispute, the

parties raise several issues regarding various privileges that BofI has asserted, as well as disputes regarding many requests for production.[1]

## II.  <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information need not be admissible to be discoverable.  *Id.*  Once the propounding party establishes that the request seeks relevant information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."  *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry heavy burden of showing why discovery was denied").

"The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'"  *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted).  The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case."  *Id.*  Both discovery and Rule 26 are intended to provide parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery."  *Id.*

---

[1] Due to inconsistencies in the parties' various documents as to RFPs at issue, the Court addresses only those specific Requests for Production that the parties included and provided argument for in their Joint Statement in support of their motion.  *See* ECF No. 97-1.

The Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion.") (internal quotation and citations omitted). To the extent that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," the court is directed to limit the scope of the request. Fed. R. Civ. P. 26(b)(2). Limits should also be imposed where the burden or expense outweighs the likely benefits. *Id.* How and when to so limit discovery, or to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," remains in the court's discretion. Fed. R. Civ. P. 26(c)(1).

## III.   DISCUSSION

### a.   The OCC Privilege

First, BofI argues that certain documents that may be responsive to the requests for production are protected from disclosure by Office of the Comptroller of the Currency ("OCC") regulations.[2] BofI argues that it cannot legally produce documents falling within these regulations because Erhart has not yet invoked the OCC procedures to seek permission to use such information. ECF No. 97 at 11. BofI points to a letter from the OCC, dated October 30, 2015, stating that the parties in this litigation do not have its permission to use covered documents without applying to the OCC first (*see BofI Federal Bank v. Erhart*, Case No. 15cv02353-BAS (NLS), ECF No 39-10), and also recent communications confirming that same position. ECF No. 97 at 11. Erhart counters that the information he seeks in his requests are not documents that fall under these regulations. *Id.* at 9-10. In addition, he argues that BofI previously had no issues

---

[2] BofI has raised this objection throughout his responses to the RFPs, in particular as to RFPs 175-88, 190-91, 193-97, 199-205, 207-14, 217-18, 220, 222-28, 230-31, 235-57, and 259. ECF No. 97-4.

compelling documents from his counsel, Ms. Gillam, and the Court ruled at that time that such documents should be produced. *Id.* at 10; *see BofI Federal Bank v. Erhart*, Case No. 15cv02353-BAS (NLS), ECF No. 64 at 6.

The regulations at 12 C.F.R. Part 4, Subpart C apply to "requests for, and dissemination of, non-public OCC information, including requests for records or testimony arising out of civil lawsuits and administrative proceedings to which the OCC is not a party." 12 C.F.R. § 4.31. The regulations define what is considered "non-public" OCC information, which includes at least the following:

> (1) "a record created or obtained [] by the OCC in connection with the OCC's performance of its responsibilities, such as a record concerning supervision, licensing, regulation, and examination of a national bank, a Federal savings association, a bank holding company, a savings and loan holding company, or an affiliate;"

> (2) "a record compiled by the OCC or the OTS in connection with either agency's enforcement responsibilities;"

> (3) "a report of examination, supervisory correspondence, an investigatory file compiled by the OCC or OTS in connection with an investigation, and any internal agency memorandum, whether the information is in the possession of the OCC or some other individual or entity."

*Id.* § 4.32 (b)(1)(i)-(iii). The regulations set forth the procedures for sending a request to the OCC for use of its non-public information. *Id.* at § 4.33-35. The regulations further state that "All non-public OCC information remains the property of the OCC. No supervised entity, government agency, person, or other party to whom the information is made available . . . may disclose non-public OCC information without the prior written permission of the OCC." *Id.* § 4.36.

First, as to Erhart's argument that he seeks only "non-public" OCC documents, the Court disagrees. While Erhart argues that he does not seek any record "created by the OCC," the regulations define "non-public" information in broader terms. For example, it also can apply to records "obtained" or "compiled" by the OCC. 12 C.F.R. § 4.32 (b)(1). Thus, it appears that some documents that may be relevant to Erhart's requests could fall

under the definition.

Second, turning the issue of whether the regulations must be followed prior to production, the Court finds conflicting authority on this matter. As cited by BofI, there are district court cases holding that the parties must follow the OCC regulations. ECF No. 97 at 12n.7. In *In re Countrywide Financial Corp. Sec. Litig.*, the plaintiff sought to compel two documents used in a deposition of a defense witness. No. 07cv5295-MRP (MANx), 2009 WL 512509 (C.D. Cal. Dec. 28, 2009). In denying the request without prejudice, the court held that "Plaintiffs must first exhaust all administrative remedies and submit requests to use the documents in this litigation to the . . . OCC, pursuant to federal regulations. If the [] OCC do[es] not authorize disclosure of the information that is relevant to this litigation, then the parties can seek the appropriate relief from this court." *Id.* at *2. The court in *Raffa v. Wachovia Corporation* similarly held that "[a] determinability of discoverability is premature pending a determination by the OCC whether they will release the information through the established administrative process." 242 F. Supp. 2d 1223, 1225 (M.D. Fl. 2002); *see also Union Planters Bank, N.A. v. Continental Cas. Co.*, No. 02cv2321-MA/P, 2003 WL 23142200, at *2 (S.D.N.Y Nov. 26, 2003) (agreeing with *Raffa* and holding the parties must submit formal request to OCC before seeking to use the information). Some other district courts have reached a similar conclusion for similar regulations promulgated by other agencies. *See American Savings Bank v. Painewebber Inc.*, 210 F.R.D. 721, 722 (D. Haw. 2001) (stating "[c]ourts in construing regulations which control the release of official information, have held that such information should not be compelled to be produced in violation of these regulations" when interpreting Office of Thrift Supervision regulations"); *Bay Bank v. F/V Orders of Magnitude*, No. 05cv5740-RBL, 2007 WL 737344, at *1 (W.D. Wash. Mar. 7, 2007) (requiring parties to exhaust method prescribed by the FDIC before compelling production).

However, at least one court within this circuit has held otherwise. In *Newton v. American Debt Services, Inc.*, the court considered the application of the OCC

regulations. No. 11cv3228-EMC (JCS), 2014 WL 2452743 (N.D. Cal. May 13, 2014). First, the court noted that the OCC regulations had been enacted pursuant to the "Housekeeping Statute," 5 U.S.C. § 301, which states:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. ***This section does not authorize withholding information from the public or limiting the availability of records to the public.***

*Id.* at *4 (citing 5 U.S.C. § 301). The court then applied the Ninth Circuit case, *Exxon Shipping Co. v. U.S. Dept. of Interior*, finding that it held that § 301 "does not create an independent privilege to withhold government information" and that "district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the action." 34 F.3d 774 at 780 (9th Cir. 1994); *see also In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir. 1995) (holding that Federal Reserve regulations governing disclosure of non-public documents exceeded the authority of § 301). Thus, the Northern District of California court concluded that "[i]n the Ninth Circuit, § 301 and regulations promulgated pursuant to its authority do not create an independent privilege." *Newton*, 2014 WL 2452743 at *5. While acknowledging the authorities that hold otherwise (such as those cited above), the court nevertheless found that the *Exxon* case controlled and that exhaustion of administrative procedures was not required.

After consideration of the relevant case law, the Court is more persuaded by the reasoning in *Newton*. *Newton*'s holding is premised on controlling Ninth Circuit precedent—*Exxon*—that would similarly bind this Court. Moreover, while the Court acknowledges the cases holding otherwise, those cases did not go through the detailed analysis of whether the regulations promulgated by the OCC could override the Federal Rules—rather, those cases simply applied the C.F.R. regulations without question. Thus, the Court concludes that the OCC regulations by themselves are insufficient to override

the discovery procedures in the Federal Rules.

There are, however, two points of distinction between this case and *Newton*. First, the *Newton* court pointed out that in its situation, the OCC had not affirmatively asserted any privileges or otherwise stated a position as to disclosure of the requested documents. 2014 WL 2452743 at *6. Here, the OCC sent a letter to the parties, stating that they must follow the regulations, and BofI represents that the OCC has recently confirmed its position. The Court finds that the reasoning of *Newton* holds, even in light of this distinction. In its letter, the OCC has done nothing more than reinforce the position that is stated in the regulations. *Newton*'s holding—which is premised on the idea that § 301 did not give the agencies authority to override the Federal Rules and in their place, enact "much more cumbersome procedures"—is not affected by the fact that the OCC reiterated that position specifically to the parties in this case. *See id.*

But, the second point of distinction has some applicability here. Though the *Newton* court held that the regulations as expressed in the C.F.R. did not *create* an independent privilege, it expressly stated that this issue is not to be conflated with whether there exists a separate bank examination privilege. *Id.* at *5 ("[The parties] appear to conflate the regulations with the bank examination privilege, which is an independent privilege that is held by the agencies, and which should be analyzed separately."). While the *Newton* parties did not assert this privilege, BofI argues that it has here.

The bank examination privilege is a qualified privilege that can protect "agency opinions and recommendations and banks' responses" from disclosure during discovery. *In re Bankers Tr. Co.*, 61 F.3d at 471. This privilege is not absolute and can be overcome by a showing of good cause. *Id.* The purpose behind the privilege is to provide for "candor in communications between bankers and examiners." *Id.* Thus, its reach does not extend to purely factual material. *Id.* The privilege belongs to the agency. *Id.*; *see also Marketing Investors Corp v. Millenium Bank*, No. 11cv1696-D, 2012 WL 1357502, at *7 (N.D. Tex. Apr. 16, 2012) ("The bank examination privilege belongs to the

Government and must be asserted by it; it can neither be claimed or waived by a private party.").

Erhart disputes that BofI has sufficiently asserted this privilege. ECF No. 97-1 at 6, 14, 16, 19, 49, 54. In its response to Erhart's RFPs, BofI did specifically assert this privilege in its "General Objections." ECF No. 97-4 at 4-5. In its responses to specific RFPs, BofI then included a statement that it objected to the request "to the extent it seeks information protected by, among other privileges, the attorney-client privilege and attorney work product doctrine." However, it only specifically called out the bank examination privilege in individual responses to RFPs 194, 223, 225, and 236—in each of these, naming it in addition to the attorney client and work product privileges. *Id.* at 31, 53, 55, 63. Normally, this may not be sufficient to exert the privilege as to the other RFPs where it was not specifically objected to. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005) (a claim of privilege must be made "expressly" and "must be more specific than a generalized boilerplate objection"); *M2 Software, Inc. v. M2 Commc'ns, L.L.C.*, 217 F.R.D. 499, 501 (C.D. Cal. 2003) (boilerplate General Objections "are not sufficient to raise any substantial, meaningful or enforceable objections to any particular discovery request"); *Schultz v. Sentinel Ins. Co., Ltd*, No. 4:15-CV-04160-LLP, 2016 WL 3149686, at *7 (D.S.D. June 3, 2016) ("boilerplate 'general objections' fail to preserve any valid objection at all because they are not specific to a particular discovery request and they fail to identify a specific privilege or to describe the information withheld pursuant to the privilege"). However, the bank examination privilege belongs to the agency and cannot be waived by private parties. Thus, in light of BofI's objections which did generally identify the privilege and the nature of the privilege itself, the Court finds that this privilege has not been waived.

In summary, the motion as to this issue is **GRANTED IN PART** and **DENIED IN PART**. While the Court finds that the parties are under no obligation to abide by the OCC procedures as to the "non-public" documents specifically enumerated and covered

9

under those regulations, the parties are obligated to seek input from the OCC as to documents covered under the bank examination privilege—in other words, as to any documents that qualify as "agency opinions and recommendations and banks' responses." However, BofI has not produced a privilege log yet. Thus, the Court **ORDERS** BofI to produce a privilege log of documents it contends it cannot produce to Erhart because they are covered by the bank examination privilege within **14 days** of this order (if not already done). Once this log is produced to Erhart, within **7 days**, Erhart may apply to seek permission and input from the OCC as to whether it intends to assert the bank examination privilege on those documents.

### b. The "SAR" Privilege

The parties' second dispute is about the application of the privilege protecting Suspicious Activity Reports ("SARs"). The requests for production that possibly implicate this privilege are as follows:

> **REQUEST FOR PRODUCTION NO. 165**: Any and all DOCUMENTS RELATED TO complaints made by PLAINTIFF RELATED TO suspicious activities, excepting any actual SARs made to the Office of the Comptroller of the Currency.[3]

> **REQUEST FOR PRODUCTION NO. 174**: Any and all DOCUMENTS RELATED TO requests by PLAINTIFF that a Suspicious Activity Report (SAR) should be filed with the Office of the Comptroller of the Currency.

> **REQUEST FOR PRODUCTION NO. 175**: Any and all DOCUMENTS RELATED TO complaints made by PLAINTIFF RELATED TO suspicious activity during his employment with YOU.

ECF No. 97-4 at 10, 16-17. In addition to the OCC privilege issue raised above for these requests, BofI argues that it cannot be compelled to produce SARs or documents that would show that SARs exist.

Under the Annunzio-Wylie Anti-Money Laundering Act, 31 U.S.C. § 5318 *et seq.*,

---

[3] RFP 173 appears to be a duplicate of this request.

banks and other financial institutions are required to report suspicious transaction activities to the appropriate authorities through a SAR.   Under 12 C.F.R. § 21.11, "[n]o national bank, and no director, officer, employee, or agent of a national bank, shall disclose a SAR or any information that would reveal the existence of a SAR."  *See also* 31 U.S.C. § 5318(g)(2)(A)(i).  This bar on disclosure does not apply to "supporting" documentation, as long as such disclosure would not reveal the existence or contents of a SAR.  *See, e.g.*, *United States v. Holihan*, 248 F. Supp. 2d 179, 187 (W.D.N.Y. 2003) ("Although in some cases the supporting documentation may disclose the existence of an SAR and its contents, thereby thwarting the regulation's intent, any supporting documentation which would not reveal either the fact that an SAR was filed or its contents cannot be shielded from otherwise appropriate discovery based solely on its connection to an SAR."); *Weil v. Long Island Sav. Bank*, 195 F. Supp. 2d 383, 389 (E.D.N.Y. 2001) ("The privilege is, however, limited to the SAR and the information contained therein; it does not apply to the supporting documentation."); *see also* 61 FR 4332-01 ("The OCC takes the position that only the SAR and the information on the SAR are confidential under 31 U.S.C. 5318(g).").

BofI argues that these RFPs target information that is not relevant.  The Court disagrees.  Part of Erhart's complaint alleges that BofI had "borrowers [who] were criminals, even notorious criminals, and other suspicious persons who put the bank at high risk for violating the Bank Secrecy Act's Anti-Money Laundering Rules ("AML Rules."  ECF No. 32 at ¶ 34; *see also id.* at ¶ 31, 44 (alleging other issues with potentially bad or fraudulent customers and accounts).  Thus, the information that is targeted in these requests meets the relevance threshold.

As to the scope of this prohibition on production of SARs, the parties actually seem to agree that it covers the SARs themselves and documents that would evidence that a SAR was filed.  Here, the Court agrees with Erhart that—even putting this prohibition aside—responsive documents may still exist.  Each of the requests seeks information about suspicious activity that Plaintiff complained about, but is not limited only to those

where SARs were actually filed.  In other words, producing responsive "supporting" documents would not necessarily divulge information regarding whether an actual SAR was eventually filed.  Accordingly, the Court **GRANTS** the motion to compel as to these RFPs, subject to the prohibition that no SARs or documents that would reveal the existence of a SAR will be produced.

### c. <u>The Attorney-Client and Work Product Privilege</u>

Finally, the parties also raise a privilege dispute related to BofI's claim of privilege on investigatory reports and documents.  ECF No. 97 at 14-16.  Erhart does not contend that these privileges do not apply, but instead argues that he is concerned that BofI is "casting a wide net with this privilege" to shield documents from production.  *Id.* at 14.  BofI counters that this dispute is premature because it is has not yet produced a privilege log and Erhart can counter specific documents once it produces a log.  *Id.* at 15.

The Court agrees that this dispute is premature.  The Court will not abstractly posture on privilege issues and cannot rule on specific privilege assertions until a privilege log is presented.  The Court will, however, grant the part of the motion where Erhart requests that BofI produce a privilege log.  Given the scope of documents that the parties may assert privilege over in this case, it is appropriate that the parties at least start the process of exchanging privilege log—subject of course to amendment as discovery progresses and more documents are produced—given that the close of fact discovery is approaching.  Thus, the Court **ORDERS** <u>both parties</u> to produce privilege logs within <u>**14 days**</u> of this order (if they have not already done so) and **DENIES WITHOUT PREJUDICE** the motion as to these privileges.

### d. <u>Privacy</u>

Next, the parties dispute whether BofI's privacy objections should protect documents from discovery.  ECF No. 97 at 16-18.  Federal courts recognize a general right to privacy that can be raised in response to discovery requests.  *Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 301 (S.D. Cal. 2015). However, this privacy right is not an absolute bar to discovery, and "the resolution of a privacy objection requires a

balancing of the need for the particular information against the claimed privacy right." *Id.* Factors that a court may consider in performing this balancing test includes whether the material is "clearly relevant" and whether "the need for discovery is compelling because the information sought is not otherwise readily obtainable." *All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12CV146-L BLM, 2013 WL 1882260, at *3 (S.D. Cal. May 3, 2013).

The parties do not identify to the Court what specific requests for production this privacy dispute is over. Thus, the Court can only speak generally as to this objection. BofI should not rely on this objection to withhold entire documents from production. If it believes a document contains private information about its customers that is not critical to its use in the litigation (for example, social security numbers of customers or other such information that may be irrelevant even though the document itself is relevant), it may redact such information from the document as necessary before production. However, if the identity of the customer is critical (for example, if the customer is related to a specific complaint that Erhart made to regulators or his superiors), that information should not be redacted and can be sufficiently protected under the protective order. Under the protective order in place, any sensitive information may be labeled confidential and could be protected from disclosure beyond the purpose of this litigation. *See Mohideen v. Calnet, Inc.*, No. 13CV799 MMA NLS, 2014 WL 1028638, at *3 (S.D. Cal. Mar. 14, 2014). Accordingly, the motion in this regard is **GRANTED**.

**e. Repetitive Requests**

BofI argues that certain requests that Erhart now seeks to compel production for are repetitive of prior requests in Erhart's Requests for Production (Set One), for which the time to bring a discovery dispute has long passed.[4] ECF No. 97 at 2. As such, BofI argues that Erhart should not be able to circumvent the timing requirement and bring

---

[4] The Court ruled on August 22, 2018 that Erhart is barred from bringing any discovery disputes related to this previous set of requests for production due to untimeliness. ECF No. 74.

them now. *Id.* Erhart argues that none of the requests are "identical" and the new requests are more "specific and narrow" in scope of time. *Id.* at 6-7.

BofI, however, is correct that Erhart cannot circumvent the timing requirement by simply serving another duplicative request. The request does not have to be "identical"—it is sufficient for it to be "sufficiently similar." *See, e.g.*, *Pac. Marine Propellers, Inc. v. Wartsila Def., Inc.*, No. 17CV555 BEN (NLS), 2018 WL 1605177, at *3 (S.D. Cal. Apr. 3, 2018) (a new request for documents "necessary to compute" a cost of repair is "substantially similar" to a previous request for documents that "support" or "relate to" a cost of repair because the new request is covered entirely by the previous request); *Cruz v. United States*, No. 14CV2956-LAB (DHB), 2016 WL 727066, at *2-3 (S.D. Cal. Feb. 24, 2016) (finding subsequent RFP to be "substantially similar" to earlier RFP and rejecting as untimely joint discovery motion based on response deadline for subsequent RFP); *ViaSat, Inc. v. Space Sys./Loral, Inc.*, No. 12-CV-0260-H WVG, 2013 WL 3467413, at *5-7 (S.D. Cal. July 10, 2013) (declining to allow end run around discovery deadline via Rule 30(b)(6) deposition on twenty-four topics duplicative of interrogatory responses, to which the court already denied motion for supplemental responses); *see also Bird v. PSC Holdings I, LLC*, No. 12-CV-1528 W NLS, 2013 WL 1120659, at *1 (S.D. Cal. Mar. 18, 2013) (finding joint motion untimely, advising the parties that "any discovery demands which are substantially similar to previous demands will not re-start the clock for filing a discovery motion, and may be grounds for a protective order," but exercising discretion to address the merits).

The Court will apply this legal framework to the individual requests discussed below, for those requests where BofI specifically made this objections and provided the actual text of the previous request.

//

//

//

//

### f.  **Individual Requests**

The Court **ORDERS** as follows as to the individual requests, subject to the rulings as to privilege and privacy issues discussed above.[5]  Any production must take place within **14 days** of this order.[6]

**Request Nos. 164:  GRANTED IN PART**.

> **164**:  Any and all DOCUMENTS RELATED TO complaints made by PLAINTIFF RELATED TO YOUR bank practices, policies or procedures.

Despite complaining that Erhart's use of the word "complaint" is vague, BofI states that it interpreted this to mean some level of dissatisfaction by Erhart.  Thus, the Court agrees that BofI should not limit this RFP to target only formal reporting and should exercise reasonable judgment to determine what constitutes a "complaint." However, the Court will order that production on this request be limited to complaints made by Plaintiff that can be reasonably construed to allege that BofI's bank practices, policies, or procedures are fraudulent or illegal.

**Request Nos. 165, 174, 175:**  See above ruling discussing the SAR privilege.

**Request Nos. 167, 168, 169, and 261:  GRANTED IN PART**.

> **167**: Any and all DOCUMENTS RELATED TO Jacob Joseph & Associates, LLC including without limitation any reports made by PLAINTIFF about them to the Securities and Exchange Commission or any other law enforcement agency while he was employed by YOU.

> **168**: Any and all DOCUMENTS RELATED TO Juan Muhsin Al-Barazi including without limitation any reports made by

---

[5] In other words, BofI must apply the privilege and privacy rulings to each and every request listed below and produce documents pursuant to those rulings, if it has otherwise withheld documents on privilege and privacy grounds.

[6] The Court expects the parties to behave professionally and make a good faith effort to reasonably and honestly apply its holdings to the requests.  The Court will note here that, if after faithfully and reasonably applying these rulings, BofI continues to find that they have produced all the documents responsive to certain requests, barring an actual showing by Plaintiff, supported by evidence, that responsive documents *must* exist that BofI has not produced, the Court will accept BofI's representation.

PLAINTIFF about him to YOU as high-risk or otherwise, and/or to any law enforcement agency while he was employed by YOU.

**169**: Any and all DOCUMENTS RELATED TO FBME, aka Federal Bank of the Middle East, including without limitation any reports made by PLAINTIFF about FBME to YOU, and/or to any law enforcement agency while he was employed by YOU.

**261**: Any and all DOCUMENTS RELATED TO PDVSA, including without limitation any reports made by PLAINTIFF about it to YOU, and/or to any law enforcement agency while he was employed by YOU.

Erhart argues that these requests target information about clients whom he made complaints and reports about to the SEC/OCC or identified to the bank as "high-risk." BofI argues that these requests are too broad because they seek all information about that customer and are not limited to information related to any complaints or reporting. The Court agrees that these requests need to be limited and will order production only as to those documents related to those customers that are also related to the complaints Erhart made about them to any government agency or to his superiors at BofI, that can be reasonably construed to allege the customer was engaging in fraudulent or illegal activity.

**Request Nos. 176, 177, 205, 211, 212, and 228: GRANTED IN PART**.

**176**: Any and all DOCUMENTS RELATED TO audit findings made by PLAINTIFF during his employment with YOU.

**177**: Any and all DOCUMENTS RELATED TO audit findings made by PLAINTIFF RELATED TO fraud.

**205**: Any and all COMMUNICATIONS RELATED TO PLAINTIFF's identification of potential problems uncovered, disclosed or revealed in his audit reviews.

**211**: All COMMUNICATIONS RELATED TO PLAINTIFF'S findings during the structured settlements and lottery internal audit PLAINTIFF worked on.

**212**: All DOCUMENTS RELATED TO any structured

16

settlements and/or lottery internal audit reports PLAINTIFF
worked on, including draft and final versions of any such
reports.

**228**: All COMMUNICATIONS RELATED TO PLAINTIFF'S
identification of any problems as part of his work on the Loan
Origination Audit.

As to RFPs 176, 177, and 205—which target various audit findings or problems identified therein—the Court agrees with BofI that they are too broad as written, because they are not limited to the complaints Erhart alleges to be the basis for his termination. Accordingly, the Court will limit production on these requests to responsive documents that reflect Erhart's findings and/or identifications of problems that can be reasonably construed to allege that BofI was acting fraudulently or illegally.[7]

As to RFPs 211, 212, and 228, the Court finds that these sufficiently target specific issues alleged in Plaintiff's complaint and will grant the motion to compel.

**<u>Request Nos. 178, 180, 181</u>: GRANTED IN PART**.

**178**: Any and all DOCUMENTS RELATED TO fraud
identified by PLAINTIFF.

**180**: Any and all DOCUMENTS RELATED TO violations of
law identified by PLAINTIFF.

**181**: Any and all DOCUMENTS RELATED TO PLAINTIFF'S
identification of possible violation of law by BofI, including the
recording of telephone calls without notifying all parties to the
calls.

The Court grants production on these requests to responsive documents that can be reasonably construed to be Plaintiff alleging that BofI or a customer was acting

---

[7] BofI also argues that for RFP 176, Erhart should be barred from bringing a motion to compel because it is too similar to a previous request, RFP 148, which sought "All DOCUMENTS reflecting findings Plaintiff made during his employment." Given how broad the previous request was, the Court finds that this request does not target substantially the same information and will permit Erhart to bring the dispute.

fraudulently or illegally.

**Request Nos. 182, 183 184, 200, 203: GRANTED IN PART**.

> **182**: Any and all COMMUNICATIONS RELATED TO PLAINTIFF's flagging any customers as high-risk.

> **183**: Any and all COMMUNICATIONS RELATED TO PLAINTIFF's flagging of loans as high-risk.

> **184**: Any and all COMMUNICATIONS RELATED TO PLAINTIFF's flagging anything as high-risk during his employment with YOU.

> **200**: Any and all DOCUMENTS RELATED TO PLAINTIFF's COMMUNICATIONS regarding suspected money laundering.

> **203**: Any and all DOCUMENTS RELATED TO PLAINTIFF's COMMUNICATIONS regarding PEPs in Venezuela.

As to RFPs 182, 183, and 184 related to flagging customers and accounts, the Court agrees with BofI that they are too broad. Without more information about why the customers and accounts are flagged as high-risk, not all responsive documents may be relevant to the lawsuit. Thus, the Court will limit production on this request to responsive documents for customers, accounts, or loans that were flagged for possible illegal activity under Sarbanes-Oxley, Dodd-Frank, or California Labor code § 1102.5.

For RFP 200, BofI argues that it is overbroad and employees regularly communicated about money laundering and how to prevent it. Also, BofI argues that the request is not limited in time. The Court will order production as to responsive documents reflecting Plaintiff's specific suspicions of money laundering by actual customers of BofI and/or by BofI, and limit the time period to when Plaintiff was employed with BofI.

For RFP 203, BofI argues that loans to Politically Exposed Persons (PEPs) are not *per se* illegal and thus this request is too broad. The Court finds that this request is more specific in that it requests information related to PEPs in Venezuela, and there are specific allegations in Plaintiff's complaint regarding PEPs. ECF No. 32 at ¶ 34. Thus, the Court will grant production on this request.

**Request Nos. 185, 186, 188, and 190:** DENIED.

> **185**: Any and all DOCUMENTS RELATED TO actions YOU took as a result of any complaints made by PLAINTIFF during his employment with YOU.

> **186**: Any and all DOCUMENTS RELATED TO actions YOU considered but did not take as a result of any complaints made by PLAINTIFF during his employment with YOU.

> **188**: Any and all DOCUMENTS RELATED TO actions YOU considered but did not take as a result of any complaints made about PLAINTIFF.

> **190**: Any and all DOCUMENTS RELATED TO actions taken in response to any complaints made by PLAINTIFF about suspected fraudulent activity.

The Court agrees with BofI that, to the extent that these requests seek remedial actions taken by BofI, these are not relevant to Plaintiff's retaliation claims. Otherwise, BofI claims that it has produced all responsive documents and there is nothing left for the Court to compel.

**Request Nos. 194, 195, 199, 251, 252, 253, 255, 256:** GRANTED IN PART.

> **194**: Any and all DOCUMENTS which RELATE TO any communications between YOU and FINCEN regarding any matters identified by PLAINTIFF and/or any allegations in the COMPLAINT.

> **195**: Any and all YOUR SENIOR MANAGEMENT's COMMUNICATIONS with third parties about PLAINTIFF.

> **199**: Any and all DOCUMENTS which RELATE TO statements made by any PERSON RELATING TO any of the allegations made by PLAINTIFF in this action (excluding any attorney-client privileged COMMUNICATIONS).

> **251**: All COMMUNICATIONS RELATED TO PLAINTIFF sent or received by John Ball between September 1, 2014 and June 30, 2015.

> **252**: All COMMUNICATIONS RELATED TO PLAINTIFF

sent or received by John Tolla between September 1, 2014 and
June 30, 2015.

**253**: All COMMUNICATIONS RELATED TO PLAINTIFF
sent or received by Gregory Garrabrants between September 1,
2014 and June 30, 2015.

**255**: All COMMUNICATIONS RELATED TO PLAINTIFF
sent or received by Jan Durrans between September 1, 2014 and
June 30, 2015.

**256**: All COMMUNICATIONS RELATED TO PLAINTIFF
sent or received by Paul Grinberg between September 1, 2014
and June 30, 2015.

As for RFPs 194, 199, 251, and 252, the Court agrees with BofI that this request is
substantially similar to RFPs 39, 52, 92, and 93, respectively, in Plaintiff's Requests for
Production (Set One), for which Plaintiff can no longer bring a timely dispute.[8]  The
motion to compel as to these requests is denied.

For RFP 195, BofI argues that this request is overbroad in temporal scope and
because it seeks communications between "senior management" and all "third parties."
BofI also argues that it is irrelevant to whether or not Erhart had a reasonable belief when
Erhart reported the alleged misconduct.  However, as Erhart argues, he does also have a
defamation claim where he alleges BofI made statements to others.  In addition, though
BofI argues that "senior management" may include many who have no connection to
Erhart, by the same vein, BofI should be able to quickly narrow the group that may have

_____

[8] RFP 39 sought "Any and all DOCUMENTS which RELATE to any COMMUNICATIONS between
YOU and any state or federal government entity, including but not limited to . . . FINCEN . . . regarding
PLAINTIFF and/or any allegations in the COMPLAINT."  RFP 52 sought "Any and all DOCUMENTS
which RELATE to statements made by any PERSON RELATING TO any of the allegations made by
PLAINTIFF in this action, including but not limited to written statements; notes of interviews; tape
recordings of any oral statements and/or interviews; transcriptions of any tape recordings of any oral
statements and/or interviews; reports regarding the results of any interviews or investigations; and/or
correspondence."  RFP 92 sought "All COMMUNICATIONS mentioning PLAINTIFF sent or received
by John Ball."  RFP 93 sought "All COMMUNICATIONS mentioning PLAINTIFF sent or received by
John Tolla."

some connection to Erhart and the allegations in this complaint. Accordingly, the Court will grant this grant this request.

For RFPs 253, 255, and 256, BofI has represented that it has produced the nonprivileged documents it has in its possession.[9] There is nothing left for the Court to compel and the motion as to these requests is denied.

**Request Nos. 196, 197, and 198: DENIED.**

> **196**: Any and all DOCUMENTS which RELATE TO complaints by any current or former employee against YOU regarding whistleblower retaliation since 2012.
>
> **197**: Any and all DOCUMENTS which RELATE TO any complaints by any current or former employee against YOU about experiencing retaliation since 2012.
>
> **198**: Any and all DOCUMENTS which RELATE TO any complaints by any current or former employee against YOU claiming wrongful termination in violation of public policy since 2012.

The Court agrees that these requests are substantially similar to RFPs 47, 48, and 50 in Plaintiff's Requests for Production (Set One), for which Plaintiff can no longer bring a timely dispute.[10] In addition, the Court does not find these requests seeking information about other whistleblowers and/or claims of retaliation to be proportional to the needs of this case.

*//*

---

[9] Erhart argues that, at the time he filed this motion, he had not yet had the opportunity to review the supplemental responses BofI produced on the eve of the filing deadline. As the Court has previously warned the parties, the proper way to remedy this situation is for the receiving party to file a motion for extension of time as to the joint discovery dispute deadline so that it has time to review the production and decide if the dispute has been resolved.

[10] RFP 47 sought "Any and all DOCUMENTS which RELATE to complaints by any current or former employee about whistleblower retaliation against YOU since 2010." RFP 48 sought "Any and all DOCUMENTS which RELATE to any complaints by any current or former employee about retaliation against YOU since 2010." RFP 50 sought "Any and all DOCUMENTS which RELATE to any complaints by any current or former employee against YOU for wrongful termination in violation of public policy since 2010."

**Request Nos. 201, 202:  GRANTED IN PART**.

> **201**: Any and all physical DOCUMENTS PLAINTIFF provided to YOU in this litigation or otherwise since March 6, 2015.

> **202**: Any and all physical DOCUMENTS contained on the laptop PLAINTIFF returned to YOU March 2015.

To the extent that these requests target any documents that are currently in Plaintiff's possession, produced by Plaintiff, and never returned to BofI, the motion is denied.  To the extent that these requests target documents that were in Plaintiff's possession, but were returned to BofI, the Court is perplexed as to what Erhart has in his possession already.  According to the parties' briefing in previous filings, it appears that Erhart has in his possession a mirror image of his computer which was imaged by BofI's forensic team.  *See* ECF No. 93 at 1-2; 79 at 4-5; 70-1 at 3, 18.  Indeed as part of a previous discovery dispute, Erhart agreed to go through this mirror image and produce back to BofI bate-stamped documents.  Thus, it appears to the Court that Erhart likely already has in his possession many of these documents, and has already gone through the task of going through the mirror image.  Thus, the Court will only order BofI to produce to Erhart any documents that were returned to BofI by Erhart in response to the TRO but are not in the mirror image already in Erhart's possession.[11]

**Request No. 206:  DENIED**.

> **206**: Any and all DOCUMENTS RELATED TO any search conducted of Plaintiff's work areas at any time after January 1, 2015, including without limitation his desk, cabinets, computer and other electronic devices.

The Court agrees that this request is substantially similar to RFP 64 in Plaintiff's

---

[11] The Court acknowledges that BofI argues that these two requests are substantially similar to previous requests for which Erhart can no longer bring a timely discovery dispute.  However, because the Court has limited production to documents that were returned as part of the TRO and not in the mirror image, the Court does not find that this is sufficiently similar to the previous requests.

Requests for Production (Set One), for which Plaintiff can no longer bring a timely dispute.[12]  Moreover, BofI represents that it does not have any responsive documents.

**Request No. 243:  GRANTED**.

>  **243**: All COMMUNICATIONS RELATED TO any contention by YOU that PLAINTIFF was not authorized to review any of the accounts of Gregory Garrabrants at BofI.

For this request, BofI does not argue it seeks irrelevant information or that it does not understand the scope of what the request seeks.  BofI's primary objections are that responsive documents may be protected by the OCC privilege, and BofI states that it has produced everything not protected.  In light of the Court's ruling on the OCC privilege, however, the Court will grant this request and order BofI to reevaluate its production.

**Request Nos. 244, 245, 246, 247, 248, and 249:  DENIED**.

>  **244**: Any and all DOCUMENTS RELATED TO information available to YOU after PLAINTIFF's employment ended that support any of findings he made during his employment with YOU.

>  **245**: Any and all DOCUMENTS RELATED TO information available to YOU after PLAINTIFF's employment ended that support any complaints he made to YOU.

>  **246**: Any and all DOCUMENTS RELATED TO information available to YOU after PLAINTIFF's employment ended that refute any of findings he made during his employment with YOU.

>  **247**: Any and all DOCUMENTS RELATED TO information available to YOU after PLAINTIFF's employment ended that refute any complaints he made to YOU.

>  **248**: Any and all DOCUMENTS RELATED TO any assurances YOU have received from any regulator or law

---

[12] RFP 64 sought "Any and all DOCUMENTS which RELATE to any request or instruction to anyone to search Plaintiffs office, cubicle, work area, desk, filing cabinet or any other place that did or could hold files worked on by PLAINTIFF at any time."

enforcement agency that YOU are not under investigation.

**249**: Any and all DOCUMENTS RELATED TO any assurances YOU have received from any regulator or law enforcement agency that YOU have been cleared of any claim of wrongdoing.

The Court agrees with BofI that the information targeted in these requests—which focuses on what BofI found out *after* Erhart was terminated or assurances BofI received from regulators—are unlikely to be relevant to his retaliation claims, which focus on Erhart's belief at the time that he reported BofI's alleged misconduct. *See Erhart v. Bofi Holding, Inc.*, No. 15-CV-02287-BAS (NLS), 2016 WL 5369470, at *11 (S.D. Cal. Sept. 26, 2016). Erhart provides no further argument as to why the documents sought may be relevant.

## IV. <u>CONCLUSION</u>

For the reasons as set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to compel regarding the above requests. Unless otherwise specified above, where the Court has ordered production, it must take place within <u>**14 days**</u> of this order.

**IT IS SO ORDERED.**

Dated: November 15, 2018

Hon. Nita L. Stormes
United States Magistrate Judge

24