1
2
3
4
5
6
7
8
9

10   **UNITED STATES DISTRICT COURT**

11   **SOUTHERN DISTRICT OF CALIFORNIA**

12

13   CHARLES MATTHEW ERHART,

14                              Plaintiff,

15        v.

16   BOFI HOLDING, INC.,

17                              Defendant.

18

19

20

21   _____

     And Consolidated Case

22

23

| | |
|---|---|
| Case No. 15-cv-02287-BAS-NLS *consolidated with* 15-cv-02353-BAS-NLS | |

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART BOFI HOLDING, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 78); AND**

**(2) DENYING CHARLES MATTHEW ERHART'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 96)**

24        Presently before the Court are the parties' cross-motions for judgment on the

25   pleadings.   (ECF Nos. 78, 96.)   The Court finds these motions suitable for

26   determination on the papers submitted and without oral argument.  *See* Fed. R. Civ.

27   P. 78(b); Civ. L.R. 7.1(d)(1).  For the following reasons, the Court **GRANTS IN**

28

1  **PART** and **DENIES IN PART** BofI Holding, Inc.'s motion (ECF No. 78) and

2  **DENIES** Charles Matthew Erhart's motion (ECF No. 96).

3

4  ## BACKGROUND

5       The Court and the parties are well versed in the competing allegations that

6  form the basis of these consolidated actions.  Consequently, the Court provides only

7  a synopsis of the parties' allegations here.

8       BofI Holding, Inc. is the publicly-traded holding company for BofI Federal

9  Bank, a federally-chartered savings and loan association that operates several brands

10 of banks including Bank of Internet.[1]  (*See* Erhart's First Amended Complaint

11 ("FAC") ¶ 4, ECF No. 32; BofI's FAC ¶ 10, ECF No. 12 in Case No. 15-cv-2353.)

12 BofI hired Charles Matthew Erhart as a Staff Internal Auditor in its headquarters in

13 San Diego, California.  (Erhart's FAC ¶ 3; BofI's FAC ¶ 7.)

14      The pleadings paint two different pictures of Erhart's time at BofI.  In his First

15 Amended Complaint, Erhart presents a captivating account of his tenure as an auditor

16 in a turbulent corporate environment.  (Erhart's FAC ¶¶ 3–75.)  Erhart recounts how,

17 time and again, he battled against pressure from senior management as he discovered

18 conduct he believed to be wrongful.  (*Id.*)  For example, Erhart claims he unearthed

19 evidence that BofI failed to turn over information that was responsive to a subpoena

20 from the Securities and Exchange Commission.  (*Id.* ¶¶ 26–31.)  Erhart also allegedly

21 discovered that BofI's Chief Executive Officer was "depositing third-party checks

22 for structured settlement annuity payments into a personal account, including nearly

23 $100,000 in checks made payable to third parties." (*Id.* ¶ 44.)

24      When BofI learned Erhart was potentially reporting these activities to the

25 Bank's principal regulator, Erhart claims BofI engaged in a pattern of retaliatory

26

27     [1] Since this lawsuit was filed, BofI Holding, Inc. rebranded itself as Axos Financial, Inc. *See* Axos Financial, Inc., Registration of Securities (Form 8-A) (Sept. 13, 2018).  To be consistent

28 with the pleadings, the Court refers to the company by its prior name.  And unless the distinction is relevant, the Court uses the term "BofI" to refer to either BofI Holding, Inc. or BofI Federal Bank.

15cv2287

conduct against him.  (*See* Erhart's FAC ¶¶ 53–74.)  This alleged conduct included BofI (i) repeatedly contacting Erhart while he was out sick from work, (ii) demanding the return of his company-issued laptop, (iii) making false statements about his medical leave and alleged whistleblowing activities, and (iv) ultimately terminating him.  (*Id.*)  Based on these allegations, Erhart brings seven claims against BofI, including whistleblower retaliation in violation of the Sarbanes–Oxley Act and the Dodd–Frank Wall Street Reform and Consumer Protection Act.[2]  (*Id.* ¶¶ 76–163.)

In contrast, BofI's countersuit portrays Erhart as an entry-level internal auditor who conducted improper "rogue investigations."  (BofI's FAC ¶¶ 7, 23–28.)  BofI claims Erhart "abused his power" as an auditor by "initiating and conducting his own unplanned and unapproved investigations into matters that were outside the scope of the" Bank's internal audit plans.  (*Id.* ¶ 24.)  In doing so, Erhart allegedly "misrepresented to other BofI employees that he was conducting authorized investigations as part of his job."  (*Id.* ¶ 26.)  The Bank also contends that Erhart accessed confidential information for personal gain, disseminated confidential information to "a website that allows comments on the stocks of publicly traded companies," and abandoned his job.  (*Id.* ¶¶ 27, 31, 40–41.)  In light of these allegations, BofI brings its own catalog of eight claims against Erhart, including breach of contract, breach of the duty of loyalty, and violation of the Computer Fraud and Abuse Act.  (*Id.* ¶¶ 47–98.)

The Court consolidated these actions but did not direct the parties to file consolidated pleadings.  (ECF No. 31.)  The parties now bring cross-motions for judgment on the pleadings.

---

[2]  Erhart's First Amended Complaint pleads a total of ten claims, but the Court previously dismissed Erhart's claims for violation of California's Confidentiality of Medical Information Act, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress.  (ECF No. 44.)  Although the Court dismissed these claims with leave to amend, Erhart chose not to file a Second Amended Complaint.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets omitted). "When a party invokes Rule 12(c) to raise the defense of failure to state a claim, the motion faces the same test as a motion under Rule 12(b)(6)." *Landmark Am. Ins. Co. v. Navigators Ins. Co.*, 354 F. Supp. 3d 1078, 1081 (N.D. Cal. 2018).

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency" of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**ANALYSIS**

**I.    Erhart's Motion**

Erhart moves for judgment on the pleadings as to seven of BofI's claims. At the outset, the Court underscores that, with few exceptions, it is limited under Rule 12(c) to considering the factual allegations contained in the pleadings. *See* Fed R.

Civ. P 12(b)–(c); *see also United States v. Real Prop. Located at 9832 Richeon Ave., Downey, Cal.*, 234 F. Supp. 2d 1136, 1137 (C.D. Cal. 2002). As explained in the Court's prior order regarding Erhart's affirmative defenses, BofI cannot impose tort liability on Erhart for conduct that is protected activity under state or federal whistleblower statutes. (*See* ECF No. 40 at 32:18–33:14.) But a pleadings motion is not the proper venue to resolve the parties' competing factual contentions regarding what transpired during Erhart's tenure at the Bank.[3] With this point in mind, the Court addresses each of Erhart's seven challenges to BofI's claims.

### A.    Fraud

Erhart first challenges BofI's claim that he committed fraud, arguing that BofI fails to plead this claim with the required specificity. (Erhart's Mot. 5:3–6:13.) Under California law, the elements of a cause of action for fraud are: "(1) misrepresentation (false representation, concealment, or nondisclosure), (2) knowledge of falsity (or 'scienter'), (3) intent to defraud (i.e., to induce reliance), (4) justifiable reliance, and (5) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 632 (1996). Rule 9(b) in turn requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud . . . shall be stated with particularity."

---

[3] The Court also notes the possibility that one or more of BofI's common law tort claims may be displaced by California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426–3426.10. "[A] prime purpose of [the uniform act] was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information . . . of value.'" *SilvacocData Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.22 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011). In light of CUTSA's breadth and purpose, courts have concluded the statute "supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret." *E.g.*, *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011). Although BofI does not plead a trade secret misappropriation claim, the primary thrust of several of BofI's tort claims is that Erhart improperly misappropriated its "confidential information." (*See* BofI's FAC ¶¶ 54–79.) Erhart's motion, however, does not argue that these claims fail because they are displaced by CUTSA. Because this issue was not raised, the Court will not further explore it in this order.

Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (providing Rule 9(b) applies to state law fraud claims). "To comply with Rule 9(b), allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). Hence, allegations of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

BofI's fraud claim is predicated on Erhart purportedly conducting rogue investigations at the Bank. (BofI's FAC ¶¶ 72–79.) BofI alleges Erhart's "primary job duty was to prepare audits of various aspects of BofI's operations as specifically assigned to him, . . . within the parameters of the Internal Audit Plan approved by [BofI's] independent Audit Committee." (*Id.* ¶ 10.) One of Erhart's supposed rogue audits, an unapproved payroll investigation, "was not part of the 2014 Audit Plan." (*Id.* ¶ 27(a).) BofI alleges that Erhart nonetheless "knowingly made false statements to BofI employees that he was conducting authorized official investigations and audits as part of his job as a Staff Internal Auditor," including in several emails to employees in December 2014 "to request information for his unapproved payroll audit." (*Id.* ¶¶ 73–74.)

Even if BofI's fraud claim is not compelling, Rule 12(c) tests the sufficiency of the pleadings, and BofI's claim provides Erhart with "notice of the particular misconduct which is alleged" to allow him to "defend against the charge." *See Bly-Magee*, 236 F.3d at 1019. BofI's pleading provides the requisite who (Erhart), what (making false statements that he was conducting authorized official investigations and audits as part of his job to obtain information improperly), when (December 11, 15, 19, and 22, 2014), where (at BofI), and how (by sending e-mails to employees

who are identified by name in the pleading). *See Kearns*, 567 F.3d at 1124. BofI alleges that (1) Erhart knew his statements were false, (2) Erhart intended to deceive the other employees to gain access to confidential information, and (3) the Bank was harmed by his conduct. (BofI's FAC ¶¶ 72–79.) BofI thus pleads a claim for fraud. Erhart's other arguments against this claim are better suited for summary judgment or trial. Therefore, eliminating this claim under Rule 12(c) is not appropriate.

### B.    Breach of the Duty of Loyalty

Erhart argues BofI cannot maintain a breach of the duty of loyalty claim against him because no binding authority imposes a duty of loyalty on lower-level employees. (Erhart's Mot. 6:14–9:25.) He also argues the claim fails because BofI (i) does not allege Erhart "transferred" his loyalty to another employer and (ii) his alleged conduct was not "inimical" to BofI's best interests. (*Id.*) The elements of a breach of the duty of loyalty claim are: "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007). "During the term of employment, an employer is entitled to its employees' 'undivided loyalty.'" *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41 (1987) (quoting *Sequoia Vacuum Sys. v. Stransky*, 229 Cal. App. 2d 281, 287 (1964)). "The duty of loyalty is breached, and the breach 'may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.'" *Id.* at 414 (quoting *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (1995)). Inimical means: "1. Behaving like an enemy; hostile. 2. Opposite or adverse in effect or tendency." *Inimical*, Black's Law Dictionary (10th ed. 2014).

As BofI's alleged employee and agent, Erhart owed it a duty of loyalty during his term of employment. *See Fowler*, 196 Cal. App. 3d at 41; *see also People v. Frangadakis*, 184 Cal. App. 2d 540, 549 (1960) ("There is seldom any reason to

distinguish between the service of an agent and that of a servant or employee.  Most of the rules relating to duties, authority, liabilities, etc., are applicable to servants as well as other agents." (emphasis omitted)).  And the Court is unpersuaded by Erhart's argument that a "lower-level" employee cannot owe an employer a duty of loyalty. "California courts generally have not distinguished between managerial employees and lower-level employees with respect to the duty of loyalty." *E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1016 (N.D. Cal. 2016).  Indeed, if a customer service representative at a bank sold customer lists and account information to a competitor, the employee would not be able to escape liability for breach of the duty of loyalty simply because of the job's potential "lower-level" status.  The Court therefore will not hold, as a matter of law, that Erhart—a staff internal auditor—lacked a duty of loyalty to BofI.

BofI must still plausibly plead that Erhart breached his duty of loyalty.  The Bank's pleading identifies various examples of Erhart's conduct that BofI believes constitutes a breach of this duty.  (BofI's FAC ¶ 65(a)–(e).)  Several of these examples are not plausible.  For instance, BofI claims Erhart breached his duty of loyalty because he failed "to fulfill his job duties."  (*Id.* ¶ 65(c).)  That allegation may mean Erhart was an unsatisfactory employee, but it does not mean he failed to be loyal to BofI.  The Court is similarly unconvinced that Erhart plausibly violated his duty of loyalty simply because he conducted "additional investigations and audits that were outside the scope of the 2014 and 2015 Internal Audit Plans."  (*Id.* ¶ 65(a).)

BofI, however, also alleges that Erhart "wrongfully distribut[ed] BofI's Confidential Information to unauthorized recipients." (BofI's FAC ¶ 65(e).)  For example, BofI claims Erhart "disseminated . . . Confidential Information . . . to contributors to a website that allows comments on the stocks of publicly traded companies."  (*Id.* ¶ 41(h).)  BofI further claims it was harmed by Erhart's conduct. (*Id.* ¶ 67.)  When these allegations are accepted as true and construed in BofI's favor, this conduct could be viewed as "inimical to the best interests of" BofI and constitute

a breach of Erhart's duty of loyalty.  *See Stokes*, 41 Cal. App. 4th at 295.
Accordingly, Erhart's Rule 12(c) challenge to this claim is unpersuasive.

### C.    Negligence

Erhart next challenges BofI's negligence claim.  He argues that an employer cannot maintain a common law negligence claim against an employee, and that BofI fails to establish why Erhart, an entry-level auditor, owed it a duty of care.  (Erhart's Mot. 9:26–11:19.)  "The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury." *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (2013).  "The first element, duty, 'may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship.'"  *Doe v. U.S. Youth Soccer Ass'n, Inc.*, 8 Cal. App. 5th 1118, 1128 (2017) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993)).  Absent certain circumstances, "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." Cal. Civ. Code § 1714; *see also Rowland v. Christian*, 69 Cal. 2d 108, 112 (1968).

In addition, under the California Labor Code, "[o]ne who, for a good consideration, agrees to serve another, shall perform the service, and shall use ordinary care and diligence therein, so long as he is thus employed."  Cal. Lab. Code § 2854; *see also id.* § 2859 ("An employee is always bound to use such skill as he possesses, so far as the same is required, for the service specified.").  "An employee who is guilty of a culpable degree of negligence is liable to his employer for the damages thereby caused to the employer."  *Id.* § 2865.  An employee "is guilty of a 'culpable *degree* of negligence' when he fails to use ordinary care, consistent with the degree of skill required and to be used as provided in Labor Code sections 2858 and 2859."  *Dahl-Beck Electric Co. v. Rogge*, 275 Cal. App. 2d 893, 907 (1969) (citations omitted).

The Court is unpersuaded by Erhart's challenges to the legal sufficiency of BofI's negligence claim.  Section 2865 of the California Labor Code plainly provides that if Erhart, a former employee of BofI, "is guilty of a culpable degree of negligence," he is liable to BofI "for the damage thereby caused to the employer."  *See also Rogge*, 275 Cal. App. 2d at 907.  Erhart does not point the Court to—and the Court has not found—a published California case that provides otherwise.[4]  Therefore, BofI's allegations establish that Erhart owed it a duty of care, and BofI's pleading sufficiently states the remaining elements of a negligence claim.  Consequently, resolving this claim under Rule 15(c) is not warranted.

### D.    California Penal Code Section 502

Erhart also moves to dispose of BofI's claim under California Penal Code section 502.  (Erhart's Mot. 11:20–13:11.)  He argues the claim fails because (i) he did not overcome any technical or code-based barriers to access BofI's data, and (ii) he used his company-issued laptop as an employee acting in the course and scope of his employment.  (*Id.*)  Among other things, section 502 imposes criminal liability on a person who "[k]nowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or

---

[4] Although there are several cases that discuss section 2865 in the indemnification context, those cases do not "hold that section 2865 cannot be used for direct negligence claims against employees."  *See Moore v. Pflug Packaging & Fulfillment, Inc.*, No. 17-CV-05823-YGR, 2018 WL 2430903, at *5, n.7 (N.D. Cal. May 30, 2018) (collecting and discussing cases).  The Court agrees that section 2865's "plain language supports a broader range of permissible claims" than simply employer claims for indemnification.  *See James v. Childtime Childcare, Inc.*, No. CIV.S-06-2676 DFL DA, 2007 WL 1589543, at *2 (E.D. Cal. June 1, 2007); *see also Rogge*, 275 Cal. App. 2d at 906–07 (discussing jury instructions in the context of a direct negligence claim under section 2865); *Div. of Labor Law Enf't v. Barnes*, 205 Cal. App. 2d 337, 349 (1962) (reasoning, in the context of section 2865, that the employer appellants "may, by proper amendment, state a cause of action in negligence against [an employee]"); *but see 1538 Cahuenga Partners, LLC v. Fabe*, No. B222023, 2012 WL 19519, at *17 (Cal. Ct. App. Jan. 5, 2012) (unpublished) (rejecting the proposition that a corporate employer can rely on section 2865 to bring a professional negligence claim against the employer's inhouse counsel).

computer network." Cal. Penal Code § 502(c)(4). The statute also grants a private right of action for compensatory damages and other relief to "the owner . . . of the computer . . . or data who suffers damage or loss by reason of a violation." *Id.* § 502(b)(8).

Erhart's two attacks on BofI's section 502 claim are unavailing. First, section 502 does not require that Erhart "hack" into BofI's computer system or overcome code-based barriers for him to be potentially liable for the unauthorized taking or destruction of BofI's data. The statute punishes a person who "[k]nowingly accesses" a computer system for specified unauthorized uses. *See* Cal. Penal Code § 502(c)(1)–(3), (4), (11). The statute defines "access" as meaning "to gain entry to, instruct, cause input to, . . . or communicate with, the . . . memory function resources of a computer, computer system, or computer network." *Id.* § 502(b)(1). Therefore, section 502(c) "does not require *unauthorized* access. It merely requires *knowing* access." *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). And "[a] plain reading of the statute demonstrates that its focus is on unauthorized taking[, deletion,] or use of information," as opposed to unauthorized access to the computer system. *See id.*; *see also* Cal. Penal Code § 502(c)(4). BofI adequately alleges that Erhart knowingly accessed one of its computers to destroy data without authorization. (BofI's FAC ¶¶ 43–44, 82.) The Court therefore rejects Erhart's first argument concerning his alleged access to BofI's computer system. *Cf. Christensen*, 828 F.3d at 789 ("We conclude that the term 'access' as defined in the California statute includes logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly.").

Erhart's second argument may have merit based on the evidence, but it is inappropriate at the pleadings stage. Erhart argues BofI's claim fails because he accessed "and used his laptop as an employee acting in the course and scope of his employment." (Erhart's Mot. 12:27–13:2.) Indeed, section 502 exempts conduct occurring during the course and scope of employment:

> [Section 502(c)] does not apply to punish any acts which are committed by a person within the scope of his or her lawful employment. For purposes of this section, a person acts within the scope of his or her employment when he or she performs acts which are reasonably necessary to the performance of his or her work assignment.

Cal. Penal Code § 502(h); *but see Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 37 (2007) (providing that a police officer who logged in to a police database to satisfy personal curiosity about celebrities was acting within the scope of his employment); *see also Christensen*, 828 F.3d at 789 n.8 (discussing section 502(h)). Here, however, BofI alleges Erhart's actions "were not committed within the scope of his lawful employment at BofI and were not reasonably necessary to the performance of his work assignments at BofI." (BofI's FAC ¶ 83.) Upon review of BofI's factual allegations, these assertions withstand scrutiny at the pleadings stage. The Court thus rejects Erhart's second argument and will not invoke Rule 12(c) to disturb BofI's section 502 claim.

### E.     The Computer Fraud and Abuse Act

The Court next turns to BofI's lone federal claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Erhart contends this claim is defective because BofI's allegations are conclusory and Erhart was authorized to use his company-issued laptop. (Erhart's Mot. 13:12–15:24.) "The CFAA prohibits acts of computer trespass by those who are not authorized users or who exceed authorized use." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1065 (9th Cir. 2016). One type of forbidden computer trespass occurs when an individual "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss." 18 U.S.C. § 1030(a)(5)(C). The term "protected computer" includes a computer that is "exclusively for the use of a financial institution." *Id.* § 1030(e)(2)(A). And "damage" is "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8). Further, the CFAA not

only imposes criminal liability, but also creates a private right of action for "[a]ny person who suffers damage or loss by reason of a violation of this section." *Id.* § 1030(g).

In response to Erhart's Rule 12(c) challenge, BofI contends its factual allegations state a claim under several provisions of the CFAA, including the one excerpted above, § 1030(a)(5)(C). (BofI's Opp'n 11:16–14:11.) *See also* 18 U.S.C. § 1030(a)(5)(C). The Court agrees that BofI states a claim under § 1030(a)(5)(C), notwithstanding Erhart's argument that he was authorized to use his company-issued laptop. BofI alleges Erhart's "laptop was a protected computer under the [CFAA]" because it was to be exclusively used for his work at BofI, a qualifying financial institution. (BofI's FAC ¶ 93.) *See also* 18 U.S.C. § 1030(e)(2)(A), 4(A). BofI also alleges that Erhart "knowingly deleted large amounts of data from his BofI-issued laptop, and intentionally caused damage, without authorization, to his laptop." (*Id.* ¶ 92.) The Bank further claims it "has sustained, and will continue to sustain, loss and damages according to proof, but in excess of $5,000." (*Id.* ¶¶ 93, 95.)

In addition, BofI's pleading contains factual allegations that preclude Erhart's argument that he was authorized to use the computer as an employee when the alleged misconduct occurred. The Ninth Circuit has explained that "an employer gives an employee 'authorization' to access a company computer when the employer gives the employee permission to use it." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009). On the other hand, "a person uses a computer 'without authorization' under [the CFAA] . . . when the employer has rescinded permission to access the computer and the defendant uses the computer anyway." *Id.* at 1135; *see also United States v. Nosal*, 844 F.3d 1024, 1029 (9th Cir. 2016). Although Erhart may have initially had authorization to use his company-issued laptop, BofI alleges it "informed Erhart that it had not, and would not, authorize him to keep physical possession of his BofI issued-laptop during his leave of absence." (BofI's FAC ¶ 43.) The Bank also repeatedly requested the "return of Erhart's BofI issued-laptop

for safekeeping while he was on a leave of absence." (*Id.* ¶¶ 43–44.) BofI therefore allegedly "rescinded permission to access the computer," making Erhart's future use unauthorized. *See LVRC Holdings*, 581 F.3d at 1133. BofI claims Erhart nevertheless "deleted large amounts of data" from the Bank's laptop, including "a mass deletion . . . the same day he returned his laptop to BofI." (BofI's FAC ¶ 44.) Consequently, BofI sufficiently states a claim under the CFAA.

Given that BofI states a viable claim under at least one provision of the CFAA, the Court declines to opine on whether the Bank's factual allegations demonstrate Erhart committed any of the statute's other computer offenses. And a pleadings motion is not the appropriate venue to resolve any friction between the CFAA's prohibitions and the protected activity alleged in Erhart's whistleblower retaliation suit. The Court thus denies Erhart's request to dispose of BofI's CFAA claim via Rule 15(c).

## F.    California's Unfair Competition Law

Erhart's motion next focuses on BofI's claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. (Erhart's Mot. 16:1–17:25.) The UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002). "Its coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted). "By prohibiting unlawful business practices, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the [UCL] makes independently actionable." *Valdez v. Seidner-*

1  *Miller, Inc.*, 33 Cal. App. 5th 600 (2019) (quoting *De La Torre v. CashCall, Inc.*, 5

2  Cal. 5th 966, 980 (2018)).

3          BofI's derivate UCL claim is tenuous, but Erhart does not convincingly

4  demonstrate that the Court should dispose of it under Rule 15(c).  Erhart first

5  contends the claim fails because BofI does not plead he is in competition with the

6  Bank, but "under the unfair competition statute, 'competition between the parties is

7  not a prerequisite to relief . . . . Emphasis is . . . placed upon the word 'unfair' rather

8  than on 'competition.'"  *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 675 (9th

9  Cir. 2007) (quoting *Ball v. Am. Trial Lawyers Ass'n,* 14 Cal. App. 3d 289, 303

10  (1971)).  Further, Erhart does not otherwise persuasively argue that the UCL is

11  inapplicable.    Indeed, when construed in the Bank's favor, BofI's pleading

12  demonstrates this dispute is related to BofI's commercial activities and Erhart's

13  occupation or "business" as an internal auditor.  Hence, the Court cannot conclude

14  that the UCL is inapplicable as a matter of law.  *Cf. That v. Alders Maint. Ass'n*, 206

15  Cal. App. 4th 1419, 1427 (2012) (rejecting application of the UCL where the

16  defendant homeowners association did not "participate as a business in the

17  commercial market," and the parties' dispute was "not related to any activity that

18  might be deemed in the least bit commercial"); *see also Burks v. Poppy Const. Co.*,

19  57 Cal. 2d 463, 468 (1962) ("The word 'business' embraces everything about which

20  one can be employed, and it is often synonymous with 'calling, occupation, or trade,

21  engaged in for the purpose of obtaining a livelihood or gain.'").

22          Erhart also argues BofI's UCL claim is inadequate because the Bank does not

23  explain in its pleading how Erhart's alleged conduct misled consumers.   This

24  showing, however, is not required for BofI to state a claim under the UCL's

25  "unlawful" prong.  "Because Business and Professions Code section 17200 is written

26  in the disjunctive, it establishes three varieties of unfair competition—acts or

27  practices which are unlawful, or unfair, or fraudulent.  'In other words, a practice is

28  prohibited as "unfair" or "deceptive" even if not "unlawful" and vice versa.'"  *Cel-*

*Tech*, 20 Cal. 4th at 180.  BofI adequately pleads that Erhart committed substantive violations of law, which can serve as the basis for its derivate claim under the UCL's unlawful prong; therefore, the Bank is not required to plead that Erhart also engaged in deceptive or unfair business practices.  Accordingly, the Court rejects Erhart's challenges to BofI's UCL claim.

### G.    Conversion

Finally, Erhart moves to dispose of BofI's conversion claim under Rule 15(c).  (Erhart's Mot. 17:26–20:15.)  "Conversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015).

The tort of conversion was traditionally limited to tangible personal property, but the tort has since "expanded well beyond its original boundaries."  *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 210 (2014).  "In determining whether property that was taken is subject to a conversion claim, courts have recognized that '[p]roperty is a broad concept that includes every intangible benefit and prerogative susceptible of possession or disposition.'"  *Id.* at 211 (internal quotation marks omitted) (quoting *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003)); *see also CTC Real Estate Servs. v. Lepe*, 140 Cal. App. 4th 856, 860 (2006) (noting that one's personal identifying information "is a valuable asset" because its misuse "can have serious consequences to that person" and it can be the object of theft).  Therefore, courts have entertained cases for conversion of various property including credit card information, bootlegged copies of musical recordings, and a company's net operating loss amounts.  *Id.* at 210–14 (collecting cases).  Consequently, "the unauthorized taking of an intangible property interest not merged with or reflected in tangible properly can be an actionable conversion."  *Id.* at 211.  Furthermore, absolute

1   ownership of the property is not required; the plaintiff "need only allege it is entitled
2   to immediate possession at the time of conversion. *Farmers Ins. Exch. v. Zerin*, 53
3   Cal. App. 4th 445, 452 (1997) (emphasis omitted) (quoting *Bastanchury v. Times-*
4   *Mirror Co.*, 68 Cal. App. 2d 217, 236 (1945)).

5          BofI claims Erhart is liable for conversion because he took personal possession
6   of BofI's property, including "documents containing Confidential Information" and
7   a disc named "Bank of Internet," without the Bank's authorization.  (BofI's FAC ¶¶
8   31–33, 55–56.)  BofI claims the converted information includes "non-public personal
9   information of BofI employees, business counterparties, and clients."  (*Id.* ¶ 11.)
10  BofI further claims "Erhart has not returned BofI's property that he took personal
11  possession of and converted to his own use without BofI's authorization or consent."
12  (*Id.* ¶ 57.)  Having reviewed BofI's factual allegations, the Court concludes BofI
13  states an actionable conversion claim.  *Cf. Angelica Textile Servs., Inc. v. Park*, 220
14  Cal. App. 4th 495, 508, 510 (2013) (noting employee's possession of "thousands of
15  pages of [tangible] documents that plaintiff owns" supports a conversion claim, but
16  also that the claim may ultimately fail if the defendant is "able to show that they have
17  no value"); *but see also infra* note 3.  Accordingly, the Court is unpersuaded by
18  Erhart's challenge to this claim under Rule 15(c).

19         Overall, Erhart does not demonstrate that judgment on the pleadings is
20  appropriate with respect to any of the claims he challenges.  Consequently, the Court
21  denies his motion for judgment on the pleadings under Rule 15(c).

22

23  **II.     BofI's Motion**

24         BofI's motion for judgment on the pleadings raises four challenges to Erhart's
25  pleading regarding: (1) the exhaustion of his claim under the Sarbanes–Oxley Act;
26  (2) the legal sufficiency of portions of his three whistleblower retaliation claims; (3)
27  the adequacy of his UCL claim; and (4) the proper named defendant for his action.
28  The Court will address each item.

### A.   Exhaustion of Sarbanes–Oxley Claim

BofI first argues partial judgment on the pleadings is appropriate regarding Erhart's whistleblower retaliation claim under the Sarbanes–Oxley Act. (BofI's Mot. 7:1–11:16.) BofI contends Erhart failed to fully exhaust his administrative remedy with the Occupational Safety and Health Administration ("OSHA") before filing his lawsuit. (*Id.* 9:14–11:16.) Therefore, BofI seeks a ruling that this claim fails to the extent it rests on protected activity that was not adequately raised in Erhart's administrative complaint filed with OSHA. (*Id.*) Erhart counters that he has adequately pled administrative exhaustion, and he claims resolving BofI's challenge requires a factual determination because the Court should consider "the materials submitted to OSHA and what transpired." (Erhart's Opp'n 4:12–8:11.)

The Court is familiar with this issue because BofI previously challenged Erhart's First Amended Complaint based on exhaustion via a motion to strike portions of the pleading. (ECF No. 35-1 at 24:1–25:8; *see also* ECF No. 3-1 at 21:14–23:11.) The Court denied BofI's motion to strike, stating:

> The Court declines BofI's invitation to carve up Erhart's amended pleading based on what he included in his administrative complaint. The Bank's motion overlooks the fact that Erhart is not simply bringing a claim under Sarbanes–Oxley. He has nine other claims. Although Sarbanes–Oxley may require Erhart to exhaust his administrative remedies before bringing a whistleblower retaliation claim, Dodd–Frank does not. The same is true for Erhart's whistleblower retaliation claim under California Labor Code § 1102.5. Consequently, even if Erhart failed to fully exhaust his administrative remedies under Sarbanes–Oxley, the allegations BofI seeks to remove from his pleading are appropriately included to support Erhart's other claims . . . . Thus, the Court will not strike them.

(ECF No. 44 at 36:24–37:10.) Accordingly, although BofI's present motion arises under Rule 12(c) instead of Rule 12(f), the motion essentially seeks the same relief as the Bank's prior attack on Erhart's pleading.

15cv2287

The Court remains unconvinced that partially resolving Erhart's Sarbanes–Oxley claim on the pleadings is appropriate. Erhart alleges he exhausted his administrative remedies. (Erhart's FAC ¶ 18.) And the Court already determined that Erhart states a plausible whistleblower retaliation claim under Sarbanes–Oxley. (ECF No. 44 at 11:14–21:27.) In addition, even if this Court were to now examine Erhart's administrative complaint to determine whether a portion of his Sarbanes–Oxley claim is unexhausted, Erhart requests permission to submit additional evidence regarding his administrative claim to demonstrate he meets his exhaustion burden. (Erhart's Opp'n 4:24.) By now, there has been substantial discovery on the merits of Erhart's claim, and the Court prefers to consider the partial exhaustion issue without the constraints of a pleadings motion. The Court could convert BofI's pleadings motion into a summary judgment motion and allow the parties to submit any additional relevant evidence, *see* Fed. R. Civ. P. 12(d), but BofI has already informed the Court that it intends to seek summary adjudication of Erhart's Sarbanes–Oxley claim. (*See* ECF No. 119.) Therefore, the Court denies without prejudice BofI's partial exhaustion contentions, and BofI can renew these arguments in its forthcoming evidentiary motion.[5]

### B.      Partial Disposition of Whistleblower Retaliation Claims

Aside from the exhaustion issue, BofI requests the Court rule that Erhart's whistleblower retaliation claims partially fail to the extent that they are based on certain factual allegations in his pleading. (BofI's Mot. 11:18–20:20.) In response, Erhart argues that (1) his pleading states a cognizable claim for each whistleblower retaliation cause of action, and (2) this Court "is not required to parse out specific

---

[5] The Court also cautions Erhart, however, that if he believes additional evidence beyond the content of his administrative complaint is necessary to substantiate his contention that he exhausted his administrative remedies, he will need to provide this evidence to the Court to allow it to fully consider this issue.

1  factual allegations and decide whether or not each alone could state a claim for relief"

2  under the whistleblower statutes.  (Erhart's Opp'n 8:24–25.)

3  The Court previously addressed this issue with respect to Erhart's federal

4  whistleblower retaliation claims.  Upon concluding Erhart stated cognizable claims,

5  the Court denied BofI's request to "analyze all of Erhart's allegations and delineate

6  between exactly which of those factual allegations are actionable and which of those

7  are not."  (*See* ECF No. 55 at 4:17–19.)  BofI's present request only differs in that

8  the Bank now asks the Court to analyze a smaller subset of Erhart's factual

9  allegations.

10  The Court is unmoved by BofI's motion.  Initially, BofI's request to dispose

11  of only part of certain claims under Rule 15(c) on implausibility grounds is

12  unconventional.  Courts have entertained partial motions for judgment on the

13  pleadings when the motion resolves at least an entire cause of action or an affirmative

14  defense.  *E.g.*, *Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1097 (N.D.

15  Cal. 2005).  This "result seems sound in terms of giving the district [court] greater

16  flexibility and promoting efficiency and economy."  5C Wright & Arthur

17  R. Miller, Federal Practice and Procedure § 1369 (3d ed. 2004).  Many courts,

18  however, have refused to entertain motions for judgment on the pleadings that seek

19  to dispose of only a part of an individual claim or defense.  *See United States v. Real*

20  *Prop. & Improvements Located at 2366 San Pablo Ave., Berkeley, Cal.*, No. 13-CV-

21  02027-JST, 2013 WL 6774082, at *1 (N.D. Cal. Dec. 23, 2013); *see also*, *e.g.*, *Kenall*

22  *Mfg. Co. v. Cooper Lighting, LLC*, 354 F. Supp. 3d 877, 896 (N.D. Ill. 2018)

23  (collecting cases); *Living on the Edge, LLC v. Lee*, No. CV-14-5982-MWF-JEMX,

24  2015 WL 12661917, at *4 (C.D. Cal. Aug. 25, 2015) (noting that parties "cannot

25  move for judgment on the pleadings with respect to less than a full cause of action").

26  This Court need not determine, however, whether it would ever entertain such

27  a limited motion under Rule 15(c).  The Court will not do so in these circumstances

28  because considering BofI's partial motion for judgment on the pleadings would not

promote efficiency or economy.  *See* 5C Wright & Arthur R. Miller, Federal Practice and Procedure § 1369 (3d ed. 2004).  The Court already determined that Erhart states plausible federal whistleblower retaliation claims.[6]  The Court discerns little value, if any, in further scrutinizing the partial sufficiency of Erhart's claims at this late stage of the proceeding.   BofI's targeted challenges to Erhart's fact-intensive whistleblower retaliation claims are better suited for a partial summary judgment motion or trial.  Consequently, the Court denies BofI's request for judgment on the pleadings as to only parts of Erhart's whistleblower retaliation claims.

### C.    Unfair Competition Law

Unlike its challenges to BofI's whistleblower retaliation claims, BofI seeks judgment on the pleadings as to Erhart's entire cause of action under the UCL. (BofI's Mot. 20:22–21:16.)  BofI argues Erhart's UCL claim fails because the alleged facts do not "show any ongoing conduct," which precludes injunctive relief.  (*Id.*) The Bank has not previously challenged the legal sufficiency of this claim.

The Court incorporates its prior discussion of the standards for UCL claims. Here, the Court has previously determined that Erhart's complaint sufficiently pleads substantive legal violations, which can also serve as the basis for his derivative UCL claim.  *See Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992); *see also Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1048 (C.D. Cal. 1998) (rejecting effort to dismiss UCL claim based on "defendant's publication of defamatory and disparaging statements"); *Judd v. Weinstein*, No. CV-185724-PSG-FFMX, 2018 WL 7448914, at *8 (C.D. Cal. Sept. 19, 2018) (rejecting dismissal of UCL claim where the allegedly defamatory statements were made

---

[6]    BofI has not previously challenged the legal sufficiency of Erhart's claim for whistleblower retaliation under California Labor Code section 1102.5.  This statute has a broader scope than the whistleblower protection provisions under Sarbanes–Oxley and Dodd–Frank.  *See* Cal. Labor Code § 1102.5(a).  Because the Court has already concluded Erhart states claims under these two federal whistleblower statutes, Erhart similarly states a cognizable claim under section 1102.5.

pursuant to a business activity).  Erhart alleges that BofI "continues to engage in some or all of the . . . unfair and unlawful business practices" described in his pleading.  (Erhart's FAC ¶ 127.)  His pleading also identifies some of the conduct that is purportedly ongoing.  (*See id.* ¶ 74B (alleging BofI "has continued to widely publish false and defamatory statements about Plaintiff" regarding collaboration with "'short sellers' of BofI's stock"); ¶ 150 (alleging false statements about Plaintiff's business and personal reputation "will continue to be published by [BofI]").  Erhart seeks "an injunction prohibiting Defendant from engaging in the unfair and unlawful conduct described."  (*Id.* ¶ 128.)  Consequently, Erhart sufficiently states a UCL claim, and BofI's motion to resolve this claim under Rule 15(c) is unpersuasive.

### D.    Improperly Named Defendant

Last, BofI Holding, Inc. argues it "is incorrectly named as the defendant" in Erhart's action and "incorrectly described as 'd/b/a BofI Federal Bank and Bank of the Internet.'"  (BofI's Mot. 21:20–21.)  BofI submits that "BofI Holding, Inc. is the holding company for BofI Federal Bank, its consolidated subsidiary," and "Erhart was at no time employed by BofI Holding, Inc."  (*Id.* 21:21–24.)  BofI therefore asks that all claims against BofI Holding, Inc. "be dismissed with leave to amend for the limited purpose of naming the proper defendant."  (*Id.* 21:24–25.)  Erhart responds that this error "can be readily corrected and [BofI] should stipulate to an amendment to correct the name."  (Erhart's Opp'n 14:7–10.)  Regardless, given that Erhart agrees BofI is incorrectly named in the pleading, the Court dismisses Erhart's claims and grants him leave to amend for the limited purpose of naming the proper defendant.

### CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** BofI's motion for judgment on the pleadings (ECF No. 78).  The Court grants BofI's request to dismiss Erhart's claims because he names the incorrect defendant.

Erhart is granted leave to amend for the limited purpose of naming the correct entity defendant.  No other changes or corrections to the new pleading are authorized.  Erhart shall file a Third Amended Complaint that makes this correction no later than **May 3, 2019**.  The Court denies the remainder of BofI's motion.  Further, the Court **DENIES** Erhart's motion for judgment on the pleadings (ECF No. 96).

      **IT IS SO ORDERED.**


**DATED:  April 30, 2019**

Hon. Cynthia Bashant
**United States District Judge**