1
**THE GILLAM LAW FIRM**
*A Professional Law Corporation*
Carol L. Gillam (SBN 102354)
2
Sara Heum (SBN 288136)
3
10866 Wilshire Boulevard, Suite 400
Los Angeles, California 90024
4
Telephone: (310) 203-9977
Facsimile: (310) 203-9922
5
carol@gillamlaw.com
6
sara@gillamlaw.com
Attorneys for Plaintiff and Defendant
7
CHARLES MATTHEW ERHART

8

9
UNITED STATES DISTRICT COURT
10
SOUTHERN DISTRICT OF CALIFORNIA

11
CHARLES MATTHEW ERHART, an
individual,
12

13
            Plaintiff,

14
       v.

15
BOFI HOLDING INC., an entity, d/b/a BOFI
FEDERAL BANK and BANK OF THE
16
INTERNET,

17
            Defendants.

18
_____

19
BOFI FEDERAL BANK, a federal savings
bank,
20

21
            Plaintiff,

22
       v.

23
CHARLES MATTHEW ERHART, an
individual,
24

25
            Defendant.

26

27

28

Case No. 15-cv-2287-BAS-NLS
*consolidated with*
15-cv-2353-BAS-NLS

**PLAINTIFF CHARLES MATTHEW
ERHART'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT**

Hearing Date: July 1, 2019

NO ORAL ARGUMENT UNLESS
REQUESTED BY THE
COURT

Courtroom 4B
The Hon. Cynthia Bashant (Schwartz
Courthouse)

Complaint Filed: October 13, 2015
Trial Date: September 17, 2019

# TABLE OF CONTENTS

I.    **INTRODUCTION**............................................................................1

II.   **STATEMENT OF FACTS**.............................................................2

III.  **ARGUMENT**................................................................................5

   A. Legal Argument...........................................................................5

   B. California's Uniform Trade Secret Act Applies.............................5

   C. The Court Should Grant Summary Judgment as to BofI's Claims for
      Fraud, Breach of Duty of Loyalty, Negligence, and Conversion........7

      1. Fraud......................................................................................8

      2. Breach of Duty of Loyalty.......................................................9

      3. Negligence.............................................................................11

      4. Conversion.............................................................................12

   D. The Court Should Grant Summary Judgment as to BofI's Breach
      of Contract Claim.........................................................................13

      1. BofI's Confidentiality Agreement is Contrary to Public Policy
         and Therefore Void................................................................13

      2. Bofi's Confidentiality Agreement is Overbroad, Included
         Shocking Terms and is Therefore Void....................................16

      3. There Was No Material Breach................................................19

      4. BofI Suffered No Damages.....................................................21

   E. BofI's Claim for Violation of Penal Code Section 502 Should Be
      Dismissed....................................................................................21

   F. BofI's Claim Under The Computer Fraud and Abuse Act Should
      Be Dismissed...............................................................................23

IV.  **CONCLUSION**............................................................................24

CHARLES MATTHEW ERHART'S MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT TABLES

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..................................................................... 10

*Celotex Corp. v. Catrett*,
  77 U.S. 317 (1986) ....................................................................... 10

*Corales v. Bennett*,
  567 F.3d 554 (9th Cir. 2009) ....................................................... 16

*Crowley v. Epicept Corp.*,
  883 F.3d 739 (9th Cir. 2018) ....................................................... 24

*Deltek, Inc. v. Dep't of Labor, Admin. Review Bd.*,
  No. 14-2415, 2016 WL 2946570 (4th Cir. May 20, 2016) ................. 25

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) ..................................................... 28

*U.S. ex rel. Head v. Kane Co.*,
  668 F.Supp.2d 146 (D.D.C. 2009) ............................................... 25

*In re JDS Uniphase Corp. Secs. Litig.*,
  238 F.Supp.2d 1127 (N.D. Cal. 2002)..................................... 20, 25

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ..................................................... 13

*Mattel, Inc. v. MGA Entm't, Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011) .......................................... 11

*of by Swarmify, Inc. v. Cloudflare, Inc.*,
  No. C 17-06957 WHA, 2018 WL 1609379 (N.D. Cal. Apr. 3, 2018)................. 11

*United States ex rel. Rector v. Bon Secours Richmond Health Corp.*,
  2014 WL 66714 (E.D. Va. Jan. 6, 2014) ....................................... 25

*U.S. ex rel. Ruhe v. Masimo Corp.*,
  929 F.Supp.2d 1033 (C.D. Cal. 2012) .......................................... 25

CHARLES MATTHEW ERHART'S MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT TABLES

*Shmushkovitch v. Home Bound Healthcare, Inc.*,
  2015 WL 386947 (N.D. Ill. June 23, 2015) .......................................................20

*Siebert v. Gene Sec. Network, Inc.*,
  2013 WL 5645309 (N.D. Cal. Oct. 16, 2013) ....................................................25

*United States v. Cancer Treatment Ctrs. of Am.*,
  350 F.Supp.2d 765 (N.D. Ill. 2004)...................................................................25

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) .............................................................................27

*Vannoy v. Celanese Corp.*,
  ARB No. 09-118, slip op. (Sept. 28, 2011) ........................................................25

**California Cases**

<u>*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*</u>,
  226 Cal. App. 4th 26 (2014) ..............................................................................11

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*
  28 Cal. App. 5th 923 (2018) .........................................................................21, 22

*Brescia v. Angelin*,
  172 Cal.App.4th 133 (2009) ..............................................................................11

*Brisbane Lodging, L.P. v. Webcor Builders, Inc.*,
  216 Cal. App. 4th 1249 (2013) ..........................................................................19

*Castellon v. U.S. Bancorp*,
  220 Cal. App. 4th 994 (2013) ............................................................................16

*Cicone v. URS Corp.*,
  183 Cal. App. 3d 194 (1986) .............................................................................13

*Fowler v. Varian Assocs., Inc.*,
  196 Cal. App. 3d 34 (1987) ...............................................................................14

*Huong Que, Inc. v. Luu*,
  150 Cal. App. 4th 400 (2007) ............................................................................14

*ITT Telecom Prod. Corp. v. Dooley*,
  214 Cal. App. 3d 307 (1989) .........................................................................20, 21

CHARLES MATTHEW ERHART'S MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT TABLES

*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*
  171 Cal.App.4th 939 (2009) .............................................................................. 11

*Kashani v. Tsann Kuen China Enter. Co.*,
  118 Cal. App. 4th 531 (2004) ............................................................................ 19

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ....................................................................................... 29

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ....................................................................................... 11

*Lee On v. Long*,
  37 Cal. 2d 499 (1951) ......................................................................................... 19

*Lee v. Hanley*,
  61 Cal. 4th 1225 (2015) ..................................................................................... 17

*Richman v. Hartley*,
  224 Cal. App. 4th 1182 (2014) .......................................................................... 26

*Rosen v. State Farm Gen. Ins. Co.*,
  30 Cal. App. 4th 1070 (2003) ............................................................................ 19

*Sheley v. Harrop*,
  9 Cal. App. 5th 1147 (2017) .............................................................................. 17

*Stokes v. Dole Nut Co.*,
  41 Cal. App. 4th 285 (1995) .............................................................................. 14

*Welco Elecs., Inc. v. Mora*,
  223 Cal. App. 4th 202 (2014) ............................................................................ 17

*Wilhelm v. Pray, Price, Williams & Russell*,
  186 Cal. App. 3d 1324 ....................................................................................... 13

**Federal Statutes**

18 U.S.C.
  § 1030(a)(5)(C) ................................................................................................... 28

*BofI's Claim Under The California's Unfair Competition Law* ................................ 29

*BofI's Claim Under The Computer Fraud and Abuse Act* ....................................... 28

*California's Uniform Trade Secrets Act* .................................................................. 10

Computer Fraud and Abuse Act .......................................................................... 28

Computer Fraud and Abuse Act
§ 1030(a)(5) ..................................................................................... 6, 10

*Controlling Self–Help Discovery in False Claims Act* ............................................. 20

Dodd-Frank Act (15 U.S.C.
§ 78u-6) .......................................................................................... 16

Dodd-Frank and False Claims Act ....................................................................... 25

Exchange Act ................................................................................................. 20

False Claims Act ....................................................................................... 20, 25

Sarbanes-Oxley Act ........................................................................................ 25

Sarbanes-Oxley Act (18 U.S.C.
§ 1514A) ......................................................................................... 16

Uniform Act ................................................................................................. 10

**California Statutes**

Cal. Bus. & Prof. Code
§ 17200 ............................................................................................ 29

Cal. Lab. Code
§ 2854 ......................................................................................... 16, 17

Cal. Penal Code
§ 502(c)(4) ........................................................................................ 27
§ 502(h) ........................................................................................... 27

California Business & Professions Code
§§ 17200 *et seq.* ............................................................................... 6, 10

California Labor Code
§ 1102.5 ....................................................................................... 16, 20

California Penal Code
§ 502 ................................................................................... 6, 10, 27, 28

CHARLES MATTHEW ERHART'S MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT TABLES

California's Uniform Trade Secrets Act, Cal. Civ. Code
§§ 3426–3426.10 ................................................................... 10

California Unfair Competition Law ................................................ 29

California Uniform Trade Secrets Act ................................... 6, 7, 13

CUTSA ........................................................................... 11, 12, 13

UCL ............................................................................................ 29

**Other State Statutes**

Business and Professions Code
§ 16600 ............................................................................... 22

MSA, ¶ 3 ............................................................................ 8, 15, 16

UTSA .......................................................................................... 11

**Other Authorities**

#123: Order for Judgment on the Pleadings ......................... 10, 11

Drake L.Rev. 361, 391 (2014) ..................................................... 20

Fed. R. Civ. P. 56(c) ................................................................... 10

Matthew Armstrong Deposition "Forensic Analysis and Findings" ......... 18

New York Times ............................................................................. 9

New York Times. [Ex. 3, Erhart Depo. Vol. I., 133: 3-8] ............... 24

Order Granting in Part and Denying in Part BofI Motion for Judgment
#123 ................................................................................... 29

*Report Fraud Against the Government,* 62 .................................... 20

Rule 9(b) ..................................................................................... 13

Rule 21F-17(a) ............................................................................ 19

*Silvaco, supra* at 236 ........................................................... 11, 12

*Suits,* 81 U. Chi. L.Rev. 1297, 1298–99 (2014) ......................... 20

CHARLES MATTHEW ERHART'S MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT TABLES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

23 *Williston on Contracts* § 63:15 (4th ed. 2017) ..................................................... 24

CHARLES MATTHEW ERHART'S MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT TABLES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff and Defendant Charles Matthew Erhart ("Plaintiff" or "Mr. Erhart") moves for summary judgment, or in the alternative, partial summary judgment on Plaintiff BofI Federal Bank's ("Defendant" or "BofI") First Amended Complaint ("BofI's FAC") for the following causes of action: (1) fraud; (2) breach of the duty of loyalty; (3) negligence; (4) breach of contract; (5) violation of California Penal Code § 502; (6) violation of Computer Fraud and Abuse Act § 1030(a)(5); (7) violation of California Business & Professions Code §§ 17200 *et seq.*; and (8) conversion.

This Court should dismiss BofI's claims, because BofI fails to state a genuine issue of material fact for each cause of action. Specifically, each cause of action that BofI alleges requires wrongfulness or Mr. Erhart's actions were not wrongful and did not rise to the level of fraud in order to meet the elements of each of action. The alleged wrongful conduct that BofI raises was either protected by Mr. Erhart's whistleblower status or Mr. Erhart was authorized in performing his acts.

Bofi alleges that Mr. Erhart committed fraud, breached his duty of loyalty, negligence, and conversion; but all of these causes of action would be displaced by the California Uniform Trade Secrets Act, as discussed below. Further, even if the California Uniform Trade Secrets Act does not apply, BofI cannot prove the elements associated with each cause of action.

Further, BofI's breach of contract claim fails because the confidentiality agreement should be deemed void. Or, in the alternative, BofI cannot prove breach of contract because Mr. Erhart did not breach the contract.

Lastly, BofI cannot prove damages for any of the alleged causes of action because the damages that BofI claimed are highly speculative and unable to be accurately determined.

CHARLES MATTHEW ERHART'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## II.    STATEMENT OF FACTS

Mr. Erhart began his employment at BofI on September 23, 2013, as a Staff Internal Auditor. [BofI's FAC, ¶ 7]. Mr. Erhart's position at BofI was an entry level one. [*Id.*]. Mr. Erhart was given, and was authorized to use, a BofI issued laptop to perform his duties. [*See* BofI's FAC, ¶¶ 14, 44, 92–93]. Mr. Erhart's position also entailed having access to certain "Confidential Information" related to BofI's internal operations, which included information about BofI's employees, business counterparties, and clients. [BofI's FAC, ¶ 11]. Mr. Erhart signed a Confidentiality Agreement as a condition of employment with BofI Federal Bank. [**Ex. 1**, BofI Employee Confidentiality, Non-disclosure, and Non-Recruitment Agreement ("Confidentiality Agreement")].

In the course and scope of his work, Mr. Erhart made troubling findings and uncovered what he believed was wrongdoing by the Bank and the CEO. [*See* Appendix of Exhibits, **Exhibit 2**, Erhart Decl. in Opposition to MPI, ¶¶ 13, 17-24, 32-46]. Mr. Erhart discussed some of his concerns regarding the wrongdoing he witnessed with others. [**Ex. 3**, Deposition of Matthew Erhart Volume I ("Erhart Depo. Vol. I")., 60: 21-24; 63: 19-23; 66: 20- 22.]  He told a friend of his, Ted Leong ("Mr. Leong") that "the CEO was depositing third-party checks for structured settlement annuitants." [**Ex. 3,** Erhart Depo. Vol. I., 36: 4-6]. The information that Mr. Erhart told Mr. Leong was publicly known at the time that Mr. Erhart communicated with Mr. Leong [Ex. 3**,** Erhart Depo. Vol. I.,  37: 10- 13; **Ex 4.** Document 67-9]. Mr. Erhart discussed the allegations of the lawsuit with his mother, Pamela Erhart. [Ex. 3, Erhart Depo. Vol. I., 55: 17-18]. Mr. Erhart testified that he told his mother he was asked to delete a finding from an audit report. [Ex. 3**,** Erhart Depo. Vol. I., 56: 13-16].  Mr. Erhart further testified that he had told his mother this information because he did not feel like this was morally right and was seeking motherly guidance. [*Id*]. Mr. Erhart told Pamela Erhart that he was concerned because the chief legal office had asked him and his boss to delete an audit finding.

[Ex. 3, Erhart Depo. Vol. I., 58: 9-11]. Further, when he was in the process of whistleblowing with regulators, Mr. Erhart sent his mother an email with an attachment of a global cash card high-risk customer review. [Ex. 3, Erhart Depo. Vol. I., 68: 15-23]. Mr. Erhart only sent his mother information because he was "worried about [his] own well-being" and feared for his safety. [Ex. 3, Erhart Depo. Vol. I., 98: 4-7]. Mr. Erhart was fearful for his own safety and feared that whistleblower information would be destroyed if he did not place it for safekeeping. [*See* Appendix of Exhibits, Exhibit 2, Erhart Decl. in Opposition to MPI, ¶¶ 76-81]. Consequently, he asked his mother to keep a file in the event it were ever needed. [*Id*]. His mother lives in Kansas, and did not disseminate anything Mr. Erhart sent her. [*Id.*] She only briefly glanced at one item he sent her. [*See* Appendix of Exhibits, **Ex. 5**, Deposition of Pamela Erhart, 25:2-26:18; 36:8-24; 58:2-15; 85:17-25; 99:2-100:10; 102:6-7]. Mr. Erhart viewed a small number of files of BofI information on a computer in his home that was owned by his girlfriend. [*See* Appendix of Exhibits, Ex. 2, Erhart Decl. in Opposition to MPI, ¶¶ 76-81; Erhart Decl. in Opp. to MSA, ¶ 3; **Ex. 6,** Declaration of Sofia Cornell, ¶ 2]. She did not view those files or disseminate them. [*See* Appendix of Exhibits, Ex. 2, Erhart Decl. in Opposition to MPI, ¶¶ 76-81; Erhart Decl. in Opp. to MSA, ¶ 3; Ex. 6, Declaration of Sofia Cornell, ¶ 2].

On Thursday, March 12, Mr. Erhart went to BOFI to return his work laptop. [*See* Appendix of Exhibits, Ex. 2, Erhart Decl. in Opposition to MPI, ¶ 70]. Mr. Erhart had permission from his direct supervisor, Johnathon Ball, to keep the records in question. [Ex. 3, Erhart Depo. Vol. I., 130: 7- 11]. On approximately March 12, files and folders were deleted from the Erhart Bofi Laptop. [**Ex. 7**, Declaration of Matthew Armstrong in Support of BofI Motion for Spoliation ("Armstrong Decl.")].

After providing government regulators with relevant documents of BofI wrongdoing, Mr. Erhart deleted everything off his computer. BofI claims labor costs

associated with the investigation of Mr. Erhart's media. [*Id.* at 9]. [Ex. 3, Erhart Depo. Vol. I., 146: 1-4]. Mr. Erhart deleted all BofI documents off of his computer because he was told not to further possess any bank information. [Ex. 3, Erhart Depo. Vol. I., 146: 8- 11]. Further, BofI submitted evidence that one of its executives had reviewed the list of files deleted from Erhart's laptop. For various files on this list, he declared that: "These files are Confidential Information because they are identical to files held at BofI, which I have personally reviewed and which contain nonpublic information . . . ." [Tolla Decl. ¶ 9, Countersuit, ECF No. 7-4].

During this same time period, in early 2015, a New York Times reporter reached out to Mr. Erhart. [Ex. 3, Erhart Depo. Vol. I., 133: 3-8]. As BofI knows, Erhart spoke briefly to Peter Eavis at the New York Times but did not disclose any Confidential Information. [*See* Appendix of Exhibits, Exhibit 2, Erhart December 3, 2015, Declaration]. In fact, the August 2015 article (written by Peter Eavis) referenced by BofI is replete with quotes from Mr. Garrabrants, BofI's own CEO, who gave "several interviews" to the Times. [ECF No. 7-23 (RJN); ECF No. 7-21, Ex. 13, p. 2].

Bofi suffered no damages as a result of the alleged breach of contract. Upon receiving the information, Mr. Erhart did not do anything with the information that damaged Bofi in any way; rather Mr. Erhart used this information for his whistleblowing activities and for his own protection. [Ex. 3, Erhart Depo. Vol. I., 60: 21-24; 63: 19-23; 66: 20-22.] Andrew Micheletti, BofI's Chief Financial Officer, is claiming damages in excess of $1 million as a result of Mr. Erhart's conduct because it lost a customer. However, this claim is completely unfounded and wholly speculative. [**Ex. 8**, Andrew Micheletti Deposition Transcript 03-13-19 ("Micheletti Depo.") 76: 9-15].

Mr. Erhart felt very unwell on March 6, 2015, and therefore called off sick. [*See* Appendix of Exhibits, Ex. 2, Erhart Decl. in Opposition to MPI, ¶ 53]. BofI terminated Mr. Erhart's employment effective June 9, 2015. [FAC ¶ 41].

# III.    ARGUMENT

The Court should dismiss BofI's claims for the following causes of action: (1) Fraud; (2) breach of the duty of loyalty; (3) negligence; (4) breach of contract; (5) violation of California Penal Code § 502; (6) violation of Computer Fraud and Abuse Act § 1030(a)(5); (7) violation of California Business & Professions Code §§ 17200 et seq.; and (8) conversion because BofI fails to state a claim for these causes of action fail as matter of law as there are no genuine dispute of material facts.

## A.    Legal Argument

Summary judgment is appropriate where there is no genuine dispute on any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 77 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts focus on facts that might affect the outcome and will disregard all "facts that are irrelevant or unnecessary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## B.    California's Uniform Trade Secrets Act Applies

The Court noted the possibility that one or more of BofI's common law tort claims may be displaced by California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426–3426.10. [See Document #123: Order for Judgment on the Pleadings]. Further, "[A] prime purpose of [The Uniform Act] was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information . . . of value.'" *Silvaco*, supra at 239 n.22 (2010).[1] In light of CUTSA's breadth and purpose, courts have concluded the statute "supersedes claims based on the misappropriation of confidential

---

[1] disapproved on other grounds by *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011).

information, whether or not that information meets the statutory definition of a trade secret." *See, e.g., Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011). Further, the UTSA "creates a statutory cause of action for the misappropriation of a trade secret." *Brescia v. Angelin*, 172 Cal.App.4th 133, 143 (2009).[2] In *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, the court held that CUTSA "preempt[s] claims based on the same nucleus of facts as trade secret misappropriation." *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* 171 Cal.App.4th 939, 962 (2009). The court in *Silvaco Data Systems* reaffirmed this notion that CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies "based on misappropriation of a trade secret." *Silvaco*, *supra* at 236.[3]

As the Court mentioned in its ruling, although BofI does not plead a trade secret misappropriation claim, the primary thrust of several of BofI's tort claims is that Erhart improperly misappropriated its "confidential information." (See BofI's FAC ¶¶ 54–79.)[4] Specifically, BofI alleged that Mr. Erhart misappropriated "confidential information" by alleging the following causes of action: fraud, breach of duty of loyalty, negligence, and conversion. *Id.* All of these claims are based on the same nucleus of facts as trade secret misappropriation because Bofi alleges in each of these causes of action that Mr. Erhart "Misapprotiat[ed] and wrongfully distributed[ed] Bofi's Confidential Information." *Id.* BofI's fraud claim is predicated on Erhart purportedly conducting rogue investigations at the Bank. (BofI's FAC ¶¶ 72–79.) Conducting rogue investigations would include misappropriating confidential information because that would entail Mr. Erhart viewing or using

---

[2] *See also* <u>Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.</u>, 226 Cal. App. 4th 26, 41, 171 (2014).

[3] <u>*as modified on denial of reh'g*</u> (May 27, 2010), and <u>*disapproved of by*</u> <u>Kwikset Corp. v. Superior Court</u>, 51 Cal. 4th 310, 246 P.3d 877 (2011), *and* <u>*disapproved of by*</u> <u>Swarmify, Inc. v. Cloudflare, Inc.</u>, No. C 17-06957 WHA, 2018 WL 1609379 (N.D. Cal. Apr. 3, 2018).

[4] See also (#123 Order for Judgment on the Pleadings).

"confidential information" that he was not allowed to use or view. Further, based on the breach of duty of loyalty claim, BofI alleges that Erhart "wrongfully distribut[ed] BofI's Confidential Information to unauthorized recipients." (BofI's FAC ¶ 65(e).) For example, BofI claims Erhart "disseminated . . . Confidential Information . . . to contributors to a website that allows comments on the stocks of publicly traded companies." (Id. ¶ 41(h).) BofI is alleging that Mr. Erhart breached his duty of loyalty by disseminating confidential information; this would fall under the same nucleus of fact as disseminating trade secrets. Next, as for the negligence claim, Bofi alleges that Mr. Erhart failed to act reasonably and to exercise due care in the performance of his job duties when he conducted rogue investigations instead of performing his required audits, and when he misappropriated, destroyed, disclosed, and/or took BofI's alleged confidential information. (BofI's FAC ¶ 70.) Lastly, BofI claims Erhart is liable for conversion because he took personal possession of BofI's property, including "documents containing Confidential Information" and a disc named "Bank of Internet," without the Bank's authorization. (BofI's FAC ¶¶ 31–33, 55–56.)

Because CUTSA is the controlling body of law in regard to the four causes of action that BofI alleges that Mr. Erhart breached, BofI incorrectly sued under the wrong body of law. The causes of action for fraud, breach of duty of loyalty, negligence and conversion, should be dismissed.

### C.    The Court Should Grant Summary Judgment as to BofI's Claims for Fraud, Breach of Duty of Loyalty, Negligence, and Conversion

As stated above, CUTSA will apply to the following causes of action: Fraud, Breach of Duty of Loyalty, Negligence, and Conversion. [5] Even if the CUTSA does not apply, each of these causes of actions fail based on the reasons below.

////

---

[5] Please see above section entitled "California Uniform Trade Secrets Act"

1.  <u>Fraud</u>

BofI's fifth cause of action is for fraud. (BofI FAC). The elements for an action in fraud under California common law are: (1) misrepresentation as to a material fact; (2) knowledge of falsity (or "scienter"); (3) intent to defraud (that is, to induce reliance); (4) justifiable reliance; and (5) resulting damage. *See Cicone v. URS Corp.*, 183 Cal. App. 3d 194, 200 (1986).[6] Every element of the cause of action for fraud must be alleged with sufficient specificity to allow a defendant to fully understand the nature of the charge. *See Cicone*, 183 Cal. App. 3d at 200 (citing *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*, 57 Cal. App. 3d 104, 109 (1976)). Rule 9(b) in turn requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (providing Rule 9(b) applies to state law fraud claims).

BofI's fraud claim is predicated on Erhart's purportedly conducting rogue investigations at the Bank. (BofI's FAC ¶¶ 72–79.) Based on Mr. Erhart's position as an internal auditor, Mr. Erhart was entitled to view a plethora of confidential information. [Ex. 3, Erhart Depo. Vol. I 43: 3- 13]. Also, Mr. Erhart had authorization to conduct these investigations. For example, Mr. Erhart had authorization to participate in the employee payroll audit. [Ex. 3, Erhart Depo. Vol. I 109: 6-8]. In fact, Mr. Erhart was assigned to the employee payroll audit. [Ex. 3, Erhart Depo. Vol. I., 110: 1- 5]. Mr. Erhart also had authorization from his direct supervisor, Johnathon Ball, to participate in several audits that contained confidential information such as client loan numbers and their names. [Ex. 3, Erhart Depo. Vol. I 48: 25- 49: 1- 5]. BofI also alleges that Mr. Erhart sent emails to several BofI employees on several dates in December 2014 "to request information

---

[6] (citing *Seeger v. Odell* 18 Cal. 2d 409, 414 (1941); *Nelson v. Gaunt*, 125 Cal. App. 3d 623, 635 (1981)); *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1331(1986).

1  for his unapproved payroll audit" but fails to specify what Mr. Erhart stated in his

2  email, what was false about his statements, and why they are false. [*See* BofI's FAC,

3  ¶ 74].

4       Therefore, none of Mr. Erhart's investigations were rogue, but based on

5  authorization and within the scope of his duties as an internal auditor.

6            2, Breach of Duty of Loyalty

7       The elements of a cause of action for breach of the duty of loyalty are: (1) the

8  existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches

9  of that duty; and (3) damage proximately caused by that breach. *See Stokes v. Dole

10 Nut Co.*, 41 Cal. App. 4th 285, 295 (1995); *Huong Que, Inc. v. Luu*, 150 Cal. App.

11 4th 400, 410 (2007). [7] "The duty of loyalty is breached, and the breach 'may give

12 rise to a cause of action in the employer, when the employee takes action which is

13 inimical to the best interests of the employer.'" *Fowler v. Varian Assocs., Inc.*, 196

14 Cal. App. 3d 34, 41 (1987).[8]

15      Mr. Erhart's actions were not inimical to BofI. Mr. Erhart did not wrongfully

16 distribute BofI's confidential information to unauthorized recipients. In the course

17 and scope of his work, Mr. Erhart made troubling findings and uncovered what he

18 believed was wrongdoing by the Bank and the CEO. [*See* Appendix of Exhibits,

19 Exhibit 2, Erhart Decl. in Opposition to MPI, ¶¶ 13, 17-24, 32-46.]

20      Mr. Erhart discussed some of his concerns regarding the wrongdoing he

21 witnessed with others. [Ex. 3, Erhart Depo. Vol. I., 60: 21-24; 63: 19-23; 66: 20-

22 22.] As discussed in the Statements of Facts section, *supra* incorporated herein by

23 reference,  he told a friend of his, Ted Leong ("Mr. Leong") that "the CEO was

24 depositing third-party checks for structured settlement annuitants." [Ex. 3, Erhart

25 Depo. Vol. I., 36: 4-6]. The information that Mr. Erhart told Mr. Leong was publicly

26

27 [7] citing *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991).

28 [8] quoting *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (1995)

known at the time that Mr. Erhart communicated with Mr. Leong [Ex. 3, Erhart Depo. Vol. I., 37: 10- 13; Ex 4. Document 67-9].

Mr. Erhart discussed the allegations of the lawsuit with his mother, Pamela Erhart. [Ex. 3, Erhart Depo. Vol. I., 55: 17-18]. Mr. Erhart testified that he told his mother he was asked to delete a finding from an audit report. [Ex. 3, Erhart Depo. Vol. I., 56: 13-16]. Mr. Erhart further testified that he had told his mother this information because he did not feel like this was morally right and was seeking motherly guidance. [*Id.*] Further, when he was in the process of whistleblowing with regulators, Mr. Erhart sent his mother an email with an attachment of a global cash card high-risk customer review. [Ex. 3, Erhart Depo. Vol. I., 68: 15-23]. Mr. Erhart only sent his mother information because he was "worried about [his] own well-being" and feared for his safety. [Ex. 3, Erhart Depo. Vol. I., 98: 4-7.] Mr. Erhart was fearful for his own safety and feared that whistleblower information would be destroyed if he did not place it for safekeeping. [*See* Appendix of Exhibits, Exhibit 2, Erhart Decl. in Opposition to MPI, ¶¶ 76-81] Consequently, he asked his mother to keep a file in the event it were ever needed. [*Id.*] His mother lives in Kansas, and did not disseminate anything Mr. Erhart sent her. [*Id.*] She only briefly glanced at one item he sent her. [*See* Appendix of Exhibits, Exhibit E, Deposition of Pamela Erhart, 25:2-26:18; 36:8-24; 58:2-15; 85:17-25; 99:2-100:10; 102:6-7].

Mr. Erhart viewed a small number of files of BofI information on a computer in his home that was owned by his girlfriend. [*See* Appendix of Exhibits, Ex. B, Erhart Decl. in Opposition to MPI, ¶¶ 76-81; Erhart Decl. in Opp. to MSA, ¶ 3; Declaration of Sofia Cornell, ¶ 2]. She did not view those files or disseminate them. [*See* Appendix of Exhibits, Ex. 2, Erhart Decl. in Opposition to MPI, ¶¶ 76-81; Erhart Decl. in Opp. to MSA, ¶ 3; Declaration of Sofia Cornell, ¶ 2].

Further, Mr. Erhart did not believe that the information that he shared with Mr. Leong was confidential. [Ex. 3, Erhart Depo. Vol. I., 38: 7-10]. Also, Mr. Erhart is a whistleblower under the Sarbanes-Oxley Act (18 U.S.C. § 1514A) ("SOX") and

the Dodd-Frank Act (15 U.S.C. § 78u-6) ("Dodd-Frank"), as well as under California Labor Code § 1102.5.  Mr. Erhart filed a whistleblower lawsuit against BofI.  (*See* Case No. 15CV2287-BAS-NLS). Therefore, he was protected in disclosing information and saving files in relation to his whistleblowing activities. More importantly, Mr. Erhart's overriding purpose of communicating with others about BofI's wrongful actions was because he was scared for his safety. [Ex. 3**,** Erhart Depo. Vol. I., 31: 23-25].

### 3.  Negligence

BofI appears to assert a common-law negligence claim against Mr. Erhart in its fourth case of action. The elements of a negligence cause of action under California common law are (1) the existence of a legal duty of care; (2) a breach of that duty of care; and (3) proximate cause resulting in injury. *See Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009).[9] Under the California Labor Code, "[o]ne who, for a good consideration, agrees to serve another, shall perform the service, and shall use ordinary care and diligence therein, so long as he is thus employed." Cal. Lab. Code § 2854.[10]

BofI does not claim relief under California Labor Code § 2854. (BofI FAC). Rather, BofI claims a common law negligence claim. Regardless, under both claims, common law and California Labor Code § 2854, BofI cannot prove damages because they are highly speculative. [Tolla Decl. ¶ 9, Countersuit, ECF No. 7-4; See Andrew Micheletti Deposition Transcript 76: 9-15]. Finally, BofI stock dropped because the truth about its unlawful practices came out in the whistleblower

---

[9]  (citing *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)) (stating the elements of negligence under California law); *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (2013) (citing *Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917–18 (1996)).

[10]  see also id. § 2859 ("An employee is always bound to use such skill as he possesses, so far as the same is required, for the service specified."). "An employee who is guilty of a culpable degree of negligence is liable to his employer for the damages thereby caused to the employer." Id. § 2865.

1  complaint and was reported. The fact that the stock did not immediately bounce

2  back in a record market is attributable to the truthful publicity about its activities,

3  not only from Mr. Erhart's lawsuit but from many other articles and court filings.

4  [See Doc. 67-8, 67-9].

5      4. Conversion

6      Conversion is the wrongful exercise of dominion over the property of another.

7  The elements of a conversion claim are: (1) the plaintiff's ownership or right to

8  possession of the property; (2) the defendant's conversion by a wrongful act or

9  disposition of property rights; and (3) damages. *See Lee v. Hanley*, 61 Cal. 4th 1225,

10  1240 (2015); *Sheley v. Harrop*, 9 Cal. App. 5th 1147, 1173 (2017). The tort of

11  conversion was traditionally limited to tangible personal property, but the tort has

12  since "expanded well beyond its original boundaries." *Welco Elecs., Inc. v. Mora*,

13  223 Cal. App. 4th 202, 210 (2014). "In determining whether property that was taken

14  is subject to a conversion claim, courts have recognized that '[p]roperty is a broad

15  concept that includes every intangible benefit and prerogative susceptible of

16  possession or disposition.'" [Id. at 21].

17      BofI claims Erhart is liable for conversion because he took personal

18  possession of BofI's property, including "documents containing Confidential

19  Information" and a disc named "Bank of Internet," without the Bank's

20  authorization. (BofI's FAC ¶¶ 31–33, 55–56.) Bofi's conversion claim fails because

21  Mr. Erhart did indeed have authority to access the information that BofI alleges he

22  took without permission. [Ex. 3, Erhart Depo. Vol. I 48: 25- 49: 1- 5]. As described

23  above, Mr. Ball gave Mr. Erhart authorization to conduct the audits for which Mr.

24  Erhart retrieved information. [Ex. 3, Erhart Depo. Vol. I 48: 25- 49: 1- 5]. One

25  cannot wrongfully take something when they are entitled to it. Further, Mr. Erhart

26  returned all property back to BofI that belonged to Bofi, including the work laptop.

27  [*See* Appendix of Exhibits, Ex. 2, Erhart Decl. in Opposition to MPI, ¶ 70; See

28  Plaintiff's Opposition to Motion for Sanctions Doc. 18-5]. Further, Mr. Erhart has

given BofI's forensic team every single item that he had. [Id. at 86.] Also, the documents that were allegedly deleted by Mr. Erhart were retrieved. [See Matthew Armstrong Deposition "Forensic Analysis and Findings"]. Lastly, there was no value in the information that Mr. Erhart allegedly took. The totality of Mr. Erhart's communications with third persons entailed either whistleblowing communications or conversations about how fearful and stressed Mr. Erhart was. For example, the only reason why Ms. Cornell had "confidential information" in her possession was because Ms. Cornell had Microsoft software that Mr. Erhart did not have on his computer. [See Declaration of Charles Matthew Erhart #67-3]. Further, Mr. Erhart only sent his mother information because he was "worried about [his] own well-being" and feared for his safety. [Ex. 3, Erhart Depo. Vol. I., 98: 4-7.] Mr. Erhart also feared that whistleblower information would be destroyed if he did not place it for safekeeping. [*See* Appendix of Exhibits, Exhibit 2, Erhart Decl. in Opposition to MPI, ¶¶ 76-81] Consequently, he asked his mother to keep a file in the event it were ever needed. [*Id.*]. Because of the intangible nature of the information that was allegedly disclosed to third parties, BofI cannot claim that the information held any value.

Lastly, as explained above, BofI cannot sufficiently prove damages. As discussed in the Statements of Facts section, *supra* incorporated herein by reference.

### D. *The Court Should Grant Summary Judgment as to BofI's Breach of Contract Claim*

#### 1. BofI's Confidentiality Agreement is Contrary to Public Policy And Therefore Void

BofI's first claim for breach of contract is based on the Confidentiality Agreement executed by Erhart at the start of his employment. (FAC ¶¶ 47–53.) It is undisputed that California state law governs this agreement. (Confidentiality Agreement § 12.) "The law has a long history of recognizing the general rule that certain contracts, though properly entered into in all other respects, will not be

enforced, or at least will not be enforced fully, if found contrary to public policy.[11]"
*Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 540 (2004). "[T]he
question of whether a contract provision is illegal or contrary to public policy 'is a
question of law to be determined from the circumstances of each particular case.'"
*Brisbane Lodging, L.P. v. Webcor Builders, Inc.*, 216 Cal. App. 4th 1249, 1256–57
(2013).[12]

To determine whether a contract is unenforceable based on public policy,
California courts "essentially engage in a weighing process, balancing the interests
of enforcing the contract with those interests against enforcement." *Rosen v. State
Farm Gen. Ins. Co.,* 30 Cal. App. 4th 1070, 1082 (2003). Accordingly, "the question
of whether a contract provision is illegal or contrary to public policy 'is a question
of law to be determined from the circumstances of each particular case.'" *Brisbane
Lodging, L.P. v. Webcor Builders, Inc*., 216 Cal. App. 4th 1249, 1256–57 (2013). [13]

SEC Rule 21F-17(a) prohibits employers from using confidentiality,
employment, severance or other agreements that may silence potential
whistleblowers and the SEC is determined to "vigorously enforce this provision."
[*See* Docket No. 50-6, Gillam Decl., Ex. F, SEC Press Release: Companies Cannot
Stifle Whistleblowers in Confidentiality Agreements 2015-54].[14]

---

[11] (quoting 15-79 Corbin on Contracts § 79.1 (2003)); *see also Lee On v. Long*, 37 Cal. 2d 499,
502 (1951)

[12] (quoting *Jackson v. Rogers & Wells*, 210 Cal. App. 3d 336, 349–350 (1989)).

[13] *Id.*

[14] *See KBR, Inc.,* Exchange Act Release No. 74619 (Apr. 1, 2015). *See also In re JDS Uniphase
Corp. Secs. Litig.,* 238 F.Supp.2d 1127, 1136 (N.D. Cal. 2002) (holding that confidentiality
agreements binding former employees did not preclude former employees from disclosing
non-trade secret, non-privileged information regarding securities fraud). *In re JDS
Uniphase* recognized that SOX "does not establish a public policy in favor of allowing
employers to muzzle their employees with overbroad confidentiality agreements." *Id.* at
1136.

These principles of unconscionability are reflected in the statutes under which Mr. Erhart sued as a whistleblower, including Dodd-Frank and California Labor Code § 1102.5, which prohibit retaliation against whistleblowers.[15] Further, in *ITT Telecom Products Corp*., the court considered public policy factors to determine whether the employee rightfully breached the confidentiality agreement by testifying about confidential information in a court proceeding. *ITT Telecom Prod. Corp. v. Dooley,* 214 Cal. App. 3d 307, 318 (1989).  The court balanced society's interest in accurate judicial proceedings against ITT's property interest in information yielding a competitive advantage and the employee's written promise of nondisclosure. *Id.*  The court analyzed the importance of the function of witnesses and found that it was "of fundamental importance in the administration of justice." *Id.* at 312. The court went on to say that "it is necessary therefore that a full disclosure not be hampered by fear of private suits… " *Id.*

The analysis that the court used in *ITT Telecom* is analogous to the situation at hand because the court must consider two competing factors: society's interest in whistleblowing and the property interest of BofI. Mr. Erhart is not disputing his communications with the government, as the Court already found that this conduct qualifies for protection under one or more of the whistleblower protection provisions relied upon by the Court as sources of public policy. [Exhibit 85, Order Granting in Part and Denying in part Bofi Federal Bank's MSA]. Rather, Mr. Erhart focuses on the communications with other third parties, such as his mother, his

---

[15] Most federal courts acknowledge this public policy exception in analogous cases, as under the False Claims Act. *See* Stephen M. Payne, *Let's be Reasonable: Controlling Self–Help Discovery in False Claims Act Suits,* 81 U. Chi. L.Rev. 1297, 1298–99 (2014) ("The first and largest group of courts holds that public policy voids confidentiality agreements in the context of the FCA."); Joel D.4, *The False Claims Act Creates a "Zone of Protection" that Bars Suits Against Employees Who Report Fraud Against the Government,* 62 Drake L.Rev. 361, 391 (2014) (the Act "mandates that the relator produce internal company information as part of filing a qui tam case."); *Shmushkovitch v. Home Bound Healthcare, Inc.*, 2015 WL 386947, at *1 (N.D. Ill. June 23, 2015) ("Most federal courts acknowledge this public policy exception").

girlfriend, and the press. Mr. Erhart had communications with third parties for the sole purpose to ensure his whistleblowing activities would not be thwarted and for his protection. [Ex. 3, Erhart Depo. Vol. I., 60: 21-24; 63: 19-23; 66: 20-22]. If employees are not able to preserve evidence in order to bring a whistleblower action against their employer, all evidence would then be gone, and whistleblowers would then be nonexistent, leading to a society where employers are free to conduct their business in any way they please with no repercussions.

## 2. Bofi's Confidentiality Agreement is Overbroad, Included Shocking Terms and is Therefore Void

Bofi's confidentiality agreement is overbroad as it is applied to communications with Mr. Erhart's mother, Mr. Erhart's girlfriend, and the press. In *AMN Healthcare, Inc*. an employee who signed a non-disclosure agreement upon hire sent an email to a third party containing what the plaintiffs claimed to be confidential trade secrets. *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.* 28 Cal. App. 5th 923, 239 (2018). The email that the employee sent to a third party contained information regarding AMN's work practices, such as hourly rates, work hours, and benefits. *Id.* The court found that AMN's nondisclosure agreement was void because the information in the email is not a protectable trade secret. Further, the court concluded that the information in the email was "very general" and therefore, in any event, was routinely shared by other employees and was publicly available. *Id.* Finally, the court noted that there was no evidence that the defendant obtained economic value from the disclosure of such information and the defendant did not believe that the information in the email held any value, and therefore the email was not a protectable trade secret. *Id.*

Enforcing BofI's nondisclosure agreement would frustrate public policy because Mr. Erhart's conduct was not wrongful. As he testified, he held onto BofI information because he believed it evidenced the wrongdoing he witnessed and he

intended to share it with regulators, and he did not do so for any improper purpose. [Ex. 3, Erhart Depo. Vol. I., 60: 21-24; 63: 19-23; 66: 20-22].

BofI's confidentiality agreement states that employees cannot disseminate anything, including any wrongdoing that they perceive through their course of work at Bofi. The agreement states in part that confidential information includes "Information believed by BofI to be a Trade Secret that ultimately does not qualify as such under California law, but nonetheless was maintained by BofI as confidential… " [Ex. 2, Employee Confidentiality, Non-disclosure, and Non-Recruitment Agreement]. This is an extremely broad definition of what can be confidential. It allows Bofi to deem anything Mr. Erhart saw in the course of his work to be confidential, when under the law, it is not. This provision in Bofi's confidentiality agreement would be inimical to Business and Professions Code Section 16600 which "precludes an employer from restraining an employee from engaging in his or her "profession, trade, or business," even if such an employee uses information that is confidential but not a trade secret. *See AMN Healthcare, supra* at 940.

Here, the confidentiality agreement is overbroad and therefore void, just as in AMN. When analyzing the email that was sent to Mr. Erhart's mother, the documents on Mr. Erhart's girlfriend's computer, and the press, the Court should come to the same conclusion as the court in AMN: the information sent by Mr. Erhart was not protected trade secrets, the information was very general, there is no evidence that Mr. Erhart obtained economic value from the disclosure nor did Mr. Erhart believe that the information in the emails held any value, and therefore the emails were not protected trade secrets or confidential.  Unlike the email that was sent by Erhart, which contained information not relating to business practices, but rather information relating to a client, in an email to a third party, is not as egregious as sending trade practices.

The communications that Mr. Erhart had with his mother, his girlfriend, Mr. Leong, and the press contained only generalities. Mr. Erhart did not believe that the information disseminated to these third parties held any economic value, but rather value in a way that would protect him because of the proof of wrongdoing and a way to ensure his safety. [Ex. 3, Erhart Depo. Vol. I., 3-10]. See Statements of Facts section, *supra* incorporated herein by reference.

Accordingly, the information that Mr. Erhart provided third parties should not have been deemed confidential per the confidentiality agreement because the information did not contain protected trade secrets, the information was very general, there was no evidence that Mr. Erhart obtained economic value from the disclosure, and Mr. Erhart did not believe that the information held any value.

Although Mr. Erhart did state generalities of what the audit finding was about, that is the totality of what Mr. Erhart described to his mother. [Ex. 3, Erhart Depo. Vol. I., 59: 2-3]. He told his mother that he went to regulatory authorities about Bofi's actions, but did not go into any further detail. [Ex. 3, Erhart Depo. Vol. I.,58: 9-11 65: 25- 26: 1-2].

It is clear that Mr. Erhart did this for the sole purpose of preserving evidence of wrongful conduct done by BofI. As he testified in his deposition, after he sent the email to his mother, he told her, "Don't delete the E-mail, don't disseminate it, don't look at it, just leave it as is, don't touch it." [Ex. 3, Erhart Depo. Vol. I., 88: 9-13]. In fact, Mr. Erhart went on to tell his mother that he sent this information "because I'm worried about my own well-being." [Ex. 3, Erhart Depo. Vol. I., 98: 4-7].

Mr. Erhart discussed the allegations of the lawsuit with his sister Amy. [Ex. 3, Erhart Depo. Vol. I., 56: 1-2]. Mr. Erhart disclosed general information that related to his own fear for his safety, rather than any trade secrets or confidential information. Mr. Erhart told Amy Erhart about his fear of the comment that Mr. Tolla made towards Mr. Erhart about turning over a rock and finding a snake. [Ex. 3, Erhart Depo. Vol. I., 75: 4-6]. As far as Bofi client information went, Mr. Erhart

did tell Amy that Mr. Garrabrants brother had the largest account at the bank, but he did not disclose the name of Mr. Garrabrants brother. [Ex. 3**,** Erhart Depo. Vol. I., 76: 24-25; 27: 1-3].

Mr. Erhart had communications with Peter Eavis at the New York Times. [Ex. 3**,** Erhart Depo. Vol. I., 133: 3-8]. Although Mr. Erhart told Mr. Eavis that the bank received a subpoena, Mr. Erhart did not disclose the name of the person who was the subject of the SEC subpoena. [Ex. 3**,** Erhart Depo. Vol. I.,  133: 21-23]. Further, Mr. Erhart spoke in generalities only in his conversation with Mr. Eavis. Mr. Erhart stated that the bank was making loans to unsavory borrowers but did not disclose any names whatsoever of any of the borrows nor gave any more details in regard to client information. [Ex. 3**,** Erhart Depo. Vol. I.,  134: 11-17].

### 3.  There Was No Material Breach

A breach is material if it affects the purpose of the contract in an important or vital way. A material breach defeats the purpose of the contract and is inconsistent with the intention of the parties to be bound by the contract terms. *Crowley v. Epicept Corp.,* 883 F.3d 739, 746 (9th Cir. 2018). Whether a breach is material is generally a question of fact for the jury. *Crowley v. Epicept Corp*., 883 F.3d 739, 753 (9th Cir. 2018). However, if this question "admits of only one reasonable answer" in a given case, "the court should intervene and resolve the matter as a question of law."  23 *Williston on Contracts* § 63:15 (4th ed. 2017).[16] Further, in *U.S. ex rel. Ruhe v. Masimo Corp*., the court held that an employee who discloses information as a whistleblower, even in light of non-disclosure agreements, given the strong public policy in favor of protecting whistleblowers who report fraud to the government, the taking and publication was not wrongful. *U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F.Supp.2d 1033, 1039 (C.D. Cal. 2012). [17]

---

[16] (citing *Parker v. Byrne*, 996 A.2d 627 (R.I. 2010) Crowley, supra at 753–54.

[17] *See Also*, *United States v. Cancer Treatment Ctrs. of Am.,* 350 F.Supp.2d 765, 773 (N.D. Ill. 2004); *United States ex rel. Rector v. Bon Secours Richmond Health Corp.,* 2014 WL 66714, at *6 (E.D. Va. Jan. 6, 2014) ("It is true

CHARLES MATTHEW ERHART'S MOTION FOR SUMMARY JUDGMENT

The same rule applies in the Sarbanes-Oxley context as in Dodd-Frank and False Claims Act cases.[18] In *Deltek, Inc. v. Dep't of Labor, Admin. Review Bd.*, the court held that an employee's activity of e-mailing her employer's documents to her home e-mail account, which she shared with her husband, would not have justified her termination and that the after-acquired evidence doctrine did not apply, so as to limit the employee's damages in whistleblower action under Sarbanes-Oxley Act. *Deltek, Inc. v. Dep't of Labor, Admin. Review Bd.*, No. 14-2415, 2016 WL 2946570 (4th Cir. May 20, 2016). The court reasoned that substantial evidence supported this finding, including evidence that the employee's efforts were to protect selected relevant documents from what she reasonably believed were a risk of destruction, that the employee only forwarded documents that were relevant to her whistleblowing reports, and that her motivation for forwarding documents was to support Sarbanes-Oxley allegations. *Id.*

If the Bofi confidentiality agreement is enforceable, the clear weight of the evidence demonstrates that Mr. Erhart's breach was not material. Mr. Erhart never sent anything to third parties that materially impaired the confidentiality agreement, only to third parties that were his family and trusted friends whom he was seeking protection and comfort from. In the ensuing litigation, on December 6, 2015, in a deposition, Mr. Erhart testified about signing a confidentiality agreement as an employee of BofI Federal Bank upon being hired by BofI on September 23, 2013.

---

that the FCA contemplates whistleblower possession of documents obtained from employers that evidence fraud upon the government."); *Siebert v. Gene Sec. Network, Inc.*, 2013 WL 5645309, at *8 (N.D. Cal. Oct. 16, 2013) ("any alleged obligation by Siebert not to retain or disclose the confidential documents that form the basis of this action is unenforceable as a matter of public policy because it would frustrate Congress' purpose in enacting the [FCA]"). The court declined to force a whistleblower to turn over a document in *U.S. ex rel. Head v. Kane Co.*, 668 F.Supp.2d 146, 152 (D.D.C. 2009) ("Enforcing a private agreement that requires a qui tam plaintiff to turn over his or her copy of a document, which is likely to be needed as evidence at trial, to the defendant who is under investigation would unduly frustrate the purpose" of the False Claims Act)

[18] *See, e.g., In re JDS Uniphase Corp. Secs. Litig., supra,* 238 F.Supp.2d 1127, 1136 (N.D. Cal. 2002); *Vannoy v. Celanese Corp.*, ARB No. 09-118, slip op. at 17 (Sept. 28, 2011), rejecting claim that attaching company confidential documents to a complaint in violation of confidentiality agreement (even though they contained social security numbers) was good cause for discharge, looking to the public policy supporting bounty programs to resolve the tension.

-20-

[Ex. 3, Erhart Depo. Vol. I., 50-53]. Based on that, within the scope of Mr. Erhart's duties, Mr. Erhart could lawfully access "proprietary and confidential information and/or trade secrets." [**Ex. 2**, Employee Confidentiality, Non-disclosure, and Non-Recruitment Agreement]. According to the Confidentiality Agreement, the main purpose of the agreement is for BofI to protect its trade secrets and confidential information from unauthorized possession, use or disclosure, and to protect itself from unfair competition. [Id.] The Agreement further states under the "Duty of Loyalty" section that the employees have a duty not to "usurp, for personal gain, any opportunities of BofI." [Id.] Mr. Erhart did indeed disclose confidential information relating to BofI, but he did not disclose for the purposes which the confidentiality agreement was seeking to prohibit. [Ex. 3, Erhart Depo. Vol. I., 39-40].

### 4.  Bofi Suffered No Damages

To prevail on a claim for breach of contract under California law, "the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014).

Bofi suffered no damages as a result of the alleged breach of contract. Upon receiving the information, Mr. Erhart did not do anything with the information that damaged Bofi in any way; rather Mr. Erhart used this information for his whistleblowing activities and for his own protection. [Ex. 3, Erhart Depo. Vol. I., 60: 21-24; 63: 19-23; 66: 20-22.] See Statements of Facts section, *supra* incorporated herein by reference.

### E.    *BofI's Claim for Violation of California Penal Code Section 502 Should be Dismissed*

California Penal Code Section 502 imposes criminal liability on a person who "[k]nowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network." Cal.

Penal Code § 502(c)(4). Further, "[a] plain reading of the statute demonstrates that its focus is on unauthorized taking[, deletion,] or use of information," as opposed to unauthorized access to the computer system. *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). *see also* Cal. Penal Code § 502(c)(4). But, section 502(c) does not punish acts committed by a person within the scope of his or her lawful employment. For purposes of this section, a person acts within the scope of his or her employment when he or she performs acts which are reasonably necessary to the performance of his or her work assignment. Cal. Penal Code § 502(h).

Here, in the scope of Mr. Erhart's position as an internal auditor, Mr. Erhart was authorized to view confidential information. [*See* BofI's FAC, ¶¶ 14, 44, 92–93.] Mr. Erhart's position also entailed having access to certain "Confidential Information" related to BofI's internal operations, which included information about BofI's employees, business counterparties, and clients. [BofI's FAC, ¶ 11]. Further, based on the nature of his employment with BofI, Mr. Erhart had access to consumer loans and loan numbers. [Erhart 12-6-15 Depo. 48: 16-21]. Mr. Erhart also had permission from his direct supervisor, Johnathon Ball, to view several audit reports to look for grammatical issues or anything that didn't contextually make sense. Erhart 12-6-15 Depo. 48: 22-25; 49: 1-5]. Mr. Erhart further had permission from Johnathon Ball to take the records home with him. [Erhart 12-6-15 Depo. 130: 7-17].

Not only did Mr. Erhart have permission to safeguard records that may have contained conferential information, but Mr. Erhart gave back all documents that were allegedly unlawfully taken from BofI. Therefore BofI suffered no damages. See Statements of Facts section, *supra* incorporated herein by reference.

Accordingly, the Court should dismiss the claim under Penal Code Section 502 because Mr. Erhart had permission to access the records in question and BofI did not suffer any damages in relation to Mr. Erhart's conduct.

### F.    BofI's Claim Under The Computer Fraud and Abuse Act Should be Dismissed

The Computer Fraud and Abuse Act ("CFAA") prohibits acts of computer trespass by those who are not authorized users or who exceed authorized use." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1065 (9th Cir. 2016). One type of forbidden computer trespass occurs when an individual "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss." 18 U.S.C. § 1030(a)(5)(C). The plaintiff must also allege damages in relation to the unauthorized use: "damage" is "any impairment to the integrity or availability of data, a program, a system, or information." Id. § 1030(e)(8).

Here, as stated above under the violation of California Penal Code Section 502, Mr. Erhart did indeed have authority to access confidential files via a computer. *See* BofI's FAC, ¶¶ 14, 44, 92–93. Mr. Erhart was given, and was authorized to use, a BofI issued laptop to perform his duties. [*See* BofI's FAC, ¶¶ 14, 44, 92–93.] The only reason why Mr. Erhart deleted information from his work issued laptop was because he was told not to further possess any bank information. [Ex. 3, Erhart Depo. Vol. I., 146: 8- 11]. Although Mr. Erhart did delete files from the computer, BofI retained originals of the files, therefore suffering no damages from Mr. Erhart's conduct. Tolla Decl. ¶ 9, Countersuit, ECF No. 7-4 (emphasis added). See Statements of Facts section, *supra* incorporated herein by reference.

### G.    BofI's Claim Under The California's Unfair Competition Law Should be Dismissed

The California Unfair Competition Law ("UCL") prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002).

1    As the court even stated, "BofI's derivative UCL claim is tenuous." [See

2  Order Granting in Part and Denying in Part BofI Motion for Judgment #123]. BofI's

3  claim under UCL is tenuous for various reasons. First off, as described above, Mr.

4  Erhart's actions were neither unfair, unlawful, or fraudulent. [See argument section

5  above]. Throughout all of the allegedly unlawful acts that Mr. Erhart conducted, Mr.

6  Erhart acted with authority because of his whistleblower status or through his duties

7  as an internal auditor (with the permission of his direct supervisor, Mr. Ball). [See

8  statements of facts section].

9

10                    **IV.    CONCLUSION**

11    For the foregoing reasons, Mr. Erhart's motion for summary judgment, or in

12  the alternative, partial summary judgment should be granted.

13

14  Dated: May 6, 2019                          THE GILLAM LAW FIRM
                                                 *A Professional Law Corporation*
15

16

17              By        */s/CAROL GILLAM*
                          _____
18                        CAROL GILLAM
                          SARA HEUM
19                        Attorneys for Plaintiff and Defendant
                          CHARLES MATTHEW ERHART
20

21

22

23

24

25

26

27

28