1
2
3
4
5
6
7
8
9
10      **UNITED STATES DISTRICT COURT**
11      **SOUTHERN DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| CHARLES MATTHEW ERHART, | Case No. 15-cv-02287-BAS-NLS<br>*consolidated with*<br>15-cv-02353-BAS-NLS |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART**<br>**AND DENYING IN PART**<br>**CHARLES ERHART'S**<br>**MOTION TO EXCLUDE**<br>**EXPERT TESTIMONY**<br>**(ECF No. 128)** |
| BOFI HOLDING, INC., | |
| Defendant. | |
| | |
| And Consolidated Case | |

     Presently before the Court is Charles Erhart's motion to exclude the opinions of two experts that BofI Federal Bank plans to call at trial. (ECF No. 128.) BofI opposes. (ECF No. 152.) The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R.

7.1(d).  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Erhart's motion.

## BACKGROUND

The Court and the parties are well versed in the background of these consolidated actions.  The Court incorporates its summary of the parties' evidence and their remaining claims from the Court's order resolving the cross-motions for summary judgment ("Summary Judgment Order").  (*See* ECF No. 192.)  The Court further provides below a snapshot of the parties' claims and additional background regarding the two proposed experts.

Charles Erhart was an internal auditor for BofI Federal Bank.[1]  After Erhart discovered conduct he believed to be wrongful, he reported it to BofI's principal regulator.  BofI responded by allegedly defaming and terminating him.  Erhart then brought federal and state whistleblower retaliation claims against the Bank.  At the heart of Erhart's federal claims is whether he reasonably believed the conduct he was reporting violated certain enumerated laws.  His state law retaliation claims are broader; they hinge on whether Erhart disclosed a reasonable belief of a violation of *any* law.  For the reasons explained in the Summary Judgment Order, there are triable issues on all of Erhart's whistleblower retaliation claims.

To confront these claims, BofI has designated a retained expert, Guido van Drunen, as its "Internal Audit Expert."  (Rule 26 Expert Disclosure (Nov. 26, 2018), ECF No. 188-1.)  Van Drunen is expected to offer various opinions at trial, including his opinion that Erhart's allegations of wrongdoing "are not supported with information and/or evidence."  (*Id.* Ex. A.)  Erhart moves to exclude all of van Drunen's testimony, arguing he is unqualified to render these opinions.  (Mot. 14:8–16:4.)  Erhart also claims van Drunen's opinions are improper because they

---

[1] The Court uses "BofI" and "the Bank" to refer to either BofI Holding or BofI Federal Bank.  (*See* Summary Judgment Order 2 n.1.)

impermissibly invade the province of the jury, contain disguised legal conclusions, and speculate about Erhart's motivations.  (*Id.* 8:6–21:17.)

In addition, after Erhart sued the Bank, it filed a countersuit against him, which the Court has consolidated with Erhart's action.  The Bank's countersuit portrays Erhart as an internal auditor gone rogue—a loose cannon who recklessly handled confidential information and conducted unauthorized investigations.  BofI claims it suffered harm when Erhart took confidential information outside the Bank's controlled systems, disclosed confidential information to third parties, and deleted data from a Bank-owned computer.  The Court similarly determined there are triable issues on the Bank's lone federal claim and all but one of its barrage of state law claims.

To support these claims, the Bank has disclosed that its Chief Financial Officer ("CFO"), Andrew Micheletti, is expected to testify as an expert at trial.  (Rule 26 Expert Disclosure (Nov. 5, 2018), ECF No. 135-2.)  The proposed expert testimony will involve the damages the Bank has purportedly suffered due to Erhart's conduct.  (*Id.*)  Erhart moves to exclude this testimony, arguing it is not expert testimony, Micheletti is not qualified to testify as an expert, and his damage assessments are improper.  (Mot. 17:22–19:9.)

## ANALYSIS

Both of Erhart's challenges involve the requirements for expert opinion testimony under Federal Rule of Evidence 702.  However, in resolving his challenge to Micheletti's testimony on damages, the Court reasons that some of the proposed testimony may be admitted as lay witness opinion testimony under Rule 701.  Hence, the Court reviews the two types of opinion testimony before assessing BofI's proposed experts.

# I.    Opinion Testimony

## A.    Lay Witnesses

The Federal Rules of Evidence differentiate between opinion testimony provided by lay and expert witnesses. Fed. R. Evid. 701, 702. Under Rule 701, a lay witness may provide opinion testimony if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.* 701.

"Rule 701(a) contains a personal knowledge requirement." *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014); *see also* Fed. R. Evid. 602 (noting that except for expert testimony under Rule 703, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). "In presenting lay opinions, the personal knowledge requirement may be met if the witness can demonstrate firsthand knowledge or observation." *Lopez*, 762 F.3d at 864. "A lay witness's opinion testimony necessarily draws on the witness's own understanding, including a wealth of personal information, experience, and education, that cannot be placed before the jury." *United States v. G*adson, 763 F.3d 1189, 1209 (9th Cir. 2014). "But a lay opinion witness 'may not testify based on speculation, rely on hearsay or interpret unambiguous, clear statements.'" *United States v. Lloyd*, 807 F.3d 1128, 1154 (9th Cir. 2015) (quoting *United States v. Vera*, 770 F.3d 1232, 1242 (9th Cir. 2014)).

## B.    Expert Witnesses

Whereas Rule 701 governs lay opinion testimony, Rule 702 covers expert opinion testimony. Fed. R. Evid. 702. This rule establishes several requirements for this testimony: (1) the witness must be sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge must "assist the trier of fact" either "to understand the evidence" or "to determine a fact in issue"; (3) the testimony must be "based on

sufficient facts and data"; (4) the testimony must be "the product of reliable principles and methods"; and (5) the expert must reliably apply the principles and methods to the facts of the case. *Id.*

Under *Daubert* and its progeny, the trial court is tasked with assuring that expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). Shaky but admissible evidence is to be attacked by cross-examination, contrary evidence, and careful instruction on the burden of proof, not exclusion. *Daubert*, 509 U.S. at 596. The court is "to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). In its role as gatekeeper, the court "is not tasked with deciding whether the expert is right or wrong, just whether his [or her] testimony has substance such that it would be helpful to a jury." *Id.* at 969–70.

The tests for admissibility in general, and reliability in particular, are flexible. *Primiano*, 598 F.3d at 564. The court "has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). "[T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of [the expert's] methodology." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995). Once the threshold established by Rule 702 is met, the expert may testify and the fact finder decides how much weight to give that testimony. *Primiano*, 598 F.3d at 565.

Further, Rule 703 "relaxes, for experts, the requirement that witnesses have personal knowledge of the matter to which they testify." *Claar v. Burlington N. R.*

*Co.*, 29 F.3d 499, 501 (9th Cir. 1994). Experts may offer opinions based on otherwise inadmissible testimonial hearsay if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject," Fed. R. Evid. 703, and if they are "applying [their] training and experience to the sources before [them] and reaching an independent judgment," as opposed to "merely acting as a transmitter for testimonial hearsay," *United States v. Gomez*, 725 F.3d 1121, 1129 (9th Cir. 2013) (quoting *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009)).

## II.     The Proposed Damages Expert—Micheletti

The Court first considers Erhart's challenge to BofI's non-retained expert CFO Micheletti. BofI discloses that Micheletti "is expected to present evidence under Federal Rules of Evidence 702, 703, or 705" on the subject matter of "BofI's damages." (Rule 26 Expert Disclosure (Nov. 5, 2018) 1:26–2:1.) There are two parts to this testimony.

BofI's Expenses and Costs. First, Micheletti seeks to testify regarding the economic injury BofI suffered "in the form of expenses and costs that BofI incurred in responding to, investigating, and assessing" Erhart's alleged removal and deletion of confidential information. (Rule 26 Expert Disclosure (Nov. 5, 2018) 2:3–6; *see also* Micheletti Dep. 70:20–71:21, ECF No. 135-4.) BofI identifies two types of costs that Micheletti will discuss. (Rule 26 Expert Disclosure (Nov. 5, 2018) 2:7–14.) The first cost is the amount BofI paid to an outside firm for "digital forensic examination and analysis" to help BofI assess and mitigate the harm purportedly caused by Erhart's conduct. (*Id.* 2:7–10; *see also* Micheletti Dep. 71:17–21.) The second cost is the "internal labor" that BofI expended "in assessing and mitigating harm caused by" the alleged misconduct. (Rule 26 Expert Disclosure (Nov. 5, 2018) 2:10–13; *see also* Micheletti Dep. 71:10–16.)

In the Summary Judgment Order, the Court recognized that BofI may be able to recover these costs as damages on its remaining claims. (*See* Summary Judgment

Order 74:7–28; 85:11–26; 87:1–11; 88:6–17.)  For example, there is a triable issue as to whether Erhart knowingly accessed and deleted data from one of BofI's computers outside the scope of his employment.  (*Id.* 84:1–85:10.)  A jury could conclude BofI is entitled to recover the costs "reasonably and necessarily incurred by [BofI] . . . to verify that . . . data was or was not altered, damaged, or deleted by the access." *See* Cal. Penal Code § 502(e)(1); *see also Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1162 (E.D. Cal. 2017) (denying summary judgment where company submitted evidence indicating it had spent over eighty hours investigating the defendants' unauthorized access to its computer systems). Accordingly, Micheletti's testimony is relevant to BofI's claims.

That said, just because Micheletti's testimony involves the subject of damages does not mean it requires either expert or lay opinion testimony.  For instance, opinion testimony is unnecessary to prove that BofI paid an outside firm for digital forensic services to investigate Erhart's "data breach."  Micheletti is not providing lay opinion testimony when reporting the amount the Bank paid for these services. *See* Fed. R. Evid. 701.  Nor is Micheletti relying on his "scientific, technical, or other specialized knowledge" to do so.  *See id.* 702.  BofI can prove these damages through other means, including a witness with personal knowledge of the expense or appropriate documentary evidence.

Erhart argues Micheletti's proposed testimony regarding the second cost BofI identifies—its internal labor costs—similarly does not fall under Rule 702.  Erhart argues Rule 702 is inapplicable because Micheletti's analysis is not "based on scientific, technical, or other specialized knowledge."  (Mot. 19:2–6.)  The Court agrees.  To summarize BofI's labor costs, Micheletti claims he "obtained the hours by day of specific individuals who worked in the process of mitigating and determining the cause/and or magnitude of Mr. Erhart's taking of confidential information." (Micheletti Dep. 71:11–16.)  Micheletti provides a spreadsheet where he tallies up the time allegedly spent on these tasks.  (Summary of Personnel Costs,

BofI's Opp'n Ex. G, ECF No. 152-8.)  Micheletti then multiplies the employees' respective costs by the time they spent and adds all the costs together—to reach a sum of $147,981.71 in internal labor costs.  (*Id.*)

This summary of personnel costs does not fall under Rule 702.  BofI argues Micheletti's "model" involves technical or specialized knowledge because the "internal cost must itself be derived mathematically from other data" and requires "familiarity with employee compensation data."  (Opp'n 20:2–5.)  The Court is unconvinced.  BofI fails to demonstrate that Micheletti's summary of its alleged employee costs involves anything other than basic arithmetic.  *Cf. LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (noting "damages model" involved "technical, specialized subjects" where model "concerned moving averages, compounded growth rates, and S-curves").  There is no need to allow Micheletti to come "before the jury cloaked with the mantle of an expert" to provide this testimony under Rule 702.  *See Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001); *see also United States v. Freeman*, 498 F.3d 893, 903 (9th Cir. 2007) (noting that by qualifying a witness as an expert, the "witness attains unmerited credibility when testifying about factual matters from first-hand knowledge" (quoting *United States v. Dukagjini*, 326 F.3d 45, 53 (2d Cir. 2003))).

In the same vein, the Court finds it inappropriate to allow Micheletti to place this evidence before the jury by taking advantage of Rule 703's relaxed personal knowledge and hearsay requirements.  *See* Fed. R. Evid. 703; *see also Jinro Am. Inc.*, 266 F.3d at 1004 (noting that allowing a witness to come before a jury as an expert is significant because it allows the witness "to testify based on hearsay information, and to couch . . . observations as generalized 'opinions' rather than as firsthand knowledge").  BofI can prove this component of its damages claim through other evidence, including testimony by its employees, business records, and appropriate lay witness opinion testimony.  *See Allied Sys., Ltd. v. Teamsters Auto. Transp. Chauffeurs, Local 604*, 304 F.3d 785, 790, 792 (8th Cir. 2002) (noting employee who

was internal accountant and vice-president of internal audit appropriately provided lay opinion testimony regarding damages that was based on personal knowledge of the company's books and financial status); *but see United States v. Albertelli*, 687 F.3d 439, 447 (1st Cir. 2012) (highlighting the "danger" that lay witness opinion testimony may allow "the witness [to] act as a summary witness without meeting the usual requirements").  The Court will require, however, that any lay witness opinion testimony not be based on mere speculation or inadmissible hearsay.  *See Lloyd*, 807 F.3d at 1154.

Lost Profits.  Aside from describing its costs, BofI proposes that Micheletti provide expert testimony under Rule 702 regarding its lost profits.  (Rule 26 Expert Disclosure (Nov. 5, 2018) 2:15–22.)  BofI claims it "suffered economic injury in the form of [a] lost investment opportunity caused by the withdrawal and loss of deposited funds . . . as a result of Erhart's" alleged misconduct.  (*Id.* 2:15–17.)  BofI claims it "earned less net interest income than it would have earned absent loss of the deposit funds."  (*Id.* 2:20–21.)  Specifically, Micheletti testified that "[t]he lifetime history of" the type of account lost is "approximately four years," and the "difference between the four-year fixed rate" and the amount that would have been paid had BofI retained the account "for that period was approximately $1,022,000."  (Micheletti Dep. 74:9–14.)

The Court did not address this component of BofI's alleged damages in its Summary Judgment Order.  And there is an issue of fact as to whether these "damages" were caused by Erhart's protected whistleblower activity.  If, however, the Bank can demonstrate these damages are not speculative and flow from Erhart's purportedly wrongful conduct, then it may be able to recover its lost profits.  (*See* Summary Judgment Order 67:4–22; 74:7–28.)

Even though this evidence may be relevant, Erhart contends Micheletti's proposed testimony should be excluded because he "is not qualified as an expert"

under Rule 702. (Mot. 18:13.) BofI does not submit evidence to address this point.[2] Erhart also argues Micheletti's testimony is improper because it is based "on mere hearsay and his own legal conclusions and interpretations of what he was told." (*Id.* 18:14–16.)

The Court agrees that this testimony should not be admitted under Rule 702. Beyond neglecting to provide the Court with Micheletti's qualifications, BofI does not give the Court sufficient information to assess the remaining considerations under Rule 702. The Court thus will not permit Micheletti to testify as an expert under Rule 702. *See Daubert*, 509 U.S. at 593 n.10 (noting the proponent of the expert testimony bears the burden to establish its admissibility).

That said, the Court recognizes that Micheletti may be able to testify regarding the Bank's lost profits under Rule 701 instead. "[T]here is an abundance of case law where corporate employees are permitted to testify about damages or company valuation without qualifying as an expert." *Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1105 (D. Ariz. 2019); *see also* McCormick on Evidence § 10 (8th ed. 2020) (collecting cases). As the advisory committee notes to Rule 701 recognize, "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." Fed. R. Evid. 701 advisory committee's note to 2000 amendment. This opinion testimony is admitted "because of the particularized knowledge that the witness has by virtue of his or her position in the business." *Id.*; *see In re Palmdale Hills Prop.*, LLC, 577 B.R. 858, 868–69 (Bankr. C.D. Cal. 2017) (reasoning business owner and manager could testify about lost

---

[2] Although Erhart briefly argues Micheletti is not qualified to testify as an expert, the Bank does not submit a declaration from Micheletti or otherwise demonstrate he is qualified under Rule 702. The Bank's opposition mentions that Micheletti has "finance and accounting knowledge" and that he "is qualified to give [his opinion]," but these statements are insufficient under Rule 702. (*See* Opp'n 1:23–26; 20:21.) *See also Daubert*, 509 U.S. at 593 n.10 (requiring the proponent of the expert testimony to establish its admissibility by a "preponderance of proof"). The Court assumes that BofI's CFO is an accomplished accountant and financier, but arguments of counsel are simply not evidence. *See, e.g., Carrillo-Gonzalez v. I.N.S.*, 353 F.3d 1077, 1079 (9th Cir. 2003).

profits or damages); *Bright Harvest Sweet Potato Co. v. H.J. Heinz Co., L.P.*, No. 1:13-cv-296-BLW, 2015 WL 1020644, at *5–6 (D. Idaho Mar. 9, 2015) (permitting president and CFO of company to "testify about lost profits to the extent that they have personal and particularized knowledge of the facts that form their opinions"); *see also, e.g.*, *Miss. Chem. Corp. v. Dresser–Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002); *HM Compounding Servs., LLC v. Express Scripts, Inc.*, 349 F. Supp. 3d 781, 792 (E.D. Mo. 2018).

Moreover, the Court's decision to funnel Micheletti's testimony under Rule 701 addresses Erhart's complaints about Micheletti grounding his opinion in "unsubstantiated assumptions." (Reply 5:20–21, ECF No. 159.) The Court will require opinion testimony under Rule 701 to be based on "personal and particularized knowledge of the facts" underlying any opinions. *See Bright Harvest Sweet Potato Co.*, 2015 WL 1020644, at *6. BofI will also have to establish sufficient foundation for any lost profits testimony, and this testimony must not be based on pure speculation. *See Lloyd*, 807 F.3d at 1154; *see also Express Scripts*, 349 F. Supp. 3d at 792 ("Personal knowledge acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for such testimony.").

In sum, the Court concludes allowing BofI's CFO Micheletti to provide expert testimony under Rule 702 is neither appropriate nor necessary. However, for the reasons described above, the Court's conclusion does not prevent the Bank from seeking to prove its alleged damages through other evidence, including potentially lay opinion testimony.

## III. The Proposed Internal Audit Expert—Van Drunen

The Court next considers Erhart's challenge to Guido van Drunen—BofI's retained internal audit expert. Van Drunen's opinions and qualifications are set forth in his amended expert report (ECF No. 188-1). Erhart raises an assortment of challenges to van Drunen's proposed testimony.

### A.   Qualified as an Expert

Preliminarily, Erhart argues van Drunen is not qualified to testify as an expert on the subjects his opinions address.  (Mot. 14:18–15:4.)  As mentioned, a witness who will offer expert opinion testimony must be "qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  This inquiry depends on whether the witness has "expertise and experience" that "is relevant to the issues on which" the witness will opine.  *See Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014).  For example, an accountant was not qualified to testify as an appraisal expert where he testified "that he had no appraisal experience and had never conducted a discounted cash flow analysis of real estate" and "did not develop the numbers he used in his analysis."  *United States v. 99.66 Acres of Land*, 970 F.2d 651, 657 (9th Cir. 1992).

Erhart argues van Drunen is unqualified because he "does not appear to have any specialized knowledge about internal audits or whistleblowing, and certainly no specialized knowledge about how BofI specifically ran its internal audit department." (Mot. 15:24–26.)  The Bank counters that van Drunen is "no doubt qualified" because he "has worked in the internal audit department of a Fortune 100 company and, as a Principal in KPMG's Forensic Advisory Services practice, has performed and supervised engagements directly for, or in conjunction with, internal audit departments at Fortune 500 companies."  (Opp'n 4:16–19 (citing Am. van Drunen Report Ex. 2).)

The Court rejects Erhart's qualification challenge.  Given his experience, credentials, and education, van Drunen is plainly qualified to testify about internal auditing standards and practices.  Van Drunen has been a Certified Internal Auditor since 1997.  (Van Drunen Decl. ¶ 2, ECF No. 152-15.)  And his resume reflects over thirty-five years of internal auditing and investigatory experience.  (Am. van Drunen Report Ex. 2.)  Further, although Erhart raises other objections to van Drunen's

testimony while discussing his qualifications, (*see* Mot. 16:5–17:21), the Court will instead consider these arguments while discussing van Drunen's opinions below.

### B.      Reliable and Admissible Opinions

Beyond challenging whether van Drunen is qualified, Erhart raises a storm of objections to van Drunen's opinions.  To guide its analysis, the Court will summarize and categorize van Drunen's opinions.  The Court will then rule on the admissibility of the opinions in each category.

### 1.      Internal Audit Objectives and Standards

Van Drunen's report initially provides opinions regarding the purpose of an internal audit system.  (Am. van Drunen Report §§ 3.0–3.1)  In doing so, van Drunen relies on guidance from the Institute of Internal Auditors ("IIA") and the International Standards for the Professional Practice of Internal Auditing ("IIA Standards").  (*Id.*) He explains that the goal of an "effective internal audit function" is to provide "assurance to an organization's board of directors, audit committee, and senior management as to the quality and effectiveness of the organization's internal control, risk management, and governance systems and processes."  (*Id.* § 3.1.)

Further, van Drunen notes that BofI's Internal Audit Policy "specifically references the IIA Standards' definition for internal auditing" and that guidance from the Bank's primary regulator similarly describes the "primary role" of internal auditors.  (Am. van Drunen Report § 3.1.)  He then opines that internal auditors "should be independent from the activities they audit, thereby enabling them to perform their assignments with objectivity."  (*Id.*)  In addition, van Drunen opines that the "development and implementation of internal controls should also remain the responsibility of management and the internal audit function should not be involved in designing . . . or operating specific internal control measures."  (*Id.*)

Van Drunen further describes the duties and responsibilities of internal auditors.  (Am. van Drunen Report § 3.1.)   He opines that internal auditors "commonly have access to sensitive and confidential information . . . and thus have

an enhanced obligation to maintain confidentiality of that information." (*Id.*) In relying on the IIA Code of Ethics, van Drunen also opines that internal auditors should "not use information for any personal gain" and should "respect the value and ownership of information they receive and . . . not disclose information without appropriate authority unless there is a legal or professional obligation to do so." (*Id.*)

The Court finds van Drunen's opinions regarding internal audit objectives and standards are admissible under Rule 702. Many of the events underlying these consolidated actions occurred while Erhart was working as an internal auditor in the Bank's Internal Audit Department. The objectives and standards for internal audit systems are not matters of common knowledge. Hence, van Drunen's specialized knowledge about these topics "will help the trier of fact to understand the evidence." *See* Fed. R. Evid. 702. Further, these opinions are reliably derived from van Drunen's specialized knowledge and experience and the IIA Standards.

Erhart, however, claims van Drunen's opinions improperly rely on publications by the IIA. (Mot. 16:5–25.) He argues "there is no evidence that [he] was ever trained on or required to apply the IIA's guidelines and publications in his job, and his own supervisor, Mr. Ball, admitted that he did not directly require his auditors to adhere to the IIA best practices standards." (*Id.*; *see also* Erhart Dep. 357:6–16, ECF No. 152-2; Ball Dep. 50:19–51:1, ECF No. 135-5.) Erhart's challenge is unpersuasive. There is evidence suggesting that BofI's internal audit system incorporated the IIA Standards. Hence, Erhart's disagreement bears on the weight of these opinions rather than their admissibility. *See Primiano*, 698 F.3d at 565. Erhart can challenge the applicability and persuasiveness of these standards through cross-examination and the presentation of contrary evidence. *See Daubert*, 509 U.S. at 596.

## 2. Internal Audit Procedures

The next category of van Drunen's opinions consists of his description of internal audit procedures. (Am. van Drunen Report § 3.2.) He describes the "typical

phases and procedures for conducting internal audits," including "pre-fieldwork procedures, fieldwork procedures, and reporting results." (*Id.* §§ 3.2.1–3.2.3.) For example, van Drunen opines that upon completing the fieldwork portion of an internal audit, "internal auditors typically prepare a draft report which describes the scope of the procedures performed, the information gathered, the observations, and [the] recommendations and basis for such observations." (*Id.* § 3.2.3.) He also opines that there is usually then a meeting "with the auditee and other internal stakeholders (which can include senior management) to share and review the draft report." (*Id.*) Van Drunen explains that "it is not unusual to have disagreements regarding the accuracy of the potential audit observations." (*Id.*)

The Court similarly finds van Drunen's opinions regarding internal audit procedures are admissible under Rule 702. The parties' evidence involves these procedures at BofI, and several of Erhart's allegations concern draft audit reports and his interactions with senior management concerning these reports. Van Drunen's testimony about these specialized topics "will help the trier of fact to understand the evidence." *See* Fed. R. Evid. 702. And his testimony is reliably derived from his specialized knowledge and experience, making it admissible.

### 3. Erhart's Conduct

Next, van Drunen's opinions turn to discussing Erhart's conduct in this case. For example, van Drunen opines that Erhart's allegations of "malfeasance" at the Bank are not founded "on information and/or evidence as required by IIA Standards." (Am. van Drunen Report § 4.1.) Most of Erhart's objections concern these particularized opinions. He argues van Drunen's opinions "directly invade[] the province of the jury" and "consist merely of legal conclusions, speculation, and his own assessment of facts." (Mot. 8:6–14:17.) BofI responds that van Drunen's opinions are "highly probative of the issues" at hand and should be permitted because they address whether "a reasonable person in Erhart's internal auditing position under

the same circumstances [would] have formed the same" beliefs about BofI's purported wrongdoing.  (Opp'n 1:12–18.)

Having reviewed these opinions, the Court agrees that some of them should be excluded.  Because these opinions largely concern the allegations underlying Erhart's whistleblower retaliation claims, the Court incorporates its discussion of the standards for these claims from the Summary Judgment Order.  (*See* Summary Judgment Order 19:6–22:18; 51:3–52:5; 53:1–54:8; 63:10–64:2.)  To recap, Erhart's Sarbanes–Oxley whistleblower retaliation claim requires him to demonstrate he "provide[d] information . . . regarding any conduct which [he] reasonably believe[d] constitute[d] a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities or commodities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders . . . ."  18 U.S.C. § 1514A(a)(1).  Hence, Erhart does "not have to prove that he reported an actual violation."  *See Wadler v. Bio-Rad Labs., Inc.*, 916 F.3d 1176, 1186–87 (9th Cir. 2019).  Rather, Erhart has "to prove only that he 'reasonably believed that there might have been' a violation."  *See id.* at 1187 (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1001 (9th Cir. 2009)).

The "reasonable belief" standard includes both a subjective component and an objective component.  *E.g.*, *Wadler*, 916 F.3d at 1187–88, *Van Asdale*, 577 F.3d at 1000.  For the subjective component, Erhart must demonstrate he believed the conduct he reported violated one of the categories of laws in § 1514A.  *Van Asdale*, 577 F.3d at 1000.  "The objective reasonableness component . . . 'is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee.'"  *Wadler*, 916 F.3d at 1188 (quoting *Sylvester v. Parexel Int'l LLC*, No. 07-123, 2011 WL 2517148, at *12 (Dep't of Labor May 25, 2011)).  This evaluation "requires an examination of the reasonableness of a complainant's beliefs, but *not* whether the complainant

actually communicated the reasonableness of those beliefs to management or the authorities." *Id.* (quoting *Sylvester*, 2011 WL 2517148, at *13).

Moreover, "[t]o encourage disclosure, Congress chose statutory language which ensures that 'an employee's reasonable but mistaken belief that an employer engaged in conduct that constitutes a violation of one of the six enumerated categories is protected.'" *Van Asdale*, 577 F.3d at 1001. Therefore, an employee is not required to "essentially prove the existence of fraud before suggesting the need for an investigation," as such a requirement "would hardly be consistent with Congress's goal of encouraging disclosure." *Id.* at 1002.

Accordingly, the jury will be tasked with determining whether Erhart reasonably believed he was reporting a violation of the laws listed in Sarbanes–Oxley's whistleblower retaliation provision. Similarly, for Erhart's state law whistleblower retaliation claim, the jury will have to determine whether Erhart had "reasonable cause to believe that the information" he disclosed to the government revealed "a violation of [a] state or federal statute, or a violation of . . . a local, state, or federal rule or regulation." *See* Cal. Labor Code § 1102.5(b); *see also Ross v. Cty. of Riverside*, 36 Cal. App. 5th 580, 592 (2019) (noting an employee engages in conduct "protected by the statute when the employee discloses 'reasonably based suspicions' of illegal activity" (quoting *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 87 (1998))). With these standards as a backdrop, the Court turns to van Drunen's proposed opinions regarding Erhart's conduct.

Topic No. 1: Erhart's Allegations Are Not Supported by Evidence. First, under the guise of internal audit and fraud investigation standards, van Drunen opines that Erhart's complaint "includes a number of allegations that do not appear to be founded on information and/or evidence." (Am. van Drunen Report § 4.1.) To support this opinion, van Drunen first references IIA Standards that provide internal auditors: (1) are to "identify, analyze, evaluate, and document sufficient information to achieve the engagement's objectives"; and (2) "must identify, sufficient, reliable, relevant,

and useful information to achieve the engagement's objectives." (*Id.*) It is questionable whether these standards even apply in those circumstances where Erhart's beliefs did not arise in the context of an assigned audit with "objectives," but that concern alone does not doom these opinions' admissibility.

Curiously, however, van Drunen also introduces a second set of standards in this section—the Certified Fraud Examiners ("CFE") Standards. (Am. van Drunen Report § 4.1.) One of these CFE Standards requires that "[c]onclusions shall be supported with evidence that is relevant, competent and sufficient." (*Id.*) Further, van Drunen notes the CFE Standards state that "[t]he *Certified Fraud Examiner's* objective shall be to obtain evidence and information that is complete, reliable and relevant." (*Id.* (emphasis added).) Van Drunen then goes on to examine Erhart's various allegations, and he concludes based on his review of testimony and documentary evidence that Erhart's allegations "are not supported with information and/or evidence." (*Id.*)

This proposed testimony does not pass muster under Rule 702. For one, van Drunen references CFE Standards to critique Erhart's conduct, but Erhart indisputably was not a Certified Fraud Examiner. He was an entry-level internal auditor that had previously not done internal audit work. (Summary Judgment Order 3:25–4:5.) Whereas van Drunen's report at least feasibly connects the IIA Standards to Erhart's circumstances, there is no explanation for why Erhart's beliefs should be assessed in the context of CFE Standards. *See Wadler*, 916 F.3d at 1188 ("The objective reasonableness component . . . 'is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with *the same training and experience as the aggrieved employee*." (emphasis added) (quoting *Sylvester*, 2011 WL 2517148, at *12)). This testimony will not help the jury; its task will be to determine whether an entry-level internal auditor could reasonably form Erhart's beliefs, not a CFE. And because there is also not a sufficient basis for relying on these standards to critique Erhart's conduct, the Court will preclude van Drunen

from mentioning the CFE Standards or rendering opinions on Erhart's conduct based on these standards.

Moreover, aside from this standards issue, the Court will not permit van Drunen to simply rehash the evidence and assert that his analysis of the evidence leads to a particular conclusion. On this point, the Court finds helpful the district court's decision in an analogous case, *Sharkey v. J.P. Morgan Chase & Co.*, 978 F. Supp. 2d 250 (S.D.N.Y. 2013). There, an employee brought suit under Sarbanes–Oxley's whistleblower retaliation provision, alleging she reported fraudulent activity because she believed a suspicious bank client "was violating one or more of the [laws enumerated in Sarbanes–Oxley] in addition to money laundering." *Id.* at 252. She thus had also recommended that the banking relationship with this client be terminated. *See id.* at 253; *see also Sharkey*, 805 F. Supp. 2d 45, 57–58 (S.D.N.Y. 2011) (summarizing the plaintiff's allegations).

To support her whistleblower retaliation claim, the plaintiff sought to rely on an expert under Rule 702 who had "vast experience" in Sarbanes–Oxley compliance and "other areas of financial compliance." *Sharkey*, 978 F. Supp. 2d at 253. This expert opined that the plaintiff had a "reasonable belief" that the suspicious client was engaged in wrongdoing and that "there [was] sufficient, competent evidential matter to support" the plaintiff's belief that the banking relationship should have been terminated. *Id.*

The defendants moved to exclude these opinions for a host of reasons, including that the opinions improperly usurped the jury's factfinding function. *Sharkey*, 978 F. Supp. 2d at 253. The court agreed. It determined the expert could not testify whether the plaintiff had a "reasonable belief" of wrongdoing or whether the plaintiff's recommendation to terminate the client relationship was "reasonable." *Id.* The court further ruled that it would not permit the expert to "merely bolster [the plaintiff]'s testimony as to the internal processes of [her employer] of which [the expert] ha[d] no personal knowledge." *Id.* Hence, the court excluded "[a]ll testimony

– 19 –

as to these issues, including any opinion as to whether the evidence in th[e] case reasonably supported a termination of [the suspicious client]'s relationship with" the bank.[3] *Id.*

Van Drunen's proposed opinions are more skillfully drafted than the expert's opinions in *Sharkey*, but they are still unacceptable. Like the expert in *Sharkey*, van Drunen proposes to testify whether the documents and evidence in the case support Erhart's beliefs.[4] This testimony is both improper and unnecessary under Rule 702 for the same reasons expressed in *Sharkey*. *See* 978 F. Supp. 2d at 253–54; *see also id.* at 252 ("Simply rehashing evidence about which an expert has no personal knowledge is impermissible under Rule 702."). The jury is capable of determining this issue on its own. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008) ("Under either [Rule 701 or Rule 702], evidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible." (alteration in original) (quoting *Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir. 1988))). The Court also finds this testimony's probative value is substantially outweighed by the danger of unfair prejudice and this testimony's potential to waste time and lead to the needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. Hence, the Court excludes all of these opinions.

<u>Topic No. 2: Erhart Made Improper Legal Conclusions</u>. Next, van Drunen opines that Erhart "appears to have made legal conclusions regarding the Bank's

---

[3] In contrast, the court determined that in light of the plaintiff's expert's qualifications, the expert could "testify as to the type of transactions which might be subject to concern as an accountant, and those matters which she believes, and why, are worthy of [Sarbanes–Oxley] consideration (or so called 'red flags')." *Sharkey*, 978 F. Supp. 2d at 254. Further, the court permitted the expert to testify "why these various types of conduct would be considered 'red flags' within the industry, and the types of fraudulent activity they suggested." *Id.*

[4] (*See, e.g.*, Van Drunen Report § 4.1 ("Based on the documentation provided to me, I have not observed information and/or evidence that Mr. Erhart provided to support his allegations.") ("I also did not observe evidence that other employees of the Bank thought Mr. Tolla's changes were material/inappropriate.") ("After reviewing these allegations, I note that Mr. Erhart's allegations are not supported by audit evidence.").)

compliance with state and federal regulations, outside his skills, experience, and role as an internal auditor within the Bank which is inconsistent with the IAA Standards." (Am. van Drunen Report § 4.2.) Van Drunen explains that internal audit "is not responsible for drawing any legal conclusions as to whether the Bank has violated any laws, as this is the responsibility of management and the Audit Committee assisted by qualified legal counsel." (*Id.*) Thus, van Drunen opines that it was not "appropriate" for Erhart to draw legal conclusions regarding the Bank's compliance with laws. (*Id.*)

While this analysis may ring true in the corporate arena, its relevance and helpfulness to the jury is questionable. The federal whistleblower retaliation statutes at issue expressly protect Erhart's disclosures that provide information regarding believed violations of certain laws, *see* 15 U.S.C. § 78u-6(h)(1)(A), 18 U.S.C. § 1514A(a)(1), and California's whistleblower retaliation statute similarly protects Erhart's disclosures of reasonably believed violations of law, "regardless of whether disclosing the information is part of [Erhart's] job duties," *see* Cal. Labor Code § 1102.5(b). Indeed, these statutes require that Erhart demonstrate he subjectively believed the conduct he reported violated either enumerated laws or any law, respectively. *See Van Asdale*, 577 F.3d at 1000; Cal. Labor Code § 1102.5(b). There is no requirement that Erhart serve in a legal capacity with his employer or be permitted to make legal conclusions as part of his job duties to engage in protected activity. *See Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 (2d Cir. 2014) (noting the reasonable person standard recognizes that "[m]any employees are unlikely to be trained to recognize legally actionable conduct by their employers").[5]

---

[5] The Court notes that the Bank has claimed Erhart was an employee who should have been expected to know "whether the conduct [he] reported in fact constituted an enumerated violation" because he was "an internal auditor." (*See* BofI's Summ. J. Mot. 30 n. 25, ECF No. 127-1.) Interestingly, the Bank now oscillates to relying on testimony that it was improper for Erhart to make "legal conclusions regarding the Bank's compliance with state and federal regulations." (Am. van Drunen Report § 4.2.)

The potential for confusion is apparent. The Court will be instructing the jury that Erhart must demonstrate he subjectively believed the law was being violated, but van Drunen seeks to opine that it was inappropriate for Erhart to even make legal conclusions at the Bank. The Court finds the probative value of this opinion is minimal in these circumstances. The Court further concludes that this probative value is substantially outweighed by the potential to confuse the issues and mislead the jury. *See* Fed. R. Evid. 403. Hence, the Court will exclude van Drunen's opinion about the appropriateness of Erhart's conduct on this topic but will otherwise allow van Drunen to generally opine regarding the role of the internal audit function as compared to management and the audit committee.

Topic No. 3: Erhart Raised Issues Unrelated to Assigned Audits. Van Drunen next opines that based on his review of the evidence, "there appears to be a number of instances where Mr. Erhart appears to either insert himself into audits or conduct adhoc, random inquiries." (Am. van Drunen Report § 4.3.) Van Drunen opines that when internal auditors "act in this manner without the approval or knowledge of senior management, it can result in:" (1) "Duplication of efforts," (2) "Negative results with respect to achieving and completing the annual audit plan," (3) "Confusion amongst auditees," (4) "Reduced audit quality, and" (5) "A variety of other issues that could negatively impact the audit process." (*Id.*) Van Drunen then summarizes his interpretation of the evidence and the instances where he believes Erhart improperly inserted himself into audits. (*Id.*)

The Court will permit van Drunen to testify that Erhart appeared to deviate from auditing practices and to discuss the impacts this type of conduct may have on an internal audit system and audit results. The Court cautions, however, that it will not permit van Drunen to merely rehash the evidence and bolster BofI's anticipated testimony regarding Erhart's assigned job duties and the Bank's internal policies under the guise of expert testimony. *See Sharkey*, 978 F. Supp. 2d at 253; *see also* Fed. R. Evid. 403 (allowing the court to exclude needlessly cumulative evidence).

In addition, the Court will not permit van Drunen to opine that Erhart acted inappropriately in calling an "external regulatory agency regarding a legal matter," which he opines did not follow "the Bank's procedures and protocols with respect to communicating with external regulatory agencies." (Am. van Drunen Report § 4.3.) This opinion concerns Erhart's belief that the Bank was providing a misleading response to a subpoena issued by the Securities and Exchange Commission, which led him to contact the SEC. As mentioned above, the laws at issue protect Erhart from retaliation if he provides certain information to government agencies regarding believed wrongdoing. The permissiveness of these laws is not on trial. *See Van Asdale*, 577 F.3d at 1001 (noting Congress chose statutory language that "encourage[s] disclosure"); *see also Lawson v. FMR LLC*, 571 U.S. 429, 432 (2014) (explaining that Sarbanes–Oxley's whistleblower protection provision was designed to address the problems caused by Enron Corporation's "corporate code of silence," which "discourage[d] employees from reporting fraudulent behavior . . . to the proper authorities, such as the FBI and the SEC"). The issue for the jury to decide is whether Erhart's belief of wrongdoing was reasonable, not whether corporate policies or auditing practices made it appropriate for Erhart to directly contact a regulator. The Court finds this opinion is subject to exclusion because it is not helpful for the jury to determine a fact in issue and its probative value is substantially outweighed by the danger that it will confuse or mislead the jury. *See* Fed. R. Evid. 403, 702.

Topic No. 4: Erhart Lacked Independence. Van Drunen opines that "[t]he IAA Standards require internal audit activity to be independent" and that internal auditors "be 'objective in performing their work.'" (Am. van Drunen Report § 4.3.) He further opines that Erhart's "allegations into Bank activities appear to be influenced by personal reasons, which has the potential to impact his impartiality and independence." (*Id.*) Van Drunen then reviews some of Erhart's allegations and auditing conduct and explains why he believes Erhart's conduct lacked the independence required by IIA Standards. (*Id.*) For example, van Drunen concludes

that Erhart appears to have targeted certain individuals in his Lottery and Structured Settlements Audit. (*Id.*) Van Drunen opines that "the likelihood of both of these individuals being selected as part of a random sample is remote." (*Id.*)

The Court will permit this testimony under Rule 702. Erhart's alleged lack of independence in conducting his audits may bear on the objective reasonableness of his beliefs, and therefore this testimony may help the jury determine a fact in issue. The Court also finds this testimony is based on sufficient information and is reliably derived from the IIA Standards and van Drunen's specialized knowledge. Finally, this testimony is not otherwise subject to exclusion under Rule 403.

Topic No. 5: Failure to Close Out Audits and Improper Remediation Efforts. Van Drunen provides several opinions on this topic. He initially opines that in "year 2014," Erhart "completed four audits, in comparison to his [two] colleagues . . . who completed 14 and 16 audits, respectively." (Am. van Drunen Report § 4.5.) Further, van Drunen expresses that "[i]t appears that the reason for [Erhart's] failure to close out and/or delay [in] filing his audit reports may be because he was not doing what he was assigned and authorized to do and he was taking on unauthorized management responsibilities." (*Id.*)

The Court finds this testimony is not admissible under Rule 702. Determining whether Erhart completed less audits than his colleagues does not involve "scientific, technical, or other specialized knowledge." *See* Fed. R. Evid. 702. Similarly, the Bank can introduce admissible evidence regarding what Erhart was assigned and authorized to do at the Bank. There is no need for expert testimony on this subject. *See Jinro Am. Inc.*, 266 F.3d at 1004 (cautioning that allowing a witness to come before a jury as an expert is significant because it allows the witness "to testify based on hearsay information, and to couch . . . observations as generalized 'opinions' rather than as firsthand knowledge"); *see also* Fed. R. Evid. 403.

In contrast, van Drunen also opines about the role of remediation efforts in internal auditing based on "his experience and understanding." (Am. van Drunen

Report § 4.5.) Van Drunen opines that "if remediation is required as a result of findings that an internal auditor has noted in the audit reports, there is a process to be followed." (*Id.*) He explains that "internal audit's role in the remediation process is to report on whether the other [organizational] functions are making required changes within a defined time period." (*Id.*) Van Drunen further opines that because Erhart directed remedial actions in some instances, he placed "the internal audit department in a position where in the future it might [have been] required to audit its own work." (*Id.*) He also opines it is unusual for an auditor like Erhart "to make recommendations to remediate issues that have already been or are in the process of being remediated." (*Id.*)

This proposed testimony regarding the role of an internal audit system and Erhart deviating from common practice is adequately based on van Drunen's specialized knowledge. *See* Fed. R. Evid. 702. The Court also finds it will help the jury to understand the evidence and Erhart's role in the Bank's internal audit system. Hence, the Court finds this testimony is admissible.

Topic No. 6: Failure to Conform to Chain of Command. Van Drunen next opines that Erhart "failed to conform to chain of command / reporting structure in various ways." (Am. van Drunen Report § 4.6.) He highlights that Erhart "sent information to regulators" regarding certain allegations of believed wrongdoing. (*Id.*) Van Drunen opines that he believes Erhart did not take "the appropriate action by escalating the matters to regulators" and that he should have instead presented his concerns to the Bank's audit committee "per normal protocols and per the instructions in the Bank's Employee Handbook." (*Id.*)

The Court will not admit this proposed testimony for the same reasons the Court discussed above. The laws at issue protect Erhart's disclosures to appropriate regulators regarding believed wrongdoing, and these laws and the value judgments Congress made are not on trial. The issue for the jury is whether Erhart's beliefs of wrongdoing were reasonable, not whether BofI's Employee Handbook or auditing

protocols made it "inappropriate" for him to reach out to regulators directly. The Court finds this testimony will not assist the jury in the task at hand. Moreover, the probative value of these opinions is substantially outweighed by their potential to confuse the issues and mislead the jury. *See* Fed. R. Evid. 403. Hence, the Court excludes these opinions.

Topic No. 7: Failure to Comply with IIA's Confidentiality Requirements. Finally, van Drunen references the IIA's Code of Ethics discussed above and its confidentiality requirements. (Am. van Drunen Report § 4.7.) Van Drunen then opines that Erhart "failed to apply and uphold the IIA's Code of Ethics with respect to confidentiality," including by storing confidential bank information in a bag buried in his closet. (*Id.*)

The Court will admit this testimony under Rule 702. Van Drunen's testimony is relevant to BofI's claims in its countersuit regarding Erhart's alleged mishandling of confidential bank information. This testimony also may assist the jury in determining whether Erhart breached his duty of care to the Bank on this basis. Last, the testimony is based on sufficient information and is reliably derived from van Drunen's experience and his application of the IIA's Code of Ethics and industry standards. That said, the Court will not permit van Drunen to opine on the interpretation of BofI's Confidentiality Agreement and whether Erhart breached the contract. (*See* Am. van Drunen Report § 4.7.) *See, e.g.*, *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) (noting expert testimony cannot "be used to provide legal meaning" or interpret contractual language).

Overall, the Court grants in part and denies in part Erhart's request to exclude all of van Drunen's proposed testimony under Rule 702.

**CONCLUSION**

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Erhart's motion to exclude expert testimony. BofI fails to demonstrate that its non-retained expert CFO Micheletti's proposed testimony is admissible under

Rule 702. Consequently, the Court grants Erhart's request to preclude Micheletti from testifying as an expert, but the Court recognizes that Micheletti may be able to provide lay opinion testimony on the Bank's lost profits under Rule 701.

The Court also grants in part and denies in part Erhart's request to exclude BofI's retained expert Guido van Drunen. The Court finds van Drunen's proposed testimony regarding (1) internal audit objectives and standards and (2) internal audit procedures is admissible under Rule 702. This testimony is reliably based on van Drunen's specialized knowledge and will help the jury understand the evidence. As for van Drunen's more specific opinions on Erhart's conduct, the Court reaches a mixed result. Some of these opinions are appropriate under Rule 702; other opinions either fail to meet Rule 702's requirements or are subject to exclusion under Rule 403 for the reasons outlined above.

**IT IS SO ORDERED.**

**DATED: April 1, 2020**

Hon. Cynthia Bashant
United States District Judge

15cv2287