SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
POLLY TOWILL, Cal. Bar No. 120420
ptowill@sheppardmullin.com
MARTIN D. KATZ, Cal. Bar No. 110681
mkatz@sheppardmullin.com
JOHN LANDRY, Cal. Bar No. 194374
jlandry@sheppardmullin.com
HEATHER PLOCKY, Cal. Bar No. 279022
hplocky@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:  213.620.1398

Attorneys for Plaintiff and Defendant
BofI FEDERAL BANK

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MATTHEW ERHART, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>BofI HOLDING, INC., an entity d/b/a BOFI FEDERAL BANK and BANK OF THE INTERNET,<br><br>    Defendant.<br><br>BofI FEDERAL BANK, a federal savings bank<br><br>    Plaintiff,<br><br>    v.<br><br>CHARLES MATTHEW ERHART, an individual,<br><br>    Defendant. | Case No. 15-cv-2287-BAS-NLS<br>*consolidated with*<br>15-cv-2353-BAS-NLS<br><br>**BofI FEDERAL BANK'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION *IN LIMINE* NO. 2 TO EXCLUDE INFLAMMATORY EVIDENCE THAT IS UNTETHERED TO ERHART'S CLAIMS**<br><br>[*Notice of Motion and Motion and Declaration of Martin D. Katz filed concurrently herewith, and [Proposed] Order lodged concurrently herewith*]<br><br>Hon. Cynthia Bashant<br>Schwartz Courthouse, Courtroom 4B<br>Magistrate Judge Nita L. Stormes<br>12th Floor (Carter/Keep), Suite 1210<br><br>Hearing: July 20, 2021 at 11;00 a.m.<br>Action Filed: October 13, 2015<br>Trial Date: Vacated |

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 3

II. RELEVANT BACKGROUND ............................................................................ 3

    A.    Testimony Concerning BofI's General Culture ........................................ 4

    B.    Testimony Concerning BofI's Management Style ................................. 5

    C.    Testimony Concerning Purported Misconduct Unrelated To Erhart ...... 6

III. THE INFLAMMATORY EVIDENCE SHOULD BE EXCLUDED .................... 7

    A.    The Inflammatory Evidence Is Untethered To Erhart's Claims And, Therefore, Should Be Excluded As Irrelevant Under Rules 402 ............ 7

    B.    The Inflammatory Evidence Should Be Excluded Under Rule 403 ....... 8

IV. CONCLUSION ..................................................................................................... 9

## I. INTRODUCTION

In his attempt to demonstrate that he was wrongfully terminated due to his alleged status as a whistleblower, Erhart intends to introduce inflammatory evidence relating to the purported "culture" at BofI, unrelated claims of discrimination and other alleged misconduct. The evidence includes testimony concerning a purported "boys club" environment, homophobia, racial/ethnic discrimination, and sexual inappropriateness in the workplace. Similarly, Erhart intends to introduce or otherwise use testimony about general negative perceptions of BofI's CEO, Gregory Garrabrants or other managerial employees. None of this evidence is relevant to the parties' claims or defenses. Further, the prejudicial value of such evidence would far outweigh any possible probative value. Accordingly, pursuant to Federal Rules of Evidence 401, 402, and 403, BofI requests that this Court issue an order *in limine* to exclude all such evidence.

## II. RELEVANT BACKGROUND

Throughout the course of discovery, Erhart testified as to his own negative perception of BofI and purported misconduct unrelated to his claims. He also elicited similar testimony from other former BofI employees (who are also on his witness list), including Cynthia Brickey-Wyatt, Heather Michaud, Mike Sisk, Jeffrey Smith, and Jacob Gantos.[1] However, Brickey, Michaud, and Sisk are each disgruntled former employees with an axe to grind against BofI. Indeed, these three witnesses were each designated as confidential witnesses in a securities class action against BofI, which was based, in large part, on the allegations raised in Erhart's complaint. Yet, these employees never blew the whistle on BofI, nor did they ever even interact with Erhart during the course of their employment at BofI. Erhart listed these witnesses not

---

[1] BofI has noted below where Erhart has designated offending deposition testimony. However, because some of these witnesses may testify live and Erhart may seek to elicit similar testimony from other witnesses, the issues raised by this Motion cannot be decided solely in the context of objections to deposition testimony. Notably, during the parties' meet and confer, Erhart would not commit to the exclusion of any of the categories of evidence addressed by this Motion.

-3-
Case No. 3:15-cv-2287-BAS-NLS
BofI's MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION *IN LIMINE* NO. 2
SMRH:4848-4744-3612.8

because they have any ability to speak to his claims, but solely because they had particularly negative experiences during their time at BofI and would be willing to say salacious things about BofI

On the other hand, Jeffrey Smith and Jacob Gantos did actually work at BofI at the same time as Erhart and were actually friends of Erhart's during their employment there. Nevertheless, their inflammatory remarks about BofI are still entirely untethered to Erhart's claims, and thus have no bearing on the issues in this litigation and should be excluded.

### A. Testimony Concerning BofI's General Culture

Various witnesses testified regarding the general culture at BofI. For example, Heather Michaud, former National Account Executive who was "upset" by the fact that she was terminated from BofI in June of 2014 (Declaration of Martin D. Katz ("Katz Decl."), Exh. 1 ("Michaud Depo.") at 58:8-13), testified that the work culture at BofI was "hostile," "fear-based" and otherwise negative (Michaud Depo. at 37:6-18; 41:8-24; 79:5-12). Jeffrey Smith, former payroll and benefits administrator, testified as to what he perceived as BofI's generally poor atmosphere (Katz Decl., Exh. 2 ("Smith Depo.") at 140:7-141:13; 180:9-181:4; 226:1-7) and hostile work environment (*Id.* at 141:21-142:24; 174:3-7). They both testified that they perceived BofI to be a "boys club" (Michaud Depo. at 75:11-19; 113:23-115:4; Smith Depo. at 190:6-9; 227:18-228:24). Jacob Gantos, former direct banker who worked at BofI's call center, testified that he perceived BofI to generally have a toxic environment (Katz Decl., Exh. 3 ("Gantos Depo.") at 25:3-30:18; 122:22-25; 154:8-11). Cynthia Brickey-Wyatt, former Lending Compliance Officer at BofI, testified that she left BofI due to "ethical reasons." (Katz Decl., Exh. 5 ("Brickey Depo.") at 15:14-16:5; 22:17-25:9; 47:17-52:3).[2]

---

[2] Erhart has designated this deposition testimony.

### B. Testimony Concerning BofI's Management Style

Various witnesses testified at their depositions regarding their opinions of BofI's upper management and their managerial style, including that of CEO Gregory Garrabrants. For example, Cynthia Brickey-Wyatt, former Lending Compliance Officer at BofI, testified that she found Garrabrants to be intimidating and "slimy" (Brickey Depo. at 85:20- 87:19).[3] Michaud testified that members of BofI's management (including Garrabrants) had harsh temperaments, were antagonistic and dishonest (Michaud Depo. at 31:1-3; 33:5-11; 79:10-12; 84:18-23; 101:1-102:19). Mike Sisk, former SVP and Chief Accounting Officer, testified that Garrabrants was a "tyrant and a malicious person" (Katz Decl., Exh. 4 ("Sisk Depo.") at 178:7-14), that he was "heavy-handed" (*id.* at 40:23-43:5; 55:14-56:1),[4] and that his managerial style resulted in a fear-based (*id.* at 70:17-72:13;[5] 162:24-25) and toxic culture (*id.* at 158:2-10; 159:6-20), as well as a general culture of non-compliance (*id.* at 83:5-84:14).[6] Smith expressed his feeling that Garrabrants often pushed his own agenda (Smith Depo. at 186:1-187:8; 215:6-20). Gantos testified that employees were generally fearful of Garrabrants (Gantos Depo. at 142:11-19).

With respect to other managers at BofI, Michaud testified that BofI lacked a proper Human Resources department (Michaud Depo. at 31:10-16), and that her former supervisor, Darin Judis, was antagonistic, had a harsh temperament, and would often yell at his employees at work (*id.* at 31:1-3; 33:5-11). Gantos testified that some managerial employees (in BofI's call center) had harsh personalities (Gantos Depo. at 21:6-22:12; 29:11-32:3), and that one of his supervisors, Robert Armstrong, was condescending to his employees and treated them like children (*id.* at 29:11-30:18). Mike Sisk testified at his deposition that Jan Durrans was unfriendly, and that

---

[3] Erhart has designated this deposition testimony.
[4] Erhart has designated portions of this deposition testimony.
[5] Erhart has designated a portion of this deposition testimony.
[6] Erhart has designated a portion of this deposition testimony.

Garrabrants assigned Durrans to be Chief Performance Officer specifically to discourage employees from approaching her (Sisk Depo. at 167:15-168:8).

### C. Testimony Concerning Purported Misconduct Unrelated To Erhart

Various former employees testified concerning purported instances of discrimination or other misconduct that has no relationship to the claims in this litigation. For example, Michaud testified that she encountered issues of sexual inappropriateness (Michaud Depo. at 55:23-57:19; 106:5-25). Gantos stated that he heard of an incident of sexual misconduct in which an employee inappropriately touched another employee's hand (Gantos Depo. at 161:5-162:2). During the deposition of Daniel Crescitelli (a former internal auditor), Erhart's counsel asked various questions relating to whether Crescitelli had ever made homophobic comments at BofI, which Crescitelli denied (Katz Decl., Exh. 6 ("Crescitelli Depo.") at 215:6-217:17).[7] None of these purported events involved Erhart.

At Crescitelli's deposition, Erhart's counsel elicited testimony regarding an incident where Crescitelli, as part of a World-Cup rivalry between Italy and Germany, made an ill-conceived joke to his German coworker, Sabrina Koll, relating to Nazis (Crescitelli Depo. at 205:1-217:17).[8] Crescitelli acknowledged that the joke was in poor taste, for which he apologized and is tremendously regretful (*id.* at 24:1-25:20). Notably, Erhart was not present when these comments were made (*id.* at 205:22-25),[9] and Sabrina Koll (to whom the joke was actually directed) did not claim that she was offended or bothered by the incident (*id.* at 207:20-208:1).[10] Nevertheless, at Crescitelli's deposition, Erhart's counsel questioned him about whether he has ever belonged to any Neo Nazi, Alt-right, White Nationalist, or other racist groups, which Crescitelli denied (*id.* at 213:1-214:5).[11]

---

[7] Erhart has designated this deposition testimony.
[8] Erhart has designated this deposition testimony.
[9] Erhart has designated this deposition testimony.
[10] BofI disciplined Crescitelli for his behavior. (Crescitelli Depo. at 24:2-25:6).
[11] Erhart has designated this deposition testimony.

### III. THE <u>INFLAMMATORY EVIDENCE SHOULD BE EXCLUDED</u>

#### A. <u>The Inflammatory Evidence Is Untethered To Erhart's Claims And, Therefore, Should Be Excluded As Irrelevant Under Rules 402</u>

Evidence of generalized grievances concerning BofI's purported culture, managerial style and unrelated misconduct should be excluded because it is not tethered to any of Erhart's claims. As a result, such evidence does not relate to a fact "of consequence in determining the action," which is a prerequisite for evidence being considered relevant. Fed. R. Evid. 402. Accordingly, such evidence is inadmissible under Rule 401. *See, e.g., Selby v. Pepsico, Inc.*, 784 F. Supp. 750, 757 (N.D. Cal. 1991); *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (statements are irrelevant to determining discrimination if they are too general or do "not relate in any way, directly or indirectly" to the challenged adverse employment decision); *Gillum v. Safeway, Inc.*, 2015 U.S. Dist. LEXIS 141288, **2-3 (W.D. Wash. Oct 16, 2015) (excluding evidence relating to sexual harassment in a racial discrimination case because evidence of sexual discrimination is irrelevant, unduly prejudicial, would confuse the issues, and could delay the trial).

Similarly, as is also the case here, the Ninth Circuit has held that actions taken or statements made by individuals not involved in the decision-making process are not probative. *Gaur v. City of Hope*, 589 Fed. Appx. 359, 359 (9th Cir. 2015) (affirming lower court's decision to exclude evidence of discriminatory animus by prior director who had no decision-making authority with respect to plaintiff's termination); *Radovich v. Sec'y of the United States Dep't of the Treasury*, 116 Fed. Appx. 783, 785 (9th Cir. 2004) ("Comments made by individuals who are not decision-makers and do not influence the decision-making process do not constitute direct evidence of discriminatory animus..."); *Green v. Maricopa County Cmty. College Sch. Dist.*, 265 F. Supp. 2d 1110, 1130 (D. Ariz. 2003) ("Actions taken and statements made by a non-decisionmaker are not relevant to the determination of the intent of the actual decision-maker.")

### B. The Inflammatory Evidence Should Be Excluded Under Rule 403

Even if the Court were to find that some of the evidence concerning BofI's purported culture, managerial style or unrelated misconduct is relevant, the Court should still exclude it because any minimal probative value it may have is far outweighed by its prejudicial effect, and the dangers of confusing the issues, misleading the jury, causing undue delay and wasting time. Fed. R. Evid. 403.

In *Hoyt v. Career Sys. Dev. Corp.*, 2010 U.S. Dist. LEXIS 43584, *5 (S.D. Cal. May 3, 2010), the court disallowed the introduction of evidence relating to other instances of discrimination, reasoning that "allowing mini-trials of other employee's claims of discrimination unrelated to Plaintiff's causes of action would be unfairly prejudicial to Defendant and cause significant undue delay." The court then limited the testimony of other witnesses to "personal observations of Defendant's conduct in the workplace that may circumstantially establish Defendant's discriminatory motive." *Id.* at **5-6; *see also Gillum v. Safeway, Inc.*, 2015 U.S. Dist. LEXIS 141288 at **2-3 (excluding evidence relating to sexual harassment in a racial discrimination case because evidence of sexual discrimination is irrelevant, unduly prejudicial, would confuse the jury, and delay the trial). The same reasoning applies here.

Furthermore, aside from being entirely untethered to Erhart's claims and unduly prejudicial, this inflammatory evidence would significantly lengthen trial as BofI would need to elicit testimony from numerous other current and/or former employees who had positive experiences at BofI to prove that Erhart cherry-picked this handful of disgruntled former employees for the sole purpose that they would be willing to testify negatively about BofI. The irrelevant opinions of these former employees, most of which had never worked with Erhart or even met him at BofI, are not representative of the thousands of other BofI employees who are satisfied with their employment.

-8-

SMRH:4848-4744-3612.8

Case No. 15-CV-02287-BAS-NLS
BofI's MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION *IN LIMINE* NO. 2

## IV. CONCLUSION

BofI respectfully requests that this Court issue an order *in limine* excluding evidence relating to: (1) BofI's "culture"; (2) negative perceptions about BofI's management; and (3) purported misconduct unrelated to Erhart's claims.

Dated:  July 6, 2021

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s Polly Towill*
POLLY TOWILL
Attorneys for Plaintiff and Defendant
BofI FEDERAL BANK
Email:  ptowill@sheppardmullin.com