**THE GILLAM LAW FIRM**
*A Professional Law Corporation*
Carol L. Gillam (SBN 102354)
Sara Heum (SBN 288136)
10880 Wilshire Boulevard, Suite 1101
Los Angeles, California 90024
Telephone: (310) 203-9977
Facsimile: (310) 203-9922
carol@gillamlaw.com
sara@gillamlaw.com

Attorneys for Plaintiff and Defendant
CHARLES MATTHEW ERHART

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MATTHEW ERHART, an individual,<br><br>                    Plaintiff,<br><br>v.<br><br>BofI HOLDING, INC., an entity d/b/a BOFI FEDERAL BANK and BANK OF THE INTERNET,<br><br>                    Defendant.<br><br>_____<br><br>BofI FEDERAL BANK, a federal savings bank<br><br>                    Plaintiff,<br><br>v.<br><br>CHARLES MATTHEW ERHART, an individual,<br><br>                    Defendant. | Case No. 15-cv-2287-BAS-NLS<br>*consolidated with*<br>15-cv-2353-BAS-NLS<br><br>**PLAINTIFF CHARLES ERHART'S SUPPLMENTAL BRIEF RE JURY INSTRUCTIONS AND VERDICT FORMS**<br><br>*[Filed Concurrently with the Declaration of Carol Gillam]*<br><br>The Hon. Cynthia Bashant<br>(Schwartz Courthouse, Courtroom 4B)<br><br>Magistrate Judge Nita L. Stormes<br>12th Floor<br>(Carter/Keep Courthouse)<br><br>Action Filed: October 13, 2015<br><br>Trial: April 26, 2022 |

Mr. Erhart submits the following supplemental briefing regarding issues raised in the jury instructions and verdict forms at the status conference on March 25, 2022, as the Court requested.

## I.      BofI's Damages

BofI should be precluded from introducing evidence at trial of alleged damages concerning (1) any damages not disclosed, (2) forensic work conducted by Stroz Friedberg, LLC and (3) lost profits and personnel costs stemming from Erhart's alleged actions. BofI has failed to produce any computation of these damages as required by the Federal Rule of Civil Procedure 26 ("Rule 26").

Moreover, costs from forensic work by Stroz Friedberg were conducted in anticipation of litigation and are not recoverable by BofI. Additionally, BofI's damages for alleged lost profits and personnel costs are entirely too speculative and improper, and should not be considered.

### A.  BofI Failed to Provide a Computation of Damages

Rule 26 requires that a party include in its initial disclosures a "computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). The party must also make "available for inspection and copying…the documents…on which each computation is based." Fed. R. Civ. P. 26(1)(A)(iii). This computation is more than simply a "lump sum statement of the damages allegedly sustained" and must involve "some analysis." *City & Cty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 221 (N.D. Cal. 2003). If damages are unknown at the time of the initial disclosures, the party is "required to supplement its initial damages computation to reflect the information obtained through discovery." *Game Int'l Ltd. v. Shuffle Master, Inc.*, No. 2:12-cv-01216-GMN, 2013 WL 321659 at *6 (D. Nev. Jan 28, 2013).

On March 18, 2016, in its case against Mr. Erhart, BofI served its initial disclosures pursuant to Rule 26. (Gillam Decl. ¶ 3, **Exhibit A**). In these disclosures, BofI claimed "direct, consequential damages, including sums paid to Stroz Friedberg, LLC to identify and attempt to recover stolen confidential information." (*Id.*, 6:9-10). BofI also sought damages from "lost income from business opportunities that were no longer pursued as a result of Erhart's improper disclosure of confidential information" and "lost profits resulting from Erhart's conversion and improper dissemination of confidential information." (*Id.*, 6:13-14, 18-19). BofI did not provide a computation, only stating that "BofI estimates that such damages will exceed $3,000,000 including any punitive damages that may be awarded." (*Id.*, 6:25-26). This broad estimate does not meet the computation requirements of Rule 26.

On October 4, 2018, BofI served supplemental disclosures. (Gillam Decl. ¶ 4, **Exhibit B**). These disclosures repeated BofI's prior estimate of $3,000,000 and failed to provide any additional information or computation. (*Id.*, 15:5-16:2). On October 29, 2018, and December 12, 2018, BofI produced additional supplemental disclosures in which its damages were substantially the same, if not identical, to those in prior disclosures. (Gillam Decl. ¶ 5, 6, **Exhibit C**, 15:18-16:15, **Exhibit D**, 15:19-16:16). BofI still failed to provide the necessary computations for its claimed damages.

Erhart sought a computation of damages in discovery served on March 14, 2018. Interrogatory No. 14 from Mr. Erhart's first set of interrogatories requests BofI to "DESCRIBE and provide a detailed computation of each and every category of damages that YOU claim to have suffered as a result of ERHART'S alleged actions." (Gillam Decl. ¶ 7, **Exhibit E**, 25:12-14). In response, BofI again repeated what it stated in its disclosures and provided an estimate of $3,000,000 in damages, without any specific computation. (*Id.*, 24:16-25:17).

In his deposition almost a year later, on February 4, 2019, BofI's expert Matthew Armstrong provided routine billing records from Stroz Friedberg. (Gillam Decl. ¶ 8, **Exhibit F**). These records extend from March 2015 to December 2017 and reference other unrelated matters, such as a matter involving Sofia Cornell. (*Id.*, BofI 0017273, BofI 0017276). Armstrong only provided these records as part of his expert deposition. Because Mr. Erhart was not provided with a computation of these damages, he cannot make heads or tails of the billing provided by Armstrong.

On March 13, 2019, Andrew Micheletti, during his deposition, produced papers concerning lost profits and personnel costs. (Gillam Decl. ¶ 9, **Exhibit G**) These papers from depositions are not, however, a substitute for BofI's requirement under Rule 26 to provide a computation of its damages. This shifting of the burden to Mr. Erhart to calculate BofI's alleged damages from forensic billing records and a chart with miscellaneous staff salary information is not permissible or sufficient. *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 593-94 (D. Nev. 2011); Order Granting in Part Motion in Limine No. 5 to Exclude Evidence of Any Damages that Require Computation (Dkt. No. 244).

BofI has clearly failed to provide a computation of its damages as required by Rule 26. Federal Rule of Civil Procedure 37(c)(1) allows for the exclusion of evidence or information that is not disclosed, unless such failure is harmless or substantially justified. BofI's failure to comply with Rule 26 is not harmless or substantially justified. This failure significantly affects Mr. Erhart's trial preparation as he remains unaware of how BofI intends to calculate its alleged damages and what, exactly it will claim based on its forensic expert's billing and deposition documents with personnel information. As such, Mr. Erhart respectfully requests that BofI be precluded from offering evidence or testimony pertaining to damages that require computation.

### B.  Damages for Forensic Work by Stroz Friedberg Should Not  be Recoverable

Litigation expenses cannot be considered losses under the Computer Fraud and Abuse Act (CFAA). *Dreni v. PrinterOn America Corporation*, 486 F.Supp. 3d 712, 736 (S.D. N.Y. 2020). The CFAA provides recovery for costs "remedying damage to the computer," not "general non-computer costs incurred in investigating the violation." *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F.Supp.2d 468, 476 (S.D. N.Y. 2004). *See also Penal Code*. Furthermore, to the extent these are litigation costs not allowable under any other basis BofI brings as well, they should be disallowed from claiming them as damages.

Matthew Armstrong of Stroz Friedberg testified that he was retained by McKenna, Long & Aldrige on March 13, 2015, by McKenna, Long & Aldridge, a law firm. (Gillam Decl. ¶ 10, **Exhibit H**, 21:18-24; 29:17-20). The forensic work by Stroz Friedberg is clearly related to litigation. Armstrong was hired only seven days after Erhart contacted the Office of the Comptroller of the Currency (OCC). The timing indicates that BofI, and by extension its counsel McKenna, Long & Aldridge, was investigating Erhart's whistleblowing in anticipation of litigation. The fact that Stroz was retained by BofI's law firm early on and that Michael Armstrong has also been designated as an expert in the matter further evidences that this is a litigation cost and these damages are not recoverable under the CFAA.

As part of his expert deposition, Armstrong provided billing information from March 2015 to December 2017. (Gillam Decl. ¶ 8, **Exhibit F).** This timing extends far beyond any work by Stroz required to assess and mitigate Erhart's alleged actions in 2015. Additionally, records indicate billing for calls with BofI counsel and billing for other matters. (*Id.*, BofI 0017267, BofI 0017270, BofI 0017276). The timing and subject matter of these bills indicate litigation expenses that are not recoverable under the CFAA. And once again, because Mr. Erhart was not provided a proper computation of forensics damages, he has no idea what, if any, of Stroz'

billing is being claimed when BofI seeks damages.

### C. BofI's Damages for Lost Profits and Personnel Costs Are Too Speculative and Not Recoverable

In addition to the computations for lost profits, personnel costs, and any other damages not being properly disclosed by BofI, lost profits, personnel costs, and any "goodwill" BofI is claiming are too speculative and thus not recoverable. Damages that are "speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." *Piscitelli v. Friedenberg*, 87 Cal. App. 4th 953, 989 (2001) (quoting *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 368 (1963). In claiming damages for lost profits, the measure of lost profits must be based on "known reliable factors without undue speculation." *Holland Loader Company, LLC v. FLSmidth A/S*, 313 F.Supp. 3d 447, 480 (S.D. N.Y. 2018), citing  *Ashland Mgmt., Inc. v. Janien*, 82 N.Y.2d 395, 403 (1993).

In his deposition, Andrew Micheletti discussed a customer of the Bank who ended his relationship with BofI, referencing negative press coverage of BofI. (Gillam Decl. ¶ 11, **Exhibit I**, 73:14-82:2). This customer did not name Mr. Erhart or discuss anything of substance, beyond a passing reference to headlines concerning BofI. (Gillam Decl. ¶ 12, **Exhibit J**). Furthermore, the measure of lost profits is not based on known reliable factors. Micheletti is not an expert (Order Granting in Part and Denying in Part Charles Erhart's Motion to Exclude Expert Testimony (Dkt. No. 193) and does not offer sound or reliable calculations of lost profits from this account. (Gillam Decl. ¶ 9, **Exhibit G**). Micheletti, and BofI are speculating that Mr. Erhart's alleged actions are somehow connected to the prior customer, without providing any evidence. Even if BofI can provide evidence that the customer was influenced by press about Mr. Erhart and BofI, this press is beyond the control of Erhart and not tethered to any allegations against Erhart.

In fact, most of the press was not about Mr. Erhart, but about allegations of wrongdoing that he raised in a protected setting (i.e., federal court) and that others

-5-

raised in numerous articles carried on a variety of websites such as "Seeking Alpha."

Micheletti also argued that BofI suffered damages for "personnel costs." Micheletti only stated that staff spent "hours" to calculate "the cause and/or magnitude of Mr. Erhart's taking." (Gillam Decl. ¶ 11, **Exhibit I**, 71:11-16). Again, these damages are entirely speculative and, without any evidentiary support, beyond Micheletti's testimony and a deposition exhibit. (Gillam Decl. ¶ 9, **Exhibit G**). The company cannot assert as damages what it already must pay its employees as salary and benefits under the law.

Finally, if BofI is allowed to present evidence of alleged lost profits and personnel costs, there is significant danger of confusing and misleading the jury. Fed. R. Civ. P. 403. The probative value of any such evidence is substantially outweighed by this danger. As such, these damages should not be considered.

### D. Conclusion

Erhart respectfully requests that the Court preclude BofI from introducing damages concerning its (1) forensic work conducted by Stroz Friedberg, LLC and (2) lost profits and personnel costs stemming from Erhart's alleged actions and (3) any other damages not disclosed.

## II. Erhart's Special Instruction on Applicable Laws for Labor Code 1102.5 and Wrongful Termination in Violation of Public Policy

Mr. Erhart seeks to add a special instruction on applicable laws for his Labor Code Section 1102.5 and wrongful termination. As this matter involves many complex laws and regulations, Mr. Erhart believes this instruction is necessary to aid the jury. The instruction will explain to the jury the laws that Erhart believed BofI violated.

These laws include the Bank Secrecy Act and anti-money laundering rules,

1  which are complicated laws that require explanation and relate to several of Mr.

2  Erhart's predicates, including the Bank's inadequate internal controls with regard to

3  customers without taxpayer identification numbers and its making unauthorized

4  risky loans without proper due diligence to Politically Exposed persons (PEPs) and

5  criminals. Therefore, Mr. Erhart respectfully requests that the Court allow this

6  special instruction.

7       In addition, Mr. Erhart seeks an instruction regarding fraud against the OCC

8  to further help the jury understand the complicated issues and promote efficiency at

9  trial. The instruction would explain the role of the OCC and the law relating to Mr.

10  Erhart's belief regarding defrauding a federal regulator, including by "withholding

11  or refusing to provide accurate information to the OCC, or by obstructing the OCC's

12  examination and regulation of a bank." This sentence is in accordance with 12

13  U.S.C. § 1464(d)(1)(B), which discusses OCC requests and examination. As

14  determined by the Court, a factfinder could determine that Mr. Erhart believed the

15  Bank withheld or refused to provide information to the OCC. Order on MSJ, ECF

16  No. 192 at 61:1-62:4. This instruction is thus necessary to inform the jury what

17  would constitute defrauding the OCC. As such, Erhart respectfully requests that the

18  Court allow the addition of this instruction.

19

20  **III.   Mr. Erhart's CFAA Instruction is More Appropriate Than BofI's**

21       In its First Amended Complaint against Erhart ("FAC"), BofI brings a claim

22  for violation of the Computer Fraud and Abuse Act (Dkt. No. 12 in *BofI v. Erhart*).

23  BofI claims that "Erhart violated the Computer Fraud and Abuse Act, 18 U.S.C. §

24  1030(a)(5) when he knowingly caused the transmission of a program, information,

25  code or command, and as a result of such conduct, intentionally caused damage

26  without authorization to a protected computer." (*Id.* ¶ 91). In its instruction, BofI

27  does not use the proper language reflecting the part of the statute it actually pled.

28

Model Rule 15.29 from criminal cases does not reflect the specific conduct pled, which was more than just "access."  Mr. Erhart's instruction, in comparison, accurately encompasses the relevant statutory language and better suits the facts of this case. To permit BofI to provide a different instruction would prejudice Mr. Erhart. As such, Mr. Erhart's instruction, rather than BofI's, should be given.[1]

## IV.   Mr. Erhart's Instruction on Wrongful Discharge in Violation of Public Policy Correctly States the Law

In Mr. Erhart's instruction on wrongful discharge in violation of public policy, the parties have a dispute regarding the third element concerning the specificity of BofI's violation of public policy. CACI 2430's third element states: "That [*insert alleged violation of public policy, e.g.*, "[*name of plaintiff*]'s *refusal to engage in price fixing*"] was a substantial motivating reason for [*name of plaintiff*]'s discharge." Mr. Erhart argues the instruction should read "that raising *issues of potential wrongdoing* by BofI was a substantial motivating reason for Mr. Erhart's discharge." BofI has proposed "that raising *claimed violations under SOX, Dodd-Frank, or Section 1102.5* by BofI was a substantial motivating reason for Mr. Erhart's discharge." Mr. Erhart believes his proposed language to be proper. The employee is not required to prove an actual violation of law; a seminal case established that wrongful discharge applies if the "employer fired him for reporting his 'reasonably based suspicions' of illegal activity." *Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 87 (1998). As such, Mr. Erhart's language should be used in the instruction.

---

[1] Alternatively, at a minimum, BofI must be required to prove 18 U.S.C. § 1030(a)(5).

## V.   BofI's Same Decision and After-Acquired Evidence Defenses

Because BofI took multiple adverse actions, including the attempted termination on March 6, 2015, and the termination on June 9, 2016, the separation of the same decision and after-acquired evidence defenses must be delineated. The instructions must clarify to the jury that the protected activity could not in any way be "inextricably intertwined" with any unfavorable personnel decision taken "at the time" for the same decision defense. *See Genberg v. Porter*, 882 F.3d 1249, 1258-1259 (10th Cir. 2018). In addition, the after-acquired evidence defense must not apply to any alleged misconduct BofI came to learn of prior to June 9, 2015.

First, to the extent BofI relies on evidence it gathered between March 6, 2015, and June 9, 2015, the same decision defense comes into play and *Genberg* applies. In contrast to the contributing factor inquiry, the same decision defense requires the employer to show that it would have taken the same action even if there had never been any protected activity. *Id.* In *Genberg,* the chief executive officer could not avoid liability under Sarbanes-Oxley because the protected activity had led the employer to investigate a possible rule violation and the employer then fired the employee for violating the rule. Thus, "the protected activity… would be 'inextricably intertwined' with the adverse action." *Id.* at 1259, citing *Palmer v. Canadian Nat'l Ry./Ill. Cent. R.R.*, No. 16-035, 2016 WL 5868560, at *12 (Admin. Rev. Bd., U.S. Dep't of Labor Sept. 30, 2016). *See also Formella v. U.S. Dep't of Labor*, 628 F.3d 381, 389 (7th Cir. 2010) (distinguishing the "contributing factor" inquiry and the same-action defense); U.S.C. § 42121(b)(2)(B)(iv) ("Relief may not be ordered under subparagraph (A) if the employer demonstrates by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that behavior." (emphasis added)); 18 U.S.C. § 1514A(b)(2)(C) (adopting the burdens of proof set out in 49 U.S.C. § 42121(b)).

Here, Mr. Erhart has proposed adding to the instruction (BofI Special 27) that if any reason BofI relied on for its unfavorable personnel action was discovered because of an investigation that arose from Mr. Erhart's protected activity, the jury must find for Mr. Erhart. This would be consistent with the law on contributing factor as well as *Genberg*'s limitation on the use of an investigation that is "inextricably intertwined" with the protected activity.

Second, when the after-acquired evidence defense is applied at trial, it must again be made clear to the jury that any alleged after-acquired evidence of "misconduct" arises after Mr. Erhart's official termination on June 9, 2015, and that his actions as a whistleblower can in no way be tied to the "misconduct." For example, if BofI relies on its learning of Mr. Erhart's taking confidential BofI documents after his termination date, but Mr. Erhart puts on evidence that it was for the purposes of whistleblowing, that act cannot be transmogrified into "misconduct" justifying termination if the jury in fact finds that Mr. Erhart did so as part of his whistleblowing. Otherwise, that would completely subvert the whistleblower protections inherent in Sarbanes-Oxley and the other retaliation laws Mr. Erhart has sued under.

In other words, were BofI to put on after-acquired evidence of "misconduct" related to Mr. Erhart's whistleblowing, BofI would effectively still be using his whistleblowing as a "contributing factor" to justify an adverse action and cut off damages, contrary to the law. *See* 18 U.S.C. § 1514A; 29 C.F.R. § 1980.104; *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 263 (5th Cir. 2014) ("A 'contributing factor' is "any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision."" (citing *Allen v. Admin. Review Bd.*, 514 F.3d 468, 476 n.3 (5th Cir. 2008)); *Genberg v. Porter*, 882 F.3d 1249, 1257 (10th Cir. 2018) (the element of establishing protected activity as a "contributing factor" to the termination is "broad and forgiving," requiring the plaintiff to point to "'any factor'" that "'tends to affect in any way the outcome of

the decision.'" The contributing factor need not be "'significant, motivating, substantial, or predominant.'"). *See also Deltek v. Dep't of Labor*, 649 F. App'x 320, 331 (4th Cir. 2016) (after-acquired evidence doctrine did not apply where an employee sent emails to a shared private email account to preserve documents for her whistleblowing and engaged in other alleged misconduct).

Accordingly, while BofI may be permitted to use the after-acquired evidence defense, there has to be an explanation to the jury of when it is applied, and how Mr. Erhart's actions as whistleblower cannot be a basis for misconduct under this doctrine.

Dated: April 15, 2022

THE GILLAM LAW FIRM
*A Professional Law Corporation*

By:   /s/ Carol Gillam
_____
CAROL GILLAM
SARA HEUM
Attorneys for Plaintiff and Defendant
CHARLES MATTHEW ERHART