UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MATTHEW ERHART,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>BOFI FEDERAL BANK,<br><br>　　　　　Defendant.<br><br>And Consolidated Case | Case No. 15-cv-02287-BAS-NLS<br>*consolidated with*<br>15-cv-02353-BAS-NLS<br><br>**ORDER DETERMINING SCOPE OF RETRIAL** |

After a three-week trial, the jury returned a verdict in favor of Charles Matthew Erhart in these consolidated actions involving whistleblower retaliation. In the second phase of trial, however, the jury could not agree on the amount of punitive damages. The Court declared a mistrial on punitive damages and set the issue for retrial.

Now before the Court are the parties' briefs addressing the scope of the retrial. The Court heard argument at the pretrial conference. For the following reasons, the scope of the retrial will be: (1) whether BofI Federal Bank engaged in malice, oppression, or fraud; and (2) if so, the amount of punitive damages.

## I. Background

Erhart's remaining claims seek relief for retaliation in violation of the Sarbanes–Oxley Act, wrongful discharge in violation of public policy, violation of California Labor Code section § 1102.5—the state's general whistleblower statute, and defamation. His Complaint requests "punitive damages on each cause of action for which they are awardable." (ECF No. 124.) Punitive damages are not available under Sarbanes–Oxley, but they are recoverable under the three state law claims.[1] And the Court granted the parties' request to bifurcate trial to reserve any evidence of wealth and the amount of punitive damages for the second phase. (ECF No. 212.)

On the road to deliberations, the Court endeavored to streamline the jury instructions and verdict form given the breadth of the contested issues. Beyond Erhart's labyrinth of whistleblower retaliation claims, the jury had to resolve BofI's six counterclaims. So, although the parties proposed a forty-page verdict form (ECF No. 270-1), the Court settled on a simplified, seven-page form for phase one (ECF No. 314).

Over the course of three weeks, the Court tried phase one. The jury found in Erhart's favor on all his claims and against BofI on its counterclaims. (ECF No. 314.) The jury awarded $1 million in compensatory damages on Erhart's employment-related claims and $500,000 on his defamation claim. (*Id.*) Further, the jury was asked that if it "awarded damages above, did Mr. Erhart prove by clear and convincing evidence that BofI acted with malice, oppression or fraud?" (*Id.*) The jury answered yes, leading to the second phase of trial.

---

[1] For Sarbanes Oxley, *see* 18 U.S.C. § 1514A(c) (specifying remedies for Sarbanes–Oxley); *see also, e.g.*, *Murray v. UBS Securities, LLC*, No. 14 CIV. 927 (KPF), 2020 WL 7384722, at *6 (S.D.N.Y. Dec. 16, 2020) (noting the court advised the parties "that punitive damages were not available" under Sarbanes–Oxley). For wrongful discharge, *see Commodore Home Systems, Inc. v. Superior Court.*, 32 Cal. 3d 211, 220 (1982). For California Labor Code section 1102.5, *see Mathews v. Happy Valley Conference Center, Inc.*, 43 Cal. App. 5th 236, 268 (2019). And for defamation, *see Khawar v. Globe International, Inc.*, 19 Cal. 4th 254, 274 (1998).

In the one-day second phase of trial, the jury was tasked with determining the amount of punitive damages. (Tr., ECF No. 321.) The jury was unable to reach a unanimous agreement, leading to an *Allen* charge. The charge was not successful, as the jurors again reported they were unable to agree. After each juror affirmed the jury "is hopelessly deadlocked and cannot reach a verdict," the Court "declare[d] a mistrial on this last one issue." (*Id.*) Upon discharging the jury, the Court got a head start on the new trial issue, informing the parties:

> What we are going to do is we are going to reset this for trial on the issue of punitive damages only. It will be a week-long trial. You will get ten hours a side. It will only be on the issue of punitive damages.
> . . . .
> [A]t the beginning of the trial, I will instruct the jury that a previous jury found liability in an amount of 1.5 million, and that the only issue remaining in this trial is whether the Bank should be punished for its conduct.

(*Id.*)

The Bank later filed a pretrial memorandum invoking the Seventh Amendment to argue "a retrial of punitive damages issues in this case necessitates a complete retrial of all claims on which a punitive damages award could be based." (BofI's Br. 1:6–8, ECF No. 328.) At the pretrial conference, the Court raised a related issue: it questioned whether the jury's finding of malice or oppression applied to only Erhart's defamation claim—as opposed to all of the state law claims. (ECF No. 329.) The Court thus ordered Erhart to respond to BofI's memorandum and address the related issue. (*Id.*) In his response, Erhart argues "all parties understood" the jury's finding of reprehensible conduct "referred to the causes of action for which punitive damages are available." (Erhart's Br. 1:23–24, ECF No. 331.) He also contends the Court "should proceed with a retrial limited to the issue of the amount of punitive damages." (*Id.* 11:20–21.)

## II. Analysis

When a jury reaches an agreement on some but not all issues, the court has discretion to accept the partial verdict, order a limited retrial, or retry all the issues. *See Sanchez v. City of Chicago*, 880 F.3d 349, 360–61 (7th Cir. 2018); *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1134 (9th Cir. 1995) (noting "whether to limit issues in new trial is within trial court's discretion" (citing *d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 897 (9th Cir. 1977)); *see also Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 547 F. App'x 832, 833 (9th Cir. 2013) (holding the court "did not abuse its discretion by refusing to enter a partial verdict" and ordering a new trial on all issues); *Opal Labs Inc. v. Sprinklr, Inc.*, No. 3:18-CV-01192-HZ, 2022 WL 526167, at *1 (D. Or. Jan. 7, 2022) (considering whether partial retrial was appropriate after jury deadlocked on some but not all claims). Indeed, Federal Rule of Civil Procedure 59(a) recognizes the court's authority to conduct a new trial on only "some of the issues."

Courts also determine the scope of a retrial in an analogous context: when legal error taints part of a verdict. "[A]t common law there was no practice of setting aside a verdict in part. If the verdict was erroneous with respect to any issue, a new trial was directed as to all." *Gasoline Prod. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 497 (1931). Moreover, under Seventh Amendment, "the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. However, in its 1931 decision in *Gasoline Products Company v. Champlin Refining Company*, the Supreme Court made clear "that the all-or-nothing approach of the common law was not one of the features of the common-law right to trial by jury that is put beyond change by the Seventh Amendment." *Wright & Miller*, 11 Fed. Prac. & Proc. Civ. § 2814 (3d ed. 2022).

*Gasoline Products* involved a business arrangement where the plaintiff licensed several oil purification machines to the defendant. 283 U.S. at 495. The

defendant claimed the plaintiff agreed to install a treatment system as part of a package deal. *Id.* The plaintiff sued to recover unpaid royalties for the licensed machinery, and the defendant counterclaimed for damages arising from the plaintiff's failure to install the treatment system. *Id.* The jury found in favor of each side, resulting in a net verdict for the plaintiff. *Id.* On appeal, the First Circuit reversed the counterclaim verdict because of instructional error, "but, in directing a new trial, it restricted the issues to the determination of damages only." *Id.* at 514.

The Supreme Court addressed whether limiting the retrial to damages for the counterclaim was a denial of the plaintiff's constitutional right to a jury trial. 283 U.S. at 497. The Court explained the Seventh Amendment does not "require that an issue once correctly determined, in accordance with the constitutional command, be tried a second time, even though justice demands that another distinct issue, because erroneously determined, must again be passed on by a jury." *Id.* at 498. Hence, there was no reason to retry the plaintiff's claim to recover royalties that was unaffected by the instructional error. *Id.* at 499.

The same could not be said of damages for the counterclaim. *Gasoline Products*, 283 U.S. at 499. The Supreme Court reasoned liability and damages for the counterclaim were interwoven. *Id.* at 599–500. And the second jury would be missing too many material facts to make the damages determination—facts that could not be gleaned from the first verdict awarding damages. *Id.* at 500. The Court thus ordered "a new trial of all the issues raised by the counterclaim." *Id.* at 501. Accordingly, "[w]here the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Id.* at 500; *see also Wharf v. Burlington N. R. Co.*, 60 F.3d 631, 638 (9th Cir. 1995) ("In general, the court has discretion to reopen liability if a new trial on damages alone would work injustice.").

*Gasoline Products* places guard rails on retrials but settles that the scope of a retrial may be limited. *Wright & Miller*, 11 Fed. Prac. & Proc. Civ. § 2814 (3d ed. 2022). Although the issues of damages and liability were interwoven in *Gasoline Products*, "[p]erhaps the most common example" of a limited retrial is a "new trial limited to damages when liability has been properly determined." *Id.* (collecting cases). After all, there are ample examples in the Ninth Circuit of retrials being limited to determining damages—including to trying only punitive damages. *See generally*, *California v. Altus Fin. S.A.*, 540 F.3d 992, 1011 (9th Cir. 2008) (remanding for a "new damages phase trial"); *White v. Ford Motor Co.*, 500 F.3d 963, 977 (9th Cir. 2007) (ordering "a new trial on punitive damages"); *White v. Ford Motor Co.*, 312 F.3d 998, 1020 (9th Cir. 2002) (same); *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 865 (9th Cir. 2002) ("We therefore remand for a retrial on the issue of punitive damages."); *Wharf*, 60 F.3d at 638 ("We remand for a new trial on damages only."); *Digidyne Corp. v. Data Gen. Corp.*, 734 F.2d 1336, 1347 (9th Cir. 1984) (applying *Gasoline Products* to reject the defendant's argument that that it is entitled to a new trial both on liability and damages upon remand); *Auto. Prod. v. Tilton Eng'g, Inc.*, No. CV 90-5500 KN (EX), 1993 WL 661138, at *1 (C.D. Cal. Nov. 18, 1993) (rejecting Seventh Amendment argument that "the same jury must try both the liability and punitive damages").

Here, the jury reached a unanimous verdict on liability and compensatory damages in phase one. The Court will not retry those issues. Moreover, the Court is persuaded that Erhart's punitive damages claim is distinct and separable from liability and compensatory damages. *See Brewer v. Second Baptist Church of L.A.*, 32 Cal. 2d 791, 801 (1948) ("The issue of exemplary damages is separate and distinct from that of actual damages, for they are assessed to punish the defendant and not to compensate for any loss suffered by the plaintiff."). Nor will trying the punitive damages issue alone cause injustice. *See Gasoline Prod.*, 283 U.S. at 500.

The Court is therefore unconvinced by the Bank's argument that all Erhart's claims must be retried. The Bank contends Erhart's state retaliation and defamation claims include an "intent" element that "is part and parcel of the 'malice'" determination for punitive damages, making the liability and punitive damages issues inseparable. (BofI's Br. 14:1–15:21.) Consequently, the Bank argues the second jury will be "handcuffed in its determinations concerning BofI's intent" when determining punitive damages. (*Id.* 14:25–26.)

This argument discounts the importance of the specific findings required for punitive damages under California law. Not only must there be proof of oppression, fraud, or malice by clear and convincing evidence, but also "the punishable acts which fall into these categories are strictly defined. Each involves 'intentional,' 'willful,' or 'conscious' wrongdoing of a 'despicable' or 'injur[ious]' nature." *Coll. Hosp. Inc. v. Superior Ct.*, 8 Cal. 4th 704, 721 (1994) (alteration in original) (quoting Cal. Civ. Code § 3294); *see also* Cal. Civ. Code § 3294(c) (defining malice and oppression). Although the jury found Erhart's protected activity was a "substantial motivating reason" or "contributing factor" in the Bank's decision to discharge him, this determination does not mean a second jury must find the Bank's conduct was malicious or oppressive. Nor does the jury's finding on Erhart's defamation claim hamstring the second jury's punitive damages determination. *See King v. U.S. Bank Nat'l Ass'n*, 53 Cal. App. 5th 675, 712 (2020) (reviewing whether there was substantial evidence to support jury's finding that defamatory statements were made with actual malice and the conduct was despicable); *see also George F. Hillenbrand, Inc. v. Ins. Co. of N. Am.*, 104 Cal. App. 4th 784, 819 (2002) ("[T]he jury is the barometer of despicability.").

Moreover, if there is any doubt, California law makes clear that the decision to grant or withhold punitive damages "is wholly within the control of the jury." *Sumpter v. Matteson*, 158 Cal. App. 4th 928, 936 (2008) (quoting *Brewer*, 32 Cal. 2d at 801). Even where there is "the clearest proof of malice in fact, it is still the

exclusive province of the jury to say whether or not punitive damages shall be awarded." *Id.*; *see also Brewer*, 32 Cal. 2d at 801 ("A plaintiff is entitled to such damages only after the jury, in the exercise of its untrammeled discretion, has made the award."). Consequently, the Court is unpersuaded by all of BofI's arguments that only trying punitive damages will cause injustice.

That said, whether the Court should ask the second jury to determine only the amount of punitive damages—and not also the existence of malice, oppression, or fraud—is a closer call. Erhart argues the retrial should be restricted to the amount of damages. (Erhart's Br. 5:1–10:10.) Other courts have done so. *See White*, 500 F.3d at 971; *see also Bullock v. Philip Morris USA, Inc.*, 159 Cal. App. 4th 655, 700–01 (2008) (applying a comparable retrial standard and concluding that where the malice, oppression, or fraud finding was determined without prejudicial error in the first trial, the new trial should "be limited to determining the amount of punitive damages").

Ultimately, the Court finds the retrial should include the malice or oppression issue. As indicated above, the verdict form lacked precision on this point. The jury awarded Erhart compensatory damages on all the claims for which punitive damages are available. However, the Court placed the question concerning malice, oppression, or fraud underneath a "Damages for Defamation" heading on the verdict form:

> **Damages for Defamation**
>
> (12) If you answered "Yes" to question (9) and "No" to questions (10) and (11), what is the total amount of damages Mr. Erhart suffered as a result of this defamation? $500,000.00 (Must be at least $1.00)
>
> (13) If you awarded damages above, did Mr. Erhart prove by clear and convincing evidence that BofI acted with malice, oppression or fraud? Yes (Yes/No)

(Verdict 5:22–6:3.)  Arguably, the verdict form suggests the jury found only the Bank's defamatory conduct was malicious, oppressive, or fraudulent. (*See id.*)  And the Court's instructions did not clarify that the jury was to assess whether the Bank's conduct met this standard for any of Erhart's state law claims, but not his federal claim.  (*See* Final Jury Instructions, Instruction No. 27 ("If you award any damages to Mr. Erhart, you must then determine . . . malice, oppression, or fraud.").)  Hence, even though a retrial may be limited to the amount of punitive damages, the Court finds the circumstances here warrant including the malice or oppression issue in the scope of the retrial.  In other words, the Court cannot say that a trial of only the amount of punitive damages "may be had without injustice."  *See Gasoline Prod.*, 283 U.S. at 500.

### III.  Conclusion

In light of the foregoing, the Court orders that the scope of the retrial will be: (1) whether BofI Federal Bank engaged in malice, oppression, or fraud; and (2) if so, the amount of punitive damages.

**IT IS SO ORDERED.**

**DATED: August 8, 2022**

Hon. Cynthia Bashant
United States District Judge