SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
POLLY TOWILL, Cal. Bar No. 120420
ptowill@sheppardmullin.com
MARTIN D. KATZ, Cal. Bar No. 110681
mkatz@sheppardmullin.com
HEATHER PLOCKY, Cal. Bar No. 279022
hplocky@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

Attorneys for Plaintiff and Defendant
BofI FEDERAL BANK

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MATTHEW ERHART, an individual,<br><br>   Plaintiff,<br><br>v.<br><br>BofI HOLDING, INC., an entity d/b/a BOFI FEDERAL BANK and BANK OF THE INTERNET,<br><br>   Defendant. | Case No. 15-cv-2287-BAS-NLS<br>*consolidated with*<br>15-cv-2353-BAS-NLS<br><br>**DECLARATION OF ANDRÉ E. JARDINI IN SUPPORT OF BofI FEDERAL BANK'S OPPOSITION TO PLAINTIFF CHARLES ERHART'S MOTION FOR ATTORNEYS' FEES AND PREJUDGMENT INTEREST** |
| BofI FEDERAL BANK, a federal savings bank<br><br>   Plaintiff,<br><br>v.<br><br>CHARLES MATTHEW ERHART, an individual,<br><br>   Defendant. | [*Opposition; Declaration of Heather Plocky; and Request For Judicial Notice filed concurrently*]<br><br>Hon. Cynthia Bashant<br>Schwartz Courthouse, Courtroom 4B<br><br>Magistrate Judge Nita L. Stormes<br>12th Floor (Carter/Keep), Suite 1210<br><br>Hearing Date: November 21, 2022<br><br>Action Filed: October 13, 2015<br>Trial Dates: April 26, 2022; August 23, 2022 |

Case No. 3:15-cv-2287-BAS-NLS

*DECLARATION OF ANDRÉ E. JARDINI IN OPPOSITION TO MOTION FOR AWARD OF REASONABLE ATTORNEY FEES*

DECLARATION OF ANDRÉ E. JARDINI
IN OPPOSITION TO MOTION FOR AWARD
OF REASONABLE ATTORNEY FEES

I, André E. Jardini, declare as follows:

1.     I am an attorney licensed to practice law in the State of California and a member of the firm Knapp, Petersen & Clarke.  I have been asked to present opinion testimony by way of declaration regarding my analysis of the reasonableness of attorneys' fees incurred by the Gillam Law Firm (hereinafter "Gillam Firm") in their representation of plaintiff Charles Erhart (hereinafter "Erhart") in the matter entitled *Charles Matthew Erhart v BofI Holding INC.* case number 15-cv-2287-BAS-NLS, United States District Court Southern District of California.  Erhart is seeking attorney fees as prevailing party pursuant to 18 USC section 1514A, the Sarbanes-Oxley Act, and California Code of Civil Procedure Section 1021.5.  Gillam Firm is also seeking a multiplier of 2.0 to 3.0 times the stated lodestar amount of fees.

2.     Except where noted, the following facts are within my personal knowledge and if called as a witness, I could and would competently testify thereto.

**QUALIFICATIONS**

3.     I have practiced law, principally as a litigation attorney, in California, for 45 years.  I have a Bachelor of Arts Degree from the University of Notre Dame, granted in 1973.  I graduated from Hastings College of the Law in 1976.  I was admitted to the Bar of the State of California in December of that year.  I have also been admitted to practice before the United States District Court for the Central District of California, as well as in the Southern District, Northern District and Eastern District.  I am admitted to practice and have often appeared before the Ninth Circuit Court of Appeals.

4.     I served as a law clerk to the Honorable Robert Firth of the United States District Court, Central District of California, in 1977 and 1978.

5.     From time to time, I serve as an arbitrator in the Los Angeles County Bar Association Dispute Resolutions Services Program, which concerns attorney-client disputes over legal billings.

-1-

6.      I have participated, both as counsel and as an expert witness, in arbitrations and hearings in various courts of general jurisdiction concerning attorney fee disputes.

7.      I am a director and President of our firm.  I have been employed at Knapp, Petersen & Clarke since its inception as a law firm in 1981.  My practice consists predominantly of trial work.  I have tried 55 jury trials to conclusion during my tenure with the firm.  I am a member of the American Board of Trial Advocates, having achieved "Advocate" status with ABOTA based on the completion of more than 50 jury trials. (Attached hereto as **Exhibit 1** is a listing of some of my trial experience.)  These trials cover a wide variety of subject areas, including employment, discrimination and harassment, employment retaliation, real property litigation, business litigation, contract disputes, environmental litigation, insurance coverage, business torts, and other areas.

8.      For the past 20 years my litigation practice has focused primarily on plaintiff-side employment litigation.  I have litigated numerous age, gender, race, disability and national origin discrimination cases and related retaliation claims.  I have taken to trial cases involving wrongful termination.  I have also litigated dozens of class action matters including wage and hour, discrimination, and other claims.  I am aware of the time and effort required to litigate such matters.

9.      I have considerable experience in class action employment litigation and have litigated to conclusion at least 75 such cases.  The cases include a $30M settlement in the *Foster v. FedEx* litigation in Los Angeles Superior Court and many such successful resolutions.

10.     Over more than 30 years I have personally audited attorney fee submissions, as well as given testimony, in numerous matters involving employment litigation.

11.     Since 1985, I have been retained by clients, and actively engaged, in the auditing of legal billings and consulting with companies to control legal expenditures.  As a consultant or expert witness, I have personally audited the billings of a large proportion of the major law firms in California, as well as billings of numerous out-of-state firms.  To

-2-

date, I have performed more than 1950 such audits, with billing reviewed in excess of $2.5 billion.

12.    I have tried and arbitrated numerous cases in which the predominant issue involved is the reasonableness of attorneys' fees and costs.

13.    Based on my significant experience relating to legal audit matters and our firm's belief that there was a need for such a service in the legal community, in October of 1991, Knapp, Petersen & Clarke established KPC Legal Audit Services, Inc. I am the founder and the President of that company.

14.    KPC Legal Audit Services, Inc. is a dba of Knapp, Petersen & Clarke. The company specializes in the review and audit of legal billings and consulting and education on legal cost containment.

15.    KPC Legal Audit has reviewed billing relating to a wide variety of different types of litigation including many wrongful termination and other employment and discrimination cases, real estate matters, commercial law matters, transactional matters, public interest cases, environmental litigation, bankruptcy, and other matters. I have often reviewed fee petitions in cases involving fee-shifting principles.

16.    I have testified as an expert witness, through declaration or live testimony, in more than 350 cases regarding reasonableness of legal fees, both on behalf of the proponent of such fees and the opposing party.

17.    I am often consulted and opine about reasonable attorney rates in particular locations throughout California, and in other states. I have consulted numerous sources concerning applicable reasonable rates, including such sources as the Wolters Kluwer Real Rate Report and the USAO Index. I have been engaged in a great number of audits in California and have kept records as to rates charged by attorney, years of experience, location and type of case. That database has more than 4,500 entries for California attorneys. The applicable rates in San Diego using these variables are reflected in this data. I have reviewed this information in connection with my opinions herein.

-3-

18.    A copy of my curriculum vitae regarding expertise on attorney fee analysis is attached as **Exhibit 2**.

**STANDARD OF REVIEW**

19.    I am guided by DR 2-106 of the ABA Code of Professional Responsibility. That section discusses factors to be considered in determining the reasonableness of attorneys' fees.  The Code provides:

a.    A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

b.    A fee is clearly excessive when, after review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.

20.    I am also guided by Rule 1.5 of the State Bar of California Rules of Professional Conduct which states, in part:

a.    A lawyer shall not enter into an agreement for, charge, or collect an illegal or unconscionable fee.

b.    Unconscionability of a fee shall be determined on the basis of all the facts and circumstances existing at the time the agreement is entered into except where the parties contemplate that the fee will be affected by later events.  The factors to be considered, in determining the conscionability of a fee include without limitation the following:

(1) The amount of the fee in proportion to the value of the services performed.

(2) The relative sophistication of the member and the client.

(3) The novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly.

(4) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the member.

-4-

(5)  The amount involved and the results obtained.

(6)  The time limitations imposed by the client or by the circumstances.

(7)  The nature and length of the professional relationship with the client.

(8)  The experience, reputation, and ability of the member or members performing the services.

(9)  Whether the fee is fixed or contingent.

(10) The time and labor required.

(11) The informed consent of the client to the fee.

21.   These criteria are stated in similar form as the applicable standard in the 9th Circuit, referred to as the *Kerr* factors (*Kerr v. Screen Actors Guild, Inc.* 526 F.2d 67, 69-70 (9th Cir. 1975)).

22.   These standards are regularly applied by California courts to determine the reasonableness of attorneys' fees.

23.   The United States Supreme Court opinion in *Hensley v. Eckerhart*, 461 U.S. 424 [103 S.Ct. 1933] (1983) is instructive.  The court, in discussing an award of attorneys' fees to a prevailing party, enumerated the factors which should be considered in making such an award.  The starting point in analysis is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  (*Id.* at 433.) The court stated hours that were not reasonably expended should be excluded from the calculation, stating:

> Cases may be overstaffed and the skill and experience of lawyers vary widely.  Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fees submission.

(*Id.* at 434.)

24.   In the course of my audit work, I have utilized a number of sources to support my conclusions, including case law on the topic of reasonable attorneys' fees, as well as the State Bar of California Advisory 2016-02 entitled "Analysis of Potential Bill Padding and Other Billing Issues," and other such advisories.

-5-

*DECLARATION OF ANDRÉ E. JARDINI IN OPPOSITION TO MOTION FOR AWARD OF REASONABLE ATTORNEY FEES*
5693580.1  90035/00000

25.     The standard of reasonableness which will be applied to this matter is based on these principles, on my experience in litigation, and my experience in the legal audit practice.  I have analyzed the amount sought in fees using my experience and the above standards.

**SUBJECT ACTION**

26.     This matter involves claims brought by Erhart against BofI Federal Bank ("BofI") alleging violations of the Sarbanes-Oxley Act ("SOX") 18 U.S.C. § 1514A, as well as violations of California Labor Code section 1102.5 and other state claims such as, wrongful termination in violation of public policy and defamation.

27.     Erhart was hired by BofI as an internal auditor in September of 2013. In the course of his work, he alleges that he identified various financial irregularities within the company, and therefore at some point contacted the OCC.  Erhart sought protection as a whistleblower and provided information to that agency that he uncovered through his employment.

28.     Erhart was terminated in June of 2015.  He filed his lawsuit in October 2015, alleging, among other things, whistleblower retaliation under SOX.  Plaintiff filed his second amended complaint on May 3, 2019, which included the above-stated claims.

29.     The matter proceeded through discovery including depositions and cross-motions for summary judgment.  Ultimately the parties participated in a jury trial in April and May of 2022 and August of 2022.  Plaintiff was awarded $1,000,000 for emotional distress damages under SOX, Section 1102.5 and wrongful termination and $500,000 on his claim for defamation.  No injunctive relief or relief of any other kind was awarded by the jury.

**BACKGROUND INFORMATION REGARDING BILLING**

30.     Attached as **Exhibit 3** are schedules which were prepared directly from the documentation attached to the attorney fee motion.  They include:

- Total Fees Billed
- Index of Billing Personnel

-6-

31. In order to develop the opinions contained in this declaration, I have completed a review and analysis of billing information submitted with the motion for attorneys' fees, which includes declarations of 2involved attorneys, declarations with opinions of a number of attorneys who appear to be colleagues or contacts of attorney Gillam, and a one-page declaration from plaintiff Erhart.

32. I have reviewed the applicable court dockets so as to become familiar with the proceedings in this matter. I have reviewed plaintiff's second amended complaint dated May 3, 2019, and the completed jury verdict form dated May 18, 2022. I have also reviewed the Court's ruling on cross motions for judgment on the pleadings dated April 30, 2019.

**OVERVIEW CONSIDERATIONS**

33. Plaintiff seeks attorneys' fees in the lodestar amount of $3,046,385. In addition, plaintiff seeks a multiplier of 2.0 to 3.0 times the claimed lodestar amount for the Gillam and Heum hours to be applied, bringing the total fees sought to as much as $9.0M. Plaintiff also seeks prejudgment interest of $1,187,472.62 as well as recovery of certain costs.

34. The jury verdict was $1,000,000 for non-economic damages collectively for the SOX claim, the Labor Code Section 1102.5 claim and the wrongful termination claim, and $500,000 for non-economic damages for defamation.

35. Erhart is seeking all of his fees, with no allocation applied. The jury verdict included an award for violation of SOX. It also included an award for defamation; however, there is no applicable fee shifting provision available for defamation.

36. Gillam claims that the firm spent a total of 4,470.4 hours on the case during the course of approximately seven years.

37. Any award should be based on reasonable hours related to a claim for which fees are permitted times reasonable market rates in San Diego; this is the lodestar amount. However, the rates claimed by Gillam are excessive for an employment action, in this venue.

-7-

**STAFFING AND RATE**

38.     Gillam Firm utilized the services of three attorneys and an unknown number of others, identified as paralegals.  I have described this on the **Index of Billing Personnel**.  These include Gillam (a partner) and two associate attorneys, Sara Heum and Kamran-Khajavi-Nouri.  Heum was not admitted to the bar until 2012 and therefore had only three years of experience when this matter commenced.

39.     The rates for attorneys sought by Erhart are $995 for Gillam, $695 for associate attorney Khajavi-Nouri, $625 for associate attorney Heum, and $195 for unidentified law clerks/paralegals.  The calculated overall average hourly rate for all billing personnel at Gilliam based on their fee motion therefore is $681.46 per hour, a very high average rate, given the venue, the years in which the matter was litigated and the level of experience of the associates.

40.     It is understood that this matter was taken on a contingency basis.  The rates were not negotiated, but rather were proposed by Gillam in connection with the fee motion.  In other words, there was no marketplace check and balance on the reasonableness of the proposed rates, such as an arms-length negotiated rate and proof of payment.

41.     I am familiar with rates in San Diego, California.  I have performed a great number of attorney fee audits in San Diego County in the past 10 years.  It is well-accepted that firms practicing in San Diego do not command the same hourly rates as firms in Los Angeles or San Francisco.  I have included as **Exhibit 4** a chart that KPC Legal Audit has prepared based on those audits, which include employment matters, as well as business litigation and other matters.  In addition to my own personal knowledge of rates in the San Diego area I have also relied on several other qualified sources.  One is the study of the Wolters Kluwer Real Rate Report, a service that tracks legal data including billing rates throughout the country searching for attorneys with similar experience handling employment matters in San Diego, even assuming that this matter commanded third quartile rates (the highest rates reported in the study), the partner rates would be $553, and associate rates would be $380.  First quartile or median rates are significantly lower.

-8-

42.     Another similar report is the USAO adjusted Laffey Matrix which reflects information gathered from a survey of practitioners. This survey is frequently cited in courts throughout the country as a reliable indicator of law firm rates. It is adjusted based on the General Accounting Office locality pay area to reflect rates in the community. In the San Diego-Carlsbad area, the adjusted rate for Gillam in 2022 is $660.28. The adjusted rate for Heum is $448.79, and the adjusted rate for Khajavi-Nouri is $586.80.

43.     There are many qualified firms in San Diego. This includes firms well qualified in banking and employment law. For example, one such firm is the Procopio firm with more than 200 attorneys and expertise in employment litigation and banking and finance matters.

44.     Based on my review of the declarations submitted with the motion for fees, it does not appear that plaintiff made any real effort to obtain counsel in San Diego.

45.     The Erhart declaration in one brief paragraph (Paragraph 3) states only that he does not know any San Diego attorneys and did some unspecified internet research. This minimal investigation led to the conclusion that "[he] could not find any attorney that seemed to offer the expertise [he] needed." He simply took the recommendation of a New York acquaintance as to which attorney to hire.

46.     In my experience, there are numerous San Diego attorneys fully qualified and able to litigate retaliatory termination of employment claim. This is the case also as to such claims to be handled on a contingency basis. The San Diego bar has numerous plaintiff employment rights counsel who work on a contingency issue.

47.     In my opinion, therefore, and based on rate information available to me, including the Real Rate Report and the USAO Index, and my own personal knowledge of attorney rates in San Diego, there is sufficient evidence to conclude that the adjusted rates should be between the third quartile Real Rate Report rate of $553 and the USAO adjusted Laffey Matrix rate of $660.28 for Gillam and between the third quartile Real Rate Report rate of $380 and the USAO adjusted Laffey Matrix rate of $448.79 for Heum. For Khajavi-Nouri, there is insufficient evidence to make a full assessment of his reasonable hourly-rate,

-9-

but if his time is recoverable, it should be lower than the USAO adjusted Laffey Matrix rate of $586.80.

48.    The declarations in support of this motion do not identify San Diego rates in any regard.

- The Harrison declaration speaks of "Southern California" rates, identifying such rates as ranging from $450 to more than $1000 an hour. But these are Los Angeles rates. The "Southern California" area might include Los Angeles, Orange County, the Inland Empire and San Diego. Prevailing market rates are different in each area. San Diego rates are significantly less then downtown Los Angeles or Century City rates.

- The Collier declaration claims familiarity with Los Angeles and San Francisco rates. (at Paragraph 11). San Diego rates are not specified. The declaration attempts to use adjusted Laffey rates but incorrectly uses the Los Angeles adjustment.

- The Alexander declaration describes fee awards to himself of $850, $815, $750 and $675 an hour in cases venued in Los Angeles. No San Diego rates are discussed.

- The Pine declaration states his own rate of $1000 an hour for appellate work for his Los Angeles firm. No San Diego rates for federal or state trial court services are discussed.

- The declaration of Gillam as to her own fees asserts past rates from previous awards in the amounts of $750, $800, and $850 an hour without specifying the location of the case or the subject matter involved. She provides no information concerning rates charged by her in San Diego.

## ONLY REASONABLE FEES SHOULD BE ASSESSED UNDER THE LODESTAR METHOD

49.    The fee motion agrees that the lodestar method is the appropriate approach to determining the amount of fees which might be awarded in this case. That is, the

-10-

reasonable hours spent should be multiplied against reasonable rates to determine the appropriate amount of fees to be awarded.

50.    The motion recognizes that the applicable rate should be "the prevailing market rates in <u>the relevant community.</u>  Motion, citing *Bell v. Clackamas County*, 341 F.3d, 858, 868 (9th Cir. 2003).  The motion also admits that "rates of comparable attorneys in the forum district are usually used," Motion, citing *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).  Despite the clear dictate that local rates for this forum, San Diego, be used, the motion provides no information or evidence whatsoever as to the appropriate rates in San Diego. I have suggested such rates.

51.    The motion claims to have conferred a significant public benefit based on opinions of this court having been cited in other cases.  However, the only relief achieved in the case was individual.  An award of damages for wrongful termination and an award of damages for defamation are the only relief that was granted.  No injunctive relief was granted.

52.    It is helpful to understand that in class action cases, resulting in a common fund, cases in which the public benefit is plain, the 9th Circuit has set a "benchmark" for recovery of attorneys' fees of 25%. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). If this were a class action, which actually provided a public benefit rather than a simply individual relief, the benchmark of 25% against the $1,000,000 recovered for wrongful termination as to which fees might be assessed, the amount of fees would be $250,000.

53.    This case involved termination of the plaintiff's employment based on protected conduct reporting various alleged corporate wrongs.  The employment issue will have resulted in a contingent fee to counsel, if ordinary contingent fee amounts were agreed, of 33% to 40%.

54.    Here, plaintiff is seeking a lodestar amount which is already 3.0 times the amount recovered for SOX and wrongful termination ($3,046,385 v. $1,000,000.)  If a 3.0 times multiplier was applied to the claimed lodestar amount, the recovery would be approximately **9.0 times** the amount recovered.

-11-

55.    If the intent of a fee award is to motivate counsel to accept cases such as this, I submit, based on my experience, that attorneys would be interested in this matter for the potential of a much lower fee award than that claimed here.

56.    The *Kerr* factors and the California Rule of Professional Conduct Rule 1.5 factors each describe the criteria as to "the results obtained." In my view, the claimed lodestar fees are considerably out of scale with the $1,000,000 result obtained.

## NO MULTIPLER IS WARRANTED

57.    The motion seeks an enhancement to the lodestar amount claimed. In so contending, the motion cites the *Kerr* factors, described above. The motion recognizes that the *Kerr* factors may be used to multiply fees or may be used for a downward adjustment concerning the fees. It is my opinion that in this case, a downward adjustment concerning the lodestar amount is warranted.

58.    Plaintiff is seeking a 2.0 to 3.0 times enhancement to be applied to Gillam and Heum hours, which represent 82% of the total time. It has long been held that "the calculation of an attorney's fee based on the lodestar may be increased due to superior performance, but only in extraordinary circumstances," *Kenny v. Perdue*, 559 U.S. 542 (2010). Multipliers may be used in cases of extreme difficulty and novelty where the issues determined were highly significant (see *Serrano v. Priest*, 20 Cal.3d. 25 (1977)).

59.    Attorney fee awards under the Private Attorney General doctrine were discussed in the matter of *Flannery v. California Highway Patrol*, 61 Cal.App.4th 629 (1998) wherein the court stated that:

> "The Code of Civil Procedure Section 1021.5 is the recognition that privately initiated lawsuits often are essential to effectuate the fundamental public policies embodied in constitutional or statutory provisions, and that without some mechanism authorizing an attorney fee award, such private actions often will as a practical matter be infeasible."

60.    The court further went on to state that such an award should be made "only when the lawsuit has conferred a significant benefit on the general public, or a large class of persons."

-12-

61.     The recovery in this case is entirely personal to plaintiff Erhart.  No public benefit was achieved at trial.

62.     The court in *Flannery* went on to discuss the addition of a multiplier to an award under section 1021.5 and stated that "some of the factors upon which it relied to calculate the reasonable hourly rate component of the lodestar were duplicative of the factors that it cited to justify enhancing the lodestar."  The *Flannery* court found that "as the prevailing party, plaintiff was entitled only to 'reasonable attorney fees' (Gov. Code Section 12965, subd. (b)), not reasonable fees plus a windfall."  The *Flannery* court found that the award of a multiplier would be "double counting, which can only result in an unreasonable fee."

63.     Courts can determine that an enhancement "may be reduced or eliminated if a lodestar rate is based on the present hourly rate rather than a lesser rate applicable when services were rendered. *Graham v. Daimler Chrysler Corporation*, 34 Cal. 4th 553 (2005), and *Lumen View Technology LLC v. Findthebes.com, Inc.* 811 F.3d 470 (Fed Cir. 2016).  In this case Gillam is seeking an hourly rate applicable to services from as far back as seven years, the present rate for services, not a historical rate.  The claimed rates are high in San Diego, especially given the contribution of inexperienced associate attorneys. It would be duplicative to compensate counsel at current market rates, and then apply a multiplier.

64.     There are several factors which may result in the use of a multiplier including the importance or significance of the case or public benefit of the case.  This matter involves one employee in a private banking institution and does not affect the general public.  Another factor would be the contingent nature of a fee award.  However, the fact the case is contingent in nature does not by itself validate any multiplier.  This is especially true when all hours are charged at higher current rates.

65.     In my opinion, plaintiff's counsel should not be awarded additional fees simply because the case was contingent and carried risk.  Gillam has stated that the great majority of her cases are contingent in nature; that does not mean that for each success, plaintiff's counsel is entitled to amplify her fees. *Weeks v. Baker & McKenzie*, 63 Cal.App.

-13-

4th 1128, 1176 (1998).  The *Weeks* case is instructive.  In *Weeks*, plaintiff prevailed on her FEHA sex harassment claim and recovered nearly $4M in compensatory and punitive damages.  *Id.* at 1137.  The trial court applied a 1.7 multiplier and awarded over $1.8M in fees.  *Id.*  The court of appeal reversed the fee award and held the multiplier was improper.  *Id.* at 1176.  The trial court in *Weeks* had applied a multiplier in part because of the contingent nature of the litigation.  *Id.* at 1174.  In reversing, however, the court of appeal made clear that the ordinary risk of contingency litigation was insufficient to justify an enhancement.  "The contingent nature of the litigation…was the risk that Weeks would not prevail.  Such a risk is inherent in any contingency fee case and is managed by the decision of the attorney to take the case and the steps taken in pursuing it."  *Id.* at 1175.

66.    Another factor to consider as to a positive or negative multiplier is the claimed complexity of a matter, or cases involving difficult or novel issues of great social importance.  That factor does not exist for a retaliatory termination claim in whistleblower case.  The requirements of SOX are well established, as are the parameters of the other causes of action.  The facts alleged were described fully by Erhart from the beginning in his complaint and amended complaint.

67.    Still another factor is the protracted nature of a case where counsel was perhaps precluded from performing other work based on the level of activity.  Although Gillam states in the motion for attorney fees that this was a factor, in her declaration at page 11 she clearly states that "less than 500 hours per year of attorney time" was expended in this matter.  The total hours billed in the almost 90 months that the matter was pending, 4,470 hours, were spread over numerous timekeepers, which means that with the exception of a few months including trial, timekeepers worked only a few hours a month, and in many months, there was no billing at all.  There is no significant showing that other work was precluded by handling this case.  Nor would the number of hours over that seven-year period support such a conclusion.

68.    Plaintiff claims a public benefit occurred in this matter.  However, only personal relief in the form of damages was recovered.  Therefore, a fee enhancement is not

-14-

supported by any such public benefit as stated by the court in *Weeks*, *supra*, a plaintiff in pursuit of her own economic damages does not confer a public benefit. *Id.* at 1174. Here, plaintiff did not seek injunctive relief. Plaintiff sued solely for money damages. See *Leonard v. Argento*, 808 F.2d 1242, 1248 (7th Cir. 1987) ("It will not do to romanticize civil rights litigation unduly. While some of it is marginal financially, some of it is adequately remunerative, and it is not part of civil rights law to overcompensate successful plaintiffs. Where the market and legal services can work, it should be allowed to work.") Similarly, in *Flannery v. California Highway Patrol*, 61 Cal.App. 4th 629 (1998), a 2.0 multiplier was struck down on appeal. The appellate court reversed the multiplier because "the primary effect of plaintiff's litigation was the vindication of her own personal rights." *Id.* at 637. There is no clear indication in this matter that any public benefit was achieved such as would support the multiplier claimed.

69. In short, <u>none</u> of the factors supporting multipliers is applicable in the within action. The standards of review under Rule 1.5 and *Kerr* which apply to the determination of a lodestar are used to determine an appropriate hourly rate. Those factors are already in place here. The addition of a multiplier would result in a windfall to Gillam Firm.

70. I have had a wide range of experience in matters of fee shifting and payment of fees based on the lodestar method. I have also had a great deal of experience with fee petitions and requests for multipliers. Taking into consideration the factors concerning the lodestar calculation, reasonableness of fees and multipliers, I do not believe a fee enhancement is appropriate in this action. In my view, for the reasons stated, a downward adjustment is warranted of at least 20%.

Executed on this 7th, of November 2022, at Glendale, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
André E. Jardini

-15-