SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
POLLY TOWILL, Cal. Bar No. 120420
ptowill@sheppardmullin.com
MARTIN D. KATZ, Cal. Bar No. 110681
mkatz@sheppardmullin.com
HEATHER PLOCKY, Cal. Bar No. 279022
hplocky@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398

Attorneys for Plaintiff and Defendant
BofI FEDERAL BANK

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHARLES MATTHEW ERHART, an individual,

Plaintiff,

v.

BofI HOLDING, INC., an entity d/b/a BOFI FEDERAL BANK and BANK OF THE INTERNET,

Defendant.

---

BofI FEDERAL BANK, a federal savings bank,

Plaintiff,

v.

CHARLES MATTHEW ERHART, an individual,

Defendant.

Case No. 15-cv-2287-BAS-NLS
*consolidated with*
15-cv-2353-BAS-NLS

**REPLY IN SUPPORT OF BofI FEDERAL BANK'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**

Hon. Cynthia Bashant
Schwartz Courthouse, Courtroom 4B

Magistrate Judge Nita L. Stormes
12th Floor (Carter/Keep), Suite 1210

Action Filed: October 13, 2015

Trial Dates: April 26, 2022; August 23, 2022

**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. THE STATE RETALIATION CLAIMS CANNOT SURVIVE AND THE SOX CLAIM FAILS IF BASED ON THE JUNE 9 DISCHARGE .......... 2

A. There Was No Evidence That Erhart Was Discharged On June 9, 2015 For Reporting Any Alleged Wrongdoing .......... 2

B. BofI Had Legitimate, Independent Grounds For The June 9 Discharge .......... 2

III. ERHART'S SOX CLAIM FAILS TO THE EXTENT IT IS BASED ON THE MARCH 6 DECISION .......... 3

A. No Reasonable Jury Could Find That Erhart Reasonably Believed That BofI Violated An Applicable Law or Regulation .......... 3

1. Deposit Concentration Risk .......... 3

2. Loans to PEPs and Criminals .......... 4

B. The March 6 Decision Cannot Support The Sox Claim .......... 6

C. BofI Had Legitimate, Independent Reasons For The March 6 Decision .......... 7

IV. THE DAMAGES AWARD ON THE SOX AND STATE RETALIATION CLAIMS CANNOT STAND .......... 7

A. There Was Insufficient Evidence Of Emotional Distress Or Reputational Harm Resulting From A Compensable Act .......... 7

B. At The Very Least, A New Trial Is Required Because The Award Was Grossly Excessive .......... 8

V. THE DEFAMATION VERDICT CANNOT STAND .......... 9

A. There Was No Evidence Of An Actionable, Defamatory Statement .......... 9

B. There Was No Evidence Of Emotional Distress Or Reputational Harm From the Statements The Jury Found Were Defamatory .......... 10

VI. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allen v. Administrative Review Board*
514 F.3d 468 (5th Cir. 2008) ........ 6

*Antoine v. Brooklyn Maids 26, Inc.*
489 F. Supp. 3d 68 (E.D.N.Y. 2020) ........ 9

*Bahra v. Cty. of San Bernardino*
2022 U.S. Dist. LEXIS 162519 (C.D. Cal. Sep. 7, 2022) ........ 9

*Brondyke v. Bridgepoint Educ., Inc.*
2014 U.S. Dist. LEXIS 58161 (S.D. Iowa Apr. 25, 2014) ........ 4

*Burlington Northern & Santa Fe Railway Co. v. White*
548 U.S. 53 (2006) ........ 6

*Ford v. United States*
2011 U.S. Dist. LEXIS 89462 (N.D. Cal. Aug. 9, 2011) ........ 2

*Lamb v. Rockwell Automation, Inc.*
249 F. Supp. 3d 904 (E.D. Wisc. 2017) ........ 5

*Miller v. Stifel, Nicolaus & Co., Inc.*
812 F. Supp. 2d 975 (D. Minn. 2011) ........ 4

*Musin v. Honeywell Int'l*
2020 U.S. Dist. LEXIS 233194 (D. Nev. Dec. 11, 2020) ........ 8

*Sharkey v. J.P. Morgan Chase & Co.*
2018 U.S. Dist. LEXIS 35538 (S.D.N.Y. Mar. 5, 2018) ........ 8, 9

*Van Asdale v. Int'l Game Tech.*
577 F.3d 989 (9th Cir. 2009) ........ 2

*Wooten v. BNSF Ry. Co.*
387 F. Supp. 3d 1078 (D. Mont. 2019) ........ 9

Federal Statutes

18 U.S.C. § 1514A....4, 5, 6

State Statutes

California Labor Code
§ 2922 ....2
§ 1102.5 ....9

## I.     INTRODUCTION[1]

During trial, Erhart did not identify any event he claimed constituted an unfavorable personnel action.  In his Opposition, Erhart limited those events to:  (1) his June 9, 2015 discharge (the "June 9 Discharge"); and (2) the internal March 6, 2015 termination decision (the "March 6 Decision").

**The June 9 Discharge:**  It is undisputed that the June 9 Discharge is the ***only*** unfavorable personnel action that can support Erhart's State Retaliation Claims.  Erhart acknowledges that he presented no direct evidence that his discharge was for anything other than job abandonment.  Any claim that he was terminated for other reasons is contrary to the weight of the evidence and, in any event, there was clear and convincing evidence – and indeed, uncontroverted proof – that BofI had legitimate, independent reasons to terminate Erhart on June 9, 2015.

**The March 6 Decision:**  Erhart's SOX claim cannot stand based on the March 6 Decision – which was rescinded and not communicated to him – because: (1) no reasonable jury could conclude that Erhart reasonably believed that BofI violated an applicable law or regulation within the ambit of SOX; (2) there was no evidence that the March 6 Decision was retaliatory; and (3) there was clear and convincing evidence that BofI had legitimate, independent reasons to make the March 6 Decision.

Even if Erhart could pass these fatal hurdles, his Opposition fails to connect any portion of the $1,000,000 of emotional distress damages to an act for which BofI can be held liable.  That is because there was no evidence that he suffered emotional distress from either the March 6 Decision or the June 9 Discharge.

Finally, Erhart's defamation claim cannot survive.  The Opposition does not address the irrefutable evidence that BofI's statements were either the truth or opinion. Moreover, there was no evidence to support a $500,000 award for defamation.

---

[1]  Erhart objects "to the extent" the Motion relies on arguments not raised in a Rule 50(a) motion.  The Notice of Motion identifies when and where BofI moved for judgment during trial as to each ground raised in its renewed Motion.  (ECF No. 386).

## II. THE STATE RETALIATION CLAIMS CANNOT SURVIVE AND THE SOX CLAIM FAILS IF BASED ON THE JUNE 9 DISCHARGE

### A. There Was No Evidence That Erhart Was Discharged On June 9, 2015 For Reporting Any Alleged Wrongdoing

The June 9 Discharge is the only event on which Erhart could base his State Retaliation Claims.[2] As noted in the Motion, Erhart presented no direct evidence of a link between his alleged protected activity and his June 9 Discharge. (Mot. at 10:15-24). Instead, Erhart argues that BofI "was aware" of his protected activity by June 9 and, therefore, a jury could have inferred that the termination was retaliatory. (Opp. at 13:23-24). But, that ignores the mountain of uncontroverted evidence that: (1) BofI terminated Erhart's employment because he failed to report to work or call in for ***23 days*** after his FMLA leave expired; and (2) the termination was in line with the policies outlined in employee handbooks, which Erhart received and read. (*See* Mot. at 10:16-11:8). The Opposition simply ignores these irrefutable facts, as did the verdict. Accordingly, the verdict on Erhart's State Retaliation Claims cannot stand, and the SOX claim cannot be premised upon the June 9 Discharge. At a minimum, the verdict is contrary to the great weight of the evidence, warranting a new trial.

### B. BofI Had Legitimate, Independent Grounds For The June 9 Discharge

Erhart does not contest he abandoned his job. Thus, even if the jury could have inferred based solely on BofI's knowledge of Erhart's reporting that job abandonment was not the ***only*** reason for his termination, it was, at the very least, a legitimate, independent reason for it. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009); ECF No. 319, Jury Instr. No. 21. The Opposition simply notes that Lopez,

---

[2] Erhart argues that the "jury was free not to be persuaded" by BofI's argument that the March 6 Decision does not constitute an adverse employment action that could support his State Retaliation Claims. (Opp. at 12:15-17). Not so. The March 6 Decision is not, by definition, a termination. Cal. Lab. Code § 2922 (employee must receive notice of the termination decision in order for it to be effective; *Ford v. United States*, 2011 U.S. Dist. LEXIS 89462, at *20-21 (N.D. Cal. Aug. 9, 2011).

the BofI employee then in charge of medical leave, testified she did not send Erhart a reminder when his leave was about to expire, as she typically did. (Opp. at 14:25-15:2) (*citing* Day 3 Tr. at 715:1-9). Based on this alone, the Opposition then leaps to the conclusion that the jury could have inferred that BofI did not terminate Erhart for any reason other than his reporting. That conclusion is simply not reasonable. Thus, BofI established its complete affirmative defense as to the June 9 Discharge.

## III. <u>ERHART'S SOX CLAIM FAILS TO THE EXTENT IT IS BASED ON THE MARCH 6 DECISION</u>

Erhart concedes that the December 2014 evaluation and "snake" comment were not presented to the jury as independently actionable events. (Opp. at 10:26-27; 11:24-28 n.4). The only other event that could support his SOX claim is the March 6 Decision. However, as outlined in the Motion, Erhart's SOX claim cannot survive.

### A. <u>No Reasonable Jury Could Find That Erhart Reasonably Believed That BofI Violated An Applicable Law or Regulation</u>

#### 1. <u>Deposit Concentration Risk</u>

The Opposition underscores that Erhart did not identify, much less "report," the deposit concentration risk issue; indeed, it was an issue the business unit had already identified. (Opp. at 3:13) (*citing* Vol. 3 Tr. at 834:8-23). Further, no reasonable jury could have found that Erhart's belief of shareholder fraud was ***objectively reasonable*** because Erhart presented no evidence regarding what was or was not actually disclosed in BofI's SEC filings. (Mot. at 7:5-7). Erhart does not dispute this, and points only to Garrabrants' testimony that BofI files Form 10-Qs "disclosing deposit numbers." (Opp. at 5:3-4) (*citing* Vol. 8 Tr. at 2118:1-8). But, there is no claim – much less evidence – suggesting that the reported figures were false or misleading. (Mot. at 7:27-28 n.4). Moreover, no reasonable jury could have found that Erhart had an objectively reasonable belief that BofI made a "***material***" misrepresentation or omission because he did not know the dollar threshold triggering a disclosure obligation. (Mot. at 6:1-15). Erhart counters that his belief regarding materiality could have been reasonable because he thought Ball was going to raise the

issue to the Audit Committee. (Opp. at 4:22-25). Erhart's misunderstanding of Ball's intent does not move the needle in his favor on ***objective*** reasonableness. (*See* ECF No. 386-8 at p. 19) (per Ball, after speaking with Williams, "there wasn't any problem," and even *if* he raised the issues to the Audit Committee, it "would have went in the normal course of business."). As the Court held in granting summary judgment on this predicate for Erhart's ***broader*** State Retaliation Claims, Erhart did not "meet his burden to show he disclosed an objectively reasonable belief of [shareholder fraud]." (ECF No. 192 at 59). And, the record was devoid of evidence that Erhart ***subjectively*** believed, at the time he raised this issue in December 2014 (to Tolla and Williams), that BofI intended to deceive shareholders. Indeed, Erhart's testimony confirms he did not have such a belief prior to the March 6 Decision. (*See* Vol. 3 Tr. at 848:20-849:5) (showing such a belief materialized only after March 6).

2. <u>Loans to PEPs and Criminals</u>

Erhart's Opposition, like his trial testimony, confirms that his belief with respect to loans to PEPs and criminals did not implicate the Internal Controls Rule (*i.e.*, BofI's internal controls ***over financial reporting***). (Opp. at 6:8-17) (identifying, as he did at trial, the Bank Secrecy Act (BSA), Know Your Customer (KYC) rules, and BofI's internal company policy as the rules he believed were violated by BofI's alleged failure to perform proper enhanced due diligence on a handful of customers); *see also id.* at 7:21-23 (reiterating that Erhart thought the identified loans "appeared to violate the Bank's own policies" and "create a risk of fraud/money laundering").[3]

The Court has already noted that BSA violations are not enumerated in 18 U.S.C. § 1514A. (ECF No. 192 at 41). Further, an employee's complaints about perceived violations of internal company policies are not protected activities under SOX. *Miller v. Stifel, Nicolaus & Co., Inc.*, 812 F. Supp. 2d 975, 988 (D. Minn. 2011); *see also Brondyke v. Bridgepoint Educ., Inc.*, 2014 U.S. Dist. LEXIS 58161, at *21

[3] There is no evidence that any supposed "risks" of money laundering, fraud or BSA violations ever materialized. They did not.

(S.D. Iowa Apr. 25, 2014). Erhart nevertheless reasons that, because the BSA rules are in place, in part, to prevent "fraud against the Bank" (Opp. at 6:21-22) and "fraud is among the laws and rules enumerated under SOX" (Opp. at 9:6-7), that a potential BSA/AML violation can consitute a violation "under SOX."[4] (Opp. at 9:8-10). But the only types of fraud within the ambit of SOX are: mail, wire, bank, securities and shareholder fraud. 18 U.S.C. § 1514A(a)(1). And, Erhart's SOX claim in this case could be based only on: (a) a violation of an SEC rule or regulation; or (b) shareholder fraud. (ECF No. 319, Jury Instructions No. 15). Further, the only relevant SEC rule or regulation was the Internal Controls Rule, which concerns only the reliability of internal controls that would have a material effect on ***financial reporting***.[5] At trial, Erhart did not come close to tying his belief to the Internal Controls Rule. Instead, the Opposition simply "fish[es] through the securities law and regulation for provisions [Erhart] may have believed were violated." *Lamb v. Rockwell Automation, Inc.*, 249 F. Supp. 3d 904, 915 (E.D. Wisc. 2017); *see* Opp. at pp. 6 n.2; 8 n.3.

Even if Erhart had made some attempt to tie his beliefs to the Internal Controls Rule, no reasonable jury could find that Erhart reasonably believed that the "10 to 15" suspected "risky" loans that he identified could have had a material effect on BofI's

---

[4] The Opposition vaguely discusses "violations of SOX" or "SOX violations." (*See, e.g.*, Opp. at 8:22-9:17). Erhart repeatedly conflates the requirement that a publicly traded company's CEO and CFO certify the accuracy of the company's financial reports ("SOX certifications") with the specifically enumerated violations outlined in the whistleblower protection provision of the Sarbanes-Oxley Act of 2002 (*i.e.*, the only "SOX violations" that can actually support his SOX whistleblower claim). In any event, there is no evidence that Erhart ever reported a potential violation with respect to BofI's SOX certifications.

[5] As the Court previously reasoned, the Internal Controls Rule does ***not*** "require a system of controls that ensures compliance with all laws and regulations." (ECF No. 192 at 41). Instead, it is limited to policies and procedures regarding the prevention or detection of the unauthorized use or disposition of assets that could have a ***material*** effect on ***financial statements***. (*Id.*) Erhart's argument that when the amount of damages cannot be estimated, "there is still a requirement for the Bank to report deficiencies in internal controls" (Opp. at 7:8-10) is unsupportable.

financial statements, particularly in light of his concession that BofI had "thousands of loans on its books."[6] (Mot. at 9:4-15).

**B. The March 6 Decision Cannot Support The Sox Claim**

The March 6 Decision was not an independently actionable event under SOX. SOX prohibits an employer only from discharging or in any other manner "discriminat[ing] against an employee ***in the terms and conditions of employment***" because of the employee's protected activity. 18 U.S.C. § 1514A (emphasis added). The materially adverse consequence affecting the terms and conditions of employment must be such that it would have dissuaded a reasonable employee from engaging in the alleged "protected activity." *See Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67-68 (2006); *Allen v. Administrative Review Board*, 514 F.3d 468, 476 n.2 (5th Cir. 2008). There was no claim of constructive discharge in this case (Day 11 Tr. at 2983); therefore, the March 6 Decision must have had some other impact on the terms and conditions of Erhart's employment. But it did not. The March 6, 2015 termination letter was rescinded and never delivered or officially communicated to Erhart. Erhart remained an employee for over three months after the March 6 Decision – he received FMLA leave (a benefit available only to employees) ***and his continued employment was confirmed in writing on multiple occasions after March 6, 2015***.[7] (Trial Exs. 1175, 227). Indeed, there is no evidence that Erhart even knew about the March 6 Decision when he requested to go on FMLA leave. The March 6 Decision was not, itself, actionable under SOX.

---

6 Erhart's only argument with respect to materiality is his conclusory remark that "[c]learly, the issues Mr. Erhart identified with respect to deposit concentration and loans to PEPs were material to investors" in light of the 30 percent stock price drop the filing of his complaint caused. (Opp. at 7:10-13). There is no evidence to support such a far-fetched conclusion.

7 Erhart's suggestion that he suffered "two terminations" (Opp. at 11:27, n.4) is simply illogical. If he was terminated on March 6, 2015, then he could not be terminated again on June 9, 2015 (*i.e.*, after all his reporting to the OCC took place) since he would no longer have been a BofI employee subject to termination.

Even if it was, Erhart presented no direct evidence of a link between his alleged protected activity and the March 6 Decision. Erhart again simply insists that because BofI knew about some of the issues he raised by March 6, 2015, the jury's verdict is supportable. That is not enough; but, even if it were, the verdict is against the great weight of the evidence.

### C. BofI Had Legitimate, Independent Reasons For The March 6 Decision

Even if the jury could infer that BofI made the March 6 Decision because of his reporting, at the very least, uncontroverted evidence established that BofI had legitimate, independent reasons for the March 6 Decision. As Erhart notes, Durrans confirmed that Tolla's primary reason for the March 6 Decision was "because there were audits not completed and Mr. Erhart had not come to work that day for a scheduled meeting."[8] (Opp. at 14:11-14). Erhart does not dispute or counter any of these reasons as either inaccurate, illegitimate or insufficient to justify his termination.

## IV. THE DAMAGES AWARD ON THE SOX AND STATE RETALIATION CLAIMS CANNOT STAND

### A. There Was Insufficient Evidence Of Emotional Distress Or Reputational Harm Resulting From A Compensable Act

In an attempt to rebut BofI's argument that Erhart's emotional distress did not stem from a compensable act, Erhart merely cites to the sparse evidence concerning his purported emotional distress ***symptoms***. (*See* Opp. at 15:11-16:23). In doing so, Erhart fails to oppose the crux of BofI's argument: that Erhart's alleged emotional

---

[8] Erhart claims that "Tolla was impeached" on the reasons for the March 6 Decision. The "impeachment" testimony Erhart cites does not support such a claim, and if anything, confirms the plethora of reasons (all uncontroverted) that supported Tolla's March 6 Decision. (Day 10 Tr. at 2708) (Erhart "was the cause of significant delay to the audit plan by working on items that were not approved. He didn't show up to give any explanation for this. [Tolla] was unable, without his help at that time, to come up with a complete response for the [OCC, BofI's primary regulator]. And by noon, [Tolla] had recreated to the best of [his] ability under that timeframe that [Erhart] was responsible for the delay.").

distress symptoms were ***completely unrelated and untethered*** to an act for which BofI could be held liable. The entirety of Erhart's emotional distress testimony from trial is attached to the Katz Declaration in support of the Motion. (ECF No. 386-6 at pp. 1114:16-1116:3; ECF No. 386-10 at pp. 2776:15-2778:3). It is clear that the root causes of Erhart's claimed emotional distress, both of which occurred well after BofI terminated him in June 2015, were: (1) litigation initiated against Erhart's mother and ex-girlfriend; and (2) the "fear of retaliation" by BofI in the future. Neither can support a claim for emotional distress damages stemming from the June 9 Discharge (or even the March 6 Decision). *See Musin v. Honeywell Int'l*, 2020 U.S. Dist. LEXIS 233194, at *6-7 (D. Nev. Dec. 11, 2020) (emphasis added) ("[SOX] protects 'employees' from retaliation. And because [plaintiff] alleges no employment relationship between himself and [employer] ***at the time of the alleged retaliation***, his claim against [employer] under [SOX] fails"); *Sharkey v. J.P. Morgan Chase & Co.*, 2018 U.S. Dist. LEXIS 35538, at *31 (S.D.N.Y. Mar. 5, 2018) (emphasis added) (SOX plaintiff could only recover for emotional distress "[i]f [he] has suffered emotional distress *as a result of* being retaliated against in violation of [SOX]"). Erhart's claim that this deficiency in evidence was cured because the jury instructions did not permit damages for distress suffered as a result of harm to third parties goes nowhere. Not only was the jury permitted to award damages for Erhart's claim for "fear of retaliation" (which all occurred well after Erhart was terminated on June 9, 2015), but his argument misses the point. The jury awarded Erhart emotional distress damages when there was no evidence of emotional distress from a compensable event.

### B. At The Very Least, A New Trial Is Required Because The Award Was Grossly Excessive

Erhart concedes that he sought only garden variety emotional distress damages for the SOX and State Law Retaliation Claims. (ECF No. 210 at 6; *see* ECF No. 77 at 11). An award of $1,000,000 for ***garden variety emotional distress*** – particularly based on the sparse evidence of such distress here – shocks the conscience.

The Opposition consists of a short summary of the emotional distress symptoms he allegedly suffered, two cases in which emotional distress damages were not remitted and a rebuttal of two cases that BofI cited from the Second Circuit. Both of the cases Erhart cites are distinguishable. In *Wooten v. BNSF Ry. Co.*, 387 F. Supp. 3d 1078 (D. Mont. 2019), the defendant's argument for a remittitur "relie[d] heavily" on its incorrect contention that emotional distress damages must be supported by objective evidence. *Id.* at 1102. And, unlike the "garden variety" emotional distress at issue here, in *Bahra v. Cty. of San Bernardino*, 2022 U.S. Dist. LEXIS 162519 (C.D. Cal. Sep. 7, 2022),[9] the court concluded that the plaintiff suffered "severe" emotional distress. Erhart's response to the cases cited by BofI is equally unavailing. He claims those cases involved a lack of objective evidence of emotional distress. But, *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68 (E.D.N.Y. 2020) was cited because it gives a range for emotional distress damages – noting that the lower range does not require objective evidence. Similarly, *Sharkey v. J.P. Morgan Chase & Co.*, 2018 U.S. Dist. LEXIS 35538 (S.D.N.Y. Mar. 5, 2018) merely concluded that the plaintiff's emotional distress testimony (like Erhart's) was too brief and largely conclusory, requiring a much lower award in damages. *Id.* at *32.

## V.  THE DEFAMATION VERDICT CANNOT STAND

### A.  There Was No Evidence Of An Actionable, Defamatory Statement

As the Motion notes, Erhart conceded he did not have the requisite competence to investigate various matters. (Mot. at 24:9-22). The Opposition focuses on his training at BofI, that he was never put on a performance improvement plan and Ball's testimony that the written quality of his audits was generally good. But, that misses the point. As to a number of issues Erhart reported, there is no dispute that he lacked

---

[9]  Interestingly, Erhart bashes this case in his reply in support of his motion for attorneys' fees claiming that the judge's reasoning was flawed with respect to the determination that the attorneys' fees provision of Cal. Labor Code section 1102.5 does not apply retroactively. (*See* ECF No. 394 p. 9:10-14).

technical competence to investigate them. The statement concerning Erhart failing to complete audits was factually accurate and Garrabrants' conclusory statement was, at best, hyperbolic opinion. It was also undisputed that Garrabrants used reasonable care to determine the truth of his statements. Garrabrants testified at length concerning the information he knew, received and understood prior to the investor call (Day 8 Tr. at 2108-55) and there is not a scintilla of evidence to the contrary.

### B. There Was No Evidence Of Emotional Distress Or Reputational Harm From the Statements The Jury Found Were Defamatory

Erhart first argues that he was not required prove actual damages for his defamation claim. (Opp. at 18:14-19:5). The jury instructions say otherwise. (*See* ECF No. 319 p. 29 ("If Mr. Erhart has proved all of the above, ***then*** he is entitled to recover his actual damages ***if*** he proves that BofI's wrongful conduct was a substantial factor in causing harm to his reputation or emotional distress"); p. 57 ("If you find for Mr. Erhart on the defamation claim ***but you find that he has failed to prove damages as defined in these instructions***, ***you <u>must</u> award nominal damages***. Nominal damages may not exceed one dollar") (all emphases added)).

Erhart then argues that the evidence supports $500,000 of reputational harm. Yet, the Opposition cites ***no*** testimony that the lack of competence statements caused him ***any*** harm, instead arguing he was harmed because "he has not had the career he expected." (Opp. at 19:11). That is a bridge too far – based entirely on speculation. It is also contrary to the evidence: Erhart had higher paying jobs for many years after the investor call. (*See* Day 4 Tr. at 1126:8). Erhart asserts he could not keep his job at Renovate America because of the statements (Opp. at 19:8-10), but he testified that his boss successfully fought to keep his job (Mot. at 22:6-7) and he was let go as part of a company-wide layoff. (Day 5 Tr. at 1307:16-20).

## VI. CONCLUSION

The Court should enter judgment in favor of BofI, or alternatively, grant a new trial. At the very least, the Court should substantially reduce the damage awards.

Dated: December 12, 2022

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By /s/ *Martin D. Katz*

MARTIN D. KATZ
POLLY TOWILL
Attorneys for Plaintiff and Defendant
BofI FEDERAL BANK
mkatz@sheppardmullin.com