# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

CHARLES MATTHEW ERHART,

                  Plaintiff,

   v.

BOFI FEDERAL BANK,

                Defendant.

And Consolidated Case

Case No. 15-cv-02287-BAS-NLS
*consolidated with*
15-cv-02353-BAS-NLS

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES (ECF No. 384)**

In 2015, Defendant BofI Federal Bank terminated one of its internal bank auditors—Plaintiff Charles Matthew Erhart—after learning he reported information to the Government. Seven years later, after a winding journey, a jury found BofI violated the law and awarded Erhart $1.5 million.

Erhart now turns to three statutes to recover $3 million in attorneys' fees. He asks the Court to enhance the fee award, resulting in a grand total of $7.3 million. BofI responds with a stack of spreadsheets and a long list of arguments. The Bank contends the Court should deny the request or substantially reduce the requested fees.

The Court agrees Erhart is entitled to recover fees.  That said, some of the hours his counsel spent will not be included in the lodestar.  And the motion stumbles when it comes to justifying counsel's hourly rates.  Ultimately, the Court awards $2,405,559.20 in attorneys' fees.

## BACKGROUND[1]

Erhart worked in BofI's Internal Audit Department for approximately eighteen months.  The narrative Erhart presented throughout this case—and the one that prevailed at trial—is that he was an internal auditor in a turbulent corporate environment.  Time and time again, Erhart battled against pressure from senior management as he discovered wrongful conduct.  But when Erhart believed the events were hitting a flashpoint, his supervisor abruptly quit.  Erhart then informed the Bank's principal regulator of his findings.  In the aftermath, BofI terminated and defamed Erhart, claiming he was incompetent at his job.

Erhart later filed this lawsuit for whistleblower retaliation under state and federal law.  Erhart's initial complaint included ten causes of action and described over a dozen instances of believed wrongdoing at the Bank.  His counsel also tipped off *The New York Times*, leading to a morning edition article about the lawsuit.  BofI's stock plummeted thirty percent, and the first of several securities class action lawsuits soon followed.

The Bank responded by pulling out all the stops.  Instead of waiting to file a counterclaim, the Bank brought another suit with eight claims under state and federal law.  The Bank's counternarrative claimed Erhart not only lacked a reasonable belief that BofI violated the law, but also wanted to "bring down the bank" and abandoned his job.  The Bank quickly papered Erhart with a barrage of motions:  a motion to dismiss and strike his complaint, a motion for a preliminary injunction, a motion for a determination that Erhart waived attorney-client privilege over certain documents, a motion for summary

---

[1]  The Court has summarized this dispute in a variety of orders.  Except where noted otherwise, the Court draws these facts from the evidence presented at trial.

adjudication of Erhart's affirmative defenses to BofI's claims, and a motion for spoliation sanctions.

After denying BofI's request for extraordinary relief, the Court consolidated the parties' dispute while ruling on the first of several challenges to the pleadings.  Over the next several years, the parties whittled the case down before trial.  The Court dismissed Erhart's California causes of action for violation of the Confidentiality of Medical Information Act, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress.  Then, at the summary judgment phase, the Court grappled with the core of Erhart's lawsuit: his four whistleblower retaliation and wrongful termination claims.  The Court held some of the wide-ranging factual predicates for these claims could not support liability as a matter of law, but most survived scrutiny.  Then, in the run-up to trial, BofI abandoned one of its state law claims, and the Court eliminated another.  Finally, during trial, the Court summarily resolved one of Erhart's federal whistleblower retaliation causes of action.

Although most of Erhart's case reached the jury, one of the Court's rulings limited his recoverable damages.  The Court found Erhart's counsel disregarded Federal Rule of Civil Procedure 26 by failing to provide any estimate of Erhart's calculable damages throughout discovery.  This ruling meant he could seek only emotional distress damages, reputational damages, and punitive damages at trial.

Over the course of a three-week jury trial in spring 2022, the parties presented their competing narratives and intersecting claims.  Erhart prevailed.  The jury found BofI violated the Sarbanes-Oxley Act, California Labor Code section 1102.5, and California public policy when the Bank terminated him.  (Jury Verdict 2–3, ECF No. 314.)  In line with the Court's damages ruling, the jury assessed Erhart's "emotional distress or harm to his reputation" for these claims.  (*Id.* 4.)  The jury awarded him $1 million.  (*Id.*)  Erhart also prevailed on his California state law defamation claim, and the jury awarded him $500,000.  (Jury Verdict 5–6.)  The jury found BofI's conduct warranted punitive damages under state law but deadlocked on the amount to award.  (ECF No. 359.)  The Court held

a limited retrial on the punitive damages issue, and a second jury found punitive damages were not appropriate.  (ECF No. 370.)

Erhart now moves for $7.3 million in attorneys' fees and $1.19 million prejudgment interest.  (Mot., ECF No. 384-1.)  The Court addresses the fee request here.  The motion is fully briefed, including a sur-reply.  (ECF Nos. 390, 394, 402.)  Altogether, the parties' filings eclipse 1,000 pages, and the Court finds the motion suitable for determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).

## ANALYSIS

## I.   Entitlement to Fees

The starting point is whether Erhart is entitled to recover his attorneys' fees.  He prevailed on federal and state law claims.  "In a pure federal question case brought in federal court, federal law governs attorney fees."  *Disability L. Ctr. of Alaska, Inc. v. Anchorage Sch. Dist.*, 581 F.3d 936, 940 (9th Cir. 2009).  "State law governing attorneys' fees can also apply to state law claims over which federal courts exercise supplemental jurisdiction."  *Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 65 F.4th 1145, 1148 (9th Cir. 2023).  State law applies if it is substantive under the *Erie* doctrine and "the fee award is 'connected to the substance of the case.'"  *Northon v. Rule*, 637 F.3d 937, 938 (9th Cir. 2011) (quoting *Price v. Seydel*, 961 F.2d 1470, 1475 (9th Cir. 1992)).  Stated differently, "so long as 'state law does not run counter to a valid federal statute or rule of court . . . state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'"  *Indep. Living Ctr. of S. California, Inc. v. Kent*, 909 F.3d 272, 281–82 (9th Cir. 2018) (alteration in original) (quoting *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999)).

Erhart contends three laws entitle him to recover attorneys' fees: Sarbanes–Oxley, California Labor Code section 1102.5(j), and California Code of Civil Procedure section 1021.5.  (Mot. 1:22–24.)  Federal law, of course, controls whether Erhart can recover fees under Sarbanes–Oxley.  *See Chicken Ranch*, 65 F.4th at 1148.  As for the two California

- 4 -

15cv2287

statutes, these are substantive laws under *Erie*. They reflect substantial policies of the State and apply to Erhart's successful state law claims brought under the supplemental jurisdiction statute. *Cf. Indep. Living Ctr. of S. Cal.*, 909 F.3d at 282 (applying section 1021.5 to state law cause of action removed under federal question statute after considering *Erie* principles). Hence, the Court will consider whether these state laws also entitle Erhart to fees. *See Klein v. City of Laguna Beach*, 810 F.3d 693, 701–02 (9th Cir. 2016); *see also Chicken Ranch*, 65 F.4th at 1151 (explaining "it is the nature of the claim on which a party prevailed (federal or state) that determines the law that applies (federal or state) to any request for attorneys' fees").

### A.   Sarbanes–Oxley

Erhart's clearest path to recovering attorneys' fees is under Sarbanes–Oxley's anti-retaliation provision. Under federal law, litigants pay their own attorneys' fees unless a statute or contract provides otherwise. *Chicken Ranch*, 65 F.4th at 1148. Sarbanes–Oxley contains such an exception. An employee who prevails under its anti-retaliation provision is entitled to recover "compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees." 18 U.S.C. § 1514A(c)(2)(C). This language echoes other federal statutes that authorize reasonable attorneys' fees for the prevailing plaintiff. *See, e.g.*, 49 U.S.C. § 20109(e)(2)(C); 31 U.S.C. § 3730(h)(2); 29 U.S.C. § 216(b).

Erhart prevailed on his Sarbanes–Oxley anti-retaliation claim at trial. He is therefore entitled to recover reasonable attorneys' fees under 18 U.S.C. § 1514A(c)(2)(C).

### B.   California Labor Code Section 1102.5

Erhart also seeks fees under California Labor Code section 1102.5. California has the same default rule: litigants pay their own attorneys' fees with a panoply of statutory and equitable exceptions. *Trope v. Katz*, 11 Cal. 4th 274, 278 (1995). The law invoked here, Labor Code section 1102.5, is "California's general whistleblower statute." *McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 468 (2013).

When Erhart filed this case, Labor Code section 1102.5 did not include fee-shifting. The California Legislature amended the law as of January 1, 2021.  A.B. 1947, 2019 Leg. (Cal. 2020).   The statute now includes subsection (j), which provides: "The court is authorized to award reasonable attorney's fees to a plaintiff who brings a successful action for a violation of these provisions."  Cal. Lab. Code § 1102.5(j).

Erhart prevailed at trial in 2022.  He argues section 1102.5(j) applies because this case was not final when the legislature's amendment became effective in 2021.  (Mot. 8:15–9:21.)  BofI counters that section 1102.5(j) is inapplicable because statutes ordinarily apply prospectively.  (Opp'n 21:14–22:9.)

Neither party points to a California decision determining whether Labor Code section 1102.5(j)'s applies to cases pending at the time of amendment.  BofI cites to a district court that concluded "no authority supports the provision's retrospective application." (Opp'n 21:14–22:9 (quoting *Nikmanesh v. Wal-Mart Stores, Inc.*, No. SACV 15-202 JGB (JCGx), 2022 WL 1837515, at *15 (C.D. Cal. Feb. 25, 2022)).)  *See also Bahra v. Cnty. of San Bernardino*, No. EDCV 16-1756 JGB SPx, 2022 WL 6653533, at *5 (C.D. Cal. Sept. 7, 2022).  The district court reached that conclusion, however, after the plaintiff cited to "a hodgepodge of authority," without any explanation, to suggest otherwise.  *Nikmanesh*, 2022 WL 1837515, at *15 n.5.  In contrast, Erhart identifies ample support in California law for his position that section 1102.5(j) applies here.  (Mot. 8:15–9:21.)

Erhart's showing is persuasive.  No doubt, under California law, the "general rule is that absent a clear, contrary indication of legislative intent," courts "interpret statutes to apply prospectively."  *USS-Posco Indus. v. Case*, 244 Cal. App. 4th 197, 217–18 (2016).  But this rule is a general one for good reason.  "Fee and cost eligibility statutes" under California law "are a 'special category within the general topic of the prospective or retroactive application of statutes' subject to an 'extensive line of authority.'"  *Id.* (quoting *Quarry v. Doe I*, 53 Cal. 4th 945, 956 (2012)).  Indeed, "the California Supreme Court and many, many Courts of Appeal have treated legislation affecting the recovery of costs,

including attorney fees, as addressing a 'procedural' matter that is 'prospective' in character and thus not at odds with" this presumption. *Id.* at 221.

Two California Supreme Court cases—*Stockton Theatres, Inc. v. Palermo*, 47 Cal. 2d 469 (1956), and *Woodland Hills Residents Ass'n, Inc. v. City Council*, 23 Cal. 3d 917 (1979)—stand for the proposition "that in the absence of express legislative intent to the contrary, 'a new statute authorizing an award of attorney fees' or a statute 'increasing or decreasing litigation costs, including attorneys' fees' applies to actions pending at the time of enactment." *USS-Posco Indus.*, 244 Cal. App. 4th at 220; *see also K.M. v. Grossmont Union High Sch. Dist.*, 84 Cal. App. 5th 717, 739 (2022) (reasoning cases analyzing the retroactivity of attorneys' fees statutes "remain distinct" from the caselaw assessing damages). "This is true even though the costs or fees at issue were incurred prior to the effective date of the new statute." *Reyes v. Beneficial State Bank*, 76 Cal. App. 5th 596, 616 (2022).

BofI does not discuss this California authority. (Opp'n 20:14–22:9.) The Bank does, however, highlight a California Senate Judiciary Committee analysis of the bill amending section 1102.5. (ECF No. 390-26.)[2] That bill both added fee shifting and adjusted the statute of limitations for whistleblower retaliation claims. The legislative history notes the bill "is silent about its effect on pre-existing claims." (ECF No. 390-26.) That said, when one reads on, it is clear that this analysis is addressing the change to the statute of limitations, not the addition of fee-shifting under subsection (j). The committee's analysis concludes the bill would not revive "claims based on incidents for which the existing period has expired, or will expire prior to enactment of this bill." (*Id.*) Simply put, this legislative history lends little support to BofI's position.

---

[2] The Bank's request for judicial notice of this report is granted. *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice."); *see also Anders v. Superior Ct.*, 192 Cal. App. 4th 579, 590 (2011) (considering similar report when analyzing legislative history of statute).

Given the California caselaw addressing similar fee statutes, and the lack of a response from BofI addressing this authority, the Court finds section 1102.5(j) applies. And although the conclusion may be different under federal law, section 1102.5 is a state statute, and state law controls its application here.  *See Northon*, 637 F.3d at 938.  The statute authorizes an award of attorneys' fees to Erhart because this action was pending when section 1102.5(j) became effective.  *See, e.g.*, *Woodland Hills*, 23 Cal. 3d at 925; *USS-Posco Indus.*, 244 Cal. App. 4th at 220; *Reyes*, 76 Cal. App. 5th at 616.

### C.     California Code of Civil Procedure Section 1021.5

Third, Erhart seeks fees under California's Private Attorney General Statute, Cal. Civ. Proc. Code § 1021.5. Under this provision, "a court may award attorneys' fees to a successful party against one or more opposing parties" if the action "has resulted in the enforcement of an important right affecting the public interest" and several additional requirements are satisfied.  *Id.*

Section 1021.5 is "[a]n important exception" in California "to the American rule that litigants are to bear their own attorney fees."  *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2004).  California enacted the provision "as a codification of the private attorney general doctrine of attorney fees developed in prior judicial decisions." *Maria P. v. Riles*, 43 Cal. 3d 1281, 1288 (1987).  This doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." *Woodland Hills*, 23 Cal. 3d at 933.  "Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases." *Riles*, 43 Cal. 3d at 1289.

Erhart is a successful party under the Private Attorney General Statute.  He prevailed on his California claims for wrongful discharge in violation of public policy, violation of Labor Code section 1102.5, and defamation.

He must still satisfy section 1021.5's remaining requirements to obtain a fee award. Cal. Civ. Proc. Code § 1021.5. These requirements are "established when (1) plaintiffs' action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons, and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate." *Millview Cty. Water Dist. v. State Water Res. Control Bd.*, 4 Cal. App. 5th 759, 768 (2016) (internal quotation marks omitted) (quoting *Summit Media LLC v. City of Los Angeles*, 240 Cal. App. 4th 171, 187 (2015)). The party seeking fees under section 1021.5 has the burden "to demonstrate all elements of the statute." *Id.* (citing *Norberg v. Cal. Coastal Comm'n*, 221 Cal. App. 4th 535, 545–546 (2013)).

Fees under Code of Civil Procedure section 1021.5 are not warranted here. First, as discussed above, Erhart is already entitled to seek fees under Labor Code section 1102.5. He succeeded on two other state law claims—wrongful termination in violation of public policy and defamation. Erhart's wrongful termination claim could serve as a basis for an award of fees under the Private Attorney General Statute, but this claim was undistinguishable from his Labor Code section 1102.5 claim. Meaning, Erhart can already recover for the work done on these twin claims.

Erhart's remaining successful claim, defamation, does not plainly implicate section 1102.5, and Erhart does not mention this claim in his moving papers. (*See* Mot. 6:14–7:5.) *See Albin v. Trustmark Ins. Co.*, No. CV 13-5788 PSG (AGR), 2013 WL 12191722, at *14 (C.D. Cal. Nov. 25, 2013) (reasoning a claim for attorneys' fees under section 1021.5 for defamation fails as a matter of law).

But even if there is some benefit to Erhart also being entitled to fees on this ground, the Court finds he does not carry his burden to show the requirements of section 1102.5 are met. One missing requirement is that "the necessity and financial burden of private enforcement" must be "such as to make the award appropriate." Cal. Civ. Proc. Code § 1021.5.

This requirement examines whether there were "insufficient financial incentives to justify the litigation in economic terms." *Millview*, 4 Cal. App. 5th at 768.  An award under section 1102.5 is not warranted where "the plaintiff had a 'personal financial stake' in the litigation 'sufficient to warrant [the] decision to incur significant attorney fees and costs in the vigorous prosecution' of the lawsuit." *Id.* at 768–69 (alteration in original) (quoting *Summit Media*, 240 Cal. App. 4th at 193–94).  To illustrate, in *Davis v. Farmers Insurance Exchange*, 245 Cal. App. 4th 1302, 1310 (2016), the trial court rejected the plaintiff's request for fees under section 1021.5, and the Court of Appeal affirmed on this issue. *Id.* at 1338.  In discussing the financial burden inquiry, the court determined the plaintiff's "reasonable expectation of financial benefits from the litigation was sufficient to motivate him to pursue the litigation." *Id.* at 1329.  It noted the plaintiff "sought over ten million dollars in damages for his allegedly wrongful discharge," and "he expected to recover hundreds of thousands of dollars for improper wage deductions." *Id.* at 1330.  Thus, the court concluded "it was reasonable for the [trial] court to find that at every critical juncture [the plaintiff] expected a substantial financial recovery, and that this was sufficient motivation to pursue the case"—making a fee award under section 1021.5 inappropriate. *Id.*

Here, Erhart's Motion does not brief the financial burden element, which dooms his request under section 1021.5.  *See Millview*, 4 Cal. App. 5th at 773.  Regardless, the Court notes there were adequate financial incentives here.  Erhart sought millions of dollars in compensatory damages and millions more in punitive damages.  He succeeded at recovering $1 million for his whistleblower retaliation claims, and he came within a hair's breadth of a seven-to-eight figure punitive damages award.  The Court is persuaded that at the critical junctures in this action, Erhart "expected a substantial financial recovery, and that this was sufficient motivation to pursue the case." *See Davis*, 245 Cal. App. 4th 1302, 1310.  Consequently, Erhart is not entitled to recover fees under California's Private Attorney General Statute.

## II.      Lodestar Calculation

Erhart is entitled to recover fees under both federal and state law.  When it comes to calculating his fee award, these laws are largely coextensive.  California law permits the trial court to use the lodestar method to calculate a reasonable fee.  *E.g.*, *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).  Fees under Sarbanes–Oxley are likewise determined under the lodestar method.  *See Roberts v. City of Honolulu*, 938 F.3d 1020, 1023 (9th Cir. 2019); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983) ("The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'").[3]

It is no surprise, then, that Erhart almost exclusively relies on federal decisions when proposing his lodestar.  (Mot. 2:2–6:12; 9:23–15:2.)  He has the burden on the fee motion. The Court thus takes the same approach and considers nuances of California law only where the parties' arguments call for it.  *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014); *see also Hiken v. Dep't of Def.*, 836 F.3d 1037, 1046 (9th Cir. 2016) ("[A] court is not required to 'manufacture arguments' on behalf of litigants.").

Determining the lodestar amount is a "two-step process."  *Roberts*, 938 F.3d at 1023 (quoting *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016)).  "First, a court multiplies the number of hours 'reasonably expended on a case by a reasonable hourly rate.'"  *Id.* (quoting *Kelly*, 822 F.3d at 1099).  Then, the "court retains discretion to adjust the lodestar figure upward or downward based on a variety of factors 'not subsumed in the lodestar figure.'"  *Id.* (quoting *Kelly*, 822 F.3d at 1099).

---

[3] Aside from Erhart arguing fees under Sarbanes–Oxley are mandatory (Mot. 4:3–5), neither party suggests the standards used in decisions applying other federal fee-shifting statutes do not apply with equal force to this context.  *See Van Asdale v. Int'l Game, Tech.*, No. 3:04-CV-00703-RAM, 2011 WL 2118637, at *6 (D. Nev. May 24, 2011) (rejecting the argument that the Supreme Court's decision in *Hensley* and its progeny do not apply to Sarbanes–Oxley's fee provision); *Wooten v. BNSF Ry. Co.*, 387 F. Supp. 3d 1078, 1107 (D. Mont. 2019) (importing the same standards when applying antiretaliation provision with identical language under the Federal Railroad Safety Act).

Litigants seeking fees have the "initial burden of production," under which they "must 'produce satisfactory evidence' establishing the reasonableness of the requested fee.'" *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). If this burden is met, "the court then proceeds to a factual determination as to whether the requested fee is reasonable." *Id.*

## A.    Reasonable Hours

The lodestar calculation begins with assessing "how many hours were reasonably expended on the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "Determining the number of hours reasonably expended requires 'considering whether, in light of the circumstances, the time could reasonably have been billed to a private client.'" *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (quoting *Moreno*, 534 F.3d at 1111); *see also $28,000.00 in U.S. Currency*, 802 F.3d at 1107–08 ("Hours not reasonably expended are those that are 'excessive, redundant, or otherwise unnecessary.'" (quoting *Hensley*, 461 U.S. at 434)).

Erhart claims 4,470 hours were reasonably incurred on this case. (Mot. 10:8–13; Gillam Decl. ¶ 37, ECF No. 384-2.) This total breaks down as follows: Erhart's lead counsel expended approximately 1,581 hours, her associate spent 2,069 hours, their paralegals labored for 780 hours, and one additional attorney worked 40 hours. (Gillam Decl. ¶ 37.)

BofI argues these hours are unreasonable and asks the Court to exclude 1,265 hours on five grounds. (Opp'n 7:23–14:19.) First, Erhart wrongly includes hours for work performed in other litigation. (*Id.* 8:6–2:9.) Second, there are numerous entries "for work that did not occur or did not occur on the dates claimed." (*Id.* 9:3–10:7.) Third, Erhart cannot recover fees related to BofI's claims. (*Id.* 10:21–12:7.) Fourth, fees are not recoverable for tasks related to Erhart's defamation claim. (*Id.* 12:8–13:6.) And finally, there are various "other issues relating to the people who were doing the work, work done prior to the filing of the lawsuit, the narratives provided, and block billing." (*Id.* 13:7–14:19.)

Although the Court will address BofI's arguments, the Court is mindful "that the determination of fees 'should not result in a second major litigation.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437). District "courts need not, and indeed should not, become green-eyeshade accountants." *Id.* "The essential goal in shifting fees" to BofI "is to do rough justice, not to achieve auditing perfection." *See id.*

### 1.   Related Claims

Three of BofI's five arguments strike at the same issue: whether Erhart can recover attorneys' fees for work performed beyond his fee-shifting whistleblower retaliation claims. The parties clash over a state law doctrine on interrelated claims but do not discuss any federal caselaw. (Opp'n 10:8–21; Reply 4:26–5:6.)

The bedrock case touching upon these issues is *Hensley v. Eckerhart*, 461 U.S. 424 (1983). There, the Supreme Court analyzed 42 U.S.C. § 1988, which—like Sarbanes–Oxley—authorizes "a reasonable attorney's fee." 42 U.S.C. § 1988(b). And the issue was "whether a partially prevailing plaintiff may recover an attorney's fee for legal services on unsuccessful claims." *Hensley*, 461 U.S. at 426.

The Supreme Court observed that in some cases, plaintiffs bring "distinctly different claims for relief that are based on different facts and legal theories." *Hensley*, 461 U.S. at 434. In that circumstance, the time spent on a claim that is unsuccessful and unrelated to the fee-shifting claim should be excluded. *Id.* at 434–35. Congress's "intent to limit awards to prevailing parties requires" that such a claim be treated as if it had been raised in a separate lawsuit, and "therefore no fee may be awarded for services on the unsuccessful claim." *Id.* at 435.

By comparison, "[i]n other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories." *Hensley*, 461 U.S. at 435. "Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." *Id.* Further, where plaintiffs obtain "excellent results," their counsel "should recover a fully compensatory fee." *Id.*

The Ninth Circuit distills *Hensley*'s guidance into two prongs.  First, "did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?" *Ibrahim v. U.S. Department of Homeland Security*, 912 F.3d 1147, 1172 (9th Cir. 2019) (en banc) (quoting *Hensley*, 461 U.S. at 434).  This question "rests on whether the related claims involve a common core of facts or are based on related legal theories, with the focus on whether the claims arose out of a common course of conduct." *Id.* (cleaned up) (citing *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003); *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 903 (9th Cir. 1995)).  Second, did "the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* (alteration omitted) (quoting *Hensley*, 461 U.S. at 434).  If "the prevailing party achieved 'excellent results,'" the court "may permit a full fee award—that is, the entirety of those hours reasonably expended on both the prevailing and unsuccessful but related claims." *Id.* (citing *Hensley*, 461 U.S. at 435; *Schwarz*, 73 F.3d at 905–06).

### i.     Defamation Claim

The Court first considers BofI's argument that Erhart "cannot recover an award for fees incurred in connection with his defamation claim" and those tasks related to BofI's "defense to Erhart's defamation claim."  (Opp'n 12:8–13:6.)  This point is unconvincing.  Erhart succeeded on his defamation claim at trial.  So, the Court does not reach the first step of the inquiry under *Hensley*, which concerns deducting hours for *unsuccessful* claims. *See Ibrahim*, 912 F.3d at 1172 (explaining the first question is whether the plaintiff "fail[s] to prevail" on unrelated claims); *see also Hensley*, 461 U.S. at 439 (directing that the court should exclude "hours spent on [an] unsuccessful claim" if "the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims"); *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 224 (9th Cir. 2013) (noting hours can be "deducted specifically for unsuccessful claims" that are "distinct in both fact and law").

Moreover, to leave no doubt, all Erhart's claims, including the defamation cause of action, are related to his successful, fee-shifting Sarbanes–Oxley claim.  The Ninth Circuit does "not require commonality of *both* facts *and* law to conclude that claims are related."

*Ibrahim*, 912 F.3d at 1174.  All Erhart's claims stemmed from his employment relationship with BofI, his reporting of believed wrongdoing to the government, and BofI's response to his conduct.    The Court thus considers Erhart's success in assessing the overall reasonableness of the fee award below, but it is not appropriate to exclude any hours spent on Erhart's defamation claim from the lodestar calculation.[4]

### ii.    BofI's Claims

The Bank argues "Erhart's defense against BofI's cross-complaint is not subject to an award of attorneys' fees," and therefore hours incurred to defend BofI's claims should be excluded from the lodestar calculation.  (Opp'n 10:21–12:7.)  Having followed this thread to the end, the Court is again unpersuaded.

To recap, six days after Erhart sued BofI, the Bank filed a countersuit raising state and federal claims against Erhart.  This countersuit tried to plead around Erhart's federal and state retaliation claims and hold him responsible for allegedly lying to other employees, accessing information without permission, and publishing BofI's confidential information.  For example, in bringing a state law negligence claim against Erhart, BofI alleged he "failed to act reasonably and to exercise due care in the performance of his job duties when he conducted rogue investigations and when he misappropriated" BofI's confidential information.  (BofI's Compl. ¶ 70.)  There are some procedural wrinkles, but these counts were counterclaims in all but name.  *See* Fed. R. Civ. P. 13.[5]  BofI used these claims to

---

[4]    The Court similarly rejects BofI's footnote argument that the hours spent on the punitive damages retrial should be excluded from the lodestar.  (Opp'n 14 n.9.)  Erhart's request for punitive damages was predicated on his successful state law claims, which as mentioned, were also related to his successful federal claim.  *Cf. Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1177 (10th Cir. 2010) (reasoning where plaintiff prevailed at first trial on fee-shifting retaliation claim, district court did not abuse its discretion "by refusing to exclude the fees accrued during the second jury trial" on unsuccessful, related claims for punitive damages and discrimination); *see also Vines v. O'Reilly Auto Enters., LLC*, 74 Cal. App. 5th 174, 183 (2022) ("'California law is consistent with federal law' that, '[i]f a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims *unrelated* to the successful claims'" (emphasis added) (quoting *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010))).

[5]    Erhart worked for BofI Federal Bank.  He initially brought his claims against BofI Holding, Inc., the publicly-traded holding company for BofI Federal Bank.  When BofI filed its countersuit, it brought

harry Erhart throughout the litigation, which drove up the cost of litigation, increased the effort required to prepare for trial, and sidetracked Erhart's counsel repeatedly.

Given the close overlap between the parties' claims, the Court *sua sponte* ordered consolidation of the countersuit because of the "numerous common questions of law or fact that are related to Erhart's alleged whistleblowing and his tenure at BofI." (ECF No. 22 at 31:13–32:7.)[6]  From there on out, all filings were in Erhart's whistleblower retaliation action, and the parties' competing claims were tried together.  As the evidence at trial showed, one area where these claims particularly overlapped was the parties' defenses. Erhart claimed any breach of BofI's confidentiality agreement or his other duties to BofI was lawful because he engaged in protected activity under Sarbanes–Oxley and California state law.  Conversely, the Bank claimed it would have terminated Erhart anyways because of his wrongful conduct.  BofI similarly argued that it discovered evidence of Erhart's purported wrongdoing after termination that should limit Erhart's damages.

It is understandable, then, that the great majority of Erhart's counsel's time was "devoted generally to the litigation as a whole."  *See Hensley*, 461 U.S. at 435.  Although BofI identifies some time entries that concern only the Bank's claims, these hours are but a small fraction of the time Erhart seeks to recover.

Moreover, if the Court funnels BofI's claims through the *Hensley* analysis, they meet the same fate as the defamation claim.  Erhart successfully defeated all BofI's claims; the jury awarded the Bank nothing.  If the law instructs the Court to only exclude time spent on unsuccessful, unrelated claims, then why should the Court exclude counsel's time spent on the successful defense of closely related claims?  *See Ibrahim*, 912 F.3d at 1172.  These hours "contribute[d] to the ultimate victory in the lawsuit."  *See Cabrales v. Cnty. of Los*

---

the claims in the name of BofI Federal Bank, not the holding company.  Erhart later amended his complaint to pursue claims against BofI Federal Bank.  (Second Am. Compl. ¶ 4.)

[6] Although the Court ordered consolidation early on in these proceedings, it notes the only reason it did not happen even sooner is because the Court first devoted its resources to resolving BofI's request for extraordinary relief.  Once the Court denied BofI's request for a preliminary injunction, the Court resolved the first motion to dismiss, resulting in the *sua sponte* consolidation of the parties' claims.

*Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991). And given the overlap in factual issues, the Court cannot say this time "did not aid in proving" Erhart's "successful claims." *See Muniz*, 738 F.3d at 224. Having adjudicated the parties' dispute from start to finish, it makes no sense to slice-and-dice counsel's time "on a claim-by-claim basis" and treat this dispute "as a series of discrete claims." *See Hensley*, 461 U.S. at 435. The Court thus will not exclude time from the lodestar that was spent on BofI's claims.

In addition, even though the Court has focused on federal law up to this point, California's doctrine on intertwined claims likewise provides a path for Erhart to recover these hours. Erhart succeeded on his California Labor Code section 1102.5 claim, which includes fee-shifting, whereas BofI's competing claims do not. Under California law: "Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 129–30 (1979); *accord Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 159–60 (2006). "Further, '[a]pportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units.'" *Maxim Crane Works, L.P. v. Tilbury Constructors*, 208 Cal. App. 4th 286, 298 (2012) (quoting *Bell v. Vista Unified Sch. Dist.*, 82 Cal. App. 4th 672, 687 (2000)). In addition, "as the one who has 'heard the entire case,' it is the trial court who is 'in the best position to determine whether any further allocation of attorney fees [i]s required or whether the issues were so intertwined that allocation would be impossible.'" *Cruz v. Fusion Buffet, Inc*, 57 Cal. App. 5th 221, 235 (2020) (quoting *Thompson Pac. Constr., Inc. v. City of Sunnyvale*, 155 Cal. App. 4th 525, 556 (2007)).

This rule is well-established when applied to a plaintiff's claims. *E.g., Cruz v. Fusion Buffet, Inc*, 57 Cal. App. 5th 221, 230 (2020) (determining court did not abuse its discretion in refusing to apportion fees where the plaintiff's "meal and rest break claims [for which fees would not be recoverable] are inextricably intertwined with her other wage and hour claims for which fees are recoverable" (alteration in original)); *Taylor v. Nabors*

*Drilling USA, LP*, 222 Cal. App. 4th 1228, 1251 (2014) (affirming trial court's refusal to apportion fees between successful employment discrimination claim and three related, unsuccessful causes of action).   The rule can also apply, however, to defending counterclaims—cross-complaints in California's lexicon. *See Calvo Fisher & Jacob LLP v. Lujan*, 234 Cal. App. 4th 608, 623 (2015) (applying rule "where the plaintiff's defense against a cross-claim is necessary to success on the plaintiff's contract claim"); *Maxim Crane Works*, 208 Cal. App. 4th at 297 (applying rule where defense against an indemnity cross-complaint was intertwined with defense against an underlying tort suit); *Siligo v. Castellucci*, 21 Cal. App. 4th 873, 879 (1994) (applying same rule to fraud crossclaim where the plaintiff "was required to defend against fraud in order to succeed on his complaint to enforce" business-sale agreements).

For the reasons explained above, Erhart's and BofI's claims were "so intertwined that it would be impracticable, if not impossible, to separate" Erhart's counsel's "time into compensable and noncompensable units." *See Maxim Crane Works*, 208 Cal. App. 4th at 298.   The fact that BofI has identified some time entries that are related only to its claims does not prove otherwise.   Rather, as mentioned, these entries indicate much of Erhart's counsel's time was devoted to the litigation as whole, and it would be impracticable to now divide up those hours, especially the time spent at trial.   Consequently, when the Court approaches this issue under California law for Erhart's fee-shifting state law claim, the Court likewise concludes no hours should be excluded from the lodestar to account for BofI's unsuccessful claims.

### iii.   Claims in Other Litigation

Moving beyond the claims in this dispute, BofI argues Erhart's proposed lodestar improperly includes fees for work performed in other litigation.   (Opp'n 8:6–9:2.)   For example, Erhart's fee request includes 111 hours spent on a California case, *BofI Federal Bank v. Cornell*, Case No. 37-2016-00016599-CU-NP-CT.   (*Id.* Ex. C, ECF No. 390-5.) That litigation involved BofI's efforts to recover purported confidential information that Erhart placed on the defendant's laptop.   Erhart's time entries also include six hours spent

on another California state court case, *Garrabrants v. Erhart,* Case No. 37-2017-00039440-CU-NP-CTL. (*Id.* Ex. D.)  That lawsuit involved BofI's CEO suing Erhart for disclosing his private information.

Attorneys' fees incurred outside the bounds of the litigation may be recoverable if "the work product . . . was both useful and of a type ordinarily necessary to advance the . . . litigation." *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003) (quoting *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985)); *see also Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995) (awarding attorneys' fees for time expended filing amicus brief in separate proceeding); *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 638 (9th Cir. 1989) (same).  For example, in *Armstrong*, the plaintiffs asked to recover fees for counsel's work on an amicus brief in a separate case before the Supreme Court.  318 F.3d at 971.  The district court reasoned this time was recoverable because the appeal "involved an issue central to the litigation," and it was both useful and necessary for counsel to file the brief. *Id.*  The Ninth Circuit affirmed, reasoning the Supreme Court was deciding an issue that "was likely to have an important effect on the outcome in *Armstrong*."  *Id.* at 972.

Erhart does not invoke this authority or adequately respond to BofI's challenge.  He fails to meet his burden to demonstrate the time spent in the two state court matters was "necessary to advance" this litigation, i.e., his whistleblower retaliation claims.  *See Armstrong*, 318 F.3d at 971; *see also Hiken*, 836 F.3d at 1046 ("[A] court is not required to 'manufacture arguments' on behalf of litigants.").  Nor does the Court find California's rule on intertwined claims applies here.  The claims in those cases involved additional parties and were not "so intertwined" with Erhart's claims here that any allocation would be impracticable or impossible.  *See Maxim Crane Works*, 208 Cal. App. 4th at 298.  Thus, the Court excludes the hours listed in BofI's Exhibits C and D from the lodestar.

### 2. Content of Entries

The Court jointly addresses BofI's remaining two arguments concerning the hours reasonably expended on the litigation. As mentioned, BofI contends: (1) there are numerous entries "for work that did not occur or did not occur on the dates claimed;" and (2) there are various "other issues relating to the people who were doing the work, work done prior to the filing of the lawsuit, the narratives provided, and block billing." (Opp'n 9:3–10:7, 13:7–14:19.) These arguments call for the Court to step into the weeds. Keeping in mind that the goal "is to do rough justice, not to achieve auditing perfection," *see Fox*, 563 U.S. at 838, the Court includes an appendix that summarily resolves these challenges. The result is that the Court will exclude 195.6 hours from the lodestar in light of these arguments.

### B. Reasonable Hourly Rate

The court next must determine a reasonable hourly rate for the lodestar calculation. *Roberts v. City of Honolulu*, 938 F.3d 1020, 1023 (9th Cir. 2019). "The reasonable hourly rate is determined by assessing 'the prevailing market rate in the relevant community.'" *Id.* at 1024 (quoting *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016)). The prevailing market rate is the amount charged "in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979 (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)).

"It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate." *Roberts*, 938 F.3d at 1024. Satisfactory evidence includes declarations from the "plaintiffs' attorneys and other attorney[s] regarding prevailing fees in the community." *Camacho*, 523 F.3d at 980 (alteration in original) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Those submissions, though, "do not conclusively establish the prevailing market rate." *Id.* The opposing party may submit evidence "challenging the accuracy and reasonableness" of the moving party's declarations. *Id.* (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)).

Further, "courts may consider the fees awarded by others in the same locality for similar cases." *Sam K. ex rel. Diane C. v. Hawaii Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015). Courts likewise may "use their 'own knowledge of customary rates and their experience concerning reasonable and proper fees.'" *Id.* (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

Erhart proposes the following hourly rates: $995 for his lead counsel, $625 for her associate, $695 for another counsel, and $195 for paralegals. (Mot. 10:3–6.) BofI argues these rates are unreasonably high for several reasons.

### 1. Relevant Community

BofI first argues that Erhart incorrectly relies "on declarations from attorneys based outside of the San Diego area" to address "rates outside of the San Diego area." (Opp'n 3:11–13.) Indeed, Erhart contends that because Sarbanes–Oxley cases are rare "in the Southern District of California, the 'relevant community' is more properly the greater Southern California / Los Angeles area, where all counsel in this case primarily practice." (Mot. 4:23–27.) In support, Erhart's lead counsel declares she is "not aware of any attorneys in the San Diego area who could or would have handled this case," despite knowing "all the leading plaintiffs' employment attorneys in San Diego." (Gillam Decl. ¶ 26.) BofI argues this claim is not only "insulting to San Diego's employment attorneys" but "also inconsistent with the prevailing law." (Opp'n 7:2–7; *see also* Jardini Decl. ¶ 46 ("The San Diego bar has numerous plaintiff employment rights counsel who work on a contingency issue.").)[7]

---

[7] Erhart objects to an attorney declaration submitted by BofI from André E. Jardini. (ECF No. 394-3.) Erhart's objections violate this Court's Standing Order for Civil Cases, which provides: "[O]bjections to evidence submitted in support of an opposition must be contained within the reply brief. No separate statements of objections will be allowed." Erhart's objections both run afoul of this rule and reinforce its purpose. Many of the objections are impermissible argument that quibble with the weight— not the admissibility—of Mr. Jardini's declaration. (*See id.* (objecting to a statement about a law firm taking on Erhart's case as being "delusional" and arguing Mr. Jardini lacks experience in Sarbanes–Oxley cases). To leave no doubt, the Court finds Mr. Jardini's declaration relevant for determining a reasonable hourly rate, but the Court is independently assessing the caselaw and computing a lodestar for Erhart's

"Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "However, rates outside the forum may be used 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (quoting *Gates*, 987 F.2d at 1405).[8] For example, in *Gates*, a district court properly used rates from San Francisco—in lieu of Sacramento—where the plaintiffs "offered numerous declarations of San Francisco and Sacramento attorneys" to "support their contention that Sacramento attorneys and law firms with the requisite expertise and experience to handle [a] type of complex institutional prison reform litigation were unavailable" in Sacramento. 987 F.3d at 1405.

Erhart's attorneys are not the first ones to test the waters on this issue. The prevailing rates in the Southern District of California are generally lower than the Central District of California. *E.g.*, *T.B. v. San Diego Unified Sch. Dist.*, 293 F. Supp. 3d 1177, 1188 (S.D. Cal. 2018). And it is commonplace for attorneys based in one district to solicit work in the other. Courts nevertheless reject attorneys' attempts to cherry-pick and run with higher rates from the Central District. *See, e.g.*, *id.* (rejecting argument "that the Central District of California, where counsel maintain their offices, is the appropriate relevant community"); *Dalfio v. Hanna*, No. 21-CV-910 JLS (AHG), 2022 WL 3578261, at *2 (S.D. Cal. Aug. 19, 2022) (rejecting attempt to use "significantly higher" rates from Los Angeles); *Bedwell v. Hampton, Tr. of Hampton Fam. Bypass Tr.*, No. 22cv138-LL-BGS, 2023 WL 3103806, at *5 (S.D. Cal. Apr. 26, 2023) (same). Further, Erhart's counsel's statement about a lack of local counsel is unconvincing compared to the "numerous"

---

counsel. *See Kries v. City of San Diego*, No. 17-CV-1464-GPC-BGS, 2021 WL 120830, at *2–4 (S.D. Cal. Jan. 13, 2021).

[8] California state law is comparable. The court must consider counsel's "home market rate" instead of the "local market rate" when a plaintiff needs to hire out-of-town counsel because local counsel is unavailable. *Caldera v. Dep't of Corr. & Rehab.*, 48 Cal. App. 5th 601, 609 (2020).

declarations from Sacramento and San Francisco attorneys in *Gates* that supported the unavailability of counsel in Sacramento.  *See* 987 F.3d at 1405 & n.15.

Moreover, Erhart's declaration does not persuasively demonstrate local counsel was unavailable.  Erhart states that when seeking counsel, he searched online for whistleblower lawyers and "looked at numerous attorney websites," but "did not find any that seemed to offer the expertise [he] needed, including in the San Diego area."  (Erhart Decl. ¶ 3, ECF No. 384-5.)  He then reached out to a former colleague in New York who suggested Erhart's Los Angeles-based counsel.  (*Id.* ¶ 4.)

By comparison, one court found a stronger showing on this issue to still be insufficient.  There, an Idaho plaintiff sought counsel for a disability discrimination action against a well-resourced defendant: Union Pacific.  *Campbell v. Union Pac. R.R. Co.*, No. 4:18-CV-00522-BLW, 2022 WL 43878, at *4 (D. Idaho Jan. 4, 2022).  The plaintiff stated "that he 'spoke with at least six different law firms in Idaho and surrounding States but was unsuccessful in getting anyone to represent . . . [him] against Union Pacific,' because 'it would take too long and they lacked the resources necessary' to handle the case."  *Id.* at *3.  The court found this showing was inadequate to justify out-of-forum rates.  *Id.*  It reasoned the plaintiff failed to provide specific details about his search, including the types of firms he contacted, and the court was aware of local counsel who practiced in the relevant area of law.  *Id.* at *4.

The Court is unconvinced by Erhart's weaker showing here; he does not state he spoke with any counsel in the Southern District or provide other details about his search. The undersigned is likewise knowledgeable of local, skilled counsel who practice in the employment and wrongful termination context.  *Cf. Sam K.* 788 F.3d at 1041 (providing the court can draw on its own knowledge in the rate-setting context); *see also Campbell*, 2022 WL 43878, at *3; *Howard G. v. Dep't of Educ.*, No. CV 11-00523 DKW-RT, 2020 WL 2563275, at *14 (D. Haw. May 5, 2020).  This case may have presented challenging issues, but the Court rejects the claim that San Diego lacked counsel who "could have or would have handled this case."  (*See* Gillam Decl. ¶ 26.)  Consequently, the default rule

applies.   The relevant community for assessing a reasonable hourly rate is the Southern District.  *See Camacho*, 523 F.3d at 979.

## 2.   Current vs. Historical Rates

Erhart asks the Court to use the current hourly rate for fees, instead of historical rates.  (Gillam Decl. ¶ 34.)  BofI points out that these rates are significantly higher than earlier years "when the lion's share of the work was done."  (Opp'n 4:3–4.)  For example, according to an attorney rate report discussed below, the median hourly rate for a labor and employment partner in San Diego was approximately $382 in 2015, compared to a median of $456 in the second quarter of 2022—an increase of about 20%.  (ECF No. 390-24.)

The Supreme Court has explained that "part of a 'reasonable attorney's fee'" may include an adjustment for "for delay in payment."  *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 282 (1989).  Hence, "district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use funds."  *Gates*, 987 F.2d at 1406; *accord Bell v. Clackamas Cnty.*, 341 F.3d 858, 868 (9th Cir. 2003); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007).  Alternatively, if the court chooses to enhance the lodestar to compensate for the delay, "the amount of the enhancement must be calculated using a method that is reasonable, objective, and capable of being reviewed on appeal, such as by applying a standard rate of interest to the qualifying outlays of expenses."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 555–56 (2010); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) (explaining that the court's use of "the last rates charged by attorneys who left prior to the fee petition, without a prime rate enhancement, inadequately compensate[d] the firm for the delay in receiving its fees").

The delay in payment here is significant—over seven years.  Like others, the Court finds an adjustment is necessary to compensate for this magnitude of delay.  *See, e.g.*, *Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc*, 731 F. Supp. 2d 937, 949–50 (N.D. Cal. 2010).  In compensating for the delay, a prime rate enhancement could lead to a higher

- 24 -

fee award than applying current rates because of compound interest over a seven-year period.  *See id.* at 951, App. Table H.  However, Erhart did not provide his counsel's historical hourly rates or propose a prime rate enhancement calculation.  *See Wit v. United Behav. Health*, 578 F. Supp. 3d 1060, 1075 (N.D. Cal. 2022) (noting prime rate enhancement approach resulted in a higher lodestar than current rate calculation); *Ryan v. Editions Ltd. W., Inc.*, No. 5:06-CV-04812-PSG, 2016 WL 233093, at *5 (N.D. Cal. Jan. 19, 2016) (reasoning attorney's failure to provide necessary variables "militates against the use of the prime rate enhancement method of compensating for delay in payment").  The Court thus will look to current rates.  *See Wit*, 578 F. Supp. 3d at 1075 (using current rates for a six-year delay); *Oldoerp v. Wells Fargo & CompanyLong Term Disability Plan*, No. 3:08-CV-05278 RS, 2014 WL 2621202, at *4 (N.D. Cal. June 12, 2014) (using current rates for a case pending five years); *Harlick v. Blue Shield of California*, No. C 08-3651-SC, 2013 WL 2422900, at *4 (N.D. Cal. June 3, 2013) (same).

### 3.    Rates for Attorneys

The Court turns to assessing the prevailing market rate in the Southern District as of the time of the fee petition.  Beyond its own experience, the Court draws on three sources: the attorney declarations submitted, a billing rate report, and analogous fee decisions from the community.

<u>Declarations</u>.  Erhart's lead counsel, Gillam, submits a declaration setting forth her qualifications and experience.  Of note, she has been practicing law for more than forty-four years.  (Gillam Decl. ¶ 2.)  After starting her career in Chicago, she worked for a preeminent Los Angeles law firm before serving as an Assistant U.S. Attorney for six years.  (*Id.* ¶¶ 10–13.)  Since 1994, Gillam has been in private practice with a decorated career in the labor and employment context.  (*Id.* ¶¶ 2–6; 18–19.)

Gillam's associate, Heum, likewise submits a declaration.  (Heum Decl., ECF No. 384-3.)  Heum graduated from law school in 2012 and later joined Gillam's firm in 2015.  (Gillam Decl. ¶ 36, Heum Decl. ¶ 2.)  Therefore, as of the fee application, Heum had

approximately ten years of experience, with much of her time spent on employment matters.  (*See* Heum Decl. ¶ 2.)

The fee motion also includes declarations from several practitioners who vouch for the proposed hourly rates.  (Alexander Decl., ECF No. 384-4; Harrison Decl., ECF No. 384-7; Pine Decl., ECF No. 384-8; Zukerman Decl., ECF No. 384-9.)   "That other attorneys may think that a given rate is 'reasonable' does not necessarily say what the prevailing market rates actually are."  *Sam K. ex rel. Diane C. v. Hawaii Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015).  This admonition is particularly warranted here, where, as indicated above, there is a disconnect between the evidence submitted and the relevant community.  Three of the supporting declarants are Los Angeles-based litigators; the remaining one is a partner at a Washington, D.C. firm.  The Court thus assigns these supporting declarations reduced weight on the issue of the prevailing rate in the San Diego community.

Rate Report.  BofI submits the Real Rate Report, a national publication that provides statistical data on attorneys' fees by location and practice areas.  (2022 Rate Report, ECF No. 390-25.)  This report "has been cited with approval by courts inside and outside this district."  *Kries v. City of San Diego*, No. 17-cv-1464-GPC-BGS, 2021 WL 120830, at *7 (S.D. Cal. Jan. 13, 2021); *accord Sarabia v. Ricoh USA, Inc.*, No. 8:20-cv-00218-JLS-KES, 2023 WL 3432160, at *8 (C.D. Cal. May 1, 2023); *see also, e.g.*, *Kohler v. Eddie Bauer LLC*, 792 F. App'x 446, 448 (9th Cir. 2019) ("The court reasonably considered the 2015 Real Rate Report (RRR), a national publication that provides statistical data on attorneys' fees by location and practice areas."); *Aispuro v. Ford Motor Co.*, No. 18-CV-2045 DMS (KSC), 2020 WL 4582677, at *4 (S.D. Cal. Aug. 10, 2020) (looking to Real Rate Report to help set prevailing rate for San Diego); *Nguyen v. BMW of N. Am., LLC*, No. 3:20-CV-2432-JLS-BLM, 2023 WL 173921, at *3 (S.D. Cal. Jan. 12, 2023) (same).

The relevant category in the Real Rate Report is "Employment and Labor," which encompasses retaliation and wrongful termination cases.  For employment and labor partners in the San Diego area, the median hourly rate was $456, and the third quartile

hourly rate was $553.  (2022 Rate Report at 118.)  For associates in this category, the median hourly rate was $325, and the third quartile hourly rate was $380.  (*Id.*)  And more broadly, for associates with seven or more years of experience in all practice areas, the median is $380, and the third quartile is $421.  (*Id.* at 27.)

<u>Decisions</u>.  The Court also looks to rates awarded in this locality for analogous cases.  *See Sam K.*, 788 F.3d at 1041.  Unfortunately, Erhart points to no decisions for the Court's consideration, but instead faults BofI for not finding good enough comparisons in this district.  (Reply 3:9–11.)  Erhart, of course, is the one who has the burden on this motion.  Notwithstanding Erhart's failure to cite to any Southern District cases, the Court finds the following data points helpful:

- In a 2020 civil rights and employment action containing retaliation claims, the court found $550 an hour to be a reasonable rate for an attorney with fourteen years of experience and $310 an hour reasonable for an attorney with one year of experience.  *Kailikole v. Palomar Cmty. Coll. Dist.*, No. 18-CV-02877-AJB-MSB, 2020 WL 6203097 (S.D. Cal. Oct. 22, 2020).

- In a 2021 decision under the Fair Labor Standards Act, the court found $600 and $650 hourly rates reasonable for partners with more than thirty years of experience.  The court also found $500 an hour reasonable for an attorney with fourteen years of experience and $400 an hour reasonable for an attorney with six years of experience.  *Kries*, 2021 WL 120830, at *8.

- In a 2021 civil rights case, the court found $650 an hour reasonable for an attorney with twenty-five years of experience and whose work "was of the highest quality."  The court also found $485 an hour reasonable for an attorney with nine years of civil rights experience.  *Soler v. Cnty. of San Diego*, No. 14CV2470-MMA (RBB), 2021 WL 2515236, at *5 (S.D. Cal. June 18, 2021).

- In a 2022 defamation and federal Privacy Act decision, the court found $500 an hour a reasonable rate for a lead counsel with fourteen years of experience and $425 an hour reasonable for an attorney with eleven years of experience.  *Gallagher v.*

- 27 -

15cv2287

*Philipps*, No. 20CV00993-LL-BLM, 2022 WL 848329, at *3 (S.D. Cal. Mar. 22, 2022).

<u>Attorney Hourly Rates</u>.  Having considered the items above, the Court finds $750 is a reasonable hourly rate for Gillam.  This rate is substantially higher than the median rate in the Real Rate Report for partners in Gillam's cohort, which reflects Gillam's wealth of experience and accolades.  The rate also reflects that this case demanded more expertise than required for a garden-variety wrongful termination or wage-and-hour action.  Finally, this rate reflects the Court's assessment of the quality of the representation provided by Gillam.  As for Heum, the Court finds $505 is a reasonable rate, which is again substantially higher than the median rate in the Real Rate Report for Heum's cohort.  This rate reflects her decade of experience, particularly in labor and employment matters, and again accounts for the nature of this case and the Court's assessment of the quality of the representation provided by Heum.[9]

### 4.    Rate for Paralegals

As mentioned, Erhart also seeks to recover 780 hours of paralegal time at $195 an hour, for a total of $152,000.  (Gillam Decl. ¶ 37.)  The same standard applies for discerning the prevailing rate for paralegals.  *Holcomb v. BMW of N. Am., LLC*, No. 18CV475 JM (BGS), 2020 WL 759285, at *5 (S.D. Cal. Feb. 14, 2020) (quoting *Payne v. Bay Area Rapid Transit Dist.*, No. C 08-2098 WDB, 2009 WL 1626588, at *1 (N.D. Cal. June 5, 2009)).  Despite this standard, BofI flags that Erhart provides no information for all but

---

[9] Erhart also seeks to recover 40 hours of time spent by one additional attorney at a rate of $695. Erhart's counsel provides only two sentences about this attorney's background and qualifications, noting he is a former colleague who has worked at national firms and is experienced in securities matters. (Gillam Decl. ¶ 30.)  His experience practicing law in California is unclear.  However, unlike the unidentified paralegals discussed below, the Court can connect this attorney's claimed time to a specific billing record.  There is a single entry for 39.6 hours with the description: "Research and draft opposition to MSJ . . . (from 5/10/19-6/5/19)."

Given the inadequate showing for this attorney's experience and qualifications, the Court assigns a rate of $380 for this work—the median rate for associates with more than seven years of experience across all practice areas in San Diego.  The Court also imposes a 10% haircut on these hours.  *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Hence, this component of the lodestar is $13,543.20 (35.4 hours x $380 rate).

two of these supporting professionals.  (Opp'n 4:2 n.3; *see also* Gillam Decl. ¶ 31.)  For example, timekeeper "KXG" worked 166 hours (ECF No. 384-10), but Erhart's moving papers provide no information about this individual (*see* Gillam Decl. ¶ 31), such as the individual's job title, experience, and educational background.

As for the two paralegals Erhart does identify, these are law graduates who apparently worked on the case in its final phases.  Their initials do not match any timekeepers on the billing records through 2019. (*See* ECF No. 384-10 at 36.)  In addition, from 2019 onward, the billing records list only "Paralegal Paralegal" as the timekeeper and do not identify the individual(s) who spent 461 hours' worth of time on the case.  (ECF No. 384-12 at 52.)  Hence, the Court cannot discern how much time the two identified law clerks spent on the case compared to the various other individuals lumped under the paralegal category.  BofI is thus correct that "it is impossible to tell what work they actually performed." (Opp'n 13:14.)  Erhart tries to fill in the gaps in his reply, but this pitfall is paradigmatic of the tripwires Erhart has triggered throughout this case.  *See Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018) ("'New evidence submitted as part of a reply is improper' because it does not allow the defendant an adequate opportunity to respond.").  He also does not introduce any evidence to support $195 is the prevailing paralegal rate in the community.

Having reviewed the billing records and the parties' arguments, the Court finds Erhart's showing is woefully inadequate.  In a case this contentiously litigated, both prudence and the law demanded Erhart specify the qualifications and time these individuals spent before seeking $152,000 for their work.  Because "insufficient facts were presented," the Court could deny the "request for reimbursement of paralegal fees."  *See Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-CV-0541-GPC WVG, 2014 WL 6851612, at *6 (S.D. Cal. Dec. 3, 2014); *see also Garrison v. Ringgold, No. 19CV244-GPC(RBB)*, 2019 WL 5684401, at *4 (S.D. Cal. Nov. 1, 2019) (denying request for paralegal fees that lacked supporting evidence); *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-CV-419-GPC WVG, 2014 WL 5438532, at *5 (S.D. Cal. Oct. 24,

2014) (same).  The Court is reluctant to do so, however, given the volume of challenged paralegal work.

As another solution, some courts have reduced the hourly rate to the lower end of the possible range to reflect the failure to provide information about the paralegals' experience.  *See, e.g.*, *Sunbelt Rentals, Inc. v. Three Bros. Elec. Contractors, Inc.*, No. 1:21-cv-01357 JLT SKO, 2023 WL 5103739, at *5 (E.D. Cal. Aug. 9, 2023); *Freshko Produce Servs., Inc. v. Write On Mktg., Inc.*, No. 1:18-cv-01703-DAD-BAM, 2019 WL 3798491, at *3 (E.D. Cal. Aug. 13, 2019).  The Court adopts this approach and assigns a rate of $115 an hour for the paralegal work.  *Cf. Holcomb*, 2020 WL 759285, at *7 (adopting $100 an hour rate for paralegals in the Southern District where evidence submitted for proposed rate of $195 was inadequate).  The Court also reduces the hours billed by 15% in light of the paralegal time records being vague, listing unidentified timekeepers, and reflecting clerical work, which results in an adjusted hour total of 662.92.  *See id.* at *6; *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) ("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").

//
//
//
//
//
//
//
//
//
//
//
//
//

15cv2287

* * *

Considering the rulings above, the Court computes the initial lodestar below.

| Lodestar | Timekeepers | | | |
|---|---|---|---|---|
| | CG | SH | KKN | PA |
| Starting Hours | 1,581.00 | 2,069.90 | 39.60 | 779.90 |
| BofI Ex. C | (22.20) | (89.00) | - | - |
| BofI Ex. D | (1.00) | (5.40) | - | - |
| Court App. 1 | (82.80) | (13.40) | - | (117.00) |
| Court n.9 | - | - | (4.00) | - |
| Reasonable Hours | 1,475.00 | 1,962.10 | 35.60 | 662.90 |
| Reasonable Rate | $750.00 | $505.00 | $ 380.00 | $115.00 |
| Subtotal | $1,106,250.00 | $990,860.50 | $13,528.00 | $76,233.50 |

Total:   **$2,186,872.00**

## III.   Reasonableness

"Although the analysis begins by multiplying a reasonable number of hours by a reasonable rate, it does not end there." *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020). The court next "determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *accord Parsons v. Ryan*, 949 F.3d 443, 466 (9th Cir. 2020).[10]

---

[10] The full list of factors is "set forth in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir. 1975)." *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868–69 (9th Cir. 2014).

The Kerr factors are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the

The court should tread carefully, however, because there is "a 'strong presumption that the lodestar is sufficient.'" *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) (quoting *Perdue*, 559 U.S. at 546). Enhancing the lodestar with "a multiplier is warranted only in 'rare and exceptional circumstances.'" *Id.* (quoting *Perdue*, 559 U.S. at 552); *accord Kelly*, 822 F.3d at 1102.[11]

The positive adjustments upheld in *Kelly*, 822 F.3d at 1102–1105, illustrate these circumstances. The Ninth Circuit held there was no abuse of discretion when the district court applied 1.3 and 2.0 multipliers to two attorneys' work on an action under the Prison Litigation Reform Act—a context where fees are limited to "150 percent of the hourly rate set for counsel appointed in criminal cases." *Id.* at 1093. The court appropriately considered counsel's "excellent results for their clients under extreme time pressure" and that "the quality of the work that produced these results [was] underrepresented in the hourly fee." *Id.* (alteration in original). So, too, did the court properly consider that an enhancement was necessary to attract competent counsel in the PLRA context because of the limitation on recoverable fees. *Id.*

A downward adjustment may be appropriate in other circumstances. The court referenced one such context above: where a plaintiff achieved "limited success." *Hensley*, 461 U.S. at 436–37; *see also Ibrahim*, 912 F.3d at 1172–80. As mentioned, if the plaintiff has both "prevailing and unsuccessful but related claims," the court can consider whether

---

preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 869. Aside from many of these factors being subsumed in the lodestar, "one factor is no longer valid—whether the fee was fixed or contingent." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 n.7 (9th Cir. 2011); *see also Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996).

[11] One extraordinary circumstance is where "an attorney's performance involves exceptional delay in the payment of fees." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010). The Court already accounted for this circumstance above by calculating the lodestar with current hourly rates. *See id.*

the "level of success" justifies "a full fee award." *Ibrahim*, 912 F.3d at 1172. For example, where a plaintiff "initially sued several defendants, but prevailed against only one," the court may apply a "reduction to reflect that kind of limited success." *Webb*, 330 F.3d at 1168.

Erhart argues the "*Kerr* factors overwhelmingly support an upward adjustment of the lodestar by a factor of not less than 2.0." (Mot. 10:21–22.) BofI contends many of these factors are subsumed in the Court's lodestar analysis and argues the remaining factors are either inapplicable or weigh in favor of a downward adjustment. (Opp'n 15:15–20:13.) The Court agrees that its lodestar analysis above subsumes many of the *Kerr* factors, see *supra* note 10, and addresses several of the parties' arguments below.

<u>Degree of Success</u>. The Court considers "the degree of success obtained," which "is 'the most critical factor' in determining the reasonableness of a fee award." *Bravo v. City of Santa Maria*, 810 F.3d 659, 666 (9th Cir. 2016) (quoting *Farrar v. Hobby*, 506 U.S. 103 (1992)); *see also Kerr*, 526 F.2d at 70 (providing the court should consider "the amount involved and the results obtained"). Although "the amount of damages recovered is relevant to the amount of attorney's fees awarded," the Ninth Circuit has "instructed that 'courts should not reduce lodestars based on relief obtained simply because the amount of damages recovered on a claim was less than the amount requested.'" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1033 (9th Cir. 2012) (quoting *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988)). Indeed, in *Bravo*, where the plaintiffs "won only $5,002 at trial" but achieved a public benefit and recovered $360,000 from settling with other defendants, the district court appropriately awarded the plaintiffs $1.023 million in attorneys' fees. 810 F.3d at 666.

The Court is persuaded that the lodestar calculated above is reasonable considering the success Erhart obtained. Erhart failed to prevail on some of his many claims, but these unsuccessful claims were related to his successful claims that reached the jury. Hence, a deduction for limited success is not appropriate here. *See Ibrahim*, 912 F.3d at 1172; *see also Hensley*, 461 U.S. at 435 ("In these circumstances the fee award should not be reduced

simply because the plaintiff failed to prevail on every contention raised in the lawsuit."). Further, even though Erhart may not have recovered as large of a recovery as he had hoped for, he still obtained an excellent result.  He prevailed on his surviving whistleblower retaliation claims and defeated all the Bank's counterclaims after over seven years of litigation.  *Cf. Van Asdale v. Int'l Game, Tech.*, No. 3:04-CV-00703-RAM, 2011 WL 2118637, at *7 (D. Nev. May 24, 2011) (reasoning plaintiffs' success on their Sarbanes–Oxley claim after "protracted litigation for a period of more than six years" was significant, despite that their $2 million recovery was "small in comparison with the amount Plaintiffs requested at trial").  And his recovery for reputational and emotional distress damages was substantial; this case is not one where the jury awarded nominal damages or where Erhart settled his claims for nuisance value.  *See, e.g.*, *Bravo*, 810 F.3d at 672.

At the same time, the Court is unpersuaded that Erhart's degree of success justifies an upward adjustment to the lodestar or the requested 2.5 multiplier.  *Cf.  Kelly*, 822 F.3d at 1103–04 (reasoning enhancement was appropriate where counsel's "rare" and "exceptional" representation included "excellent results . . . under extreme time pressure").  BofI's countervailing arguments likewise fall short.  The Bank criticizes the proportionality of Erhart's damages recovery to his attorneys' fees and contends a downward adjustment is appropriate.  (Opp'n 18:7–19:5) Yet the Bank is well-aware that its litigation strategy required Erhart's counsel to spend more time on this dispute.  BofI undoubtedly "had the right to play hardball in contesting" Erhart's claims, but it is also appropriate for the Bank "to bear the cost" of its all-out strategy.  *See Burgess v. Premier Corp.*, 727 F.2d 826, 841 (9th Cir. 1984).  In short, having assessed Erhart's degree of success, the Court finds the $2,186,872.00 lodestar is reasonable.

Awards in Similar Cases.  The Court can consider awards in similar cases to gauge the reasonableness of the lodestar. *Kerr*, 526 F.2d at 70.  Erhart contends "there are so few verdicts in [Sarbanes–Oxley] cases that it is hard to compare results, except to note that most of them never get to a jury." (Mot. 12:19–25.) The Court agrees the dataset is limited, but what is available does not support an adjustment here.  In *Van Asdale*, the Sarbanes–

Oxley plaintiffs recovered approximately $2 million in damages and reasonably expended about 3,300 hours on the protracted litigation. 2011 WL 2118637, at *1, 4. The court awarded $1.08 million in attorneys' fees and "saw no basis for making any further enhancement or reduction" after considering the relevant *Kerr* factors. *Id.* at *5. Also, in *McEuen v. Riverview Bancorp, Inc.*, No. C12-5997 RJB, 2014 WL 2197851, at *1 (W.D. Wash. May 27, 2014), the Sarbanes–Oxley plaintiff accepted an offer of judgment for $110,000 on the eve of trial. The court awarded $430,000 in attorneys' fees for 1,638 hours of work in a "hotly contested" dispute. *Id.* at *7–8. The court also found no adjustment to the lodestar was appropriate. *Id.* at *7. Having reviewed the circumstances of those cases, the court finds these comparable awards show Erhart's lodestar is within the bounds of reasonableness. Those awards do not, however, persuade the Court that the circumstances here are exceptional and justify an enhancement—or a downward adjustment, for that matter. *See Perdue*, 559 U.S. at 552.

Remaining Factors. The Court has considered the parties' arguments on the remaining factors, including time limitations and the claimed undesirability of the case. (*See* Mot. 11:20–12:25; Opp'n 17:8–20:13.) On balance, the *Kerr* factors show no adjustment to the lodestar is appropriate. The Court finds the "strong presumption that the lodestar is sufficient" carries here. *See Perdue*, 559 U.S. at 549.

## IV. State Law Multiplier

Finally, although the Court will not enhance the lodestar under federal law, the Court considers whether it is nonetheless appropriate to do so under state law. "Unlike federal law, California law allows for a multiplier of the lodestar to compensate for the risk of contingent representation." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014) (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1135–38 (2001)). This distinction stems from *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992), where the Supreme Court held a federal fee-shifting statute authorizing reasonable attorneys' fees does not permit an "enhancement for contingency" to the lodestar. The California Supreme Court later declined to adopt the policy arguments underpinning *Burlington* and reaffirmed that

a lodestar enhancement is available for "contingent risk" under state law. *Ketchum*, 24 Cal. 4th at 1138.

Hence, when considering whether to adjust a lodestar, California courts assess "the contingent nature of the fee award," along with "the novelty and difficulty of the questions involved," "the skill displayed in presenting them," and "the extent to which the nature of the litigation precluded other employment by the attorneys." *California DUI Laws. Assn. v. Dep't of Motor Vehicles*, 77 Cal. App. 5th 517, 535–36 (2022). Yet the court "should not consider these factors to the extent they are already encompassed within the lodestar." *Ketchum*, 24 Cal. 4th at 1138. For example, the skill factor is particularly "susceptible to improper double counting; for the most part, the difficulty of a legal question and the quality of representation are already encompassed in the lodestar." *Id.* Similarly, where the reasonable hourly rates used in the lodestar are already adjusted for contingency risk, a court should not "consider that factor again in determining whether to apply an enhancement." *California DUI Laws. Assn.*, 77 Cal. App. 5th at 537. "Of course, the trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk" or the other factors. *Ketchum*, 24 Cal. 4th at 1138; *see also Kennedy Comm'n v. City of Huntington Beach*, 91 Cal. App. 5th 436, 467 (2023) ("The award of a multiplier is in the end a discretionary matter largely left to the trial court.").

The purpose of an adjustment based on contingency risk "is to fix a fee at the fair market value for the particular action." *Ketchum*, 24 Cal. 4th at 1132. The court, in effect, "determines, retrospectively, whether the litigation involved a contingent risk . . . justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Id.* The party seeking a multiplier bears the burden of proof. *Id.* at 1138.

Erhart correctly identifies the Court may consider contingency risk for his state law fee-shifting claim. (Mot. 5 n.1.) His counsel states this case "was a huge risk as a contingency matter" given the scope of litigation, including "scores of depositions of current and former employees and three experts." (Gillam Decl. ¶ 22; *see also id.* ¶ 35.) The declarations from supporting practitioners mentioned above likewise express that

contingency enhancements are necessary in circumstances like here to compensate for the risk Erhart's counsel assumed. (Pine Decl. ¶¶ 14–15; Harrison Decl. ¶¶ 39, 40–42.) The Bank's Opposition argues no multiplier is appropriate but does not wade into California law on contingency enhancements, which is unsurprising given BofI believes Erhart is not entitled to recover fees under state law.[12]

Comparable cases span the spectrum. And they often involve additional factors aside from contingency risk. *See, e.g.*, *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776 (9th Cir. 2018) (affirming 2.0 state law multiplier where court considered counsel's "substantial financial risk," "the difficulty of representing prisoners with the . . . highest security classifications," and "the opportunity costs the years-long litigation" required); *Sargent v. Bd. of Trustees of Cal. State Univ.*, 61 Cal. App. 5th 658, 675 (2021) (affirming 2.0 multiplier based on "novelty and difficulty of the questions presented, the skill displayed in presenting them, and the extent to which the nature of the litigation precluded other employment"); *Polee v. Cent. Contra Costa Transit Auth.*, 516 F. Supp. 3d 993, 1003 (N.D. Cal. 2021) (awarding 1.2 state law multiplier "to account for the contingent risk and preclusion of other work, as well as the results obtained, which as noted *supra* consisted of a significant monetary award to a civil rights plaintiff as well as conferring a public benefit"); *Herron v. Cnty. of Los Angeles*, No. B295184, 2021 WL 5818378, at *12 (Cal. Ct. App. Dec. 8, 2021) (affirming trial court's denial of multiplier in employment case where results were modest, lawyers were competent but not highly skilled, and the market rate of the plaintiff's attorneys adequately compensated for their contingency risk and

---

[12] BofI's expert declaration addresses this point and cites a California Court of Appeal decision, *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128 (1998), to argue a contingency enhancement is inappropriate here. (Jardini Decl. ¶ 65.) This legal argument belongs in a brief, not an expert declaration. Regardless, the *Weeks* decision predates the seminal California Supreme Court case on contingency enhancements and is therefore questionable authority. *See Rodriguez v. Cal. Dep't of Just.*, No. C064756, 2012 WL 272135, at *16 (Cal. Ct. App. Jan. 31, 2012) ("To the extent the *Weeks* court downplayed the significance of the contingent nature of a fee award in a FEHA case as a basis for applying a multiplier, we find that court's discussion inconsistent with our Supreme Court's later discussion of the contingency factor in *Ketchum v. Moses*").

skill); *McElwain v. Kaiser Found. Hosps.*, No. G055049, 2018 WL 6696696, at \*4–5 & n.4 (Cal. Ct. App. Dec. 20, 2018) (affirming negative multiplier in discrimination case where market rates compensated for contingency risk and plaintiff achieved limited success).

Here, the Court underscores that it "is not required to include a fee enhancement to the basic lodestar figure for contingent risk." *Ketchum*, 24 Cal. 4th at 1138 (emphasis omitted). Moreover, Erhart does not persuasively show the requested 2.0 to 3.0 multiplier is justified based on contingency risk—or any other factor. Ultimately, having considered Erhart's counsel's submissions, this case's circumstances, and the caselaw, the Court finds a modest multiplier of 1.1 is appropriate to account for contingency risk, which adjusts the fee total from $2,186,872.00 to $2,405,559.20.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Erhart's Motion for Attorneys' Fees. The Clerk of Court shall enter an amended judgment that awards Erhart $2,405,559.20 in attorneys' fees.

**DATED: September 28, 2023**

**Hon. Cynthia Bashant**
**United States District Judge**

**Appendix 1: Challenges to Accuracy & Content of Time Entries**

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work in entry did not occur or did not occur on the date claimed | 9/5/2016 | CG | Draft documents: Finalize motion opp docs | 3.3 | 3.3 | *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (noting court may reduce a fee request that is "not based on contemporaneous records," "poorly documented," or "excessive") |
| Work in entry did not occur or did not occur on the date claimed | 10/13/2016 | CG | Deposition: Prep for and defend client depo | 9.2 | 9.2 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 3/15/2017 | CG | Deposition: Prep client for depo | 1.4 | 1.4 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 3/16/2017 | CG | Deposition: Prep for and defend client depo | 8.8 | 8.8 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 3/20/2017 | CG | Court hearing: Prep for and attend MSC | 8.3 | 8.3 | Counsel concedes this entry was a mistake |
| Work in entry did not occur or did not occur on the date claimed | 3/22/2017 | CG | Draft documents: Draft opp to motion for reconsideration | 1.9 | 1.9 | *See Fischer*, 214 F.3d at 1121 |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work in entry did not occur or did not occur on the date claimed | 3/12/2018 | CG | Draft documents: Review, revise notice of interested parties | 0.3 | 0.3 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 3/13/2018 | CG | Deposition: Prep for and take Tolla depo (+PMQ) | 7.7 | 0.0 | Counsel satisfactorily explains there was a typographical error |
| Work in entry did not occur or did not occur on the date claimed | 9/5/2018 | CG | Draft documents: Review and review joint motion for PO | 0.4 | 0.4 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 10/14/2018 | CG | Draft documents: Review and revise joint motion re disco dispute 5 | 0.2 | 0.2 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 11/11/2018 | CG | Draft documents: Research and draft reply to MJP | 2.2 | 2.2 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 12/2/2018 | CG | Deposition: Prep for Koll depo | 3.3 | 0.8 | *See Fischer*, 214 F.3d at 1121 |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work in entry did not occur or did not occur on the date claimed | 12/3/2018 | CG | Deposition: Prep for and travel to Koll depo in Texas | 9.9 | 2.5 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 12/4/2018 | CG | Deposition: Prep for and take Koll depo in Texas, return to LA | 12.2 | 3.1 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 12/13/2018 | CG | Draft documents: Review and revise jt motion on disco dispute 7 | 0.4 | 0.4 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 6/13/2019 | CG | Draft documents: Research and draft opp to MSJ | 8.8 | 8.8 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 6/14/2019 | CG | Draft documents: Finalize opp to MSJ (numerous docs) | 5.1 | 5.1 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 6/26/2019 | CG | R&D Reply brief to Daubert motion R&D Opp MSJ R&D joint statement | 10.6 | 10.6 | *See Fischer*, 214 F.3d at 1121 |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work in entry did not occur or did not occur on the date claimed | 6/27/2019 | CG | Draft documents: Finalize pleadings re motions | 3.4 | 0.0 | Counsel satisfactorily explains there was a typographical error |
| Work in entry did not occur or did not occur on the date claimed | 8/15/2019 | CG | Draft documents: Review and revise joint motion re disco dispute 4 | 0.4 | 0.4 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 8/16/2019 | CG | Draft documents: Review and revise ex parte app, supporting dec to continue deadline to bring motion re disco responses | 1.6 | 0.0 | Counsel satisfactorily explains there was a typographical error |
| Work in entry did not occur or did not occur on the date claimed | 8/21/2019 | CG | Review documents: Review opp to ex parte app | 0.2 | 0.0 | Counsel satisfactorily explains there was a typographical error |
| Work in entry did not occur or did not occur on the date claimed | 8/22/2019 | CG | Review documents: Review order denying ex parte app | 0.1 | 0.0 | Counsel satisfactorily explains there was a typographical error |
| Work in entry did not occur or did not occur on the date claimed | 9/4/2019 | CG | Review documents: Review detailed order re MTC | 0.3 | 0.3 | *See Fischer*, 214 F.3d at 1121 |

15cv2287

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work in entry did not occur or did not occur on the date claimed | 9/5/2019 | CG | Review documents: Review motion for judgment on pleadings | 0.6 | 0.0 | Counsel satisfactorily explains there was a typographical error |
| Work in entry did not occur or did not occur on the date claimed | 9/6/2019 | CG | Draft documents: Review and revise joint motion re experts scheduling | 0.4 | 0.4 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 9/6/2019 | CG | Draft documents: Review motion for amended scheduling order | 1.2 | 0.0 | Counsel satisfactorily explains there was a typographical error |
| Work in entry did not occur or did not occur on the date claimed | 9/22/2019 | CG | Draft documents: Research and draft opp to motion for judgment on pleadings | 2.2 | 0.0 | Counsel satisfactorily explains there was a typographical error |
| Work in entry did not occur or did not occur on the date claimed | 9/24/2019 | CG | Draft documents: Review and revise dec ISO opp to MJP | 0.3 | 0.0 | Counsel satisfactorily explains there was a typographical error |
| Work in entry did not occur or did not occur on the date claimed | 9/24/2019 | CG | Draft documents: Draft section on UCL | 0.6 | 0.0 | Counsel satisfactorily explains there was a typographical error |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work in entry did not occur or did not occur on the date claimed | 9/25/2019 | CG | Draft documents: Finalize opp to motion for judgment on pleadings | 1.7 | 0.0 | Counsel satisfactorily explains there was a typographical error |
| Work in entry did not occur or did not occur on the date claimed | 9/26/2019 | CG | Review documents: Review order granting motion to continue trial | 0.2 | 0.2 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 10/3/2019 | CG | Review documents: Review reply to motion for judgment on pleadings | 0.2 | 0.2 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 4/11/2021 | CG | Draft documents: R&D opps to MILS | 2.6 | 0.0 | Counsel satisfactorily explains there was a typographical error |
| Work in entry did not occur or did not occur on the date claimed | 4/12/2021 | CG | Draft documents: R&D opps to MILS | 1.5 | 0.0 | Counsel satisfactorily explains there was a typographical error |
| Work in entry did not occur or did not occur on the date claimed | 4/13/2021 | CG | Draft documents: Finalize opps to MILS | 2.2 | 0.0 | Counsel satisfactorily explains there was a typographical error |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work in entry did not occur or did not occur on the date claimed | 1/27/2022 | CG | Court hearing: Prep for and attend status conference (court confirm trial proceeding on 2/1/22) | 1.2 | 1.2 | *See Fischer*, 214 F.3d at 1121 |
| Work in entry did not occur or did not occur on the date claimed | 4/16/2022 | CG | Draft documents: Draft TCR, exhibit thereto | 1.3 | 1.3 | *See Fischer*, 214 F.3d at 1121; |
| Work in entry did not occur or did not occur on the date claimed | 8/29/2022 | CG | Trial: Prep and deliver closing, rebuttal | 7.9 | 0.0 | Counsel satisfactorily explains there was a typographical error |
| Ehart provides insufficient details for paralegals | Various | PA | Various | 779.9 | 117.0 | *See* supra Order Part II.B.4 (discussing inadequate paralegal entries) |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work done prior to lawsuit that is not necessary precursor to the suit | 3/22/2015 | CG | Review client docs: Review client docs, research and draft SEC whistleblower complaint necessities | 2.6 | 2.6 | *See Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983) (providing the fee claimant has the burden to demonstrate that the number of hours spent was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary"); *see also Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 235 (1985) (reasoning no abuse of discretion to exclude prelitigation time where plaintiff did not show the work performed "was both useful and of a type ordinarily necessary to advance the . . . litigation") |
| Work done prior to lawsuit that is not necessary precursor to the suit | 4/10/2015 | CG | Draft documents: Research and draft IRS complaint | 1.9 | 1.9 | *See Hensley*, 461 U.S. at 434; *see also Webb*, 471 U.S. at 235 |
| Work done prior to lawsuit that is not necessary precursor to the suit | 4/13/2015 | CG | Draft documents: Research and draft TCR | 2.3 | 2.3 | *See Hensley*, 461 U.S. at 434; *see also Webb*, 471 U.S. at 235 |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work done prior to lawsuit that is not necessary precursor to the suit | 4/15/2015 | CG | Correspond with: Emails with associate, staff re more revisions to SEC TCR | 1.1 | 1.1 | *See Hensley*, 461 U.S. at 434; *see also Webb*, 471 U.S. at 235 |
| Work done prior to lawsuit that is not necessary precursor to the suit | 4/16/2015 | CG | Correspond with: Emails with staff confirming SEC must sign for package with complaint, USB | 0.2 | 0.2 | *See Hensley*, 461 U.S. at 434; *see also Webb*, 471 U.S. at 235 |
| Work done prior to lawsuit that is not necessary precursor to the suit | 4/30/2015 | CG | Correspond with: Email from IRS re WB complaint | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Webb*, 471 U.S. at 235 |
| Work done prior to lawsuit that is not necessary precursor to the suit | 5/18/2015 | CG | Correspond with: emails t/f client re NYT reporter reached out (Said ignore for now) | 0.2 | 0.2 | *See Hensley*, 461 U.S. at 434; *see also Webb*, 471 U.S. at 235 |
| Work done prior to lawsuit that is not necessary precursor to the suit | 7/24/2015 | CG | Correspond with: emails t/f client re speaking to reporter | 0.2 | 0.2 | *See Hensley*, 461 U.S. at 434; *see also Webb*, 471 U.S. at 235 |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work done prior to lawsuit that is not necessary precursor to the suit | 7/26/2015 | CG | Telecon: telecom w/client re press inquiry etc. | 0.3 | 0.3 | *See Hensley*, 461 U.S. at 434; *see also Webb*, 471 U.S. at 235 |
| Work done prior to lawsuit that is not necessary precursor to the suit | 8/17/2015 | CG | Telecon: Prep for and telecom w/Eavis | 0.2 | 0.2 | *See Hensley*, 461 U.S. at 434; *see also Webb*, 471 U.S. at 235 |
| Work done prior to lawsuit that is not necessary precursor to the suit | 8/22/2015 | CG | Review documents: review extensive article re BofI; emails re same | 0.3 | 0.3 | *See Hensley*, 461 U.S. at 434; *see also Webb*, 471 U.S. at 235 |
| Work done during lawsuit that is not reasonably necessary | 10/14/2015 | SH | Calls re various public inquiries, correspondence w/ CG and individuals re same. | 1.1 | 1.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook v. City of Westminster*, 177 F.3d 839, 877 (9th Cir. 1999) (noting court has discretion to determine if "media and public relations activities . . . contributed directly and substantially to" the plaintiff's victory) |
| Work done during lawsuit that is not reasonably necessary | 10/14/2015 | SH | Call w/ SEC re files. | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work done during lawsuit that is not reasonably necessary | 12/16/2015 | CG | Telecon SEC re filing amicus brief; discuss same with client | 0.3 | 0.3 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 4/1/2016 | CG | Telecon: telecom with SEC and then with client re WB protections | 0.9 | 0.9 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 4/11/2016 | CG | Review documents: Review Houston MPES amended complaint | 0.3 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 4/20/2016 | SH | Review Houston complaint, correspondence. | 0.4 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 8/17/2016 | SH | Review media coverage, corr. w/ client and CG re case, discovery. Review doc production from Bofl. | 0.9 | 0.3 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 |
| Work done during lawsuit that is not reasonably necessary | 2/22/2017 | SH | Review media re case. | 0.3 | 0.3 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work done during lawsuit that is not reasonably necessary | 3/3/2017 | SH | Draft press release and correspondence re rulings on MTQ and MSA. Corr. w/ CG re same. | 1.8 | 1.8 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 |
| Work done during lawsuit that is not reasonably necessary | 3/13/2017 | SH | Review whistleblower news relevant to case. | 0.4 | 0.4 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 |
| Work done during lawsuit that is not reasonably necessary | 4/8/2017 | CG | Review documents: Review numerous media stories about case, holding | 0.4 | 0.2 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 |
| Work done during lawsuit that is not reasonably necessary | 4/25/2017 | SH | Draft response re media inquiry. | 0.3 | 0.3 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 |
| Work done during lawsuit that is not reasonably necessary | 9/14/2017 | SH | Draft submission to media re MTD. | 0.3 | 0.3 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 |
| Work done during lawsuit that is not reasonably necessary | 1/8/2018 | SH | Review corr. from AAA re hearing date. | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work done during lawsuit that is not reasonably necessary | 7/2/2018 | CG | Correspond with: Emails re dismissal of shareholder suits | 0.2 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 8/5/2018 | CG | Correspond with: Emails t/f client re status of SEC investigation, TCRs etc. | 0.3 | 0.3 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 10/29/2018 | SH | Review corr. re co-counsel. | 0.2 | 0.2 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 5/17/2019 | SH | Review file, prep materials for possible co-counsel. | 2.1 | 2.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 4/1/2020 | CG | Review documents: Review court's 90 page ruling on MSJs; emails with client, press re same | 0.8 | 0.2 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 |
| Work done during lawsuit that is not reasonably necessary | 4/1/2020 | SH | Review correspondence from CNS re Court Order | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work done during lawsuit that is not reasonably necessary | 4/1/2020 | SH | Various correspondence with CG re CNS inquiry re Court order | 0.2 | 0.2 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 |
| Work done during lawsuit that is not reasonably necessary | 4/1/2020 | SH | Review documents: news re MSJ | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 |
| Work done during lawsuit that is not reasonably necessary | 4/6/2020 | CG | Correspond with: Review notice of withdrawal | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 4/6/2020 | SH | Review documents: notice of withdrawal | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 4/9/2021 | SH | Correspond with CG re class case | 0.1 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 4/9/2021 | SH | Correspond with counsel re class case | 0.1 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work done during lawsuit that is not reasonably necessary | 4/10/2020 | CG | Review documents: Review national publication article on MSJ ruling | 0.2 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 |
| Work done during lawsuit that is not reasonably necessary | 2/10/2021 | SH | Analyze issues re Houston lawsuit, corr. w/ CG re same | 0.5 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 2/10/2021 | SH | Review correspondence from CG re Houston lawsuit | 0.1 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 7/26/2021 | CG | Correspond with: Emails t/f counsel in SH. Suit v. BofI | 0.1 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 10/5/2021 | PA | Attorney conference with Benson (class action against BofI) | 0.5 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 10/8/2021 | PA | Check witness information for Benson | 0.2 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work done during lawsuit that is not reasonably necessary | 10/12/2021 | PA | Call to Benson, attorneys in class action against BofI | 0.7 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 12/28/2021 | SH | Interoffice correspondence re Mika's appearance | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 12/28/2021 | SH | Interoffice correspondence re Mika's appearance | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 12/28/2021 | SH | Interoffice correspondence re Mika's appearance | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 12/28/2021 | SH | Interoffice correspondence re notice of appearance further | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 12/29/2021 | SH | Interoffice correspondence re counsel agreements | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work done during lawsuit that is not reasonably necessary | 12/29/2021 | SH | Interoffice correspondence re counsel agreements further | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 12/29/2021 | SH | Interoffice correspondence re counsel agreements further | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 12/29/2021 | SH | Review documents: executed fee sharing consent form | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 1/14/2022 | SH | Interoffice correspondence re emails re MH appearance | 0.4 | 0.4 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 1/14/2022 | SH | Research re MH appearance issues | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 1/19/2022 | SH | Interoffice correspondence re arb stip | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |

15cv2287

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work done during lawsuit that is not reasonably necessary | 2/8/2022 | SH | Interoffice correspondence re emails re BofI shareholder suit | 0.3 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 2/8/2022 | SH | Research re BofI shareholder suit settlement | 0.1 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 2/8/2022 | SH | Interoffice correspondence re BofI shareholder suit further | 0.1 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 2/23/2022 | SH | Research re D-F issue | 0.1 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 3/17/2022 | SH | Interoffice correspondence re MH withdrawal | 0.2 | 0.2 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 3/17/2022 | SH | Research re MH withdrawal | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work done during lawsuit that is not reasonably necessary | 3/17/2022 | SH | Interoffice correspondence re MH withdrawal | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 3/22/2022 | SH | Review documents withdrawal motion for Mika | 0.2 | 0.2 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 3/22/2022 | SH | Interoffice correspondence re withdrawal motion for Mika | 0.2 | 0.2 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 3/22/2022 | SH | Interoffice correspondence re appearance at hearing | 0.3 | 0.3 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 3/29/2022 | SH | Correspond with CG re securities case | 0.1 | 0.0 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121 |
| Work done during lawsuit that is not reasonably necessary | 5/23/2022 | SH | Draft documents press release re verdict | 0.8 | 0.8 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 (noting hours spent publicizing verdicts not compensable) |

| Challenge | Date | Name | Narrative | Hours Claimed | Hours Excluded | Explanation |
|---|---|---|---|---|---|---|
| Work done during lawsuit that is not reasonably necessary | 5/24/2022 | SH | Further edit press release and submit to outlets, interoffice corr. re same | 2.1 | 2.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 (noting hours spent publicizing verdicts not compensable) |
| Work done during lawsuit that is not reasonably necessary | 6/10/2022 | SH | Draft documents: answers to verdict write-up questions | 0.4 | 0.4 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 (noting hours spent publicizing verdicts not compensable) |
| Work done during lawsuit that is not reasonably necessary | 6/24/2022 | SH | Review documents: FAC re verdict write-up, corr. w/ CG re same | 0.1 | 0.1 | *See Hensley*, 461 U.S. at 434; *see also Fischer*, 214 F.3d at 1121; *Gilbrook*, 177 F.3d at 877 (noting hours spent publicizing verdicts not compensable) |
| Time spent on fee motion is excessive | Various | CH SH PA | Preparation of fee motion | 100.4 | 0 | Erhart is entitled to recover fees for seeking fees, *see Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013), and the time spent is not excessive in light of the scope of the motion |

| Totals: | | |
|---|---|---|
| | CH | 82.8 |
| | SH | 13.4 |
| | PA | 117 |