UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MATTHEW ERHART,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>BOFI HOLDING, INC.,<br><br>　　　　　　　　　Defendant.<br><br>And Consolidated Case | Case No. 15-cv-02287-BAS-NLS<br>*consolidated with*<br>15-cv-02353-BAS-NLS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST (ECF No. 384)** |

　　In 2015, Defendant BofI Holding, Inc. terminated one of its internal bank auditors—Plaintiff Charles Matthew Erhart—after learning he reported information to the Government. Seven years later, after a winding legal journey, a jury found BofI violated the law and awarded Erhart $1.5 million.

　　To make up for lost time, Erhart asks the Court to tack on $1.19 million in prejudgment interest. He applies an 8% interest rate with daily compounding to reach this number. BofI challenges Erhart's request with a full suite of arguments, including that Erhart waived his right to prejudgment interest and proposes the wrong interest rate.

Ultimately, prejudgment interest is appropriate, but several of BofI's arguments are compelling. The Court also finds it should not deviate from using the standard interest rate found in 28 U.S.C. § 1961. The Court thus awards Erhart $169,872.74 in prejudgment interest.

I. **Background**

<u>Pretrial</u>. In October 2015, Erhart filed this action claiming BofI retaliated against him for reporting information to the Government. (Compl., ECF No. 1.) The Complaint alleged BofI forced Erhart out of his job in March 2015 and later "officially fired" him in June 2015. (*Id.* ¶¶ 61, 72.) Erhart asked for compensatory damages and "an award of interest, including prejudgment interest, at the legal rate." (*Id.* 36:11–13; *accord* Second Am. Compl. 38:6–7, ECF No. 124.) After protracted motion practice and discovery, the case neared trial in 2020. The COVID-19 pandemic and scheduling accommodations added two more years, leading to the Court setting a three-week jury trial for early 2022.

Along the winding way, the Court made more pretrial rulings than can be fairly summarized here. One, though, limited Erhart's recoverable damages. The Court found Erhart disregarded Federal Rule of Civil Procedure 26 by failing to provide any estimate of his calculable damages throughout discovery. (Order on Mot. in Limine No. 5, ECF No. 244.) Those damages included his "claims for future wages and earnings, lost employment benefits, bonuses, overtime, vacation benefits, medical expenses, and back pay." (*Id.*) The Court also found he could not avoid the automatic sanction under Rule 37(c)(1). This ruling meant Erhart could seek only "emotional distress damages, reputational damages, and punitive damages" at trial. (*Id.*)

<u>Trial</u>. Erhart prevailed at trial. The jury found BofI violated the Sarbanes-Oxley Act, California Labor Code section 1102.5, and California public policy when the Bank terminated him. (Jury Verdict 2–3, ECF No. 314.) In line with the

Court's damages ruling, the jury assessed Erhart's "emotional distress or harm to his reputation" for these claims. (*Id.* 4.) The jury awarded him $1 million. (*Id.*)

Erhart also prevailed on his California state law defamation claim, and the jury awarded him $500,000. (Jury Verdict 5–6.) The jury hung on punitive damages, leading to a retrial of that issue in August 2022. (ECF No. 359.) The second jury found punitive damages were not appropriate. (ECF No. 370.)

Judgment. Following the punitive damages retrial, the Court circulated a Proposed Judgment, which was silent on prejudgment interest, and invited objections. (ECF No. 376.) *See* Fed. R. Civ. P. 58(b)(2). Erhart asked the Court to add seven years' worth of interest to the judgment, but he did not propose a starting date for the calculation, an interest rate, or a total amount of interest. (ECF No. 378.) The Court thus entered judgment without any prejudgment interest but allowed Erhart to file a motion to amend the judgment that addressed the variables for calculating interest. (ECF No. 379.)

Erhart filed a combined Motion for Attorneys' Fees and Prejudgment Interest. (Mot., ECF No. 384-1.) The Court addresses his $1.19m prejudgment interest request here.[1] (*Id.* 15:4–18:3.) BofI opposes any prejudgment interest. (Opp'n 23:5–25:18, ECF No. 390.)

**II.   Analysis**

Erhart asks the Court to award prejudgment interest on his total damages—$1.5 million—from the date BofI terminated him to the date of judgment. (Mot. 17:11–13.) BofI argues Erhart faces four obstacles in his track. (Opp'n 23:5–25:18.) First, Erhart waived his right to prejudgment interest. Second, California state law precludes interest on his state law claims. Third, awarding prejudgment interest on the Sarbanes–Oxley claim would be unfair. And fourth, even if awarded, prejudgment interest should be calculated using a lower interest rate.

---

[1] Erhart's request for prejudgment interest is timely and appropriately brought under Rule 59(e). *See* Fed. R. Civ. P. 59(e); *see also McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128, 1130 (9th Cir. 2004) (applying prior version of Rule 59(e)).

### A. Waiver

BofI contends Erhart should not receive prejudgment interest because he did not ask for it in the Pre-Trial Order. (Opp'n 24:1–8.) "Indeed, BofI was not aware that Erhart was seeking prejudgment interest until he submitted his objections to the Court's Proposed Judgment." (*Id.* 24:5–9.)

This waiver argument is unpersuasive for two reasons. First, BofI points to no controlling authority to support its position. The Court has found little from this century, but the caselaw favors Erhart. A Ninth Circuit decision issued around Apollo 11 reasoned a party's "right to recover prejudgment interest was not affected by [its] failure to demand interest in its federal pleadings." *Soderhamn Mach. Mfg. Co. v. Martin Bros. Container & Timber Prod. Corp.*, 415 F.2d 1058, 1064 (9th Cir. 1969). Similarly, in 1982, the Ninth Circuit rejected the claim that "silence of the pretrial order as to interest" was a "deliberative waiver of the right to interest." *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79, 82 (9th Cir. 1982). More recent persuasive authority likewise supports Erhart. *See Jerra v. United States*, No. 2:12-cv-01907-ODW (AGRx), 2018 WL 1605563, at *12 (C.D. Cal. Mar. 29, 2018) (rejecting argument that the plaintiff waived his right to interest by not pleading it "in the operative complaint, pretrial conference order, or initial disclosures"); *see also RK Co. v. See*, 622 F.3d 846, 853–54 (7th Cir. 2010) (relying on Rule 59(c) to resolve this contention, which provides a prevailing party will be granted all the relief to which it is entitled, "even if the party has not demanded that relief in its pleadings").

Second, unlike some plaintiffs, Erhart requested "an award of interest, including prejudgment interest, at the legal rate" in his October 2015 Complaint. (Compl. 36:11–13.) BofI has always been on notice that if it lost at trial, Erhart may seek prejudgment interest. The Court thus rejects BofI's waiver argument.

### B.     State Law Claims

BofI contends state law should control prejudgment interest for Erhart's California claims, and this law precludes interest here. (Opp'n 23:11–26.) Erhart counters that BofI's "discussion of state law obfuscates the issue." (Reply 10:4–5, ECF No. 394.)

A court is not "free to disregard the alleged" impacts of state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 71 (1938). Under the *Erie* doctrine, "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *In re Exxon Valdez*, 484 F.3d 1098, 1100 (9th Cir. 2007). *Erie* principles apply equally when the court has supplemental jurisdiction over state law claims. *Id.* It is also "well settled that prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism." *Id.* at 1101; *accord U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1139 (9th Cir. 2011).

These rules apply here. The Court has jurisdiction over Erhart's state law claims under the supplemental jurisdiction statute, 28 U.S.C. § 1367, and prejudgment interest is a substantive aspect of these claims. California law thus controls for those claims. *See Exxon Valdez*, 484 F.3d at 1101; *accord Cannon v. Peck*, 36 F.4th 547, 577 (4th Cir. 2022) ("When reviewing state-law claims based on supplemental jurisdiction, 'the award of prejudgment interest rests on state law.'"); *Chassin Holdings Corp. v. Formula VC Ltd.*, No. 15-CV-02294-EMC, 2017 WL 66873, at *14 (N.D. Cal. Jan. 6, 2017) (same).

Turning to California law, several statutes address prejudgment interest. The prevalent one is California Civil Code section 3287(a), which "authorizes an award of interest when a person is entitled to recover" liquidated damages. *Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.*, 231 Cal. App. 4th 134, 199 (2014). Liquidated damages are those that are "certain, or capable of being made certain by calculation." Cal. Civ. Code § 3287(a). Damages meet this test "where there is essentially no dispute between the parties concerning the basis of computation of

damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." *Warren v. Kia Motors Am., Inc.*, 30 Cal. App. 5th 24, 44 (2018). Conversely, where the damages are unliquidated and "cannot be resolved except by verdict or judgment, prejudgment interest is not appropriate" under section 3287. *Wisper Corp. v. Cal. Com. Bank*, 49 Cal. App. 4th 948, 960 (1996).

The damages awarded for Erhart's state law claims—emotional distress and reputational damages—are unliquidated. They were not capable of determination until the jury rendered its verdict. Therefore, prejudgment interest is not available under Civil Code section 3287 for these claims from the date of Erhart's termination until the verdict. *See Wisper Corp.*, 49 Cal. App. 4th at 199.

Erhart does not show that any of the other possibilities for recovering prejudgment interest under California law apply. *See Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 26 Cal. 3d 86, 102–03 (1979) (applying California Civil Code section 3288, which requires a jury determination on this issue); *O'Hara v. Storer Commc'ns, Inc.*, 231 Cal. App. 3d 1101, 1117–19 (1991) (applying California Civil Code section 3291, which requires a statutory offer to compromise). Hence, BofI is correct, and the Court finds Erhart cannot recover prejudgment interest for his state law claims.[2]

### C. Federal Claim

Erhart's federal claim is the last one standing for prejudgment interest. BofI argues it would be unfair to award prejudgment interest on this claim because

---

[2] California law may authorize post-verdict interest under Civil Code section 3287(a) because Erhart's noneconomic damages became certain on the date of the jury's verdict. *See Holdgrafer v. Unocal Corp.*, 160 Cal. App. 4th 907, 935 (2008). Erhart does not address this issue—or any of California law for that matter. (*See* Reply 10:3–10.) The Court will not sift through this maze unaccompanied. Erhart already had two opportunities to justify his prejudgment interest request. *See Hamilton v. Wal-Mart Stores, Inc.*, No. 19-56161, 2022 WL 2374445, at *3 (9th Cir. June 30, 2022).

Erhart recovered "purely non-economic damages." (Opp'n 24:9–15.) In contrast to above, the Court now applies the law for victims of federal law violations.

"Prejudgment interest is a measure that 'serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.'" *Schneider v. Cnty. of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002) (quoting *West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987)). Awarding prejudgment interest "under federal law is a matter left to the sound discretion of the trial court." *Purcell v. United States*, 1 F.3d 932, 942–43 (9th Cir. 1993) (quoting *United States v. California State Bd. of Equalization*, 650 F.2d 1127, 1132 (9th Cir. 1981)). Prejudgment interest awards "are governed by considerations of fairness and are awarded when it is necessary to make the wronged party whole." *Id.* at 943.

Moreover, "prejudgment interest is an element of compensation, not a penalty." *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013). And prejudgment interest is available for both economic and noneconomic damages; those "damages awarded for a plaintiff's pain and suffering are 'just as much an "actual loss" (for which prejudgment interest is in order)' as purely economic damages." *Id.* (quoting *Murphy v. City of Elko*, 976 F. Supp. 1359, 1364 (D. Nev. 1997)).

To illustrate, in *Wooten*, the defendant railroad terminated the plaintiff after he reported an on-the-job injury. *Wooten v. BNSF Ry. Co.*, 387 F. Supp. 3d 1078, 1090 (D. Mont. 2019). The jury found the defendant violated federal safety laws and awarded the plaintiff "$500,000 for his mental and emotional humiliation or pain and anguish." *Id.* The court reasoned that prejudgment interest was appropriate to "fully compensate" the plaintiff for his injury. *Id.* at 1105. Hence, the court awarded prejudgment interest from the date the defendant terminated the plaintiff to the date of entry of judgment. *Id.* at 1106.

## 1. Interest under Sarbanes–Oxley

Erhart prevailed on his claim for retaliation in violation of the Sarbanes–Oxley Act, 18 U.S.C. § 1514A. Sarbanes–Oxley authorizes a broad swath of remedies:

> (c) Remedies.–
>
> (1) In general.–An employee prevailing in any action under subsection (b)(1) shall be entitled to *all relief necessary to make the employee whole*.
>
> (2) Compensatory damages.–Relief for any action under paragraph (1) shall include–
>
> (A) reinstatement with the same seniority status that the employee would have had, but for the discrimination;
> (B) the amount of back pay, with interest; and
>
> (C) compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.

18 U.S.C.A. § 1514A(c). This statute "affords noneconomic compensatory damages, including emotional distress and reputational harm." *Halliburton, Inc. v. Admin. Rev. Bd.*, 771 F.3d 254, 266 (5th Cir. 2014) (per curiam). And that is what Erhart recovered here. Further, Sarbanes–Oxley makes prejudgment interest mandatory for "backpay," but preserves the court's discretion to award interest on other types of damages. *See Purcell v. United States*, 1 F.3d 932, 943 (9th Cir. 1993) (explaining Congress can override the default rule by making interest mandatory).

BofI recognizes as much. It acknowledges the Court can award prejudgment interest on federal noneconomic claims. (Opp'n 24:12–17.) BofI highlights, however, that Erhart "does not cite a single [Sarbanes–Oxley] case in which the Court awarded prejudgment interest for purely non-economic damages." (*Id.*)

Even so, the Court remains persuaded that discretionary prejudgment interest is available here. Sarbanes–Oxley affords "*all* relief necessary to make the employee whole," 18 U.S.C. § 1514A(c)(1) (emphasis added), and awarding prejudgment interest for noneconomic damages serves to achieve "full compensation" for an injury under the law, *see Schneider*, 285 F.3d at 789.

In the same vein, the Court is unpersuaded that the jury's verdict already incorporates any prejudgment interest awardable to Erhart. Courts have grappled with this issue before.[3] Here, neither the jury instructions nor the verdict form addressed prejudgment interest and asked the jury to adjust Erhart's damages to account for the delay in his recovery. (*See* Court's Instruction No. 37 – Damages, ECF No. 319; Verdict Form; Jury Verdict 4.) Hence, the Court must determine whether Erhart should recover prejudgment interest on the damages he recovered under Sarbanes–Oxley.

## 2. Allocation Between State and Federal Claims

There is a wrinkle. The jury verdict does not distinguish between Erhart's damages for his Sarbanes–Oxley, California wrongful termination, and California Labor Code section 1102.5 claims. With the parties' support, the Court combined the verdict form's damages interrogatory for these causes of action out of concern "that having a damages section at the end of each cause of action could lead to double counting for what is essentially one harm." (Tr. 23:1–2, ECF No. 261.)

As anticipated, the evidence for damages overlapped at trial. There was no indication that Erhart suffered different emotional or reputational damages when

---

[3] *See Miller v. Schmitz*, No. 1:12-CV-0137 LJO, 2014 WL 68883, at *2 (E.D. Cal. Jan. 8, 2014) (rejecting the defendants' argument "that there is no need to compensate Plaintiff for prejudgment interest because the jury likely already accounted for prejudgment interest when it rendered its verdict" and gave its award "in present value terms"); *see also Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 1004 (E.D. Cal. 2018) (reasoning jury award did not already adequately compensate prevailing party because the court did not instruct on prejudgment interest); *cf. Towey v. Catling*, 743 F. Supp. 738, 742 (D. Haw. 1990) (reasoning prejudgment interest was available on part of damages award because it was possible the jury "simply added past and future damages together" and did not adjust damages to present value "from the time of the accident until the entry of judgment").

BofI wrongfully retaliated against him under California law versus when BofI did so under the Sarbanes–Oxley Act. Moreover, although BofI generally argues Erhart cannot recover prejudgment interest for his state law claims, BofI does not address this allocation point. (*See* Opp'n 24:9–25:19; *see also id.* 23:11–25.) Nor does Erhart.

A court struggled with this issue in *Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1092–97 (E.D. Cal. 2011). There, the plaintiff prevailed on state and federal employment causes of action, and the jury's damages award similarly did not distinguish between the two. *Id.* at 1087. With no binding guidance, the court ultimately blended the interest rates from state and federal law. *Id.* at 1092–97. The court then applied the blended rate to the maximum amount of the damages award that could serve as the basis for awarding prejudgment interest. *See id.*

By comparison, in *Thomas v. iStar Financial, Inc.*, 629 F.3d 276, 280 (2d Cir. 2010), the plaintiff also "received an award of damages that compensated for both federal and state claims without distinguishing between the two." The Second Circuit determined "judgments that are based on both state and federal law with respect to which no distinction is drawn shall have applicable interest calculated at the federal interest rate." *Id.*; *see also Vera v. Alstom Power, Inc.*, 189 F. Supp. 3d 360, 390 (D. Conn. 2016) (applying federal law where judgment was "based on both state and federal claims, and is not apportioned between the two"); *Arnold v. Pfizer Inc.*, No. 10-CV-01025-AC, 2015 WL 1262775, at *3 (D. Or. Mar. 18, 2015) (reasoning where "the jury did not allocate damages based on violations of state or federal law," it was appropriate to award prejudgment interest using the federal rate). These comparisons are not airtight, though, because in these cases state law was typically more favorable than federal law for prejudgment interest.

Given the overlap in the evidence at trial, and the lack of argument on this issue, the Court finds it is fair to attribute the $1 million damage verdict to the Sarbanes–Oxley claim for determining prejudgment interest under federal law.

This outcome is consistent with the Court's rationale for combining the damages inquiries to begin with: BofI's retaliation under state and federal law led to Erhart suffering the same harms in the form of emotional distress and reputational damage. To suggest otherwise and compare the nuances of the different causes of action would be splitting hairs. The Court thus considers whether the equities support awarding prejudgment interest on Erhart's $1 million recovery under Sarbanes–Oxley.

### 1. Equities

A "district court should consider the balance of the equities" when determining an award of prejudgment interest. *Barnard*, 721 F.3d at 1078. For example, in *Barnard*, the plaintiff recovered $1.6 million for pain and suffering on his Fourth Amendment excessive force claim. *Id.* at 1074. The court, however, denied the plaintiff's request for prejudgment interest. *Id.* at 1074. In a truncated analysis, the "court explained that prejudgment interest may not be appropriate when applied to an award of non-economic damages." *Id.* The court also rationalized "that prejudgment interest was inappropriate because it was unclear which portion of [the plaintiff's] award, if any, was intended to compensate him for future pain and suffering." *Id.* at 1075.

The Ninth Circuit later cast doubt on the district court's prejudgment interest ruling. *Barnard*, 721 F.3d at 1075. Citing the rules mentioned above, the Ninth Circuit explained that "to the extent the district court denied prejudgment interest because it thought such interest is unavailable for non-economic damages, the district court abused its discretion." *Id.* at 1078. Further, the Ninth Circuit explained the court could "consider whether it is appropriate to award prejudgment interest for at least that portion of the award that was likely given to [the plaintiff] in order to compensate him for his past pain and suffering and medical expenses." *Id.*

BofI raises two points on balancing the equities. First, BofI argues prejudgment interest is inappropriate because "it is unclear when Erhart suffered emotional distress or reputational harm from a compensable event (if at all)." (Opp'n 24:16–21.) This argument is a nonstarter. The jury found Erhart suffered emotional distress and reputational harm, and the Court will not decline to award prejudgment interest on this ground. *See Wooten*, 387 F. Supp. 3d at 1105 (rejecting defendant's argument "that the balance of equities does not support the award of pre-judgment interest because the award itself is 'excessive,' unsupported by the evidence, and 'undoubtedly' made [the plaintiff] 'more than . . . whole.'").

BofI's second point echoes the concern addressed in *Barnard* above. BofI argues the jury was entitled to award Erhart damages for future emotional distress, and "there is no way of knowing when his emotional distress ended (if at all)." (Opp'n 24:23–25:2.) Hence, BofI argues the Court is unable to parse Erhart's past and future damages to ensure that prejudgment interest is being awarded for only Erhart's past harms. (*Id.*)

The Court agrees that awarding prejudgment interest on damages for future harms is nonsensical. Erhart, unhelpfully, does not propose a solution to this problem. (*See* Reply 10:14–23.) Some courts have examined the parties' closing arguments to infer how much a jury awarded in damages for future harm. *See, e.g.*, *Jerra v. United States*, No. 2:12-cv-01907-ODW (AGRx), 2018 WL 1605563, at *13 (C.D. Cal. Mar. 29, 2018). For example, in *Jerra*, the district court reduced a $500,000 compensatory verdict by $179,000 when calculating prejudgment interest because $179,000 was the amount the plaintiff "requested, at most, as future damages." *Id.*; *see also Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-CV-01524-RCJ, 2013 WL 4039067, at *2 (D. Nev. Aug. 7, 2013) (prorating prejudgment interest on remand based on the plaintiff's argument that he was thirty-nine years old and should receive pain and suffering damages to compensate

him for thirty-six years until reaching age seventy-five), *reversed in part on other grounds*, 649 F. App'x 414, 417 (9th Cir. 2016).

There is no simple solution here. Although the brunt of Erhart's damages likely occurred around the time of his termination, he has many years ahead of him. Erhart testified he is affected daily by what happened. (*E.g.*, Trial Tr. Vol. 4 at 260:20–261:2, ECF No. 290.) His counsel later reminded the jury that "he is entitled to be compensated both for his past emotional harm and future emotional harm. . . . There is no number of years that is a limit on how much time he can be compensated for." (Trial Tr. Vol. 12 at 208:9–13, ECF No. 310.)

Through his counsel, Erhart ultimately asked the jury for "$5 million for emotional distress, and $7 million for the destruction of his reputation," but did not specify what portion of this amount should be for past or future harm. (*See* Trial Tr. Vol. 13 at 175:23–25, ECF No. 312.) The jury then awarded Erhart $1 million altogether for his federal claim. Considering Erhart's arguments to the jury, and his lack of a suggested solution to the Court, the balance of the equities supports splitting his award down the middle for calculating prejudgment interest. The Court determines $500,000 of his damages were for past harm and the remaining $500,000 was for future harm.

### 2. Interest Rate

"Generally, the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest." *Van Asdale v. Int'l Game Tech.*, 763 F.3d 1089, 1093 (9th Cir. 2014) (quoting *Blankenship v. Liberty Life Assur. Co. of Bos.*, 486 F.3d 620, 628 (9th Cir. 2007)). Hence, "prejudgment interest is often calculated at the same rate as postjudgment interest." *Id.*

Under the postjudgment interest statute, the interest rate is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding" the

1  date of judgment. 28 U.S.C. § 1961(a). Further, the interest is computed daily to
2  the date of payment and "compounded annually." *Id.* § 1961(b); *see also Price v.*
3  *Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 839–843 (9th Cir. 2012)
4  (summarizing the arguments for using compound interest in the prejudgment
5  interest context when the court employs § 1961).

6  The court retains discretion, however, to deviate from this rate where it
7  "finds, on substantial evidence, that the equities of the particular case require a
8  different rate." *W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1289
9  (9th Cir. 1984). For example, a plaintiff awarded disability benefits demonstrated
10 he was forced to divert personal funds to cover the shortfall that would have
11 otherwise returned 10.01% in a mutual fund. *Blankenship*, 486 F.3d at 628. The
12 Ninth Circuit held the district court did not abuse its discretion in awarding
13 prejudgment interest at this rate in lieu of the standard Treasury bill rate. *Id.*

14 In contrast, in *Barnard*, discussed above, the plaintiff on remand argued the
15 district court should deviate "from the general rule and apply a 'fluctuating T-bill
16 rate.'" 649 F. App'x at 417. The court denied the plaintiff's request and calculated
17 interest using 0.16%, which was the rate under § 1961 at the time of the original
18 judgment. *Id.* at 416–17. The Ninth Circuit held the court did not abuse its
19 discretion because it "correctly identified § 1961 as the source for pre-judgment
20 interest rates, recognized that there were exceptions for departing from such
21 statutory rate, and concluded there was not 'sufficient cause' to apply an
22 exception." *Id.* at 417.

23 Here, the Clerk entered judgment on the morning of Friday, September 30,
24 2022. (ECF No. 380.) "[T]he calendar week preceding" this date ended on Friday,
25 September 23, 2022. *See* 28 U.S.C. § 1961(a); *see also Goldstine v. FedEx Freight*
26 *Inc.*, No. C18-1164 MJP, 2021 WL 952335, at *1 (W.D. Wash. Mar. 12, 2021)
27 (noting the applicable rate is the one "issued for the full calendar week preceding
28

judgment"). For that week, the average 1-year constant maturity Treasury yield was 4.08% according to the Federal Reserve.[4]

Erhart was terminated no later than June 9, 2015. Between June 9, 2015, and September 30, 2022, over seven years passed. For the initial seven years, with $500,000 earning interest at 4.08% compounded annually, Erhart receives $161,516.97 in interest.[5] During the final partial year, 113 days passed between June 9, 2022, and September 30, 2022. Erhart receives $8,355.77 in interest for this period,[6] bringing the total prejudgment interest to $169,872.74.

Each party, however, asks the Court to deviate from the interest rate specified in 28 U.S.C. § 1961. Erhart asks the Court to use the interest rate for significant corporate underpayments of tax obligations, which is found in 26 U.S.C. § 6621(c). (Mot. 17:3–21.) He claims this rate is 8% and should be compounded daily under 26 U.S.C. § 6622. (*Id.* 17:14–21.) Were the Court to use the same variables as

---

[4] The Court obtained this interest rate through the Federal Reserve's Data Download Program. The Court used the "Selected Interest Rates" data set, specified the instrument as "U.S. government securities/Treasury constant maturities/nominal," selected the "1-year" maturity," chose a frequency of "Weekly (Friday)," and requested the data for September 2022. *See also* Post-Judgment Interest Rates, U.S. Bankr. Ct, S.D. of Cal., www.casb.uscourts.gov/post-judgment-interest-rates (last visited July 28, 2023) ("In cases where the judgment date is the same as the release date, select the prior week's release rate; interest rate releases are considered to be issued at the close of business on the date of release.").

[5]

| Year No. | Starting Balance | Interest Rate | Interest Accrued |
|---|---|---|---|
| 1 | $ 500,000.00 | 4.08% | $ 20,400.00 |
| 2 | $ 520,400.00 | 4.08% | $ 21,232.32 |
| 3 | $ 541,632.32 | 4.08% | $ 22,098.60 |
| 4 | $ 563,730.92 | 4.08% | $ 23,000.22 |
| 5 | $ 586,731.14 | 4.08% | $ 23,938.63 |
| 6 | $ 610,669.77 | 4.08% | $ 24,915.33 |
| 7 | $ 635,585.10 | 4.08% | $ 25,931.87 |
| | | Total: | $ 161,516.97 |

[6] At the start of year eight, the principal balance is $661,516.97. Erhart is entitled to interest for 113 of 365 days. So, the remaining interest to be awarded is $661,516.97 * 0.0408 * 113/365 = $8,355.77.

– 15 –

above but compound interest daily at 8%, the resulting prejudgment interest award would be approximately $375,000.

There is some support for Erhart's request to use this higher rate. He points to *Van Asdale*, where the court awarded prejudgment interest on an award of backpay under Sarbanes–Oxley. *Van Asdale v. Int'l Game, Tech.*, No. 3:04-CV-00703-RAM, 2011 WL 2118637, at *19 (D. Nev. May 24, 2011). There, the court looked to a Department of Labor regulation, 29 C.F.R. § 20.58, which provides the interest rate from 26 U.S.C. § 6621 "shall be sought for backwages recovered in litigation by the Department." 29 C.F.R. § 20.58(a). Notably, however, the defendant did "not dispute that the large corporate underpayment rate applies." *Van Asdale*, 2011 WL 2118637, at *18. Hence, the court found it was appropriate to use the interest rate from § 6621 given "the absence of any objection by" the defendant. *Id.* at *19; *see also Van Asdale v. Int'l Game Tech.*, 763 F.3d 1089, 1091 (9th Cir. 2014) (reasoning "we need not resolve in this case whether prejudgment interest and postjudgment interest awards in Sarbanes–Oxley cases must be based on the same interest rate" because the defendant "failed to raise this issue before the district court").

The Court is unpersuaded that § 6621's large corporate underpayment rate should apply. *Van Asdale* is distinguishable because the defendant there did not argue for a different rate, and Erhart does not demonstrate the equities justify using § 6621's rate. *Cf. Blankenship*, 486 F.3d at 628 (approving the deviation mentioned above where the plaintiff submitted evidence justifying a different interest rate).

On the other hand, BofI suggests the Court must apply a fluctuating treasury rate if 28 U.S.C. § 1961 applies. (*See* Opp'n 25:14–18 (arguing Erhart failed to provide data on a fluctuating rate to the court).) The Ninth Circuit has permitted this modified approach, but it is not the default rule. *See Barnard v. Theobald*, 649 F. App'x 414, 417 (9th Cir. 2016); *see also Saavedra v. Korean Air Lines Co.*, 93

F.3d 547, 555 (9th Cir. 1996). And although there may be good reasons for applying a fluctuating rate in this case, BofI identifies none. (*See* Opp'n 25:9–18.)

Simply put, neither side submits substantial evidence showing the Court should deviate from the statutory rate in 28 U.S.C. § 1961. The Court returns to where it started. After applying a 4.08% rate to $500,000 over the relevant period, the Court awards Erhart $169,872.74 in prejudgment interest.

### III.  CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Erhart's motion for prejudgment interest (ECF No. 384). The Court will direct the Clerk of Court to enter an amended judgment that awards Erhart $169,872.74 in prejudgment interest.

**IT IS SO ORDERED.**

**DATED: September 28, 2023**

Hon. Cynthia Bashant
United States District Judge